## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOHN DOES 1 THROUGH 7,

     *Judgment Creditors*,

v.

THE TALIBAN, AL-QAEDA, and THE HAQQANI NETWORK,

     *Judgment Debtors,*

v.

THE BANK OF NEW YORK MELLON,

     *Garnishee*

Case Action No. 6:22-cv-00990-DNH-TWD

## THE DEPOSIT GUARANTEE FUND'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS ORDER TO SHOW CAUSE
## <u>TO INTERVENE AND VACATE THE WRIT OF EXECUTION</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................4

    I.       PROCEDURAL HISTORY...................................................................4

    II.      UKRAINE'S NATIONALIZATION OF PROMINVESTBANK ........................7

ARGUMENT......................................................................................................11

    I.       INTERVENTION UNDER RULE 24 IS WARRANTED...................................11

        A.    Intervention as of Right Is Warranted......................................... 11

        B.    Permissive Intervention Is Warranted......................................... 14

    II.      THE COURT LACKED SUBJECT MATTER JURISDICTION TO ISSUE THE WRIT OF EXECUTION ................................................................14

        A.    The Court Erred In Finding Subject Matter Jurisdiction Under the ATA  15

        B.    The Court Erred In Finding Subject Matter Jurisdiction Under TRIA ..... 15

    III.     TRIA DOES NOT APPLY BECAUSE PROMINVESTBANK WAS NATIONALIZED BY UKRAINE BEFORE JUDGMENT CREDITORS APPLIED FOR A WRIT OF EXECUTION ......................................................20

    IV.    PROMINVESTBANK ENJOYS SOVEREIGN IMMUNITY ...........................22

CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19CV00007CBATAM,
2021 WL 3706909 (E.D.N.Y. Aug. 6, 2021)..........................................................................21

*Bennett v. Franklin Res., Inc.*,
360 F. Supp. 3d 972 (N.D. Cal. 2018), *aff'd sub nom*, *Bennet v. Islamic
Republic of Iran*, 778 F. App'x 541 (9th Cir. 2019).............................................................17

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
No. 20-MC-40-LJV, 2022 WL 2439386 (W.D.N.Y. June 7, 2022).......................................13

*Garb v. Republic of Poland*,
440 F.3d 579 (2d Cir. 2006)..................................................................................................23

*Harrison v. Republic of Sudan*,
No. 13-CV-3127, 2017 WL 946422 (S.D.N.Y. Feb. 10, 2017).............................................21

*Estate of Heiser*,
885 F. Supp. 2d 429 (D.D.C. 2012), *aff'd sub nom*, *Heiser v. Islamic Republic
of Iran*, 735 F.3d 934 (D.C. Cir. 2013)................................................................................17

*Hoblock v. Albany Cnty. Bd. of Elections*,
233 F.R.D. 95 (N.D.N.Y. 2005)..................................................................................11, 13, 14

*Kirschenbaum v. 650 Fifth Ave. & Related Properties*,
830 F.3d 107 (2d Cir. 2016)..................................................................................................17

*Kirschenbaum v. 650 Fifth Ave.*,
257 F. Supp. 3d 463 (S.D.N.Y. 2017), *vacated and remanded sub nom on
unrelated grounds sub nom*, *In re 650 Fifth Ave & Related Properties*, 934
F.3d 147 (2d Cir. 2019), and *rev'd and remanded sub nom*, *Havlish v. 650
Fifth Ave. Co.*, 934 F.3d 174 (2d. Cir. 2019) ........................................................................20

*Knox v. Orascom Telecom Holding S.A.E.*,
477 F. Supp. 2d 642 (S.D.N.Y. 2007)....................................................................................15

*Levin v. 650 Fifth Ave. Co.*,
No. 17 CIV. 959, 2022 WL 3701156 (S.D.N.Y. Aug. 26, 2022) ...........................................21

*Medequa LLC v. O'Neill & Partners LLC*,
No. 21 CIV. 6135, 2022 WL 3364294 (S.D.N.Y. July 26, 2022) ...........................................12

*Peacock v. Thomas,*
    516 U.S. 349 (1996) .................................................................................................15

*Pescatore v. Palmera Pineda,*
    No. CV 08-2245, 2019 WL 2173835 (D.D.C. May 20, 2019) .................................13

*In re Reliance Grp. Holdings, Inc. Sec. Litig.,*
    No. 00-CV-4653, 2004 WL 601973 (S.D.N.Y. Feb. 24, 2004)................................12

*Schwartz v. Town of Huntington Zoning Bd of Appeals,*
    191 F.R.D. 357 (E.D.N.Y. 2000) ...........................................................................13

*In re Terrorist Attacks on Sept. 11, 2001,*
    No. 03MD01570GBDSN, 2022 WL 4643442 (S.D.N.Y. Aug. 26, 2022) ......................16, 18

*United States v. All Assets Held at Bank Julius Baer & Co.,*
    959 F. Supp. 2d 81 (D.D.C. 2013) .........................................................................13

*Vera v. Republic of Cuba,*
    867 F.3d 310 (2d Cir. 2017)...................................................................................16

*Weininger v. Castro,*
    462 F. Supp. 2d 457 (S.D.N.Y. 2006).....................................................................17

*Zurich Capital Mkts., Inc. v. Coglianese,*
    236 F.R.D. 379 (N.D. Ill. 2006) .............................................................................13

**Statutes**

18 U.S.C. § 2333(e) ....................................................................................................6

28 U.S.C. § 1603 .......................................................................................................23

28 U.S.C. § 1604 .......................................................................................................23

28 U.S.C. § 1605 .......................................................................................................23

28 U.S.C. § 1605A .....................................................................................................17

28 U.S.C. § 1606 .......................................................................................................23

28 U.S.C. § 1607 .......................................................................................................23

28 U.S.C. § 1610 .......................................................................................................23

28 U.S.C. § 1611 .......................................................................................................23

28 U.S.C. § 1963 .......................................................................................................15

**Rules & Regulations**

Fed. R. Civ. P. 24 ...................................................................................................1, 11

Fed. R. Civ. P. 24(a) ...................................................................................................11

Fed. R. Civ. P. 24(b) ...................................................................................................14

Fed. R. Civ. P. 60(b) ...................................................................................................1

L. R. 7.1(e) ...................................................................................................................1

**Other Authorities**

148 Cong. Rec. 4629 (2002) .......................................................................................19

148 Cong. Rec. 10352 (2002) .....................................................................................19

148 Cong. Rec. 23122 (2002) .....................................................................................20

Antiterrorism Act, Pub. L. No. 101-519, 104 Stat. 2250 (1990) ..............................1, 15

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    No. 20-MC-00040-LJV (W.D.N.Y. Sept. 10, 2020) ............................................18

*Caballero v. Fuerzas Armadas Revolucionarieas de Colombia, et al.*,
    Dkt. 125 (W.D.N.Y. Sept. 20, 2022) ...................................................................19

Executive Order 14024, "Blocking Property With Respect To Specified Harmful
    Foreign Activities of the Government of the Russian Federation.",
    https://home.treasury.gov/system/files/126/14024.pdf.........................................5

Terrorism Risk Insurance Act, Pub. L. No. 107-297, § 201(a) 116 Stat. 2322
    (2022) .............................................................................................. *passim*

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 1:03-md-1570, Dkt. 7661 (S.D.N.Y. Feb. 11, 2022) .....................................18

Pursuant to Federal Rules of Civil Procedure 24 and 60(b) and Local Rule 7.1(e), Deposit Guarantee Fund ("DGF"), as Liquidator of PJSC "Joint Stock Commercial Industrial and Investment Bank" (a/k/a Prominvestbank), files this memorandum of law in support of its order to show cause to intervene as a defendant in this proceeding and vacate the writ of execution against the blocked assets of Prominvestbank held by the Bank of New York Mellon ("BNYM") in Oriskany, New York issued by the Court on November 2, 2022 (the "Writ of Execution").

## PRELIMINARY STATEMENT

This proceeding involves the disposition of Prominvestbank assets formerly indirectly owned by the Russian Federation, which were seized earlier this year by Ukraine as part of a broader effort to nationalize Russian assets in support of Ukraine's resistance to Russian aggression. Under Ukrainian law, the DGF has been tasked with liquidating Prominvestbank and acting on its behalf. Accordingly, DGF is entitled to intervene as of right to challenge the Writ of Execution, or should otherwise be permitted to do so within the Court's broad discetion. DGF respectfully submits that the Writ of Execution should be vacated because the Court lacks subject matter jurisdiction, and its *ex parte* finding that Prominvestbank is an agency or instrumentality of the Taliban was based on incomplete, inaccurate and/or outdated facts concerning Prominvestbank's relationship with Russia.

**First,** the Court found subject matter jurisdiction based on the Anti-Terrorism Act ("ATA") and Terrorism Risk Insurance Act ("TRIA"). Neither provides a basis for this Court's jurisdiction. Courts have declined to exercise ancillary jurisdiction over proceedings to enforce ATA judgments against third parties who had no involvement in the underlying proceeding. That is because an enforcement proceeding against a third party requires new factual findings based on new theories of liability and thus requires an independent basis for jurisdiction. The Court's finding of jurisdiction under TRIA is likewise contrary to precedent. New York federal courts have been

1

circumspect in extending TRIA's reach to allow judgment creditors to enforce judgments obtained against non-state terrorist actors against the assets of a foreign sovereign that has not been recognized by the United States as a state sponsor of terrorism. That is precisely what the Judgment Creditors seek to do here. The Writ of Execution is based solely on Judgment Creditors' untested *ex parte* submission asserting that the Russian Federation indirectly owns Prominvestbank through the Russian state-owned bank, VEB, and that Russia exercises control over VEB and Prominvestbank (and their assets) to provide financial support to the Taliban. On that basis, Judgment Creditors seek to hold Prominvestbank liable under TRIA for a judgment against the Taliban, and to satisfy that judgment against assets the Judgment Creditors contend are controlled by Russia. Courts have rejected the application of TRIA in cases involving substantially similar facts, and in multiple such cases, the United States government has filed statements of interest to oppose the application of TRIA based in part on significant foreign policy and national security considerations. Thus, the Writ of Execution should be vacated as a matter of law for lack of subject matter jurisdiction.

**Second,** the Writ of Execution should also be vacated because it is based on a finding that Prominvestbank is an agency or instrumentality of the Taliban, which is unsupported by any fact in the record – and demonstrably false. The Court's finding in that regard was based on the declaration of Brian Fonseca, submitted in support of Judgment Creditors' application for the Writ of Execution. Mr. Fonseca's declaration omits critical facts that were publicly available several months before his report was filed. Chief among those facts is that in May 2022, it was publicly reported that Prominvestbank had been nationalized by Ukraine as part of its ongoing resistance to the Russian military invasion. It is well-established that the relevant date for purposes of determining agency or instrumentality status is the date of the application for writ of execution,

2

which in this case was filed on September 20, 2022.  By the time Judgment Creditors applied for the Writ of Execution, as set forth in further detail below and in the declaration of Dmytro Kostiukov, the Ukrainian government had seized control of, and eliminated VEB's authority over, Prominvestbank and its assets.  Those actions included: (1) commencing liquidation procedures, thereby terminating the bank's governance and control bodies and instead giving DGF the authority to exercise those bodies' powers and control over the bank's property, as well as other powers attendant to effectuating the liquidation; (2) mandating, pursuant to a law signed by Ukrainian President Vladimir Zelensky on March 3, 2022, that "[f]orcibly seized . . . property rights of the Russian Federation" shall be "transferred to the State Budget of Ukraine and directed to the fund for the elimination of the consequences of armed aggression" by the Russian Federation against Ukraine; and (3) directing the transfer of VEB's 99.77% ownership interest in Prominvestbank to the National Investment Fund of Ukraine.

Thus, as of the time the Judgment Creditors filed their application for a writ of execution, the assets at issue were not assets controlled by Russia to provide financial support to the Taliban.  To the contrary, Judgment Creditors seek to satisfy their judgment through execution upon assets owned and controlled by Ukraine, which were seized by Ukraine to support its ongoing campaign of resistance to Russian aggression.  Since the Writ of Execution was based entirely on Prominvestbank's ties to Russia, and those ties were severed as a result of Ukraine's nationalization of Prominvestbank and the various directives issued by the Ukrainian government in order to implement the nationalization, Prominvestbank plainly was not an agency or instrumentality of the Taliban as of September 20, 2022.  Accordingly, the Writ of Execution should be vacated.  Requiring Prominvestbank to turn over assets to the Judgment Creditors would interfere with DGF's obligations as liquidator to distribute the bank's assets in accordance with

3

Ukraine law as well as the March 3 law signed by President Zelensky directing all Russian assets seized by Ukraine to be used to fund the state's resistance efforts.  There is simply no basis to execute upon Ukrainian assets to satisfy a judgment against the Taliban and other terrorist networks.

**Third,** the assets upon which Judgment Creditors seek to execute are now owned by the National Investment Fund of Ukraine, which is entitled to sovereign immunity, and accordingly the Writ of Execution should be vacated for that reason as well.

DGF respectfully submits that the Writ of Execution should be vacated for the reasons set forth herein.  For reasons of judicial efficiency, DGF requests that the Court first rule on the present motion, and if necessary, afford DGF the opportunity to contest Mr. Fonseca's findings concerning Prominvestbank's involvement in Russia's provision of financial assistance to the Taliban, which may require substantial discovery and factual findings by the Court.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Judgment Creditors commenced this action on September 20, 2022 by registering with this Court a default judgment entered in Judgment Creditors' favor in the United States District Court for the Northern District of Texas on November 5, 2020 in the amount of $138,418,741.00 (the "Default Judgment").  ECF No. 1.   The Default Judgment was issued against the three defendants in the underlying proceeding: the Taliban, Al-Qaeda, and the Haqqani Network (the "Judgment Debtors").  *Id.*  Judgment Creditors have not provided any explanation for why they waited nearly two years to attempt to seek enforcement of the Default Judgment against Prominvestbank.

Also on September 20, 2022, Judgment Creditors filed an *ex parte* emergency motion for writ of execution or in the alternative for writ of attachment, supported by a memorandum of law

filed on September 21.  *See* ECF No. 4-2.[1]  In their Emergency Motion, Judgment Creditors sought to execute the Default Judgment against the blocked assets of Prominvestbank under TRIA, relying on the declaration of Brian Fonseca (ECF No. 4-18, the "Fonseca Declaration").   Judgment Creditors explained that President Biden issued Executive Order 14024[2] on April 15, 2021 "which blocked the property and interest in property of individuals and entities 'responsible for or complicit in, or [who] directly or indirectly engaged or attempted to engage in,' among others, the 'undermin[ing] [of] security in countries and regions important to United States national security' on behalf of the Russian Federation."  *Id.* at 10.  They further stated that "[o]n February 22, 2022, the United States . . . sanctioned Prominvestbank for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, the Russian government via the Russian state-owned bank VEB."  *Id.* at 15.   Thus, Judgment Creditors acknowledge that Prominvestbank's assets were blocked because Prominvestbank was owned by the Russian state-owned bank VEB and thus controlled and indirectly owned by Russia.  Prominvestbank's assets were, in effect, blocked because they were deemed to be Russian assets or, at a minimum, Russian-controlled assets.   Indeed, Plaintiffs quote a Swedish Diplomat and Georgetown University professor who stated that President Putin uses VEB as a "personal slush fund."  *Id.* at 15.  It is indisputable that Judgment Creditors are pursuing Prominvestbank's assets on the theory that they are really Russian assets.

---

[1] DGF did not receive notice of the motion until November 15, 2022 – after the writ was granted on an *ex parte* basis – when it received an email from Bank of New York Mellon attaching copies of the writ and the *ex parte* application.  Tracey Decl. ¶ 4.

[2] Executive Order 14024 is titled "Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation."   *See* https://home.treasury.gov/system/files/126/14024.pdf.

Notably, Judgment Creditors have not offered *any* evidence of direct ties between Prominvestbank and the Judgment Debtors.  Instead, the basis for Judgment Creditors' application for a Writ of Execution is that Prominvestbank "is a subsidiary of an instrument of the Russian Government" (namely, VEB), "that Russia uses to fund destabilizing activities," and that "Moscow regularly uses VEB to advance Russia's foreign-policy goals in secrecy." *Id.* at 14-15.  Judgment Creditors quote the conclusions of the Fonseca Declaration as follows:  "based on my research, Russian government and military officials use VEB and its subsidiaries, including Prominvestbank, as the primary means for facilitating illicit destabilizing activity around the world, including, but not limited to providing material support to the Taliban in Afghanistan." *Id.* at 16.   Therefore, Judgment Creditors' application for a Writ of Execution is based not only on the premise that Prominvestbank's assets are owned and/or controlled by Russia (and were blocked on that basis), but that the Russian government has freely used Prominvestbank and its assets to support the Taliban.

On November 2, 2022, the Court issued an order granting the writ.  The Court found that it had subject matter jurisdiction to conduct post-judgment execution proceedings, granting Judgment Creditors' *ex parte* Motion for Writ of Execution, and finding "[b]ased upon Judgment Creditors' supporting expert witness Declaration and appendix, as well as the declaration of counsel . . . that Prominvestbank is an agency or instrumentality of the Taliban; that blocked assets of Prominvestbank are held at the Bank of New York Mellon in Oriskany, New York; and that those blocked assets are subject to attachment and execution to satisfy the judgment in this matter pursuant to TRIA and 18 U.S.C. § 2333(e)." Accordingly, the Court directed the Clerk of Court to issue  a writ of execution on November 2, 2022 which was issued the same day. *See* ECF No. 16 (the "November 2 Order"). *See also* ECF No. 17.

On November 14, 2022, BNYM filed a response to the Writ of Execution stating, among other things, that "[t]he Writ does not, however, by itself permit or warrant a turnover of the funds in the Blocked Account to plaintiffs" and that "[b]efore a turnover can be ordered, Prominvestbank must be given formal notice of this proceeding and have an opportunity to appear and, if it so chooses, move to vacate the Writ or otherwise oppose plaintiffs' expected motion for a turnover of the funds in the Blocked Account."  ECF No. 26 ¶ 4.  BNYM further stated that "[u]ntil service has been effected, and Prominvestbank has either defaulted or appeared and lost on the question of whether the Blocked Account is subject to execution under TRIA, the Blocked Account cannot be turned over to plaintiffs and will remain blocked at BNY Mellon."  *Id.* ¶ 5.

On December 15, 2022, Judgment Creditors filed a motion for an extension of the Writ of Execution noting, among other things, that Judgment Creditors had not yet effectuated service on Prominvestbank pursuant to the Hague Convention and that "it could take more than six additional weeks."  ECF No. 32 ¶ 8.

DGF retained the undersigned in connection with this proceeding on December 21, 2022. Tracey Decl. ¶ 4.  On December 22, 2022, Hogan Lovells sent a letter to Judgment Creditors' and BNYM's counsel providing notice that it had been retained by DGF and intended to move by order to show cause to intervene and vacate the Writ of Execution.  *Id.*

## II.    UKRAINE'S NATIONALIZATION OF PROMINVESTBANK

As stated in the Fonseca Declaration, "Prominvestbank is a bank based in Ukraine." Fonseca Decl. ¶ 32.  The Fonseca Declaration also states that "[i]n 2017, the National Security and Defense Council of Ukraine sanctioned Prominvestbank to prevent Russia, through VEB, from using Prominvestbank to drain capital from Ukraine during increased tensions between Moscow and Kyiv."  *Id.* at ¶ 37.  However, Judgment Creditors omitted critical subsequent events in Ukraine from their submission which demonstrate that the Fonseca Declaration is based on outdated and/or

inaccurate information, and that there is no basis for execution against Prominvestbank's assets under TRIA.

It was publicly reported in May 2022 – several months before Judgment Creditors applied for the Writ of Execution – that the Ukrainian government nationalized Prominvestbank. Kostiukov Decl. ¶ 12.  Months before nationalizing the bank, on February 25, 2022, the Board of the National Bank of Ukraine issued a decision revoking Prominvestbank's banking license and directing its liquidation (the "February 25 National Bank Decision").  *Id.* ¶ 4.  Pursuant to the February 25 National Bank Decision, DGF issued a decision on the same day to commence the liquidation process.  *Id.* ¶ 5.  Once DGF commenced the liquidation process, the DGF Law, as amended on April 1, 2022 (as defined in the Kostiukov Declaration), operated to strip VEB and/or Russia of any authority or control they might have had over Prominvestbank, including by: (1) terminating all powers previously belonging to Prominvestbank's management and control bodies; and (2) giving DGF authority to act on behalf of Prominvestbank, including by exercising the powers of the bank governing bodies, taking possession of the bank's property (including funds), controlling the disposition of the bank's assets and liabilities, and exercising all other powers necessary to effectuate the liquidation.  *Id.* ¶ 8.  Accordingly, from the beginning of the liquidation of Prominvestbank (February 25, 2022), the management and control of Prominvestbank has been exercised by DGF, which has the legal power to act on behalf of Prominvestbank, and VEB has had no control over Prominvestbank.  *Id.*

The DGF Law also establishes DGF's interest in the property that is subject to the Writ of Execution in this action – namely, the assets of Prominvestbank.  Article 52 of the DGF Law states that "[f]unds obtained as a result of the liquidation and sale of the bank's property(s), investment of the bank's temporarily free funds in state securities shall be directed by the DGF to satisfy the

creditors' requirements" in the priority set forth in Article 52.  Thus, DGF has an interest in the assets of Prominvestbank because it is responsible for liquidating Prominvestbank and distributing its assets in satisfaction of creditor claims in accordance with Ukrainian law.  Further, it is crucial for DGF to carry out its liquidation responsibilities efficiently so that any funds remaining in Prominvestbank following the satisfaction of creditor claims may be used by Ukraine to combat Russian aggression.  It is essential to these purposes that DGF take steps to prevent any improper use of the funds in the BNYM account and to return the funds to Ukraine to be used for proper purposes under the DGF Law.  *Id.* ¶ 9.

On March 3, 2022, Ukrainian President Zelensky signed a law requiring that any Russian assets seized in connection with Ukraine's nationalization effort be "transferred to the State Budget of Ukraine and directed to the fund for the elimination of the consequences of armed aggression" by the Russian Federation against Ukraine.  *Id.* ¶ 6.

On May 11, 2022, the National Security and Defense Council of Ukraine issued a decision entitled "On Enforcement of Russian Federation Property Rights and Residents in Ukraine"  (the "May 11 Decision") compelling the seizure of certain "objects of property of the Russian Federation and its residents," including VEB's 99.77% ownership interest in Prominvestbank.  The May 11 Decision was enacted by the Decree of the President of Ukraine dated May 11, 2022 (No. 326/2022).  It tasked "[t]he Cabinet of Ministers of Ukraine, the [DGF] with the participation of the National Bank of Ukraine to ensure the enforcement seizure of the property rights specified in this decision of the Russian Federation and its residents within ten days from the date of publication of the Decree of the President of Ukraine on the implementation of this decision."  *Id.* ¶ 10.

Although the seizure of assets was supposed to be effectuated within ten days of the May 11 Decision, due to administrative and/or logistical issues with respect to establishing the

necessary account to effectuate the transfer of confiscated assets, the transfer of assets did not take place at that time.  Instead, on September 13, 2022, the Cabinet of Ministers of Ukraine issued Order No. 815-r directing the seizure of the stock of Prominvestbank by means of transferring VEB's 99.77% ownership interest to the National Investment Fund of Ukraine, a Ukrainian state enterprise (the "September 13 Order").  The September 13 Order instructs how Prominvestbank's assets are to be used by the Ukrainian government.  For example, amongst other things, the September 13 Order provided that the National Bank take all necessary actions to credit securities and domestic government bonds forcibly seized and withdrawn pursuant to the May 11 Decision to the relevant accounts of the Ministry of Finance.  *Id.* ¶ 11.

Thus, as of the date Judgment Creditors applied for the Writ of Execution (September 20, 2022), VEB had no control over or access to the assets of Prominvestbank, and Ukraine law no longer recognized VEB as having any ownership interests in Prominvestbank.  Ukraine law instead recognized Prominvestbank as owned by the National Investment Fund of Ukraine as a result of Ukraine's lawful seizure of Russian assets, including those held by Prominvestbank, as part of a broader campaign of resistance to Russian aggression.  *Id.* ¶ 12.

A Statement of the Securities Account Status as of December 15, 2022 provides official confirmation from the Head of the Depository Department of the Treasury and Investment Services Department of Ukraine that the National Investment Fund of Ukraine owns 99.77% of the ownership interests of Prominvestbank.  *Id.* ¶ 13.  Likewise, an extract from the Unified State Register of Legal Entities, Individual Entrepreneurs and Public Organizations regarding Prominvestbank as of December 20, 2022 provides official confirmation from a Ukrainian government-operated registry of the ownership of Prominvestbank.  It states: "There is  no ultimate beneficial owner" of Prominvestbank, and that "[t]he reason for the absence is that 99.7726 percent

of the shares of [Prominvestbank] belong to the State of Ukraine in the form of the State Enterprise 'National Investment Fund of Ukraine' and there are no other natural persons who meet the status of the Ultimate Beneficial Owner." *Id.* ¶ 14.

## ARGUMENT

## I.   INTERVENTION UNDER RULE 24 IS WARRANTED

### A.   Intervention as of Right Is Warranted

"The Second Circuit has held that: Rule 24(a), intervention of right, requires that the proposed intervenor (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 97 (N.D.N.Y. 2005) (quotations omitted). "A district court of the United States is vested with broad discretion to decide both the timeliness of a motion for intervention, and the overall motion itself, whether it be a motion for intervention as of right, or a motion for permissive intervention." *Id.* at 98.

#### i.   *DGF's Motion is Timely*

The determination of timeliness is "within the discretion of the district court" and is evaluated based on the "totality of the circumstances," including: "(1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.* at 98 (quotations omitted).

DGF was not named as a defendant in the Northern District of Texas proceeding or in the instant proceeding, and is not alleged to have any connection to the underlying facts giving rise to the Default Judgment. Judgment Creditors sought to execute against the assets of Prominvestbank by filing an emergency *ex parte* motion, with filings under seal. DGF received notice of the

proceedings for the first time on November 15 – eight weeks after the application for writ of execution was filed and nearly two weeks after the writ was issued – when BNYM emailed the Writ of Execution and the underlying pleadings to DGF.  Judgment Creditors acknowledge they have not effectuated service on Prominvestbank.  The undersigned was retained on December 21, 2022, and provided notice to all counsel of record the next day of DGF's intent to move by order to show cause to intervene and vacate the Writ of Execution.  *See* p. 7, *supra*.

Judgment Creditors will not be prejudiced if DGF's motion to intervene is granted.  The assets that Judgment Creditors seek are currently blocked, so there is no risk that the assets will be dissipated while DGF is permitted to intervene.  Judgment Creditors cannot argue that they will be prejudiced by intervention because intervention does not affect the underlying Default Judgment.  In contrast, DGF and Prominvestbank will be severely prejudiced if DGF is not permitted to intervene in this action.  This Court entered an *ex parte* order that Prominvestbank is an agency or instrumentality of the Taliban.  Intervention will provide DGF an opportunity to be heard on its objections to the Writ of Execution and November 2 Order.

ii.    *DGF Has an Interest In This Litigation*

Intervention requires "direct, substantial, and legally protectable" interest in the litigation. *See Medequa LLC v. O'Neill & Partners LLC*, No. 21 CIV. 6135, 2022 WL 3364294, at *3 (S.D.N.Y. July 26, 2022).  Prominvestbank's assets are subject to liquidation, and this enforcement proceeding against its assets will therefore directly impair or impede DGF's ability to carry out its obligations as the designated liquidator of Prominvestbank in accordance with Ukraine law.  *See* pp. 8-9, *supra* (describing DGF's interest in Prominvestbank's assets by virtue of its legal obligations as liquidator under the DGF Law).  Courts have routinely allowed liquidators to intervene in cases affecting assets subject to liquidation.  *See In re Reliance Grp. Holdings, Inc. Sec. Litig.,* No. 00-CV-4653, 2004 WL 601973, at *1 (S.D.N.Y. Feb. 24, 2004) (permitting

intervention by liquidator of insurance company to challenge the ownership of certain insurance policies and proceeds at issue); *Zurich Capital Mkts., Inc. v. Coglianese*, 236 F.R.D. 379, 385-86 (N.D. Ill. 2006) (holding that liquidator of a Bahamian company could intervene as of right in action that threatened assets of the company it was liquidating). *See also United States v. All Assets Held at Bank Julius Baer & Co.,* 959 F. Supp. 2d 81, 112-13 (D.D.C. 2013) (finding that liquidator of Antiguan bank had standing to oppose forfeiture proceedings against assets held by the bank prior to the liquidation because a bank liquidator "stands in the shoes of the bank it represents and enjoys precisely the same rights and interests.")

DGF, acting on behalf of Promivnestbank, is entitled to assert all jurisdictional defenses to Judgment Creditors' TRIA enforcement action against Prominvestbank and its assets. *See, e.g., Pescatore v. Palmera Pineda*, No. CV 08-2245, 2019 WL 2173835, at *3-4 (D.D.C. May 20, 2019). Moreover, due process requires that DGF be provided an opportunity to challenge the Court's finding that Prominvestbank is an agency or instrumentality of the Taliban. *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-MC-40-LJV, 2022 WL 2439386 (W.D.N.Y. June 7, 2022) ("even when assets are already blocked attachment and execution is a drastic result[] and undeniably implicates due process concerns.") (internal quotations omitted).

### iii. *DGF's Interest Is Not Adequately Protected By Parties to this Action*

The burden to demonstrate inadequacy of representation is "minimal." *Hoblock*, 233 F.R.D. at 99. A proposed intervenor may rebut the presumption of adequate representation by demonstrating that it has a legal argument that "could not be equally asserted" by the existing parties. *Schwartz v. Town of Huntington Zoning Bd of Appeals,* 191 F.R.D. 357, 359 (E.D.N.Y. 2000).

DGF is uniquely situated as the liquidator of Prominvestbank to object to the Writ of Execution. No existing party has the same interest in Prominvestbank's assets as DGF. DGF's

legal arguments – including that Prominvestbank was not an agency or instrumentality of the Taliban at the time Judgment Creditors applied for the Writ of Execution, and that its assets are now held by the National Investment Fund of Ukraine which is entitled to sovereign immunity – could not equally be asserted by any existing party.  Indeed, in its November 14, 2022 response to the Writ of Execution, BNYM acknowledged that Prominvestbank is entitled to present its arguments, including as to "whether the Blocked Account is subject to execution under TRIA," before the Blocked Account could be turned over to Judgment Creditors.  ECF No. 26 ¶ 5.

B.    Permissive Intervention Is Warranted

"For Permissive Intervention under Rule 24(b), the standard is somewhat different. When considering a motion for permissive intervention, a court must examine whether intervention will prejudice the parties to the action or cause [undue] delay." *Hoblock*, 233 F.R.D. at 98 (quotations omitted). "The district court's discretion under the permissive intervention rule is very broad." *Id.* (quotations omitted).  Given that Judgment Creditors waited years to commence this action after receiving the Default Judgment, and that they have now sought an extension of the Writ of Execution, granting DGF's motion for intervention will not cause any undue delay.  Allowing DGF to intervene and introduce factual and legal arguments in favor of vacatur of the Writ of Execution that no existing parties have standing to raise will permit a more robust and properly-developed presentation of the issues at stake, including significant policy considerations.

II.    **THE COURT LACKED SUBJECT MATTER JURISDICTION TO ISSUE THE WRIT OF EXECUTION**

In its November 2 Order, the Court found that it had "subject matter jurisdiction to conduct post-judgment execution proceedings of Judgment Creditors' final judgment under a federal statute (ATA), rendered by a U.S. district court and properly registered in this district pursuant to

28 U.S.C. § 1963, with post-judgment execution under the ATA and TRIA § 201." The Court erred in concluding that it had subject matter jurisdiction.

A.    The Court Erred In Finding Subject Matter Jurisdiction Under the ATA

To the extent the court found subject matter jurisdiction over this enforcement proceeding under the ATA, it erred because the ATA does not provide ancillary jurisdiction over an enforcement action against a third party that had no involvement in the underlying proceeding. In *Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642 (S.D.N.Y. 2007), plaintiffs obtained a judgment against the Palestinian Authority and Palestine Liberation Organization under the ATA and obtained a judgment, which they then sought to enforce against non-parties to the underlying proceeding, including Orascom. The court granted Orascom's motion to dismiss for lack of subject matter jurisdiction, stating that it was "persuaded that this action does in fact seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories different from those underlying the judgment, and it is not an attempt simply to collect a judgment duly rendered by a federal court, even if chasing after the assets of the judgment debtor in the hands of a third party." *Id.* at 648-49 (quotations omitted). Accordingly, the court found that "an independent basis for jurisdiction is required." *Id.* at 647. *See also id* at 645 ("the Supreme Court noted that it has 'never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.'") (quoting *Peacock v. Thomas*, 516 U.S. 349, 357 (1996)). So too here, the Court may not exercise ancillary jurisdiction based on the Northern District of Texas proceeding, in which Prominvestbank had absolutely no involvement.

B.    The Court Erred In Finding Subject Matter Jurisdiction Under TRIA

i.    *TRIA Does Not Provide Subject Matter Jurisdiction Unless There Is a Valid Underlying Judgment Against the Sovereign*

TRIA does not create broad subject matter jurisdiction.   On the contrary, courts have recognized that it provides subject matter jurisdiction "[i]n certain limited circumstances . . . where there was a valid underlying judgment against the sovereign."   *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MD01570GBDSN, 2022 WL 4643442, at *8 (S.D.N.Y. Aug. 26, 2022).   It is well-established that TRIA "'provides for federal court jurisdiction over execution and attachment proceedings involving the assets of a foreign sovereign . . . *only* where a valid judgment has been entered against the sovereign.'"  *Id.* at *13 (quoting *Vera v. Republic of Cuba*, 867 F.3d 310, 321 (2d Cir. 2017) (quotations omitted).   In *In re Terrorist Attacks*, September 11 victims obtained a judgment against the Taliban and sought to enforce it against assets of the central bank of Afghanistan ("DAB") held at the Federal Reserve Bank of New York, but the court found there was "no jurisdiction over DAB or, by extension, these turnover motions" because there was no valid judgment against the underlying sovereign, Afghanistan. *Id.* at *14.

Just as in *In re Terrorist Attacks*, the underlying judgment here is against non-state actors, not a sovereign or agency or instrumentality of a sovereign.   Judgment Creditors seek to enforce the Default Judgment by executing against the assets of Prominvestbank, which they claim are used and controlled by Russia (a foreign sovereign) to provide financial support to the Taliban. Thus, for the same reason the court found that it lacked subject matter jurisdiction over the Afghan central bank in *In re Terrorist Attacks* because the underlying judgment was only against non-state actors, the Court here lacks subject matter jurisdiction over Prominvestbank.

      ii.    *The U.S. Government Has Submitted Statements of Interests In Substantially Similar Cases to Assert Its Position That the Application of TRIA Would "Frustrate the Important National Security and Foreign Policy Prerogatives of the Executive"*

Judgment Creditors cite one decision for the proposition that "Section 201(a) of the TRIA confers an independent basis for subject matter jurisdiction over post-judgment execution and

attachment proceedings against property held in the hands of an agency or instrumentality of the terrorist party, even if the agency or instrumentality is not itself named in the judgment." Doc. No. 4-2 at 5 (citing *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 132 (2d Cir. 2016)). In that case, unlike here, the plaintiffs obtained a judgment against the underlying sovereign (the Islamic Republic of Iran). Indeed, in almost all cases involving TRIA, the judgment creditors obtained judgments against designated state sponsors of terrorism under §§ 1605(a)(7) (prior version) or 1605A before invoking TRIA to satisfy their judgments against blocked assets of an agency or instrumentality of the designated foreign state. *See, e.g., Estate of Heiser,* 885 F. Supp. 2d 429, 449-50 (D.D.C. 2012), *aff'd sub nom*, *Heiser v. Islamic Republic of Iran*, 735 F.3d 934 (D.C. Cir. 2013) (awarding turnover of blocked assets of agency of Iran under TRIA where plaintiffs had obtained a default judgment against Iran pursuant to § 1605A); *Bennett v. Franklin Res., Inc.,* 360 F. Supp. 3d 972, 982-83 (N.D. Cal. 2018), *aff'd sub nom*, *Bennet v. Islamic Republic of Iran*, 778 F. App'x 541 (9th Cir. 2019) (same); *Weininger v. Castro,* 462 F. Supp. 2d 457, 463 (S.D.N.Y. 2006) (same, where judgment was against Cuba pursuant to § 1605(a)(7)). These cases are inapposite.

In contrast, in a few unique cases where judgment creditors have sought to enforce a judgment obtained against non-state terrorist actors by executing against the assets of a foreign state or its agency or instrumentality – where the foreign state has not been designated a state sponsor of terrorism – the U.S. government has filed statements of interest to oppose the application of TRIA against those assets. In *In re Terrorist Attacks*, the United States filed a statement of interest stating as follows:

> Permitting a foreign state's assets to be attached indirectly to satisfy the judgment against a non-state terrorist organization would supplant the discretion that Congress afforded to the Executive Branch in designating state sponsors of terrorism.

17

Statement of Interest of the United States, *In re Terrorist Attacks on Sept. 11, 2001*, No. 1:03-md-1570, Dkt. 7661 at 27 n.9 (S.D.N.Y. Feb. 11, 2022)).  On August 26, 2022, the Magistrate Judge issued a Report and Recommendation rejecting the Judgment Creditors' efforts to enforce their judgments against non-state actors by executing on the assets of a state instrumentality.  *In re Terrorist Attacks*, 2022 WL 4643442.

Similarly, in *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-MC-00040-LJV, (W.D.N.Y. Sept. 10, 2020), plaintiffs sought to enforce a judgment entered against a non-state terrorist organization (FARC) against the blocked assets of PDVSA (Venezuela's state owned oil company) which plaintiffs alleged materially supported FARC.  The United States asserted the same position in that case as it did in *In re Terrorist Attacks*, highlighting the foreign policy and national security considerations underlying its position as follows:

- Designating a foreign state as a state sponsor of terrorism carries serious consequences and occurs only after national security, foreign policy, and intelligence professionals carefully review all available information to determine whether a country meets the criteria that the Congress established. In contrast, plaintiff's interpretation of TRIA could strip any foreign government of immunity from judicial process in the United States based solely upon allegations by private litigants that a foreign government or its agency or instrumentality acted as an agent of a private terrorist party subject to a terrorism-related judgment. This would place consequential decisions concerning whether foreign governments support terrorism in the hands of private litigants and courts, to be made postjudgment, based upon incomplete information or upon a mere showing of broad connections between a foreign government and terrorist groups.

- [Plaintiff's] interpretation would upset longstanding international principles regarding sovereign immunity, putting in place rules that, if applied globally, could have serious implications for U.S. national interests. The United States has a larger international presence, by far, than any other country, and sovereign immunity principles protect our Nation and its Armed Forces, officials, and assistance professionals from foreign court proceedings. These principles also protect U.S. Government assets from attempted seizure by private litigants abroad. Removing sovereign immunity in U.S. courts for foreign governments that are not designated as state sponsors of terrorism, based solely on allegations of that foreign government's support for a terrorist group, threatens to undermine these longstanding principles that protect the United States, our forces, and our personnel.

- Under the plaintiff's theory, however, litigants could collect foreign state assets under TRIA provisions that (as relevant here) were intended to be limited to the blocked assets of designated state sponsors of terrorism (or their agencies and instrumentalities). This would greatly expand the pool of available assets, and thus reduce the leverage of sanctions in contexts not involving a state sponsor of terrorism. This would frustrate the important national security and foreign policy prerogatives of the Executive, including its leverage in applying such sanctions. . . .   In light of this important background principle, TRIA § 201 should not be interpreted to create subject-matter jurisdiction absent a clear indication of Congressional intent, which is not present here.

Statement of Interest of the United States of America, *Caballero v. Fuerzas Armadas Revolucionarieas de Colombia, et al.*, Dkt. 125 at 20-23, (W.D.N.Y. Sept. 20, 2022).[3]

Consistent with the U.S. government's position in these cases, the legislative history demonstrates that TRIA was enacted specifically to allow victims of terrorism to enforce judgments *against state sponsors of terrorism*, and to ensure that those states could not avail themselves of sovereign immunity under those circumstances.  The final enacted text of TRIA was drafted by Senator Harkin and added to the bill as an amendment. *See* 148 Cong. Rec. 10352 (2002). That text was adopted wholesale from Senator Harkin's bill, which he explained "only applie[d] to 'terrorist states.'" 148 Cong. Rec. 4629 (2002) (statement of Sen. Harkin); *see* S. 2134, 107th Cong. (Apr. 16, 2002) ("To allow American victims of state sponsored terrorism to receive compensation from blocked assets of those states."). In his floor speech urging final passage of TRIA, Senator Harkin further explained that TRIA "expressly addresses" and thereby resolves the then-existing

dispute over the availability of "agency and instrumentality" assets to satisfy judgments against a terrorist state itself. Let there be no doubt on this point. [TRIA] operates to strip a terrorist state of its immunity from execution or attachment in aid of execution by making the blocked assets of that terrorist state, including the blocked assets of any of its agencies

---

[3] Furthermore, as discussed *infra*, the blocked assets currently belong to the government of Ukraine, a United States ally facing sustained Russian aggression, which has required significant support from the United States and its allies.  For this additional reason, the Writ of Execution may implicate United States security interests and foreign policy.

or instrumentalities, available for attachment and/or execution of a judgment issued against that terrorist state.

148 Cong. Rec. 23122 (2002).

Here, Judgment Creditors seek to satisfy a judgment they obtained against non-state terrorist actors with assets they contend are being used and controlled by a sovereign, Russia (which is not a designated sponsor of terrorism), to support terrorist activity.[4]  A finding of subject matter jurisdiction on these facts would be contrary to the ruling in *In re Terrorist Attacks*, the U.S. government's policy position, and the legislative intent behind TRIA.

## III.   TRIA DOES NOT APPLY BECAUSE PROMINVESTBANK WAS NATIONALIZED BY UKRAINE BEFORE JUDGMENT CREDITORS APPLIED FOR A WRIT OF EXECUTION

The writ of execution should also be vacated because it is based on a demonstrably false finding that "Prominvestbank is an agency or instrumentality of the Taliban."  November 2 Order. *Kirschenbaum v. 650 Fifth Ave.*, 257 F. Supp. 3d 463, 515 (S.D.N.Y. 2017), *vacated and remanded sub nom on unrelated grounds sub nom*, *In re 650 Fifth Ave & Related Properties*, 934 F.3d 147 (2d Cir. 2019), and *rev'd and remanded sub nom*, *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174 (2d. Cir. 2019) ("to attach the Subject Properties under TRIA, plaintiffs must show (1) that defendants'

---

[4] Judgment Creditors assert that Prominvestbank is not an agency or instrumentality of Russia because it is indirectly owned by Russia through VEB, and thus "enjoys no sovereign immunity." Doc. No. 4-2 at 16.  This is beside the point.  Judgment Creditors' theory of Prominvestbank's liability is based on *Russia's* conduct and assets allegedly controlled *by Russia*.  Moreover, Judgment Creditors' submission leaves open the possibility that Prominvestbank's assets are in fact Russian-owned assets that are being held by Prominvestbank.  As set forth above, the case law is clear that TRIA only establishes subject matter jurisdiction over an enforcement action "**involving the assets of a foreign sovereign** . . . where a valid judgment has been entered against the sovereign.'" *In re Terrorist Attack* at *13 (emphasis added).  Whether or not Prominvestbank is an agency or instrumentality of Russia, the Court lacks subject matter jurisdiction here because there was no judgment against Russia in the underlying proceeding.

properties are 'blocked assets,' and (2) that defendants are a 'terrorist party' . . . or an 'agency or instrumentality of that terrorist party.'").

"The Issue under TRIA arises as of the time a proceeding is commenced to attach property in aid of execution on that judgment. The question of whether the property is an instrumentality of Iran at that time is the relevant issue." *Kirschenbaum*, 257 F. Supp. 3d at 518 n.60. In *Harrison v. Republic of Sudan,* petitioners obtained a judgment against the Republic of Sudan which provided assistance to al-Qaeda in connection with a terrorist attack and then sought to enforce the judgment against El Nilein Industrial Development Bank as an agency or instrumentality of Sudan. No. 13-CV-3127, 2017 WL 946422, at*1 (S.D.N.Y. Feb. 10, 2017). The court found that while the evidence before it demonstrated that El Nilein was at one point operated under the control of the government of Sudan, the evidence also showed that El Nilein was partially privatized when a private bank acquired a 60% interest, leaving the Sudanese government with a 40% interest. *Id.* at *1-2. Because the partial privatization occurred "before this action commenced . . . . no reasonable factfinder could find that El Nilein qualified as an agency or instrumentality of Sudan under either the FSIA or the TRIA at the time the complaint was filed." *Id.* at *5. The court was clear that the relevant time for assessing whether an entity is an agency or instrumentality is as of the time "this action" – meaning, the enforcement proceeding against the alleged agency or instrumentality – is commenced, and the fact that El Nilein was not an agency or instrumentality of Sudan at that juncture was "dispositive." *Id.* at *6.[5]

---

[5] The relevant timing for determining agency or instrumentality status under FSIA is the same as under TRIA. *See Levin v. 650 Fifth Ave. Co.*, No. 17 CIV. 959, 2022 WL 3701156, at *1, *4 (S.D.N.Y. Aug. 26, 2022) ("an entity's agency or instrumentality status under the FSIA 'is determined at the time of the filing of the complaint'" and defining "Complaint as "Dkt no. 1" in the instant action); *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19CV00007CBATAM, 2021 WL 3706909, at *8 (E.D.N.Y. Aug. 6, 2021) (same).

This Court found that "Prominvestbank is an agency or instrumentality of the Taliban" based on Judgment Creditors' assertion that Prominvestbank is a subsidiary of VEB, which is owned by Russia, and that Russia "uses VEB and its subsidiaries, including Prominvestbank" to provide "material support to the Taliban in Afghanistan." ECF No. 16 ¶ 3. Thus, the key inquiry is whether Prominvestbank was owned by VEB (and thus indirectly by Russia) as of September 20, 2022, the date Judgment Creditors commenced this action and applied for the writ of execution.

As set forth above, it was reported in May 2022 that the Ukrainian government nationalized Prominvestbank. As of the date the Judgment Creditors applied for a Writ of Execution (September 20, 2022), VEB had no control over or access to the assets of Prominvestbank, and Ukraine law no longer recognized VEB as having any ownership interests in Prominvestbank. Ukraine law instead recognized Prominvestbank as owned by the National Investment Fund of Ukraine as a result of Ukraine's lawful seizure of Russian assets, including those held by Prominvestbank, as part of a broader campaign of resistance to Russian aggression. Official government records reflect that VEB's 99.77% ownership interest in Prominvestbank is currently owned by the National Investment Fund of Ukraine. *See* pp. 10-11, *supra*.

Based on the foregoing, the Court's conclusion that Prominvestbank could be reached under TRIA as an "agency or instrumentality" of the Taliban was unsupported, and the judgment should therefore be vacated.

## IV.   PROMINVESTBANK ENJOYS SOVEREIGN IMMUNITY

As set forth above, prior to Judgment Creditors' application for a Writ of Execution, Prominvestbank had been nationalized and its assets were Ukrainian assets to be used in connection with Ukraine's campaign of resistance to Russian aggression. Accordingly, Judgment Creditors are not seeking to enforce against assets that are under the control of VEB and Russia, as they argued in their application for the Writ of Execution. Rather, Judgment Creditors are

seeking to enforce against *Ukrainian assets* held by the National Investment Fund of Ukraine, which is a state enterprise.  The FSIA defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)," which in turn includes "any entity . . . which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603.  *See also Garb v. Republic of Poland*, 440 F.3d 579, 594 (2d Cir. 2006) (agreeing with the district court's conclusion that "[t]he Ministry of the Treasury would appear to be an integral part of Poland's political structure, and its core function— to hold and administer the property of the Polish state—is indisputably governmental," and its finding that the Ministry of Treasury should be treated as the state of Poland itself).   Whether the National Investment Fund of Ukraine is treated as the state of Ukraine itself or as an agency or instrumentality, it plainly falls within the meaning of "foreign state" and is therefore "immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter," and its property is likewise "immune from attachment arrest and execution as provided in sections 1610 and 1611 of this chapter."  28 U.S.C. §§ 1604, 1609.

## CONCLUSION

For the foregoing reasons, DGF requests that the Court grant its motion to intervene and vacate the Writ of Execution.

Dated: December 30, 2022

Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Ryan M. Philp*
Dennis H. Tracey, III (*application for admission PHV pending*)
Ryan M. Philp (Bar Roll No.: 516442)
Alan M. Mendelsohn (*application for admission PHV pending*)
Jonathan P. Wieder (*application for admission PHV pending*)
390 Madison Avenue
New York, NY 10017
T: 212-918-3000
F: 212-918-3100
dennis.tracey@hoganlovells.com
ryan.philp@hoganlovells.com
alan.mendelsohn@hoganlovells.com
jonathan.wieder@hoganlovells.com