# **<u>EXHIBIT 4</u>**



# *ЗАКОН УКРАЇНИ*

## Про систему гарантування вкладів фізичних осіб

**(Відомості Верховної Ради України (ВВР), 2012, № 50, ст.564)**

{Із змінами, внесеними згідно із Законами
№ 5411-VI від 02.10.2012, ВВР, 2013, № 42, ст.587
№ 245-VII від 16.05.2013, ВВР, 2014, № 12, ст.178
№ 1197-VII від 10.04.2014, ВВР, 2014, № 24, ст.883
№ 1586-VII від 04.07.2014, ВВР, 2014, № 33, ст.1162
№ 78-VIII від 28.12.2014, ВВР, 2015, № 6, ст.41
№ 218-VIII від 02.03.2015, ВВР, 2015, № 17, ст.122
№ 629-VIII від 16.07.2015, ВВР, 2015, № 43, ст.386
№ 835-VIII від 26.11.2015, ВВР, 2016, № 2, ст.17
№ 1414-VIII від 14.06.2016, ВВР, 2016, № 32, ст.555
№ 1736-VIII від 15.11.2016, ВВР, 2016, № 48, ст.816
№ 2210-VIII від 16.11.2017, ВВР, 2018, № 6-7, ст.38
№ 2277-VIII від 06.02.2018, ВВР, 2018, № 11, ст.58
№ 2491-VIII від 05.07.2018, ВВР, 2018, № 46, ст.369
Кодексом
№ 2597-VIII від 18.10.2018, ВВР, 2019, № 19, ст.74
Законами
№ 132-IX від 20.09.2019, ВВР, 2019, № 46, ст.299
№ 361-IX від 06.12.2019, ВВР, 2020, № 25, ст.171
№ 590-IX від 13.05.2020, ВВР, 2020, № 40, ст.314
№ 720-IX від 17.06.2020, ВВР, 2020, № 47, ст.408
№ 738-IX від 19.06.2020
№ 1382-IX від 13.04.2021, ВВР, 2021, № 27, ст.225
№ 1587-IX від 30.06.2021
№ 1588-IX від 30.06.2021, ВВР, 2021, № 37, ст. 316
№ 2180-IX від 01.04.2022
№ 2463-IX від 27.07.2022
№ 2643-IX від 06.10.2022}

## Розділ I
## ЗАГАЛЬНІ ПОЛОЖЕННЯ

**Стаття 1.** Предмет та мета Закону

1. Цим Законом встановлюються правові, фінансові та організаційні засади функціонування системи гарантування вкладів фізичних осіб, повноваження Фонду гарантування вкладів фізичних осіб (далі - Фонд), порядок виплати Фондом відшкодування за вкладами, а також регулюються відносини між Фондом, банками, Національним банком України, визначаються повноваження та функції Фонду щодо виведення неплатоспроможних банків з ринку і ліквідації банків.

2. Метою цього Закону є захист прав і законних інтересів вкладників банків, зміцнення довіри до банківської системи України, стимулювання залучення коштів у банківську систему України, забезпечення ефективної процедури виведення неплатоспроможних банків з ринку та ліквідації банків.

3. Відносини, що виникають у зв'язку із створенням і функціонуванням системи гарантування вкладів фізичних осіб, виведенням неплатоспроможних банків з ринку та ліквідації банків, регулюються цим Законом, іншими законами України, нормативно-правовими актами Фонду та Національного банку України.

4. Відносини, що виникають у зв'язку із виведенням неплатоспроможних банків, які мають зобов'язання, що випливають з правочинів щодо фінансових інструментів та валютних цінностей, або є стороною одного чи кількох деривативних контрактів, з ринку та ліквідацією таких банків, регулюються цим Законом з урахуванням особливостей, передбачених законодавством про ринки капіталу та організовані товарні ринки.

*{Статтю 1 доповнено частиною четвертою згідно із Законом № 738-IX від 19.06.2020}*

5. У разі якщо банк є емітентом облігацій або особою, яка надає забезпечення за облігаціями (далі - банк, який має зобов'язання за облігаціями), і за облігаціями відповідного випуску призначено адміністратора, відносини щодо ліквідації такого банку регулюються цим Законом з урахуванням особливостей, передбачених **Законом України** "Про ринки капіталу та організовані товарні ринки".

*{Статтю 1 доповнено частиною п'ятою згідно із Законом № 738-IX від 19.06.2020}*

**Стаття 2.** Визначення термінів

1. У цьому Законі нижченаведені терміни вживаються в такому значенні:

1) банк-агент - банк, через який Фонд здійснює виплату гарантованої суми відшкодування за вкладами відповідно до цього Закону;

2) виведення неплатоспроможного банку з ринку - заходи, які здійснює Фонд стосовно банку, віднесеного до категорії неплатоспроможних, щодо виведення його з ринку одним із способів, визначених **статтею 39** цього Закону;

*{Пункт 2 частини першої статті 2 в редакції Закону № 1586-VII від 04.07.2014}*

2¹) відкриті торги - спосіб продажу майна (активів), за якого переможцем (покупцем) стає учасник, що відповідає конкурсним умовам, запропонував за майно (активи) найвищу ціну та взяв на себе виконання конкурсних зобов'язань, а для об'єктів цивільних прав, обмежених в обороті, - також може мати зазначене майно у власності чи на підставі іншого речового права та має відповідні ліцензії і дозволи.

*{Частину першу статті 2 доповнено пунктом 2¹ згідно із Законом № 629-VIII від 16.07.2015}*

2²) відкоригований капітал - сума перевищення балансової вартості активів, зменшених на суму вартості нематеріальних активів, над балансовою сумою зобов'язань без врахування сформованих резервів під очікувані витрати, пов'язані з відшкодуванням коштів вкладникам внаслідок неплатоспроможності банків;

*{Частину першу статті 2 доповнено пунктом 2² згідно із Законом № 2180-IX від 01.04.2022}*

3) вклад - кошти в готівковій або безготівковій формі у валюті України або в іноземній валюті, які залучені банком від вкладника (або які надійшли для вкладника) на умовах договору банківського рахунку, банківського вкладу (депозиту) (крім коштів, залучених від видачі ощадного сертифіката банку), включаючи нараховані відсотки на такі кошти. Кошти, залучені банком від видачі (випуску) ощадного сертифіката банку або депозитного сертифіката банку, не є вкладом;

*{Пункт 3 частини першої статті 2 в редакції Законів № 1588-IX від 30.06.2021, № 2180-IX від 01.04.2022}*

4) вкладник - фізична особа (у тому числі фізична особа - підприємець), яка уклала або на користь якої укладено договір банківського рахунку, банківського вкладу (депозиту), крім фізичної особи (у тому числі фізичної особи - підприємця), яка є власником лише ощадного сертифіката банку;

*{Пункт 4 частини першої статті 2 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Законів № 1588-IX від 30.06.2021, № 2180-IX від 01.04.2022}*

5) інвестор - держава в особі Міністерства фінансів України або в особі банку, в якому держава є власником частки понад 75 відсотків акцій, - у разі прийняття рішення Кабінетом Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку або особа, яка виявила намір і надала Фонду письмове зобов'язання про придбання акцій неплатоспроможного банку або перехідного банку у процесі виведення неплатоспроможного банку з ринку;

*{Пункт 5 частини першої статті 2 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 590-IX від 13.05.2020}*

5¹) консолідація активів - заходи, спрямовані на збір, групування, аналіз, облік, підготовку та продаж активів різних банків, що виводяться з ринку або ліквідуються з інших підстав, визначених цим Законом;

*{Частину першу статті 2 доповнено пунктом 5¹ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

5²) консолідований продаж - відчуження майна (активів) різних банків, що виводяться з ринку або ліквідуються з інших підстав, визначених цим Законом, шляхом централізації (об'єднання) Фондом окремих процедур продажу;

*{Частину першу статті 2 доповнено пунктом 5² згідно із Законом № 629-VIII від 16.07.2015}*

5³) кошти, розміщені на вклад особою, яка на індивідуальній основі отримує від банку проценти за вкладом за договорами, укладеними на умовах, що не є поточними ринковими умовами, - кошти, розміщені фізичною особою на вклад:

що не відповідає умовам публічного договору;

за договором, укладеним на умовах, що не є поточними ринковими умовами відповідно до **статті 52** Закону України "Про банки і банківську діяльність", за рішенням окремих посадових осіб банку та/або органів управління банку, не наділених повноваженнями щодо встановлення таких умов;

*{Частину першу статті 2 доповнено пунктом 5³ згідно із Законом № 629-VIII від 16.07.2015}*

5⁴) кредитор - юридична або фізична особа, яка має документально підтверджені вимоги до банку щодо його майнових зобов'язань, а також адміністратор за випуском облігацій, який відповідно до **Закону України** "Про ринки капіталу та організовані товарні ринки" діє в інтересах власників облігацій, які мають документально підтверджені вимоги до банку щодо його майнових зобов'язань;

*{Частину першу статті 2 доповнено пунктом 5⁴ згідно із Законом № 629-VIII від 16.07.2015; із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

5⁵) крок аукціону - надбавка (дисконт), на яку в ході відкритих торгів здійснюється підвищення/зниження початкової (стартової) та кожної наступної ціни оголошеного до продажу лота;

*{Частину першу статті 2 доповнено пунктом 5⁵ згідно із Законом № 629-VIII від*

*16.07.2015}*

6) ліквідація банку - процедура припинення банку як юридичної особи відповідно до законодавства;

6¹) лот - одиниця активів банку (кількох банків), що виставляється для продажу на аукціоні;

*{Частину першу статті 2 доповнено пунктом 6¹ згідно із Законом № 629-VIII від 16.07.2015}*

*{Пункт 6² частини першої статті 2 виключено на підставі Закону № 590-IX від 13.05.2020}*

*{Пункт 7 частини першої статті 2 виключено на підставі Закону № 629-VIII від 16.07.2015}*

7¹) незалежна оцінка - оцінка вартості майна або акцій банку, що провадиться суб'єктом оціночної діяльності;

*{Частину першу статті 2 доповнено пунктом 7¹ згідно із Законом № 629-VIII від 16.07.2015}*

8) неплатоспроможний банк - банк, щодо якого Національний банк України прийняв рішення про віднесення до категорії неплатоспроможних у порядку, передбаченому **Законом України "Про банки і банківську діяльність"**;

8¹) об'єднання інвесторів - кілька юридичних та/або фізичних осіб, які виявили спільний намір, подали спільну конкурсну пропозицію і надали Фонду спільне письмове зобов'язання про придбання акцій одного і того самого неплатоспроможного банку або перехідного банку у процесі виведення неплатоспроможного банку з ринку;

*{Частину першу статті 2 доповнено пунктом 8¹ згідно із Законом № 629-VIII від 16.07.2015}*

8²) передпродажна підготовка - заходи з підготовки до продажу банку або майна банку (кількох банків), які здійснює Фонд стосовно банку або майна банку (кількох банків) для підвищення їх інвестиційної привабливості та вартості;

*{Частину першу статті 2 доповнено пунктом 8² згідно із Законом № 629-VIII від 16.07.2015}*

9) перехідний банк - банк, який створено у процесі підготовки до виведення/виведення неплатоспроможного банку з ринку, єдиним акціонером якого є Фонд до дня продажу цього банку інвестору (об'єднанню інвесторів);

*{Пункт 9 частини першої статті 2 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

10) план врегулювання - рішення Фонду, що визначає спосіб, економічне обгрунтування, строки та умови виведення неплатоспроможного банку з ринку;

11) приймаючий банк - банк, що не належить до категорії проблемного або неплатоспроможного, який бере участь у процесі виведення неплатоспроможного банку з ринку шляхом приймання від цього банку частини або всього майна (активів) та зобов'язань;

*{Пункт 11 частини першої статті 2 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015; в редакції Закону № 590-IX від 13.05.2020}*

12) проблемний банк - банк, щодо якого Національний банк України прийняв рішення про віднесення до категорії проблемних у порядку, передбаченому **Законом України "Про банки і банківську діяльність"** і нормативно-правовими актами Національного банку України;

13) продаж банку - продаж інвестору всіх або частини акцій, які йому не належать, перехідного банку або неплатоспроможного банку;

*{Пункт 13 частини першої статті 2 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014, в редакції Закону № 590-IX від 13.05.2020}*

14) реєстр учасників Фонду гарантування вкладів фізичних осіб (далі - реєстр учасників Фонду) - реєстр, який ведеться Фондом та містить відомості про участь банку в системі обов'язкового гарантування вкладів фізичних осіб;

15) система гарантування вкладів фізичних осіб - сукупність відносин, що регулюються цим Законом, суб'єктами яких є Фонд, Кабінет Міністрів України, Національний банк України, банки та вкладники;

*{Пункт 15¹ частини першої статті 2 виключено на підставі Закону № 1588-IX від 30.06.2021}*

15²) строк для досягнення цільового показника Фонду - строк, протягом якого розмір відкоригованого капіталу має досягти розміру, не меншого за розмір цільового фонду, з урахуванням встановленого значення цільового показника Фонду;

*{Частину першу статті 2 доповнено пунктом 15² згідно із Законом № 2180-IX від 01.04.2022}*

16) тимчасова адміністрація - процедура виведення банку з ринку, що запроваджується Фондом стосовно неплатоспроможного банку в порядку, встановленому цим Законом;

17) уповноважена особа Фонду - працівник Фонду, який від імені Фонду та в межах повноважень, передбачених цим Законом та/або делегованих Фондом, виконує дії із забезпечення виведення банку з ринку під час здійснення тимчасової адміністрації неплатоспроможного банку та/або ліквідації банку;

*{Пункт 17 частини першої статті 2 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

18) цільовий показник Фонду - необхідний рівень забезпеченості системи гарантування вкладів фізичних осіб для виконання Фондом своїх функцій та повноважень, достатній для покриття очікуваних майбутніх витрат Фонду з урахуванням можливості настання кризових явищ у майбутньому, по відношенню до суми гарантованих Фондом коштів вкладників банків-учасників у межах суми відшкодування на відповідний період;

*{Частину першу статті 2 доповнено пунктом 18 згідно із Законом № 2180-IX від 01.04.2022}*

19) цільовий фонд - необхідна сума відкоригованого капіталу на певну дату, визначена як добуток суми гарантованих Фондом коштів вкладників банків-учасників у межах суми відшкодування на певну дату та цільового показника;

*{Частину першу статті 2 доповнено пунктом 19 згідно із Законом № 2180-IX від 01.04.2022}*

2. Терміни **"адміністратор за випуском облігацій"** та **"особа, яка надає забезпечення"** у цьому Законі вживаються у значеннях, наведених у Законі України "Про ринки капіталу та організовані товарні ринки".

Терміни **"істотна участь"** та **"пов'язана з банком особа"** вживаються в значенні, визначеному Законом України "Про банки і банківську діяльність".

Термін **"кінцевий бенефіціарний власник"** вживається в значенні, визначеному Законом України "Про запобігання та протидію легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення".

*{Статтю 2 доповнено частиною другою згідно із Законом № 738-IX від 19.06.2020; в редакції Закону № 1588-IX від 30.06.2021}*

## Розділ II
## ПРАВОВИЙ СТАТУС ФОНДУ ТА ЙОГО КЕРІВНІ ОРГАНИ

**Стаття 3.** Правовий статус Фонду

1. Фонд є установою, що виконує спеціальні функції у сфері гарантування вкладів фізичних осіб та виведення неплатоспроможних банків з ринку і ліквідації банків у випадках, встановлених цим Законом.

*{Частина перша статті 3 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Фонд є юридичною особою публічного права, має відокремлене майно, яке є об'єктом права державної власності і перебуває у його господарському віданні. Фонд є суб'єктом управління майном, самостійно володіє, користується і розпоряджається належним майном, вчиняючи стосовно нього будь-які дії (у тому числі відчуження, передача на оренду, ліквідація), що не суперечать законодавству та меті діяльності Фонду.

*{Частина друга статті 3 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015}*

3. Фонд є економічно самостійною установою, має самостійний баланс, поточний та інші рахунки в Національному банку України, у тому числі рахунки умовного зберігання (ескроу), а також рахунки в цінних паперах у депозитарних установах - банках України.

*{Абзац перший частини третьої статті 3 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

Фонд є установою, що не має на меті отримання прибутку.

4. Фонд має печатки із зображенням Державного герба України із своїм найменуванням, веде облік і звітність відповідно до законодавства.

5. У своїй діяльності Фонд керується **Конституцією України** та законодавством України.

6. Місцезнаходження Фонду - місто Київ.

7. Органи державної влади та Національний банк України не мають права втручатися в діяльність Фонду щодо реалізації законодавчо закріплених за ним функцій і повноважень. Взаємодія Фонду з Національним банком України та органами державної влади здійснюється в межах, визначених цим Законом, іншими актами законодавства.

8. Керівними органами Фонду є адміністративна рада та виконавча дирекція.

9. Реорганізація та ліквідація Фонду здійснюються на підставі окремого закону. У разі реорганізації або ліквідації Фонду активи Фонду передаються одній або кільком неприбутковим організаціям, до повноважень яких належить гарантування вкладів фізичних осіб, або зараховуються до доходу державного бюджету у разі припинення Фонду як юридичної особи.

*{Частина дев'ята статті 3 із змінами, внесеними згідно із Законом № 2491-VIII від 05.07.2018}*

**Стаття 4.** Функції Фонду

1. Основним завданням Фонду є забезпечення функціонування системи гарантування вкладів фізичних осіб, виведення неплатоспроможних банків з ринку та здійснення ліквідації банків.

*{Частина перша статті 4 в редакції Закону № 1588-IX від 30.06.2021}*

2. На виконання свого основного завдання Фонд у порядку, передбаченому цим Законом, здійснює такі функції:

1) веде реєстр учасників Фонду;

2) акумулює кошти, отримані з джерел, визначених **статтею 19** цього Закону, здійснює контроль за повнотою і своєчасністю перерахування зборів кожним учасником Фонду;

3) інвестує кошти Фонду в державні цінні папери України та облігації міжнародних фінансових організацій, що розміщуються на території України;

*{Пункт 3 частини другої статті 4 із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

3¹) здійснює емісію корпоративних облігацій у порядку та за напрямами залучення коштів, визначеними цим Законом, і видачу векселів у випадках, передбачених законом про Державний бюджет України на відповідний рік;

*{Частину другу статті 4 доповнено пунктом 3¹ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015; із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

4) здійснює заходи щодо організації виплат відшкодувань за вкладами у строки, визначені цим Законом;

*{Пункт 4 частини другої статті 4 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

5) здійснює регулювання участі банків у системі гарантування вкладів фізичних осіб;

6) бере участь в інспекційних перевірках проблемних банків за пропозицією Національного банку України;

7) застосовує до банків та їх керівників відповідно фінансові санкції і накладає адміністративні штрафи;

8) здійснює заходи щодо:

підготовки до запровадження процедури виведення банку з ринку, у тому числі організаційні заходи щодо проведення відкритого конкурсу та визначення найменш витратного способу виведення банку з ринку;

проведення процедури виведення неплатоспроможного банку з ринку, у тому числі шляхом виконання плану врегулювання, здійснення тимчасової адміністрації та ліквідації банку;

*{Пункт 8 частини другої статті 4 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 590-IX від 13.05.2020}*

9) здійснює перевірки банків відповідно до цього Закону;

*{Пункт 9 частини другої статті 4 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

10) надає фінансову підтримку банку відповідно до цього Закону;

*{Пункт 10 частини другої статті 4 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

11) здійснює аналіз фінансового стану банків з метою виявлення ризиків у їхній діяльності та прогнозування потенційних витрат Фонду на виведення неплатоспроможних банків з ринку та відшкодування коштів вкладникам;

*{Пункт 11 частини другої статті 4 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

*{Пункт 12 частини другої статті 4 виключено на підставі Закону № 590-IX від 13.05.2020}*

12¹) звертається з відповідними запитами до клієнтів, вкладників та інших кредиторів банку в порядку, встановленому Фондом;

*{Частину другу статті 4 доповнено пунктом 12¹ згідно із Законом № 629-VIII від 16.07.2015}*

13) здійснює заходи щодо інформування громадськості про функціонування системи гарантування вкладів фізичних осіб, захисту прав та охоронюваних законом інтересів вкладників, підвищення рівня фінансової грамотності населення відповідно до цього Закону;

*{Частину другу статті 4 доповнено пунктом 13 згідно із Законом № 1586-VII від 04.07.2014}*

14) вивчає та аналізує тенденції розвитку ринку ресурсів, залучених від вкладників учасниками Фонду.

*{Частину другу статті 4 доповнено пунктом 14 згідно із Законом № 1586-VII від 04.07.2014}*

3. Фонд здійснює інші функції в межах своїх повноважень, визначених цим Законом, іншими актами законодавства.

**Стаття 5.** Підзвітність Фонду

1. Фонд підзвітний Верховній Раді України, Кабінету Міністрів України та Національному банку України.

*{Абзац перший частини першої статті 5 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Підзвітність Фонду означає:

1) делегування та відкликання Кабінетом Міністрів України свого представника в адміністративну раду Фонду;

2) делегування та відкликання Національним банком України своїх представників в адміністративну раду Фонду;

3) делегування та відкликання Верховною Радою України свого представника в адміністративну раду Фонду.

*{Частину першу статті 5 доповнено новим абзацом згідно із Законом № 629-VIII від 16.07.2015}*

Фонд до 1 липня наступного за звітним року подає Верховній Раді України, Кабінету Міністрів України і Національному банку України річний звіт разом з аудиторським висновком.

*{Абзац шостий частини першої статті 5 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 6. Нормативно-правові акти Фонду**

1. У межах своїх функцій та повноважень Фонд здійснює нормативне регулювання системи гарантування вкладів фізичних осіб та виведення неплатоспроможних банків з ринку.

2. Фонд приймає нормативно-правові акти з питань, віднесених до його повноважень, які є обов'язковими до виконання банками, юридичними та фізичними особами.

3. Фонд видає нормативно-правові акти у формі інструкцій, положень, правил.

4. Нормативно-правові акти Фонду, крім випадків, передбачених **абзацом другим** цієї частини, підлягають державній реєстрації в порядку, встановленому законодавством.

Нормативно-правові акти Фонду щодо особливостей функціонування системи гарантування вкладів фізичних осіб, виведення неплатоспроможних банків з ринку та здійснення ліквідації банків в умовах воєнного стану чи під час особливого періоду набирають чинності з дня їх офіційного опублікування, якщо більш пізній строк набрання чинності не передбачений таким актом. Офіційним опублікуванням такого нормативно-правового акта Фонду вважається перше опублікування його повного тексту в одному з періодичних друкованих видань - "Офіційному віснику України", газетах "Урядовий кур'єр", "Голос України" або перше розміщення на офіційному веб-сайті Фонду.

*{Частина четверта статті 6 в редакції Закону № 2463-IX від 27.07.2022}*

**Стаття 7. Звітність Фонду**

1. Щорічно Фонд складає річний звіт, який включає звіт про діяльність Фонду за звітний рік та фінансову звітність.

2. Достовірність фінансової звітності Фонду підтверджується незалежним аудитором, який визначається адміністративною радою Фонду.

3. Фінансова звітність Фонду оприлюднюється в газетах "Урядовий кур'єр" або "Голос України" не пізніше 1 липня наступного за звітним року.

*{Частина третя статті 7 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

4. Річний звіт оприлюднюється на офіційній сторінці Фонду в мережі Інтернет не пізніше 1 липня наступного за звітним року.

**Стаття 8. Склад та порядок формування адміністративної ради Фонду**

1. Адміністративна рада Фонду складається з п'яти осіб - один представник Кабінету Міністрів України, два представники Національного банку України, один представник профільного комітету Верховної Ради України та директор - розпорядник Фонду (за посадою).

2. Адміністративну раду Фонду очолює голова, який щорічно обирається адміністративною радою Фонду з числа її членів. Головою адміністративної ради Фонду не може бути обраний директор - розпорядник Фонду.

3. Членом адміністративної ради Фонду може бути особа, яка є громадянином України, постійно проживає в Україні, має повну вищу освіту в галузі економіки, фінансів чи права, стаж роботи за фахом не менше п'яти років, бездоганну ділову репутацію і має не погашених судимостей за вчинення корисливих кримінальних правопорушень. Член адміністративної ради Фонду не може бути керівником, учасником або пов'язаною особою банку.

*{Частина третя статті 8 із змінами, внесеними згідно із Законом № 720-IX від 17.06.2020}*

4. Строк повноважень члена адміністративної ради Фонду, крім директора - розпорядника Фонду, становить чотири роки і може бути продовжений, але не більше ніж на один строк.

5. У разі закінчення строку повноважень члена адміністративної ради Фонду відповідний орган чи організація, які його делегували, у місячний строк делегує до складу адміністративної ради Фонду нового представника або приймає рішення про продовження строку повноважень члена адміністративної ради Фонду.

6. Повноваження члена адміністративної ради Фонду можуть бути достроково припинені за поданням органу, який його делегував. Повноваження члена адміністративної ради Фонду також припиняються за ініціативою адміністративної ради Фонду у разі:

*{Абзац перший частини шостої статті 8 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012}*

1) подання заяви про припинення повноважень за власним бажанням;

2) неможливості виконання покладених на нього обов'язків, у тому числі за станом здоров'я;

3) припинення трудових відносин з органом, який його делегував;

4) набрання законної сили обвинувальним вироком суду щодо нього;

5) смерті або на підставі рішення суду про визнання його недієздатним, обмежено дієздатним, безвісно відсутнім чи оголошення померлим;

*{Пункт 5 частини шостої статті 8 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012}*

6) втрати громадянства України;

*{Частину шосту статті 8 доповнено пунктом 6 згідно із Законом № 5411-VI від 02.10.2012}*

7) відсутності без поважних причин на трьох і більше засіданнях адміністративної ради Фонду поспіль.

*{Частину шосту статті 8 доповнено пунктом 7 згідно із Законом № 5411-VI від 02.10.2012}*

7. Орган, який делегував члена адміністративної ради Фонду, повноваження якого достроково припинено відповідно до частини шостої цієї статті, зобов'язаний делегувати до складу адміністративної ради Фонду нового представника у місячний строк після дострокового припинення повноважень попереднього представника.

8. Повноваження директора - розпорядника Фонду як члена адміністративної ради Фонду припиняються у зв'язку із звільненням його з посади директора - розпорядника Фонду.

9. Члени адміністративної ради Фонду здійснюють свої функції на громадських засадах. Членам адміністративної ради Фонду відшкодовуються витрати, понесені у зв'язку з виконанням ними повноважень відповідно до цього Закону та регламенту адміністративної ради Фонду.

10. Питання організації діяльності адміністративної ради Фонду та порядок діловодства визначаються регламентом, який затверджується на її засіданні.

11. Розміщення та організаційно-матеріальне забезпечення адміністративної ради Фонду здійснюється Фондом за рахунок його кошторисних витрат.

**Стаття 9.** Повноваження адміністративної ради Фонду та голови адміністративної ради Фонду

1. Адміністративна рада Фонду здійснює такі повноваження:

1) затверджує регламент адміністративної ради Фонду;

2) затверджує кошторис витрат Фонду;

3) затверджує стратегію розвитку Фонду та річний план його діяльності;

4) затверджує засади інвестиційної політики Фонду та щорічний інвестиційний план Фонду;

5) призначає на посаду та звільняє з посади директора - розпорядника Фонду;

6) затверджує персональний склад виконавчої дирекції Фонду за поданням директора - розпорядника Фонду;

6¹) погоджує рішення виконавчої дирекції про емісію корпоративних облігацій або видачу векселів Фонду та напрями використання коштів, залучених від їх емісії (видачі);

*{Частину першу статті 9 доповнено пунктом 6¹ згідно із Законом № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 738-IX від 19.06.2020}*

6²) погоджує звіт виконавчої дирекції Фонду про обґрунтування вибору найменш витратного для Фонду способу виведення з ринку банку, що віднесений до категорії неплатоспроможних, та стан виконання плану врегулювання за попередній квартал до кінця першого місяця, що настає за звітним кварталом;

*{Частину першу статті 9 доповнено пунктом 6² згідно із Законом № 629-VIII від 16.07.2015}*

6³) погоджує звіт виконавчої дирекції Фонду про стан реалізації активів (майна) банків, щодо яких прийнято рішення про відкликання банківської ліцензії та ліквідацію за попередній квартал до кінця першого місяця, що настає за звітним кварталом;

*{Частину першу статті 9 доповнено пунктом 6³ згідно із Законом № 629-VIII від 16.07.2015}*

7) погоджує рішення виконавчої дирекції про участь Фонду в міжнародних організаціях у сфері гарантування (страхування) депозитів;

8) затверджує рішення виконавчої дирекції Фонду про встановлення спеціального збору до Фонду або диференційованих зборів до Фонду залежно від ризиків банків;

9) затверджує рішення виконавчої дирекції Фонду про залучення внеску держави на безповоротній основі;

*{Пункт 9 частини першої статті 9 в редакції Закону № 2180-IX від 01.04.2022}*

10) щорічно визначає аудитора для проведення аудиторської перевірки Фонду;

11) затверджує річний звіт Фонду;

12) приймає рішення про проведення позачергової аудиторської перевірки Фонду і визначає аудитора для її проведення;

13) затверджує положення про службу внутрішнього аудиту Фонду, погоджує призначення та звільнення керівника служби внутрішнього аудиту;

*{Пункт 13 частини першої статті 9 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

14) затверджує вимоги до розкриття інформації про діяльність Фонду;

15) затверджує порядок та умови оплати праці членів виконавчої дирекції Фонду;

16) затверджує перелік посад працівників Фонду, на які поширюються вимоги **частини другої статті** 16 цього Закону;

*{Пункт 16 частини першої статті 9 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

16$^1$) затверджує порядок відбору членів виконавчої дирекції Фонду та уповноважених осіб Фонду;

*{Частину першу статті 9 доповнено пунктом 16$^1$ згідно із Законом № 629-VIII від 16.07.2015}*

17) приймає рішення про:

збільшення граничного розміру відшкодування коштів за вкладами;

встановлення тимчасового граничного розміру відшкодування коштів за вкладами відповідно до **абзаців другого - четвертого** частини першої статті 26 цього Закону;

*{Пункт 17 частини першої статті 9 в редакції Законів № 5411-VI від 02.10.2012, № 2180-IX від 01.04.2022}*

18) затверджує рішення виконавчої дирекції Фонду про встановлення розміру базової річної ставки регулярного збору, більшого за встановлений **частиною першою** статті 22 цього Закону;

*{Частину першу статті 9 доповнено пунктом 18 згідно із Законом № 2180-IX від 01.04.2022}*

19) затверджує рішення виконавчої дирекції Фонду про встановлення значення цільового показника Фонду та строку для його досягнення з урахуванням рекомендацій Ради з фінансової стабільності.

*{Частину першу статті 9 доповнено пунктом 19 згідно із Законом № 2180-IX від 01.04.2022}*

2. Голова адміністративної ради Фонду здійснює такі повноваження:

1) організовує засідання адміністративної ради Фонду та головує на них;

2) підписує протоколи засідань адміністративної ради Фонду;

3) розподіляє обов'язки між членами адміністративної ради Фонду;

4) здійснює інші повноваження і функції відповідно до регламенту адміністративної ради Фонду.

**Стаття 10.** Порядок роботи адміністративної ради Фонду

1. Порядок роботи адміністративної ради Фонду визначається її регламентом.

2. Адміністративна рада Фонду проводить чергові засідання не рідше одного разу на квартал.

3. Адміністративна рада Фонду може проводити позачергові засідання за ініціативою її голови або на вимогу не менше ніж трьох її членів чи на вимогу виконавчої дирекції Фонду.

4. Рішення адміністративної ради Фонду приймаються на засіданнях простою більшістю голосів за умови участі в засіданні не менше ніж чотирьох її членів. У разі рівного розподілу голосів голос голови адміністративної ради є вирішальним.

5. Рішення адміністративної ради Фонду можуть прийматися шляхом опитування її членів відповідно до регламенту адміністративної ради Фонду.

6. У разі розгляду адміністративною радою Фонду питання призначення, звільнення з посади директора - розпорядника Фонду директор - розпорядник Фонду участі в голосуванні не бере.

**Стаття 11.** Виконавча дирекція Фонду

1. Виконавча дирекція Фонду здійснює управління поточною діяльністю Фонду.

2. Виконавча дирекція Фонду складається з семи членів. Директор - розпорядник Фонду та його заступники входять до складу виконавчої дирекції Фонду за посадою.

*{Частина друга статті 11 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

3. Членами виконавчої дирекції Фонду можуть бути громадяни України, які постійно проживають в Україні, мають повну вищу освіту в галузі економіки, фінансів чи права, стаж роботи за фахом не менше ніж п'ять років, бездоганну ділову репутацію, не мають непогашених судимостей за вчинення корисливих кримінальних правопорушень та працюють у Фонді на постійній основі. Член виконавчої дирекції Фонду не може бути керівником, учасником або пов'язаною особою банку чи будь-якої іншої юридичної особи, з якою Фонд або банк, що виводиться Фондом з ринку, має договірні відносини.

*{Частина третя статті 11 із змінами, внесеними згідно із Законами № 629-VIII від 16.07.2015, № 720-IX від 17.06.2020}*

4. Директор - розпорядник Фонду має заступників, які призначаються ним за погодженням з адміністративною радою Фонду. Кількість заступників директора - розпорядника Фонду визначається штатним розписом, але не може перевищувати чотири особи.

5. Рішення виконавчої дирекції Фонду приймаються на засіданнях простою більшістю голосів за умови участі в засіданні не менше ніж чотирьох членів виконавчої дирекції. У разі рівного розподілу голосів голос директора - розпорядника Фонду є вирішальним.

6. Порядок організації роботи та проведення засідань виконавчої дирекції Фонду визначається її регламентом.

**Стаття 12.** Повноваження виконавчої дирекції Фонду

1. Виконавча дирекція Фонду має такі повноваження у сфері забезпечення діяльності Фонду:

1) приймає рішення про виключення банку з числа учасників Фонду;

2) складає проект кошторису витрат Фонду та подає його на затвердження адміністративній раді Фонду;

3) подає на затвердження адміністративній раді Фонду річний звіт Фонду;

4) скликає позачергові засідання адміністративної ради Фонду;

5) щорічно подає на розгляд адміністративної ради Фонду пропозиції щодо визначення аудитора для проведення аудиторської перевірки Фонду;

6) визначає структуру Фонду, затверджує положення про його структурні підрозділи;

7) затверджує штатний розпис Фонду, умови та форми оплати праці працівників Фонду, крім членів виконавчої дирекції Фонду;

8) приймає рішення про участь Фонду у міжнародних організаціях у сфері гарантування (страхування) депозитів з подальшим погодженням цього рішення адміністративною радою Фонду;

9) приймає рішення про матеріально-технічне та кадрове забезпечення діяльності Фонду в межах кошторису витрат Фонду, затвердженого адміністративною радою Фонду;

$9^1$) приймає рішення про задоволення кредиторських вимог Фонду за рахунок майна (активів) банку, крім майна (активів), переданого (переданих) банком у забезпечення виконання своїх зобов'язань;

*{Частину першу статті 12 доповнено пунктом $9^1$ згідно із Законом № 1588-IX від 30.06.2021}*

10) приймає нормативно-правові акти Фонду;

11) затверджує регламент виконавчої дирекції Фонду;

12) подає на затвердження адміністративній раді Фонду положення про службу внутрішнього аудиту та на погодження пропозиції щодо призначення (звільнення) керівника служби внутрішнього аудиту;

*{Пункт 12 частини першої статті 12 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

13) приймає рішення щодо майна, що перебуває у сфері управління Фонду (у тому числі щодо відчуження, оренди, ліквідації);

*{Частину першу статті 12 доповнено пунктом 13 згідно із Законом № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

14) приймає рішення про залучення кредитів від небанківських фінансових установ та іноземного кредитора з подальшим затвердженням цього рішення адміністративною радою Фонду.

*{Частину першу статті 12 доповнено пунктом 14 згідно із Законом № 1586-VII від 04.07.2014}*

2. Виконавча дирекція Фонду має такі повноваження щодо джерел формування коштів Фонду:

1) приймає рішення про встановлення спеціального збору до Фонду або диференційованих зборів до Фонду залежно від ризиків банків;

$1^1$) приймає рішення про емісію корпоративних облігацій, видачу векселів та подає його на затвердження адміністративній раді Фонду. Така емісія, видача може бути здійснена виключно з метою залучення коштів Фондом або у випадках, визначених цим Законом;

*{Частину другу статті 12 доповнено пунктом $1^1$ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015; із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

2) приймає рішення про необхідність залучення кредитів Кабінету Міністрів України, Національного банку України та/або внеску держави на безповоротній основі.

*{Пункт 2 частини другої статті 12 в редакції Закону № 2180-IX від 01.04.2022}*

3) подає на затвердження адміністративній раді Фонду інвестиційний план Фонду;

4) приймає рішення про інвестування коштів Фонду відповідно до інвестиційного плану;

5) приймає рішення про нарахування та стягнення пені за несвоєчасне перерахування банком зборів до Фонду;

6) приймає рішення про перенесення строку сплати регулярного збору до Фонду у випадках, визначених цим Законом;

*{Частину другу статті 12 доповнено пунктом 6 згідно із Законом № 1586-VII від 04.07.2014}*

7) приймає рішення про встановлення розміру базової річної ставки регулярного збору до Фонду, більшого за встановлений **частиною першою** статті 22 цього Закону;

*{Частину другу статті 12 доповнено пунктом 7 згідно із Законом № 2180-IX від 01.04.2022}*

8) приймає рішення про встановлення значення цільового показника Фонду та строку для його досягнення;

*{Частину другу статті 12 доповнено пунктом 8 згідно із Законом № 2180-IX від 01.04.2022}*

9) приймає рішення про здійснення перерахувань до Державного бюджету України відповідно до цього Закону,

*{Частину другу статті 12 доповнено пунктом 9 згідно із Законом № 2180-IX від 01.04.2022}*

10) приймає рішення про збільшення на відповідний період розміру базової річної ставки регулярного збору до Фонду у разі надання Радою з фінансової стабільності рекомендацій відповідно до **частини третьої** статті 19 цього Закону.

*{Частину другу статті 12 доповнено пунктом 10 згідно із Законом № 2180-IX від 01.04.2022}*

3. Виконавча дирекція Фонду має такі повноваження у сфері забезпечення відшкодування коштів за вкладами:

1) визначає **порядок** ведення реєстру учасників Фонду;

2) визначає **порядок** відшкодування Фондом коштів за вкладами відповідно до цього Закону та нормативно-правових актів Фонду;

*{Пункт 2 частини третьої статті 12 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

3) визначає **порядок ведення банками бази даних про вкладників** та ведення Фондом відповідної узагальненої бази даних;

3¹) призначає працівників, до повноважень яких належить проведення моніторингу стану дотримання банком вимог порядку формування та ведення баз даних про вкладників, проведення банком банківських операцій, у тому числі збір інформації та копій документів, необхідних для підготовки проекту плану врегулювання, забезпечення проведення оцінки активів банку в порядку, встановленому Фондом (у тому числі заборгованості за кредитами перед банком, наявності та вартості забезпечення виконання зобов'язань за кредитними договорами, заборгованості за цінними паперами, що є у власності банку, вимог банку до клієнта за списаною безнадійною заборгованістю та наявності і вартості забезпечення виконання зобов'язань за такою заборгованістю тощо);

*{Частину третю статті 12 доповнено пунктом 3¹ згідно із Законом № 629-VIII від 16.07.2015}*

4) приймає рішення про відшкодування коштів за вкладами відповідно до цього Закону та затверджує реєстри відшкодувань вкладникам у порядку та у черговості, що встановлені нормативно-правовими актами Фонду;

*{Пункт 4 частини третьої статті 12 в редакції Закону № 629-VIII від 16.07.2015}*

5) затверджує **порядок** визначення банків-агентів та визначає на підставі цього порядку банків-агентів;

6) приймає рішення про оплату Фондом витрат, пов'язаних із процедурою **виведення неплатоспроможного банку з ринку**, у межах кошторису витрат Фонду, затвердженого адміністративною радою Фонду;

7) встановлює вимоги до змісту договорів банківського вкладу, договорів банківського рахунка з питань, що стосуються функціонування системи гарантування вкладів фізичних осіб;

*{Частину третю статті 12 доповнено пунктом 7 згідно із Законом № 1586-VII від 04.07.2014}*

8) встановлює додаткові вимоги до порядку розкриття банками інформації для вкладників про умови надання банківських послуг із залучення вкладів.

*{Частину третю статті 12 доповнено пунктом 8 згідно із Законом № 629-VIII від 16.07.2015}*

4. Виконавча дирекція Фонду має такі повноваження у сфері регуляторної діяльності:

1) затверджує **порядок проведення перевірок** банків Фондом та участі працівників Фонду в інспекційних перевірках, що здійснюються Національним банком України у проблемних банках;

1¹) встановлює особливості виконання банками, віднесеними до категорії неплатоспроможних, вимог законодавства у сфері запобігання та протидії легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення та затверджує порядок здійснення ним контролю за неплатоспроможними банками у зазначеній сфері;

*{Частину четверту статті 12 доповнено пунктом 1¹ згідно із Законом № 361-IX від*

*06.12.2019}*

2) приймає рішення про здійснення планових або позапланових перевірок банків Фондом чи про участь працівників Фонду в інспекційних перевірках, що здійснюються Національним банком України в проблемних банках;

3) затверджує плани перевірок та результати їх здійснення;

4) затверджує **порядок** та **форми** подання банками звітності до Фонду;

5) приймає рішення про подання банком інформації, іншої ніж звітність, відповідно до цього Закону.

5. Виконавча дирекція Фонду має такі повноваження при здійсненні тимчасової адміністрації та ліквідації банків.

*{Абзац перший частини п'ятої статті 12 в редакції Закону № 1588-IX від 30.06.2021}*

1) визначає умови та **порядок** здійснення виведення неплатоспроможних банків з ринку та ліквідації банків відповідно до цього Закону;

*{Пункт 1 частини п'ятої статті 12 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

1$^1$) утворює колегіальні органи з питань консолідації та продажу активів різних банків та затверджує положення про них;

*{Частину п'яту статті 12 доповнено пунктом 1$^1$ згідно із Законом № 629-VIII від 16.07.2015}*

2) делегує та відкликає всі або частину своїх повноважень колегіальним органам та/або уповноваженій особі (кільком уповноваженим особам) Фонду в обсягах, визначених цим Законом;

*{Пункт 2 частини п'ятої статті 12 в редакції Закону № 629-VIII від 16.07.2015}*

3) визначає додаткові вимоги до уповноваженої особи Фонду, правила контролю за уникненням конфлікту інтересів;

4) затверджує кошторис витрат Фонду на здійснення тимчасової адміністрації та/або ліквідації банку в межах кошторису витрат Фонду, затвердженого адміністративною радою Фонду;

5) затверджує кошторис витрат банку, пов'язаних із здійсненням тимчасової адміністрації та/або ліквідації банку;

*{Пункт 6 частини п'ятої статті 12 виключено на підставі Закону № 629-VIII від 16.07.2015}*

7) затверджує план врегулювання та зміни до нього;

8) погоджує умови відчуження всього або частини майна (активів) та всіх або частини зобов'язань з урахуванням черговості, визначеної статтею 52 цього Закону, приймаючому банку, умови продажу неплатоспроможного банку інвестору або утворення перехідного банку, передачу йому всього або частини майна (активів) та всіх або частини зобов'язань з урахуванням черговості, визначеної статтею 52 цього Закону, і його продажу інвестору;

*{Пункт 8 частини п'ятої статті 12 в редакції Законів № 629-VIII від 16.07.2015, № 590-IX від 13.05.2020}*

8$^1$) приймає рішення про інвестування тимчасово вільних коштів банку, що ліквідується, в державні цінні папери (за умови достатності коштів для забезпечення ліквідаційної процедури);

*{Частину п'яту статті 12 доповнено пунктом 8$^1$ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 1588-IX від 30.06.2021}*

9) ухвалює рішення про надання фінансової підтримки приймаючому банку;

9$^1$) ухвалює рішення про надання кредиту перехідному банку відповідно до **частини дванадцятої** статті 41$^1$ цього Закону;

*{Частину п'яту статті 12 доповнено пунктом 9$^1$ згідно із Законом № 590-IX від 13.05.2020}*

10) затверджує звіт уповноваженої особи Фонду про виконання плану врегулювання і приймає рішення про припинення тимчасової адміністрації банку;

11) звертається до Національного банку України з пропозицією про відкликання банківської ліцензії та ліквідацію банку;

12) визначає **порядок складання** та затверджує реєстр акцептованих вимог кредиторів;

13) затверджує результати інвентаризації майна банку та формування його ліквідаційної маси;

14) визначає порядок та способи реалізації майна банку, що ліквідується;

15) затверджує ліквідаційний баланс та звіт про виконання ліквідаційної процедури;

*{Пункт 15 статті 12 в редакції Закону № 590-IX від 13.05.2020}*

*{Пункт 16 частини п'ятої статті 12 виключено на підставі Закону № 629-VIII від 16.07.2015}*

17) приймає рішення про організацію та здійснення заходів, спрямованих на виявлення та документування фактів, рішень, дій або бездіяльності, якими завдано шкоду (збитки) неплатоспроможному банку або банку, щодо якого прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону

України "Про банки і банківську діяльність", та затверджує висновок (звіт) щодо виявлених фактів, рішень, дій або бездіяльності пов'язаних з банком осіб та інших осіб стосовно цього банку, якими завдано шкоду (збитки) банку, та розмір завданої цими особами шкоди (збитків);

*{Частину п'яту статті 12 доповнено пунктом 17 згідно із Законом № 5411-VI від 02.10.2012; із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 1588-IX від 30.06.2021}*

6. Виконавча дирекція Фонду приймає рішення з інших питань, що випливають із цього Закону, мети діяльності Фонду, які не належать до компетенції адміністративної ради Фонду.

**Стаття 13.** Призначення на посаду та звільнення з посади директора - розпорядника Фонду

1. Директор - розпорядник Фонду призначається на посаду та звільняється з посади адміністративною радою Фонду більшістю від її складу.

2. Директором - розпорядником Фонду може бути громадянин України, який постійно проживає в Україні, має повну вищу освіту в галузі економіки, фінансів чи права, стаж роботи за фахом не менше ніж п'ять років, бездоганну ділову репутацію та не має непогашених судимостей за вчинення корисливих кримінальних правопорушень. Директор - розпорядник Фонду не може бути керівником, учасником або пов'язаною особою банку.

*{Частина друга статті 13 із змінами, внесеними згідно із Законом № 720-IX від 17.06.2020}*

3. Директор - розпорядник Фонду призначається на посаду строком на п'ять років з можливістю повторного призначення не більше ніж на один строк.

4. Директор - розпорядник Фонду може бути достроково звільнений з посади адміністративною радою Фонду в разі:

1) подання заяви про припинення повноважень за власним бажанням;

2) неможливості виконання покладених на нього обов'язків, у тому числі за станом здоров'я, що підтверджується відповідним медичним висновком;

3) набрання законної сили обвинувальним вироком суду щодо нього;

4) смерті або на підставі рішення суду про визнання його недієздатним, безвісно відсутнім чи оголошення померлим;

5) виявлення обставин, що свідчать про невідповідність директора - розпорядника Фонду вимогам, визначеним частиною другою цієї статті.

**Стаття 14.** Повноваження директора - розпорядника Фонду

1. Директор - розпорядник Фонду здійснює такі повноваження:

1) керує поточною діяльністю Фонду;

2) діє від імені Фонду і представляє його інтереси без довіреності у відносинах з державними органами, Національним банком України, банками, міжнародними організаціями, іншими юридичними та фізичними особами;

3) головує на засіданнях та керує діяльністю виконавчої дирекції Фонду;

4) підписує протоколи засідань, рішення виконавчої дирекції Фонду, а також договори, що укладаються Фондом;

5) розподіляє обов'язки між заступниками директора - розпорядника Фонду;

6) видає розпорядчі акти (накази, розпорядження, доручення), обов'язкові до виконання усіма працівниками Фонду;

7) призначає на посади та звільняє з посад працівників Фонду відповідно до законодавства України про працю.

2. Директор - розпорядник Фонду має право делегувати виконання окремих своїх повноважень іншим працівникам Фонду в порядку, встановленому нормативно-правовими актами Фонду.

3. Директор - розпорядник Фонду несе персональну відповідальність за діяльність Фонду та виконання покладених на нього завдань.

**Стаття 15.** Внутрішній аудит

1. У Фонді створюється служба внутрішнього аудиту, що діє на підставі положення, затвердженого адміністративною радою Фонду за поданням виконавчої дирекції Фонду. Служба внутрішнього аудиту у своїй діяльності підзвітна адміністративній раді Фонду. Керівник служби внутрішнього аудиту призначається та звільняється з посади за погодженням з адміністративною радою Фонду.

*{Частина перша статті 15 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

2. Служба внутрішнього аудиту виконує такі функції:

1) здійснює періодичні перевірки діяльності Фонду на предмет дотримання вимог законодавства, нормативно-правових актів Фонду та рішень органів управління Фонду;

2) перевіряє результати фінансової та інвестиційної діяльності Фонду;

3) здійснює інші функції відповідно до положення про службу внутрішнього аудиту.

3. Служба внутрішнього аудиту регулярно (на перше число кожного кварталу) надає звіти адміністративній раді Фонду з висновками та пропозиціями щодо питань, віднесених до її повноважень. Звіти служби внутрішнього аудиту підлягають затвердженню адміністративною

радою Фонду. Висновки та пропозиції служби внутрішнього аудиту є обов'язковими для врахування у діяльності Фонду.

*{Частина третя статті 15 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012}*

**Стаття 16.** Працівники Фонду

1. Для цілей цього Закону працівниками Фонду вважаються особи, які займають посади, передбачені штатним розписом.

2. Працівникам Фонду за переліком посад, що затверджується адміністративною радою Фонду, забороняється:

1) бути керівником, учасником або пов'язаною особою банку (крім перехідного банку);

*{Пункт 2 частини другої статті 16 виключено на підставі Закону № 629-VIII від 16.07.2015}*

3) перебувати у трудових відносинах з банками;

4) займатися підприємницькою діяльністю, виконувати роботу за сумісництвом, крім викладацької, наукової та іншої творчої діяльності.

3. Працівники Фонду та члени адміністративної ради Фонду під час виконання покладених на Фонд функцій перебувають під захистом закону:

*{Абзац перший частини третьої статті 16 в редакції Закону № 1588-IX від 30.06.2021}*

1) працівники Фонду, у тому числі звільнені, та члени адміністративної ради Фонду, у тому числі звільнені, не несуть відповідальності за будь-які дії або бездіяльність, якщо вони діяли на підставі, у межах повноважень та спосіб, передбачені **Конституцією України** та законами України. Позови, подані проти працівників Фонду, у тому числі звільнених, та членів адміністративної ради Фонду, у тому числі звільнених, якщо позови пов'язані з виконанням ними їхніх повноважень у Фонді, вважаються позовами, поданими проти Фонду;

*{Абзац другий частини третьої статті 16 в редакції Закону № 1588-IX від 30.06.2021}*

2) образа працівника Фонду, опір його законним діям та/або вимогам, інші дії, що перешкоджають виконанню покладених на працівника Фонду функцій, погроза вбивством, насильством та/або знищенням чи пошкодженням його майна, а також погроза щодо його близьких родичів у зв'язку з виконанням цією особою посадових обов'язків тягнуть за собою встановлену законом відповідальність.

Майнова відповідальність Фонду, у тому числі за шкоду, заподіяну внаслідок професійної помилки його працівників, може бути застрахована Фондом.

Фонд здійснює страхування від нещасних випадків, професійної відповідальності членів виконавчої дирекції Фонду та уповноважених осіб Фонду відповідно до законодавства, актів Фонду та договорів страхування.

*{Абзац п'ятий частини третьої статті 16 в редакції Закону № 1588-IX від 30.06.2021}*

Шкода, заподіяна внаслідок рішень, дій та/або бездіяльності Фонду (його працівників), у тому числі шкода, заподіяна внаслідок професійної помилки членів виконавчої дирекції Фонду та/або уповноважених осіб Фонду, відшкодовується Фондом згідно із законодавством та страховими компаніями відповідно до умов договорів страхування (у разі їх укладення).

Фонд забезпечує правовий захист працівників Фонду, в тому числі після їх звільнення з Фонду, зокрема шляхом надання їм правової допомоги адвокатами та іншими фахівцями у галузі права, у разі подання проти них позовів або їх участі в адміністративному чи кримінальному провадженні, пов'язаному з виконанням ними своїх повноважень у Фонді, за рахунок коштів Фонду.

*{Частину третю статті 16 доповнено абзацом сьомим згідно із Законом № 1588-IX від 30.06.2021}*

4. Працівникам Фонду забороняється розголошувати інформацію з обмеженим доступом (у тому числі інформацію, що становить банківську таємницю), яка стала їм відомою у зв'язку з виконанням ними своїх посадових (службових) обов'язків, у тому числі після припинення трудових відносин з Фондом, крім випадків, установлених законом.

5. Положення **пунктів 1** і 2 частини третьої та четвертої цієї статті поширюються на консультантів та/або аудиторів, інших осіб, залучених Фондом та/або уповноваженою особою Фонду відповідно до цього Закону та нормативно-правових актів Фонду до виконання функцій Фонду.

*{Стаття 16 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012; текст статті 16 в редакції Закону № 1586-VII від 04.07.2014}*

### Розділ III
### УЧАСТЬ У ФОНДІ

**Стаття 17.** Учасники Фонду

1. Учасниками Фонду є банки. Участь банків у Фонді є обов'язковою. Особливості участі перехідного банку у Фонді визначаються цим Законом та нормативно-правовими актами Фонду.

2. Банк набуває статусу учасника Фонду в день отримання ним банківської ліцензії.

3. Банк зобов'язаний сплачувати до Фонду збори, визначені цим Законом, дотримуватися інших вимог цього Закону та нормативно-правових актів Фонду.

4. Фонд має право безоплатно одержувати від банку інформацію про його діяльність, пояснення з окремих питань, будь-які документи, необхідні для здійснення перевірки та виконання Фондом інших функцій, передбачених цим Законом. Банк зобов'язаний надавати

Фонду на його вимогу або відповідно до вимог законодавства документи та іншу інформацію, необхідні для виконання Фондом функцій, передбачених цим Законом. Банки надають інформацію, що містить банківську таємницю, у порядку, встановленому **Законом України "Про банки і банківську діяльність"**.

5. Фонд виключає банк з числа учасників Фонду в разі прийняття рішення про відкликання банківської ліцензії та ліквідацію банку.

6. Фонд веде реєстр учасників Фонду в порядку, передбаченому нормативно-правовими актами Фонду.

7. Учасник Фонду зобов'язаний вести базу даних про вкладників у порядку, визначеному Фондом, із забезпеченням можливості щоденного формування інформації про вкладників з урахуванням відомостей, відображених у базі даних, щодо відсотків за вкладами фізичних осіб (зменшених на суму податку).

*{Статтю 17 доповнено частиною сьомою згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 18.** Інформація для вкладників

1. Банк зобов'язаний:

1) розміщувати у всіх приміщеннях банку, де вкладникам надаються банківські послуги, інформацію про систему обов'язкового гарантування вкладів фізичних осіб та про участь банку у Фонді;

2) виконувати інші заходи щодо інформування вкладників, передбачені цим Законом та нормативно-правовими актами Фонду.

2. Учасник Фонду в разі посилання у своїй рекламі на участь у Фонді зобов'язаний вказувати інформацію про граничний розмір відшкодування коштів за вкладами, номер та дату видачі свідоцтва учасника Фонду.

3. Фонд інформує громадськість про свою діяльність шляхом опублікування інформації на офіційному сайті Фонду, а також шляхом проведення прес-конференцій, виступів на радіо і телебаченні та в інший спосіб.

Із періодичністю, встановленою виконавчою дирекцією Фонду, Фонд проводить оцінювання рівня поінформованості громадськості.

*{Статтю 18 доповнено новою частиною згідно із Законом № 1586-VII від 04.07.2014}*

4. Фонд зобов'язаний один раз на рік, станом на 1 січня, розміщувати на своєму офіційному веб-сайті перелік учасників Фонду не пізніше одного місяця після настання відповідного строку. Фонд зобов'язаний додатково розміщувати на своєму офіційному веб-сайті інформацію про зміни в переліку учасників Фонду не пізніше 14 днів після внесення відповідних змін до реєстру учасників Фонду, а також перелік учасників Фонду.

*{Частина четверта статті 18 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

5. Фонд зобов'язаний протягом 10 робочих днів з дати, що передбачена законодавством для оформлення документа та/або надання інформації, розміщувати на своєму офіційному веб-сайті та на веб-сайті неплатоспроможного банку таку інформацію щодо неплатоспроможного банку та банку, що знаходиться в стадії ліквідації:

1) річну фінансову звітність відповідно до вимог законодавства;

2) квартальну фінансову звітність відповідно до вимог законодавства;

3) результати оцінки активів банку з розподілом за видами активів і зазначенням незалежного суб'єкта оціночної діяльності, способу оцінки та дати, на яку здійснена оцінка;

4) результати інвентаризації майна банку та формування ліквідаційної маси;

5) рішення Фонду щодо затвердження способу, порядку, складу та умов відчуження майна банку, затверджених виконавчою дирекцією Фонду, а також всі інші рішення Фонду стосовно неплатоспроможного банку;

6) кошторис витрат Фонду на здійснення тимчасової адміністрації та/або ліквідації банку;

7) про укладені договори між Фондом і третіми особами стосовно утримання і збереження активів банку, оцінки та реалізації майна банку, проведення аудиту, охорони майна та приміщень банку.

*{Статтю 18 доповнено частиною п'ятою згідно із Законом № 629-VIII від 16.07.2015}*

6. Фонд у встановленому ним порядку розміщує на своєму офіційному веб-сайті та на веб-сайті банку, що знаходиться в стадії ліквідації, відомості про боржників, які прострочили виконання грошових зобов'язань (за основною сумою та процентами) перед цим банком, а також про вимоги банку до таких боржників. Опублікування таких відомостей не потребує отримання на це згоди боржника - фізичної особи.

*{Статтю 18 доповнено частиною шостою згідно із Законом № 1587-IX від 30.06.2021}*

### Розділ IV
### ПОРЯДОК ФОРМУВАННЯ КОШТІВ ФОНДУ

**Стаття 19.** Джерела формування коштів Фонду

1. Джерелами формування коштів Фонду є:

1) початкові збори з учасників Фонду;

2) регулярні збори з учасників Фонду;

3) спеціальний збір до Фонду;

4) доходи, одержані від інвестування коштів Фонду в державні цінні папери України, та облігації міжнародних фінансових організацій, що розміщуються на території України;

*{Пункт 4 частини першої статті 19 із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

4¹) кошти, залучені Фондом шляхом емісії корпоративних облігацій та/або видачі векселів Фонду;

*{Частину першу статті 19 доповнено пунктом 4¹ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015; із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

5) доходи, одержані у вигляді процентів, нарахованих Національним банком України за залишками коштів на рахунках Фонду, відкритих в Національному банку України;

6) кредити, залучені від Національного банку України у випадках, передбачених **частиною другою** статті 25 цього Закону;

*{Пункт 6 частини першої статті 19 в редакції Закону № 2180-IX від 01.04.2022}*

7) неустойка (штрафи, пеня), що стягується відповідно до цього Закону;

8) кошти, що були внесені Національним банком України в розмірі 20 мільйонів гривень на день створення Фонду;

9) кошти з Державного бюджету України (у тому числі облігації внутрішньої державної позики);

*{Пункт 9 частини першої статті 19 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

*{Пункт 10 частини першої статті 19 виключено на підставі Закону № 629-VIII від 16.07.2015}*

*{Пункт 10¹ частини першої статті 19 виключено на підставі Закону № 590-IX від 13.05.2020}*

11) благодійні внески, гранти, технічна допомога у грошовій або не грошовій формі, у тому числі від іноземних осіб;

*{Пункт 11 частини першої статті 19 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

11¹) кредити, залучені від небанківських фінансових установ та іноземних кредиторів;

*{Частину першу статті 19 доповнено пунктом 11¹ згідно із Законом № 1586-VII від 04.07.2014}*

12) кошти, отримані від виконання заходів, передбачених планом врегулювання, зокрема від продажу неплатоспроможного банку або перехідного банку, ліквідації банку;

13) доходи, отримані від надання Фондом фінансової підтримки у вигляді позики приймаючому або перехідному банку;

*{Частину першу статті 19 доповнено пунктом 13 згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 2180-IX від 01.04.2022}*

13¹) доходи, отримані від надання кредиту перехідному банку відповідно до **частини дванадцятої** статті 41¹ цього Закону;

*{Частину першу статті 19 доповнено пунктом 13¹ згідно із Законом № 590-IX від 13.05.2020}*

14) гарантійні внески, перераховані учасниками відкритого конкурсу у випадках, передбачених цим Законом;

*{Частину першу статті 19 доповнено пунктом 14 згідно із Законом № 1586-VII від 04.07.2014}*

15) кошти, одержані від управління майном Фонду (у тому числі від відчуження, оренди тощо);

*{Частину першу статті 19 доповнено пунктом 15 згідно із Законом № 629-VIII від 16.07.2015}*

16) кошти, що надійшли від банків, процедура тимчасової адміністрації або ліквідації яких здійснюється Фондом, у межах затверджених кошторисів витрат, на відшкодування витрат, понесених Фондом на виведення їх з ринку.

*{Частину першу статті 19 доповнено пунктом 16 згідно із Законом № 1588-IX від 30.06.2021}*

2. Кошти Фонду можуть формуватися з інших джерел, не заборонених законодавством України.

3. Значення цільового показника Фонду не може бути меншим за 2,5 відсотка суми гарантованих Фондом коштів вкладників банків-учасників у межах суми відшкодування.

З метою визначення розміру цільового фонду з урахуванням можливості настання кризових явищ у майбутньому Фонд здійснює розрахунки значення цільового показника Фонду та строку для його досягнення (у тому числі з урахуванням результатів стрес-тестування системи гарантування вкладів фізичних осіб, яке проводиться відповідно до **частини четвертої** статті 31 цього Закону).

У разі якщо розраховане Фондом значення цільового показника Фонду перевищує мінімальне, Фонд виносить питання про встановлення значення цільового показника Фонду та строку для його досягнення на розгляд Ради з фінансової стабільності для надання нею рекомендацій та прийняття адміністративною радою Фонду рішення відповідно до **пункту 19** частини першої статті 9 цього Закону, але не більше одного разу на рік.

Досягнення розміру цільового фонду забезпечується шляхом накопичення Фондом відкоригованого капіталу.

Відкоригований капітал Фонду повинен забезпечувати покриття прогнозованого обсягу ризиків у банківській системі у разі настання кризових явищ у майбутньому (крім випадків наявності ознак нестійкого фінансового стану банківської системи, а також обставин, що загрожують стабільності банківської та/або фінансової системи України, підтверджених відповідним рішенням Ради з фінансової стабільності).

Фонд у разі недосягнення встановленого значення цільового показника Фонду має право вжити заходів для накопичення капіталу Фонду на відповідний період за рахунок:

підвищення базових ставок регулярного збору з учасників Фонду згідно із **статтею 22** цього Закону;

встановлення спеціального збору до Фонду згідно із **статтею 23** цього Закону.

У разі нагальної потреби в підтримці ліквідності з метою своєчасного виконання Фондом завдання із забезпечення функціонування системи гарантування вкладів фізичних осіб Фонд має право вжити заходів щодо:

залучення кредитів від Національного банку України згідно із **статтею 25** цього Закону;

залучення кредиту та/або внеску на безповоротній основі від держави згідно із **статтею 25** цього Закону.

Порядок, умови та період проведення розрахунку показників (цільового показника Фонду, розміру цільового фонду, ризику ліквідності, відкоригованого капіталу тощо) встановлюються нормативно-правовим актом Фонду.

*{Частина третя статті 19 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015, № 738-IX від 19.06.2020; в редакції Закону № 2180-IX від 01.04.2022}*

**Стаття 20.** Розпорядження коштами Фонду

1. Фонд є єдиним розпорядником коштів, акумульованих у процесі його діяльності.

2. Кошти Фонду не включаються до Державного бюджету України, не підлягають вилученню і можуть використовуватися Фондом виключно для:

1) виплати гарантованої суми відшкодування вкладникам коштів за вкладами відповідно до цього Закону;

2) покриття витрат, пов'язаних з виконанням покладених на Фонд функцій та повноважень, зокрема, пов'язаних з процедурою виведення неплатоспроможного банку з ринку, у межах кошторису витрат Фонду, затвердженого адміністративною радою Фонду;

*{Пункт 2 частини другої статті 20 в редакції Закону № 5411-VI від 02.10.2012; із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 590-IX від 13.05.2020}*

2¹) погашення облігацій і виплата доходів за ними (сплата векселів), враховуючи витрати, пов'язані з їх розміщенням (видачею);

*{Частину другу статті 20 доповнено пунктом 2¹ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

2²) покриття витрат, пов'язаних із залученими Фондом кредитами;

*{Частину другу статті 20 доповнено пунктом 2² згідно із Законом № 629-VIII від 16.07.2015}*

3) забезпечення поточної діяльності Фонду, утримання його апарату, розвитку його матеріально-технічної бази в межах кошторису витрат, затвердженого адміністративною радою Фонду;

4) надання фінансової підтримки приймаючому або перехідному банку;

*{Пункт 4 частини другої статті 20 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

*{Пункт 5 частини другої статті 20 виключено на підставі Закону № 629-VIII від 16.07.2015}*

*{Пункт 6 частини другої статті 20 виключено на підставі Закону № 629-VIII від 16.07.2015}*

7) надання кредиту перехідному банку, створеному з метою, визначеною **пунктом 2** частини двадцятої статті 42 цього Закону, на підставі рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктом 4** частини другої статті 39 цього Закону, у **порядку та на умовах**, визначених нормативно-правовими актами Фонду;

*{Частину другу статті 20 доповнено пунктом 7 згідно із Законом № 1586-VII від 04.07.2014, в редакції Закону № 590-IX від 13.05.2020}*

8) формування статутного капіталу перехідного банку;

*{Частину другу статті 20 доповнено пунктом 8 згідно із Законом № 1586-VII від 04.07.2014, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

*{Пункт 9 частини другої статті 20 виключено на підставі Закону № 629-VIII від 16.07.2015}*

10) повернення гарантійних внесків, перерахованих учасниками відкритого конкурсу у випадках, передбачених цим Законом;

*{Частину другу статті 20 доповнено пунктом 10 згідно із Законом № 1586-VII від 04.07.2014}*

11) здійснення перерахувань до Державного бюджету України за рішенням виконавчої дирекції Фонду відповідно до цього Закону.

*{Частину другу статті 20 доповнено пунктом 11 згідно із Законом № 2180-IX від 01.04.2022}*

3. Фонд має право інвестувати кошти в державні цінні папери України та облігації міжнародних фінансових організацій, що розміщуються на території України.

*{Частина третя статті 20 із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

4. Фонд здійснює інвестиційну діяльність на засадах затвердженого адміністративною радою Фонду інвестиційного плану виходячи із потреб забезпечення виконання функцій Фонду.

5. На майно, у тому числі кошти, Фонду не може бути накладений арешт, а також застосовані способи забезпечення позову.

*{Статтю 20 доповнено частиною п'ятою згідно із Законом № 629-VIII від 16.07.2015}*

6. Кошти, одержані Фондом у результаті відшкодування шкоди (збитків) за вимогами Фонду, передбаченими частинами п'ятою та десятою статті 52 цього Закону, спрямовуються на задоволення вимог кредиторів неплатоспроможного банку або банку, щодо якого прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", у черговості та порядку, визначених частинами першою та четвертою статті 52 цього Закону, після відшкодування витрат Фонду, понесених у зв'язку із стягненням шкоди (збитків).

*{Статтю 20 доповнено частиною шостою згідно із Законом № 1588-IX від 30.06.2021}*

**Стаття 21.** Початковий збір до Фонду

1. Банк - учасник Фонду протягом 30 календарних днів з дати видачі банківської ліцензії зобов'язаний сплатити до Фонду початковий збір у розмірі 1 відсотка свого статутного капіталу, крім випадків, передбачених цим Законом.

*{Частина перша статті 21 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Банк - учасник Фонду, створений у результаті реорганізації, звільняється від сплати початкового збору в разі сплати початкового збору до Фонду банками, які реорганізувалися, та набуває усіх прав і обов'язків щодо участі у Фонді.

3. Перехідний банк звільняється від сплати початкового внеску до Фонду.

**Стаття 22.** Регулярний збір до Фонду

1. Учасник Фонду зобов'язаний станом на останній робочий день кожного кварталу здійснювати нарахування регулярного збору до Фонду. Розмір базової річної ставки збору становить 0,5 відсотка бази нарахування в національній валюті та 0,8 відсотка бази нарахування в іноземній валюті.

Виконавча дирекція має право прийняти рішення про збільшення на відповідний період розміру базової річної ставки регулярного збору до Фонду відповідно до умов, визначених **частиною третьою** статті 19 цього Закону.

*{Частину першу статті 22 доповнено новим абзацом згідно із Законом № 2180-IX від 01.04.2022}*

У разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку такий банк зобов'язаний у день прийняття зазначеного рішення нараховувати регулярний збір до Фонду за період з дня, наступного за днем закінчення останнього розрахункового періоду до дня, що передує дню запровадження процедури ліквідації, та сплатити його до Фонду протягом 15 днів.

*{Абзац частини першої статті 22 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Базою нарахування є середньоарифметична за розрахунковий період сума щоденних балансових залишків на рахунках з обліку вкладів та відсотків за ними.

*{Абзац частини першої статті 22 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012}*

Фонд має право встановлювати своїм нормативно-правовим актом порядок розрахунку розміру регулярних зборів до Фонду у формі диференційованих зборів. Розрахунок розміру диференційованого збору проводиться шляхом зважування базової річної ставки збору за ступенем ризику. Розмір диференційованого збору має бути не менше розміру базової річної ставки.

Методика оцінки ступеню ризиків банку для розрахунку диференційованих зборів встановлюється нормативно-правовим актом Фонду, що підлягає погодженню з Національним банком України.

2. Учасник Фонду визначає залишки за вкладами в іноземній валюті, національній валюті України за офіційним курсом гривні до іноземних валют, встановленим Національним банком України на день такого визначення.

3. Учасник Фонду зобов'язаний здійснювати сплату регулярного збору до Фонду щоквартально до 15 числа місяця, наступного за кварталом, за який здійснюється сплата.

У разі прийняття Національним банком України рішення про перенесення строків подання звітності банками до Національного банку України виконавча дирекція Фонду має право прийняти рішення про перенесення строку сплати регулярного збору до Фонду.

*{Частину третю статті 22 доповнено абзацом другим згідно із Законом № 1586-VII від 04.07.2014}*

*{Частина третя статті 22 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012}*

4. Перехідний банк, утворений відповідно до **пункту 1** частини двадцятої статті 42 цього Закону, звільняється від сплати регулярного збору до Фонду.

*{Абзац перший частини четвертої статті 22 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

У разі втрати банком, утвореним відповідно до **пункту 1** частини двадцятої статті 42 цього Закону, статусу перехідного такий банк зобов'язаний сплачувати регулярний збір на загальних підставах, починаючи з дня втрати ним статусу перехідного банку.

*{Абзац другий частини четвертої статті 22 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

*{Статтю 22 доповнено частиною четвертою згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 23.** Спеціальний збір до Фонду

1. Фонд має право прийняти рішення про встановлення спеціального збору до Фонду у разі настання умов, визначених **частиною третьою** статті 19 цього Закону, або з метою погашення залучених кредитів.

*{Частина перша статті 23 в редакції Закону № 1586-VII від 04.07.2014}*

2. Учасник Фонду зобов'язаний здійснити сплату спеціального збору до Фонду у строки та згідно з умовами, встановленими нормативно-правовими актами Фонду.

3. Загальний розмір спеціального збору, сплаченого учасниками Фонду протягом року, не має перевищувати розміру регулярного збору з учасника Фонду, сплаченого учасником Фонду за попередній рік.

4. Учасник Фонду, визнаний на дату запровадження спеціального збору неплатоспроможним банком, та перехідний банк звільняються від сплати спеціального збору до Фонду.

*{Статтю 23 доповнено частиною четвертою згідно із Законом № 1586-VII від 04.07.2014}*

**Стаття 24.** Пеня за несплату та несвоєчасну сплату зборів до Фонду, штрафи за адміністративні порушення

1. Банк (крім банку, віднесеного до категорії неплатоспроможних) за несвоєчасну або неповну сплату зборів до Фонду сплачує пеню в розмірі подвійної облікової ставки Національного банку України від розміру неперерахованої суми за кожний день прострочення (включаючи день сплати).

*{Частина перша статті 24 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Фонд має право звернутися до:

1) Національного банку України з вимогою про безспірне списання своєчасно не сплачених сум зборів до Фонду та нарахованої пені у випадку несплати учасником відповідних сум протягом одного місяця з дня сплати, встановленого цим Законом;

2) суду з позовом про стягнення з учасника Фонду своєчасно не сплачених сум зборів до Фонду та нарахованої пені.

3. Фонд накладає адміністративні штрафи на керівників банків відповідно до Кодексу України про адміністративні правопорушення.

*{Абзац перший частини третьої статті 24 в редакції Закону № 5411-VI від 02.10.2012}*

*{Абзац другий частини третьої статті 24 виключено на підставі Закону № 5411-VI від 02.10.2012}*

Протоколи про вчинення правопорушення складаються працівниками Фонду. Провадження у справах про адміністративні правопорушення, передбачені цією статтею, здійснюються відповідно до Кодексу України про адміністративні правопорушення.

**Стаття 25.** Кредитування Фонду та фінансування системи гарантування вкладів фізичних осіб державою на безповоротній основі

1. Фонд відповідно до **частини третьої** статті 19 цього Закону періодично проводить розрахунок відкоригованого капіталу, розміру цільового фонду та ризику ліквідності (виникнення в прогнозних розрахунках дефіциту коштів, який неможливо подолати без залучення додаткового фінансування) з метою визначення розміру необхідного фінансування системи гарантування вкладів фізичних осіб із джерел, передбачених **пунктами 6 і 9** частини першої статті 19 цього Закону.

2. У разі нагальної потреби в підтримці ліквідності для своєчасного виконання Фондом завдання із забезпечення функціонування системи гарантування вкладів фізичних осіб, з метою уникнення загрози стабільності банківської та/або фінансової системи України та забезпечення захисту інтересів вкладників банків Фонд має право звернутися до Національного банку

України за отриманням кредиту (строком до одного року) та/або викупом державних цінних паперів України. Національний банк України приймає рішення про надання або відмову в наданні кредиту Фонду, у тому числі шляхом відкриття кредитної лінії, про викуп або відмову у викупі державних цінних паперів України на умовах та в порядку, встановлених нормативно-правовими актами Національного банку України.

3. За умови вичерпання можливостей поповнення коштів за рахунок джерел, визначених **частиною першою** (крім **пункту 9**) статті 19 цього Закону, та у разі необхідності підтримки ліквідності Фонд має право звернутися до Міністерства фінансів України із заявкою про надання коштів Фонду із зазначенням їх розміру за рахунок Державного бюджету України у вигляді:

1) кредиту, процентна ставка за яким встановлюється на рівні ринкової ставки за державними цінними паперами України порівнюваних строків погашення, випущених Кабінетом Міністрів України в період надання такого кредиту;

2) внеску держави на безповоротній основі.

4. У разі нагальної потреби в підтримці ліквідності, зумовленої наявністю ознак нестійкого фінансового стану банківської системи, а також обставин, що загрожують стабільності банківської та/або фінансової системи країни, підтверджених відповідним рішенням Ради з фінансової стабільності, Фонд має право отримати фінансування від держави у вигляді внеску на безповоротній основі.

5. Держава може надати Фонду кредит та/або внесок на безповоротній основі у вигляді коштів або облігацій внутрішньої державної позики України.

6. Держава може надати Фонду кредит шляхом обміну облігацій внутрішньої державної позики України на векселі Фонду.

7. У разі настання обставин, передбачених частиною третьою цієї статті, Міністерство фінансів України:

протягом 14 робочих днів з дня отримання заявки Фонду забезпечує надання Фонду кредиту та/або внеску держави на безповоротній основі у відповідному розмірі на підставі закону про Державний бюджет України на відповідний рік;

у разі відсутності в законі про Державний бюджет України на поточний рік бюджетних призначень у необхідному Фонду розмірі чи місячний строк з дня отримання заявки Фонду розробляє та ініціює подання Кабінетом Міністрів України до Верховної Ради України відповідного законопроекту, що включає пропозиції Фонду, та протягом 14 календарних днів з дня набрання чинності прийнятим законом забезпечує надання відповідного фінансування.

8. **Порядок** надання державою Фонду кредиту та/або внеску держави на безповоротній основі визначається Кабінетом Міністрів України.

*{Стаття 25 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012; в редакції Закону № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 2180-IX від 01.04.2022}*

**Розділ V**
# ГАРАНТІЇ ФОНДУ ТА ВІДШКОДУВАННЯ КОШТІВ ЗА ВКЛАДАМИ

**Стаття 26.** Гарантії за вкладом

1. Фонд гарантує кожному вкладнику банку відшкодування коштів за його вкладом. Фонд відшкодовує кошти в розмірі вкладу, включаючи відсотки, станом на кінець дня, що передує дню початку процедури виведення Фондом банку з ринку, але не більше суми граничного розміру відшкодування коштів за вкладами, встановленого на цей день, незалежно від кількості вкладів в одному банку. Сума граничного розміру відшкодування коштів за вкладами не може бути меншою 200000 гривень.

*{Абзац перший частини першої статті 26 в редакції Закону № 5411-VI від 02.10.2012; із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015, № 1588-IX від 30.06.2021, № 2180-IX від 01.04.2022}*

*{Зміни в третє речення абзацу першого частини першої статті 26 по Закону № 2180-IX від 01.04.2022 будуть внесені через три місяці з дня, наступного за днем припинення чи скасування воєнного стану в Україні - див. пункт 1 розділу II}*

За наявності ознак нестійкого фінансового стану банківської системи, а також обставин, що загрожують стабільності банківської та/або фінансової системи країни, підтверджених відповідним рішенням Ради з фінансової стабільності, адміністративна рада Фонду на підставі рекомендацій Ради з фінансової стабільності має право прийняти рішення про:

*{Частину першу статті 26 доповнено новим абзацом згідно із Законом № 2180-IX від 01.04.2022}*

тимчасове, на певний період, встановлення підвищеної суми граничного розміру відшкодування коштів за вкладами;

*{Частину першу статті 26 доповнено новим абзацом згідно із Законом № 2180-IX від 01.04.2022}*

поступове, протягом певного періоду, зниження підвищеної суми граничного розміру відшкодування коштів за вкладами до розміру, встановленого адміністративною радою Фонду до дня прийняття рішення про тимчасове встановлення підвищеної суми.

*{Частину першу статті 26 доповнено новим абзацом згідно із Законом № 2180-IX від 01.04.2022}*

Адміністративна рада Фонду не має права приймати рішення про зменшення суми граничного розміру відшкодування коштів за вкладами в інших випадках, ніж визначені цією

частиною.

*{Частину першу статті 26 доповнено новим абзацом згідно із Законом № 2180-IX від 01.04.2022}*

Виконання зобов'язань Фонду перед вкладниками здійснюється Фондом з дотриманням вимог щодо найменших витрат Фонду та збитків для вкладників у спосіб, визначений цим Законом, у тому числі шляхом передачі активів і зобов'язань банку приймаючому або перехідному банку, продажу банку, створення перехідного банку протягом дії тимчасової адміністрації або виплати відшкодування вкладникам у строк, встановлений цим Законом.

*{Абзац частини першої статті 26 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 2180-IX від 01.04.2022}*

*{Абзац частини першої статті 26 виключено на підставі Закону № 629-VIII від 16.07.2015}*

Гарантії Фонду не поширюються на відшкодування коштів за вкладами у випадках, передбачених цим Законом.

2. Вкладник має право на одержання гарантованої суми відшкодування коштів за вкладами за рахунок коштів Фонду в межах граничного розміру відшкодування коштів за вкладами.

Під час тимчасової адміністрації вкладник набуває право на одержання гарантованої суми відшкодування коштів за вкладами за рахунок коштів Фонду в межах граничного розміру відшкодування коштів за вкладами за договорами, строк дії яких закінчився станом на день початку процедури виведення Фондом банку з ринку, та за договорами банківського рахунку з урахуванням вимог, визначених частиною четвертою цієї статті.

Фонд має право не включати до розрахунку гарантованої суми відшкодування коштів за договорами банківського рахунка до отримання в повному обсязі інформації про операції, здійснені платіжною системою (внутрішньодержавною та міжнародною).

Виплата гарантованої суми відшкодування за договорами банківського рахунка здійснюється тільки після отримання Фондом у повному обсязі інформації про операції, здійснені платіжною системою (внутрішньодержавною та міжнародною).

*{Частина друга статті 26 в редакції Закону № 629-VIII від 16.07.2015}*

3. Фонд гарантує відшкодування коштів за вкладом, який вкладник має в банку, що в подальшому реорганізувався шляхом перетворення, на тих самих умовах, що і до реорганізації.

4. Фонд не відшкодовує кошти:

1) передані банку в довірче управління;

2) за вкладом у розмірі менше 10 гривень;

*{Пункт 3 частини четвертої статті 26 виключено на підставі Закону № 2180-IX від 01.04.2022}*

4) розміщені на вклад у банку особою, яка є пов'язаною з банком особою або була такою особою протягом року до дня прийняття Національним банком України рішення про віднесення такого банку до категорії неплатоспроможних (у разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", - протягом року до дня прийняття такого рішення);

*{Пункт 4 частини четвертої статті 26 в редакції Закону № 629-VIII від 16.07.2015}*

5) розміщені на вклад у банку особою, яка надавала банку професійні послуги як аудитор, оцінювач, у разі якщо з дня припинення надання послуг до дня прийняття Національним банком України рішення про віднесення такого банку до категорії неплатоспроможних не минув один рік (у разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", - один рік до дня прийняття такого рішення);

*{Пункт 5 частини четвертої статті 26 в редакції Закону № 629-VIII від 16.07.2015}*

6) розміщені на вклад власником істотної участі банку;

7) за вкладами у банку, за якими вкладники на індивідуальній основі отримують від банку проценти за договорами, укладеними на умовах, що не є поточними ринковими умовами відповідно до **статті 52** Закону України "Про банки і банківську діяльність", або мають інші фінансові привілеї від банку;

*{Пункт 7 частини четвертої статті 26 в редакції Закону № 629-VIII від 16.07.2015}*

8) за вкладом у банку, якщо такий вклад використовується вкладником як засіб забезпечення виконання іншого зобов'язання перед цим банком, у повному обсязі вкладу до дня виконання зобов'язань;

*{Пункт 8 частини четвертої статті 26 в редакції Закону № 1586-VII від 04.07.2014}*

9) за вкладами у філіях іноземних банків;

10) за вкладами у банківських металах;

*{Частину четверту статті 26 доповнено пунктом 10 згідно із Законом № 1586-VII від 04.07.2014}*

11) розміщені на рахунках, що перебувають під арештом за рішенням суду;

*{Частину четверту статті 26 доповнено пунктом 11 згідно із Законом № 629-VIII від 16.07.2015}*

12) за вкладом, задоволення вимог за яким зупинено відповідно до **Закону України** "Про

запобігання та протидію легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення".

*{Частину четверту статті 26 доповнено пунктом 12 згідно із Законом № 361-IX від 06.12.2019}*

5. Відшкодування коштів за вкладом в іноземній валюті відбувається в національній валюті України після перерахування суми вкладу за офіційним курсом гривні до іноземних валют, встановленим Національним банком України на кінець дня, що передує дню початку процедури виведення Фондом банку з ринку та здійснення тимчасової адміністрації відповідно до **статті 36** цього Закону.

*{Частина п'ята статті 26 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 1588-IX від 30.06.2021}*

6. У разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", Фонд гарантує кожному вкладнику банку відшкодування коштів за вкладами, включаючи відсотки, на кінець дня, що передує дню початку процедури ліквідації банку, але не більше суми граничного розміру відшкодування коштів за вкладами, встановленого на дату прийняття такого рішення, незалежно від кількості вкладів в одному банку.

Відшкодування коштів за вкладом в іноземній валюті здійснюється в національній валюті України після перерахування суми вкладу за офіційним курсом гривні до іноземної валюти, встановленим Національним банком України на кінець дня, що передує дню початку ліквідації банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність".

*{Статтю 26 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015; із змінами, внесеними згідно із Законом № 1588-IX від 30.06.2021}*

*{Частину сьому статті 26 виключено на підставі Закону № 2180-IX від 01.04.2022}*

**Стаття 27.** Порядок визначення вкладників, які мають право на відшкодування коштів за вкладами

1. Уповноважена особа Фонду складає перелік рахунків вкладників та визначає розрахункові суми відшкодування коштів за вкладами за рахунок коштів Фонду відповідно до вимог цього Закону та нормативно-правових актів Фонду станом на кінець дня, що передує дню початку процедури виведення Фондом неплатоспроможного банку з ринку, або на кінець дня, що передує дню початку процедури ліквідації банку, щодо якого прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність".

*{Абзац перший частини першої статті 27 в редакції Закону № 1588-IX від 30.06.2021}*

Нарахування відсотків за вкладами припиняється у день початку процедури виведення Фондом банку з ринку (у разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", - у день прийняття рішення про відкликання банківської ліцензії та ліквідацію банку).

2. Уповноважена особа Фонду протягом 15 робочих днів з дня початку процедури виведення Фондом банку з ринку формує:

1) перелік рахунків, за якими вкладники мають право на відшкодування коштів за вкладами за рахунок Фонду, із визначенням сум, що підлягають відшкодуванню;

2) перелік рахунків вкладників, кошти яких не підлягають відшкодуванню Фондом відповідно до **пунктів 4-6** частини четвертої статті 26 цього Закону;

3) переліки рахунків, за якими вкладники на індивідуальній основі отримують від банку відсотки за договорами, укладеними на умовах, що не є поточними ринковими умовами відповідно до **статті 52** Закону України "Про банки і банківську діяльність", або мають інші фінансові привілеї від банку та осіб, які використовують вклад як засіб забезпечення виконання іншого зобов'язання перед цим банком, що не виконане;

4) перелік рахунків вкладників, що перебувають під арештом за рішенням суду;

4[1]) перелік рахунків вкладників, фінансові операції за якими зупинено відповідно до **Закону України** "Про запобігання та протидію легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення";

*{Частину другу статті 27 доповнено пунктом 4[1] згідно із Законом № 361-IX від 06.12.2019}*

5) перелік рахунків вкладників, вклади яких мають ознаки, визначені **статтею 38** цього Закону. Кошти за такими вкладами виплачуються Фондом після проведення аналізу ознак, визначених статтею 38 цього Закону, у тому числі шляхом надіслання запитів клієнтам банку, у порядку та строки, встановлені Фондом, а також підтвердження відсутності таких ознак.

3. Виконавча дирекція Фонду затверджує реєстр відшкодувань вкладникам для здійснення виплат відповідно до наданого уповноваженою особою Фонду переліку рахунків, за якими вкладник має право на відшкодування коштів за вкладами за рахунок коштів Фонду. Фонд не пізніше ніж через 20 робочих днів з дня початку процедури виведення Фондом банку з ринку розміщує оголошення про початок відшкодування коштів вкладникам на офіційному веб-сайті Фонду.

Фонд також оприлюднює оголошення про початок відшкодування коштів вкладникам у газеті "Урядовий кур'єр" або "Голос України".

4. Інформація про вкладника в переліку рахунків вкладників має забезпечувати його ідентифікацію відповідно до законодавства.

*{Стаття 27 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 28.** Розрахунки з вкладниками

1. Фонд розпочинає виплату відшкодування коштів у національній валюті України в порядку та у черговості, встановлених Фондом, не пізніше 20 робочих днів (для банків, база даних про вкладників яких містить інформацію про більше ніж 500000 рахунків, - не пізніше 30 робочих днів) з дня початку процедури виведення Фондом банку з ринку.

*{Частина перша статті 28 в редакції Закону № 629-VIII від 16.07.2015}*

2. Фонд здійснює виплату гарантованих сум відшкодування через банки-агенти, що здійснюють такі виплати в готівковій або безготівковій формі (за вибором вкладника).

3. Фонд припиняє виплату гарантованих сум відшкодування коштів за вкладами у день затвердження ліквідаційного балансу банку та не пізніше наступного робочого дня розміщує на офіційному веб-сайті Фонду оголошення про припинення Фондом виплат гарантованої суми відшкодування.

*{Частина третя статті 28 в редакції Законів № 629-VIII від 16.07.2015, № 1588-IX від 30.06.2021}*

*{Текст статті 28 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 29.** Набуття Фондом права кредитора банку

1. Фонд набуває прав кредитора банку:

1) на загальну суму, що підлягає відшкодуванню вкладникам такого банку (включаючи **пункти 3-5** частини другої статті 27 цього Закону) на кінець дня, що передує дню початку тимчасової адміністрації банку або ліквідації банку, щодо якого прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", а тому числі на суму наданої Фондом приймаючому або перехідному банку фінансової підтримки;

*{Пункт 1 частини першої статті 29 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

*{Пункт 2 частини першої статті 29 виключено на підставі Закону № 1588-IX від 30.06.2021}*

3) на суму нарахованого, але не сплаченого регулярного збору до Фонду, а також на суму заборгованості із сплати зборів, пені та/або штрафів до Фонду, нарахованих до дня, що передує дню запровадження процедури ліквідації.

2. У разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", Фонд набуває прав кредитора:

1) на загальну суму, що підлягає відшкодуванню вкладникам такого банку на кінець дня, що передує дню початку процедури його ліквідації;

*{Пункт 1 частини другої статті 29 із змінами, внесеними згідно із Законом № 2180-IX від 01.04.2022}*

*{Пункт 2 частини другої статті 29 виключено на підставі Закону № 2180-IX від 01.04.2022}*

3) на суму нарахованого, але не сплаченого регулярного збору до Фонду, а також на суму заборгованості із сплати зборів, пені та/або штрафів до Фонду, нарахованих до дня, що передує дню запровадження процедури ліквідації.

*{Стаття 29 в редакції Закону № 629-VIII від 16.07.2015}*

## Розділ VI
## РЕГУЛЯТИВНА ДІЯЛЬНІСТЬ ФОНДУ

**Стаття 30.** Регулювання Фондом діяльності банків

1. Фонд здійснює регулювання діяльності банків шляхом:

1) прийняття в межах своїх повноважень нормативно-правових актів, обов'язкових до виконання банками;

2) здійснення контролю за виконанням зобов'язань банків у зв'язку з їх участю в системі гарантування вкладів фізичних осіб;

3) виведення неплатоспроможних банків з ринку;

4) в інших формах, передбачених цим Законом.

2. Регулятивні повноваження Фонду, визначені цим Законом, поширюються на всі банки в Україні. Банки зобов'язані дотримуватися нормативно-правових актів Фонду та виконувати вимоги, встановлені Фондом у межах його повноважень.

**Стаття 31.** Звітність банків перед Фондом, стрес-тестування системи гарантування вкладів фізичних осіб

*{Назва статті 31 в редакції Закону № 2180-IX від 01.04.2022}*

1. Банк зобов'язаний подавати до Фонду балансові звіти, звіт аудитора, інші визначені Фондом форми звітності, документи та інформацію, необхідні для виконання Фондом функцій, передбачених цим Законом, у строки, формі та відповідно до вимог, встановлених нормативно-правовими актами Фонду.

*{Частина перша статті 31 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

2. Фонд має право вимагати від банку подання інформації з окремих питань діяльності. Банк зобов'язаний подати таку інформацію до Фонду у строки та формі, визначених відповідною вимогою Фонду. Банки надають інформацію, що містить банківську таємницю, у порядку, встановленому Законом України "Про банки і банківську діяльність".

3. У разі прийняття Національним банком України рішення про перенесення строків подання звітності банками до Національного банку України Фонд має право рішенням виконавчої дирекції Фонду перенести строк подання звітності до Фонду.

*{Статтю 31 доповнено частиною третьою згідно із Законом № 1586-VII від 04.07.2014}*

4. Фонд проводить стрес-тестування системи гарантування вкладів фізичних осіб на регулярній основі, але не менше одного разу на три роки. Результати стрес-тестування системи гарантування вкладів фізичних осіб можуть використовуватися Фондом для перегляду розміру базової річної ставки регулярного збору до Фонду, більшого за встановлений частиною першою статті 22 цього Закону, та/або встановлення спеціального збору до Фонду, перегляду значення цільового показника. Методика проведення стрес-тестування системи гарантування вкладів фізичних осіб визначається Фондом.

*{Статтю 31 доповнено частиною четвертою згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 2180-IX від 01.04.2022}*

**Стаття 32.** Перевірки банків

1. Фонд має право здійснювати перевірку банку щодо контролю за виконанням ним зобов'язань у зв'язку з участю в системі гарантування вкладів фізичних осіб на предмет:

1) достовірності наданої Фонду звітності;

2) повноти і своєчасності розрахунків з Фондом за зборами до Фонду та нарахованою пенею;

3) повноти і достовірності ведення бази даних про вкладників;

4) дотримання вимог щодо інформування вкладників про участь банку у Фонді;

4$^1$) визначення рівня ризику банку як учасника Фонду у процесі проведення стрес-тестування системи гарантування вкладів фізичних осіб відповідно до нормативно-правових актів Фонду;

*{Частину першу статті 32 доповнено пунктом 4$^1$ згідно із Законом № 2180-IX від 01.04.2022}*

5) дотримання інших вимог цього Закону та нормативно-правових актів Фонду.

2. Перевірка банку здійснюється працівниками Фонду відповідно до затвердженого виконавчою дирекцією Фонду плану перевірки.

3. Фонд має право здійснювати планову перевірку банку не частіше одного разу на рік. В окремих випадках Фонд має право здійснювати позапланову перевірку банку на підставі рішення виконавчої дирекції Фонду.

4. Фонд зобов'язаний повідомити банк про проведення планової перевірки не пізніше ніж за 10 днів до початку перевірки.

5. Банк зобов'язаний забезпечити працівникам Фонду:

1) вільний та безоплатний доступ до документів та інформації, у тому числі інформації, що містить банківську таємницю, необхідних для проведення перевірки;

2) надання пояснень з окремих питань на вимогу працівників Фонду;

3) вільний доступ у робочий час до приміщень, де відбувається залучення коштів від фізичних осіб та до виділеного приміщення для розміщення членів інспекційної групи під час проведення перевірки.

6. За клопотанням Фонду працівники Фонду мають бути залучені Національним банком України до проведення інспекційних перевірок банків шляхом їх включення до складу інспекційної групи. Виконавча дирекція Фонду затверджує для працівника Фонду у складі інспекційної групи Національного банку України окремий план перевірки.

*{Частина шоста статті 32 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

7. У разі віднесення банку до категорії проблемних Фонд має право здійснювати позапланову перевірку такого банку з інших питань діяльності, ніж передбачені у частині першій цієї статті, перелік яких затверджується виконавчою дирекцією Фонду з метою збору інформації для підготовки проекту плану врегулювання проблемного банку у разі його віднесення до категорії неплатоспроможних, у тому числі з метою визначення вартості активів проблемного банку.

*{Абзац перший частини сьомої статті 32 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Фонд проводить оцінку активів проблемного банку за встановленою Фондом **методикою**.

*{Частину сьому статті 32 доповнено абзацом другим згідно із Законом № 629-VIII від 16.07.2015}*

Фонд має право доступу до всіх операцій проблемного банку та баз даних, у тому числі право отримувати копії документів та баз даних, а також отримує на регулярній основі, встановленій Фондом, інформацію та звітність.

*{Частину сьому статті 32 доповнено абзацом третім згідно із Законом № 629-VIII від*

16.07.2015}

Фонд та призначені ним працівники Фонду мають право вимагати в письмовій формі від керівників банку усунення порушень законодавства про систему гарантування вкладів фізичних осіб, виконання нормативно-правових актів Фонду, надання письмових пояснень з питань дотримання законодавства про систему гарантування вкладів фізичних осіб, нормативно-правових актів Фонду, а також запитувати інформацію про проведення банком будь-яких операцій.

*{Частину сьому статті 32 доповнено абзацом четвертим згідно із Законом № 629-VIII від 16.07.2015}*

Фонд та призначені ним працівники Фонду мають право отримувати інформацію від клієнтів, вкладників та інших кредиторів банку з метою виконання покладених на Фонд функцій та повноважень.

*{Частину сьому статті 32 доповнено абзацом п'ятим згідно із Законом № 629-VIII від 16.07.2015}*

*{Статтю 32 доповнено новою частиною згідно із Законом № 1586-VII від 04.07.2014}*

8. Фонд має право проводити моніторинг діяльності банку в порядку, встановленому Фондом.

*{Статтю 32 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

9. Фонд не пізніше наступного робочого дня після отримання рішення Національного банку України про віднесення банку до категорії проблемних призначає з числа працівників Фонду працівника (працівників), до повноважень якого (яких) належить проведення аналізу дотримання проблемним банком вимог Фонду щодо формування та ведення банком бази даних про вкладників та моніторингу його активних операцій.

*{Статтю 32 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

10. У разі виявлення порушень дотримання проблемним банком вимог Фонду щодо формування та ведення банками бази даних про вкладників банк зобов'язаний усунути виявлені порушення у строк, визначений Фондом, але не пізніше 20 днів (для банків, база даних про вкладників яких містить інформацію про більш як 500000 рахунків, - не пізніше 30 днів) з дня підписання довідки про виявлені порушення.

*{Статтю 32 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

11. Фонд проводить аналіз дотримання учасником Фонду вимог Фонду щодо формування та ведення бази даних про вкладників банку, а також моніторинг активних операцій банків, віднесених до категорії проблемних, протягом усього періоду перебування банку в категорії проблемних у порядку, визначеному Фондом.

*{Статтю 32 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

12. Банк, віднесений до категорії проблемних, зобов'язаний забезпечити визначеним працівникам Фонду доступ до інформації (документів, файлів) для проведення дій, передбачених цією статтею.

Доступ до інформації (документів, файлів) надається призначеним працівникам Фонду на підставі копії відповідного розпорядчого акта Фонду про призначення таких працівників.

*{Статтю 32 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

13. У разі невиконання банком, віднесеним до категорії проблемних, вимог, визначених цією статтею, у тому числі щодо приведення бази даних про вкладників у відповідність з вимогами Фонду, керівники банку несуть адміністративну та/або кримінальну відповідальність.

*{Статтю 32 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

14. Обмеження стосовно отримання інформації, що містить банківську таємницю, не поширюються на працівників Фонду, які в межах наданих цим Законом повноважень здійснюють перевірки.

15. Фонду забороняється надавати матеріали перевірки третім особам, крім випадків, передбачених законом, а також розголошувати інформацію про діяльність банку, що стала відома Фонду під час здійснення ним його повноважень, за виключенням випадків, передбачених законом.

**Стаття 33.** Адміністративно-господарські санкції щодо банків за порушення законодавства про гарантування вкладів фізичних осіб

1. У разі порушення банками законодавства про систему гарантування вкладів фізичних осіб Фонд адекватно вчиненому порушенню застосовує до банків адміністративно-господарські санкції у вигляді письмового застереження або штрафу чи розпорядження про усунення порушень законодавства про систему гарантування вкладів фізичних осіб.

*{Частина перша статті 33 в редакції Закону № 1586-VII від 04.07.2014}*

2. При накладенні Фондом на банк адміністративно-господарської санкції у вигляді штрафу застосовуються такі розміри санкцій:

1) неподання, несвоєчасне подання або подання недостовірних відомостей банком Фонду, якщо подання таких відомостей вимагається цим Законом та/або нормативно-правовими актами Фонду, -

тягне за собою накладення штрафу до 0,1 відсотка розміру зареєстрованого статутного капіталу банку;

2) порушення банком порядку ведення бази даних вкладників -

тягне за собою накладення штрафу до 0,1 відсотка розміру зареєстрованого статутного капіталу банку;

3) невиконання або несвоєчасне виконання банком рішень та/або нормативно-правових актів Фонду чи розпоряджень про усунення порушень -

тягне за собою накладення штрафу до 0,1 відсотка розміру зареєстрованого статутного капіталу банку.

Накладення Фондом на банк адміністративно-господарської санкції у вигляді штрафу не звільняє банк від обов'язку усунути порушення.

*{Частина друга статті 33 в редакції Закону № 1586-VII від 04.07.2014}*

3. За порушення, визначені частиною другою цієї статті, Фондом може бути застосована адміністративно-господарська санкція у вигляді розпорядження про усунення порушень вимог законодавства про систему гарантування вкладів фізичних осіб.

*{Частина третя статті 33 в редакції Законів № 5411-VI від 02.10.2012, № 1586-VII від 04.07.2014}*

4. Нормативно-правовими актами Фонду встановлюються критерії істотності порушень законодавства про систему гарантування вкладів фізичних осіб для диференціації адміністративно-господарських санкцій та їх розмірів, передбачених у частинах другій і третій цієї статті.

*{Статтю 33 доповнено новою частиною згідно із Законом № 1586-VII від 04.07.2014}*

5. Адміністративно-господарські санкції, передбачені частиною першою цієї статті, розглядаються та накладаються директором - розпорядником Фонду, його заступниками в порядку, встановленому нормативно-правовими актами Фонду.

*{Абзац перший частини п'ятої статті 33 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

За результатами розгляду справи про правопорушення направляється письмове застереження або приймається відповідна постанова чи розпорядження про усунення порушень законодавства про систему гарантування вкладів фізичних осіб.

*{Абзац другий частини п'ятої статті 33 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

Штраф може бути накладено на банк протягом шести місяців з дня виявлення правопорушення, але не пізніше ніж через три роки з дня його вчинення.

У разі вчинення банком двох або більше правопорушень штрафи накладаються за кожне вчинене правопорушення окремо.

Підставою для розгляду справи про правопорушення у сфері гарантування вкладів фізичних осіб є протокол.

Протоколи про правопорушення у сфері гарантування вкладів фізичних осіб мають право складати уповноважені працівники Фонду.

Справа про правопорушення розглядається не пізніше 15-го робочого дня з дня одержання Фондом протоколу про правопорушення у сфері гарантування вкладів фізичних осіб.

*{Абзац сьомий частини п'ятої статті 33 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

Штраф сплачується не пізніше 15 днів з дня вручення або отримання банком надісланої копії постанови Фонду про накладення штрафу.

Копія завіреного банком платіжного документа, що засвідчує факт сплати штрафу у повному обсязі, надсилається до Фонду.

У разі якщо штраф не сплачено у встановлені строки, примусове виконання постанови про накладення штрафу здійснюється державною виконавчою службою в порядку, встановленому Законом України "Про виконавче провадження".

Суми штрафів зараховуються до коштів Фонду.

Постанову у справі про правопорушення у сфері гарантування вкладів фізичних осіб може бути оскаржено до суду в порядку, встановленому законом.

## Розділ VII
## ТИМЧАСОВА АДМІНІСТРАЦІЯ

**Стаття 34.** Запровадження тимчасової адміністрації

1. Фонд розпочинає процедуру **виведення неплатоспроможного банку з ринку** не пізніше наступного робочого дня після офіційного отримання рішення Національного банку України про віднесення банку до категорії неплатоспроможних.

*{Частина перша статті 34 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Не пізніше наступного робочого дня після початку тимчасової адміністрації Фонд розміщує інформацію про запровадження тимчасової адміністрації в банку на своїй офіційній сторінці в мережі Інтернет і не пізніше ніж через 10 днів публікує її в газетах "Урядовий кур'єр" або "Голос України".

*{Частина друга статті 34 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

3. Виконавча дирекція Фонду не пізніше наступного робочого дня після офіційного отримання рішення Національного банку України про віднесення банку до категорії

неплатоспроможних працівників призначає з числа працівників Фонду уповноважену особу Фонду (кілька уповноважених осіб Фонду), якій Фонд делегує всі або частину своїх повноважень тимчасового адміністратора. Уповноважена особа Фонду повинна відповідати вимогам, встановленим Фондом. Рішення про призначення уповноваженої особи Фонду доводиться Фондом до головного офісу банку та до кожного відокремленого підрозділу банку негайно.

*{Абзац перший частини третьої статті 34 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Усі або частина повноважень Фонду, визначені цим Законом, можуть бути делеговані одній або кільком уповноваженим особам Фонду. У разі делегування повноважень кільком уповноваженим особам Фонд зазначає обсяг повноважень кожної з них. Здійснення повноважень органів управління банку може бути делеговано тільки одній уповноваженій особі.

*{Частину третю статті 34 доповнено абзацом другим згідно із Законом № 629-VIII від 16.07.2015}*

4. Тимчасова адміністрація запроваджується на строк, що не перевищує один місяць. У разі виведення неплатоспроможного банку з ринку у спосіб, передбачений **пунктами 3-5** частини другої статті 39 цього Закону, тимчасова адміністрація може бути продовжена на строк до одного місяця. У разі виведення неплатоспроможного банку з ринку у спосіб, передбачений **пунктами 1 і 2** частини другої статті 39 цього Закону, строк тимчасової адміністрації може бути продовжений на п'ять днів з припиненням не пізніше дня отримання рішення Національного банку України про відкликання банківської ліцензії та ліквідацію банку. Тимчасова адміністрація припиняється після виконання плану врегулювання або в інших випадках за рішенням виконавчої дирекції Фонду.

*{Частина четверта статті 34 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

5. Під час тимчасової адміністрації Фонд має повне і виняткове право управляти банком відповідно до цього Закону, нормативно-правових актів Фонду та вживати дії, передбачені планом врегулювання.

**Стаття 35.** Вимоги до уповноваженої особи Фонду

1. Тимчасовим адміністратором неплатоспроможного банку та ліквідатором банку (крім ліквідації банку за рішенням власників) є Фонд. Фонд може делегувати повноваження виконавчої дирекції Фонду частину або всі свої повноваження як тимчасового адміністратора або ліквідатора уповноваженій особі (уповноваженим особам) Фонду, яка має високі професійні та моральні якості, бездоганну ділову репутацію, повну вищу освіту в галузі економіки, фінансів чи права (не нижче кваліфікаційного рівня "спеціаліст") та професійний досвід, необхідний для виконання заходів у межах здійснення тимчасової адміністрації.

*{Частина перша статті 35 із змінами, внесеними згідно із Законами № 5411-VI від 02.10.2012, № 629-VIII від 16.07.2015}*

2. Уповноваженою особою Фонду не може бути особа, яка:

1) є кредитором, пов'язаною особою або учасником банку, щодо якого здійснюється тимчасова адміністрація;

2) має судимість, не погашену і не зняту у встановленому законом порядку, або якій повідомлено про підозру у вчиненні нею кримінального правопорушення;

*{Пункт 2 частини другої статті 35 із змінами, внесеними згідно із Законами № 245-VII від 16.05.2013, № 720-IX від 17.06.2020}*

3) має прострочені зобов'язання перед будь-яким банком;

*{Пункт 3 частини другої статті 35 в редакції Закону № 629-VIII від 16.07.2015}*

4) має конфлікт інтересів з банком, щодо якого здійснюється тимчасова адміністрація.

3. Конфліктом інтересів є наявність у відповідного працівника Фонду або його/її дружини (чоловіка), батька, матері, дітей, рідних братів і сестер особистих або ділових інтересів у відповідному банку, зокрема щодо:

*{Абзац перший частини третьої статті 35 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

1) заборгованості перед банком, заборгованості банку, володіння будь-якими майновими правами щодо майна банку;

2) відносин за попередні п'ять років з банком як його пов'язаною особою;

3) невиконання будь-яких зобов'язань по відношенню до будь-якого банку за останні п'ять років;

4) володіння майном, яке конкурує з майном банку;

5) перебування у трудових відносинах з банком за останні п'ять років;

6) інших інтересів, що можуть зашкодити неупередженому виконанню функцій у межах здійснення тимчасової адміністрації.

4. Виконавча дирекція Фонду зобов'язана переконатися у відсутності конфлікту інтересів працівника Фонду, який призначається уповноваженою особою Фонду. У разі виявлення обставин, що становлять конфлікт інтересів, після початку тимчасової адміністрації Фонд зобов'язаний негайно відсторонити відповідного працівника від виконання обов'язків уповноваженої особи Фонду.

*{Частина четверта статті 35 в редакції Закону № 2180-IX від 01.04.2022}*

5. Уповноважена особа Фонду не має права:

1) приймати прямо або опосередковано будь-які послуги, подарунки та інші цінності від осіб, заінтересованих у здійсненні будь-яких дій, пов'язаних з діяльністю банку, щодо якого здійснюється тимчасова адміністрація;

2) використовувати або дозволяти використовувати майно банку, щодо якого здійснюється тимчасова адміністрація, у своїх інтересах або в інтересах третіх осіб, крім випадків, установлених частиною десятою статті 36 цього Закону;

*{Пункт 2 частини п'ятої статті 35 зі змінами, внесеними згідно із Законами № 629-VIII від 16.07.2015, № 590-IX від 13.05.2020}*

3) давати обіцянки або приймати зобов'язання від імені Фонду без попереднього письмового дозволу;

4) користуватися будь-якими послугами банку, щодо якого здійснюється тимчасова адміністрація;

5) розголошувати банківську таємницю, інформацію, що становить комерційну таємницю, та іншу службову інформацію, якщо це не пов'язано із здійсненням тимчасової адміністрації.

6. Оплата праці уповноваженої особи Фонду здійснюється Фондом у межах затвердженого штатного розпису. Виконавча дирекція Фонду має право встановлювати додаткову винагороду уповноваженій особі Фонду в межах кошторису витрат Фонду на здійснення тимчасової адміністрації.

7. За рахунок коштів Фонду підлягає страхуванню життя та здоров'я уповноваженої особи Фонду в її інтересах.

*{Частина сьома статті 35 в редакції Закону № 1586-VII від 04.07.2014}*

8. Уповноважена особа Фонду у своїй діяльності підзвітна Фонду, який несе відповідальність за дії уповноваженої особи Фонду щодо процедури **виведення неплатоспроможного банку з ринку**.

**Стаття 36.** Наслідки запровадження тимчасової адміністрації

1. З дня початку процедури виведення Фондом банку з ринку призупиняються всі повноваження органів управління банку (загальних зборів, спостережної ради і правління (ради директорів) та органів контролю (ревізійної комісії та внутрішнього аудиту). Фонд набуває всі повноваження органів управління банку та органів контролю з дня початку тимчасової адміністрації і до її припинення.

*{Абзац перший частини першої статті 36 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Протягом 15 днів, але не пізніше строків, встановлених Фондом, керівники банку забезпечують передачу уповноваженій особі Фонду печаток і штампів, матеріальних та інших цінностей банку, а також протягом трьох днів - передачу печаток і штампів бухгалтерської та іншої документації банку. У разі ухилення від виконання зазначених обов'язків винні особи несуть відповідальність відповідно до закону.

*{Абзац другий частини першої статті 36 із змінами, внесеними згідно із Законами № 5411-VI від 02.10.2012, № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015}*

2. На період тимчасової адміністрації усі структурні підрозділи, органи та посадові особи банку підпорядковуються у своїй діяльності Фонду та уповноваженій особі Фонду в межах повноважень, встановлених цим Законом та делегованих Фондом, і діють у визначених Фондом/ уповноваженою особою Фонду межах та порядку.

*{Частина друга статті 36 в редакції Закону № 629-VIII від 16.07.2015}*

3. Правочини, вчинені органами управління та керівниками банку після початку процедури виведення Фондом банку з ринку, є нікчемними.

*{Частина третя статті 36 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

4. Початок тимчасової адміністрації або будь-які дії, що вживаються Фондом на виконання плану врегулювання, не є підставою для припинення, розірвання або невиконання договорів про надання послуг (виконання робіт), які забезпечують операційну та господарську діяльність банку, зокрема договорів з платіжними організаціями платіжних систем, про надання клірингових, розрахункових послуг, про оренду рухомого та нерухомого майна, про надання комунальних послуг, послуг зв'язку, охорони тощо.

Приймаючий/перехідний банк є правонаступником неплатоспроможного банку за такими переданими договорами з моменту відчуження/передачі майна (активів) та зобов'язань неплатоспроможного банку. Такі договори виконуються на тих самих умовах, на яких вони були укладені з банком до часу визнання його неплатоспроможним. У разі припинення, розірвання або порушення умов таких договорів з боку контрагентів банку Фонд, приймаючий/перехідний банк, неплатоспроможний банк мають право вимагати відшкодування збитків у порядку, встановленому законодавством України.

*{Частина четверта статті 36 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014, в редакції Закону № 590-IX від 13.05.2020}*

5. Під час тимчасової адміністрації не здійснюється:

1) задоволення вимог вкладників та інших кредиторів банку;

2) примусове стягнення майна (у тому числі коштів) банку, накладення арешту та звернення стягнення на майно (у тому числі кошти) банку (виконавче провадження щодо банку зупиняється, у тому числі знімаються арешти, накладені на майно (у тому числі на кошти) банку, а також скасовуються інші вжиті заходи примусового забезпечення виконання рішення щодо банку);

{*Пункт 2 частини п'ятої статті 36 в редакції Закону № 629-VIII від 16.07.2015*}

2$^1$) накладення нових обтяжень чи обмежень на майно (активи) (у тому числі арештів, заборони прийняття рішень про продаж або про вчинення інших дій);

{*Частину п'яту статті 36 доповнено пунктом 2$^1$ згідно із Законом № 590-IX від 13.05.2020*}

3) нарахування неустойки (штрафів, пені), інших фінансових (економічних) санкцій за невиконання чи неналежне виконання зобов'язань щодо сплати податків і зборів (обов'язкових платежів), а також зобов'язань перед кредиторами, у тому числі не застосовується індекс інфляції за весь час прострочення виконання грошових зобов'язань банку;

{*Пункт 3 частини п'ятої статті 36 в редакції Закону № 1586-VII від 04.07.2014*}

4) зарахування зустрічних вимог, у тому числі зустрічних однорідних вимог, припинення зобов'язань за домовленістю (згодою) сторін (у тому числі шляхом договірного списання), поєднанням боржника і кредитора в одній особі;

{*Пункт 4 частини п'ятої статті 36 в редакції Закону № 629-VIII від 16.07.2015*}

5) нарахування відсотків за зобов'язаннями банку перед вкладниками та кредиторами;

{*Частину п'яту статті 36 доповнено пунктом 5 згідно із Законом № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015*}

6) заміна кредитора у зобов'язанні банку на договірній основі, крім випадків передачі всього або частини майна (активів) та всіх або частини зобов'язань приймаючому або перехідному банку.

{*Частину п'яту статті 36 доповнено пунктом 6 згідно із Законом № 590-IX від 13.05.2020*}

6. Обмеження, встановлене пунктом 1 частини п'ятої цієї статті, не поширюється на зобов'язання банку щодо:

{*Абзац перший частини шостої статті 36 в редакції Закону № 5411-VI від 02.10.2012*}

1) виплати коштів за вкладами вкладників за договорами, строк яких закінчився, та за договорами банківського рахунку вкладників. Зазначені виплати здійснюються в межах суми відшкодування, що гарантується Фондом, в національній валюті України. Вклади в іноземній валюті перераховуються в національну валюту України за офіційним курсом гривні, встановленим Національним банком України до іноземних валют на кінець дня, що передує дню початку процедури виведення Фондом банку з ринку (у разі прийняття Національним банком України рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **статтею** 77 Закону України "Про банки і банківську діяльність", - станом на кінець дня, що передує дню початку процедури ліквідації Фондом банку);

{*Пункт 1 частини шостої статті 36 в редакції Законів № 1586-VII від 04.07.2014, № 590-IX від 13.05.2020*}

1$^1$) сплати регулярного збору до Фонду;

{*Частину шосту статті 36 доповнено пунктом 1$^1$ згідно із Законом № 1586-VII від 04.07.2014*}

2) витрат, пов'язаних із забезпеченням його господарської діяльності відповідно до частини четвертої цієї статті;

{*Пункт 2 частини шостої статті 36 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014*}

3) виплати заробітної плати, авторської винагороди, відшкодування шкоди, заподіяної життю та здоров'ю працівників банку;

4) виплати аліментів, пенсій, стипендій, інших соціальних, державних виплат, відшкодування шкоди, завданої каліцтвом, ушкодженням здоров'я або смертю тощо, що надійшли до банку з дня початку здійснення процедури виведення банку з ринку;

{*Частину шосту статті 36 доповнено пунктом 4 згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015*}

4$^1$) виплати допомоги по тимчасовій непрацездатності, допомоги по вагітності та пологах, що надійшли на спеціальний рахунок у банку, відкриття якого передбачено законодавством України для юридичної особи, починаючи з дня початку процедури виведення Фондом банку з ринку;

{*Частину шосту статті 36 доповнено пунктом 4$^1$ згідно із Законом № 629-VIII від 16.07.2015*}

5) виконання операцій з виплати переказу коштів фізичних та юридичних осіб, що надійшли на їхні рахунки з дня початку процедури виведення Фондом банку з ринку;

{*Частину шосту статті 36 доповнено пунктом 5 згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015*}

6) здійснення купівлі-продажу валюти фізичними та юридичними особами для погашення ними зобов'язань за кредитними договорами, виконання вимог, встановлених законодавством, для обов'язкового продажу валюти;

{*Частину шосту статті 36 доповнено пунктом 6 згідно із Законом № 1586-VII від 04.07.2014*}

7) обов'язкового звернення стягнення на об'єкт довірчої власності або передання такого об'єкта за актом приймання-передачі довірчому засновнику у випадках, встановлених законом.

*{Частину шосту статті 36 доповнено пунктом 7 згідно із Законом № 132-IX від 20.09.2019}*

Зобов'язання банку, передбачені пунктами 2, 6 частини шостої цієї статті, виконуються банком у межах його фінансових можливостей у порядку, встановленому нормативно-правовими актами Фонду.

*{Абзац дев'ятий частини шостої статті 36 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015}*

*{Абзац десятий частини шостої статті 36 виключено на підставі Закону № 629-VIII від 16.07.2015}*

7. Виконавча дирекція Фонду має право прийняти рішення про незастосування обмежень, встановлених **пунктами 1 і 5** частини п'ятої цієї статті, до зобов'язань (крім зобов'язань перед пов'язаними з банком особами) системно важливого банку, віднесеного Національним банком України до категорії неплатоспроможних (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону).

У разі якщо інформація про проведені операції свідчить про перевищення фактичних залишків на рахунках клієнтів або встановлених лімітів після дати відчуження/передачі, приймаючий/перехідний банк набуває право вимоги до відповідного клієнта, а клієнт набуває зобов'язання повернути визначену банком суму коштів.

У разі якщо інформація про проведені операції свідчить про те, що зобов'язання приймаючого/перехідного банку перед клієнтом після дати відчуження/передачі є більшими, ніж фактично передані залишки на рахунках, приймаючий/перехідний банк набуває зобов'язання повернути відповідну суму коштів клієнту, а клієнт набуває право вимоги до приймаючого/перехідного банку на таку суму коштів.

*{Статтю 36 доповнено новою частиною згідно із Законом № 590-IX від 13.05.2020}*

8. Кошти, що надійшли протягом дії тимчасової адміністрації до неплатоспроможного банку, у разі неможливості встановити належного отримувача мають бути повернуті банку, що обслуговує платника, із зазначенням причини повернення у порядку, встановленому законодавством.

*{Статтю 36 доповнено новою частиною згідно із Законом № 1586-VII від 04.07.2014}*

9. Дія Кодексу України з процедур банкрутства на банки не поширюється.

*{Частина дев'ята статті 36 в редакції Закону № 590-IX від 13.05.2020}*

10. Протягом періоду виведення банку з ринку та/або ліквідації банку Фонд має право користуватися технічними можливостями такого банку (технічними засобами, серверами, кол-центром, приміщенням тощо) з метою мінімізації своїх витрат.

*{Статтю 36 доповнено частиною згідно із Законом № 629-VIII від 16.07.2015}*

11. Визнання банку неплатоспроможним є підставою для зупинення на строк запровадження тимчасової адміністрації та/або до дня втрати перехідним банком статусу перехідного банку внесення змін до системи депозитарного обліку цінних паперів неплатоспроможного банку та/або перехідного банку та/або відповідного власника цінних паперів неплатоспроможного банку, крім дій, які здійснюються на вимогу Фонду відповідно до цього Закону. На вимогу Фонду з метою виконання плану врегулювання внесення необхідних змін до системи депозитарного обліку цінних паперів такого банку здійснюється відповідними депозитарними установами невідкладно (негайно).

*{Статтю 36 доповнено частиною одинадцятою згідно із Законом № 590-IX від 13.05.2020; в редакції Закону № 1588-IX від 30.06.2021}*

12. Відчуження або передача всього або частини майна (активів) та всіх або частини зобов'язань неплатоспроможного банку на користь приймаючого/перехідного банку після затвердження плану врегулювання, що передбачає виведення неплатоспроможного банку з ринку у спосіб, визначений **пунктами 2, 3 або 4** частини другої статті 39 цього Закону, здійснюється відповідно до **статей 40 і 42** цього Закону з такими особливостями:

1) дозволи, погодження, згоди, отримання яких передбачено законодавством та які є необхідними у процесі відчуження або передачі майна (активів) на користь приймаючої сторони, крім передбачених цим Законом, вважаються отриманими/наданими;

2) вимоги щодо обов'язкового нотаріального посвідчення правочинів з майном (активами) неплатоспроможного банку не застосовуються;

3) положення законодавства щодо обмеження строків внесення інформації до державних реєстрів про права на майно (актив) неплатоспроможного банку (у тому числі щодо накладених обтяжень на таке майно (активи) не застосовуються;

4) положення законодавства про переважне право на придбання частки не застосовуються;

5) приймаючий/перехідний банк, якому відчужені або передані майно (активи) та зобов'язання неплатоспроможного банку, має провести верифікацію та ідентифікацію осіб, майно (активи) та зобов'язання яких передані з неплатоспроможного банку, протягом 180 днів з дня передачі;

6) майно (активи), включене до реєстрів на передачу, але не було відчужене або передане на користь приймаючого/перехідного банку на підставі договору (договорів) (змішаного договору/ акта (актів) приймання-передачі), може передаватися на підставі договору (договорів) в управління приймаючому/перехідному банку. У такому разі таке майно (активи) не включається до ліквідаційної маси неплатоспроможного банку протягом строку, визначеного таким (такими) договором (договорами). Приймаючий/перехідний банк, Фонд і неплатоспроможний банк вживають заходів для усунення причин, що перешкоджають відчуженню або передачі майна, та

після їх усунення відчужують або передають майно (активи) на користь приймаючого/ перехідного банку відповідно до договору (договорів) (змішаного договору), укладеного відповідно до **статті 40** цього Закону, або акта (актів) приймання-передачі;

7) отримання приймаючим/перехідним банком дозволу Антимонопольного комітету України на концентрацію у разі передачі майна (активів) та зобов'язань не вимагається.

Положення цієї частини не застосовуються у разі відчуження в подальшому приймаючим/ перехідним банком переданого майна (активів).

*{Статтю 36 доповнено частиною дванадцятою згідно із Законом № 590-IX від 13.05.2020}*

13. Обмеження, встановлені частиною третьою, а також **пунктами 1, 2 та 4** частини п'ятої цієї статті, не поширюються на процедуру проведення ліквідаційного неттінгу в порядку, встановленому **статтею 54¹** цього Закону.

*{Статтю 36 доповнено частиною тринадцятою згідно із Законом № 738-IX від 19.06.2020}*

**Стаття 37.** Повноваження Фонду

*{Назва статті 37 в редакції Закону № 1588-IX від 30.06.2021}*

*{Частину першу статті 37 виключено на підставі Закону № 629-VIII від 16.07.2015}*

2. Фонд безпосередньо або уповноважена особа Фонду в разі делегування їй всіх або частини повноважень Фонду має право:

*{Абзац перший частини другої статті 37 в редакції Законів № 629-VIII від 16.07.2015, № 1588-IX від 30.06.2021}*

1) вчиняти будь-які дії та приймати рішення, що належали до повноважень органів управління і органів контролю банку;

2) укладати від імені банку будь-які договори (вчиняти правочини), необхідні для забезпечення операційної діяльності банку, здійснення ним банківських та інших господарських операцій, з урахуванням вимог, встановлених цим Законом;

3) продовжувати, обмежувати або припиняти здійснення банком будь-яких операцій. Фонд безпосередньо або уповноважена особа Фонду не має права обмежувати або припиняти здійснення:

а) банком операцій у процедурі ліквідаційного неттінгу, що здійснюється в порядку, встановленому **статтею 54¹** цього Закону;

б) операцій, спрямованих на виконання нетто-зобов'язання, визначеного відповідно до **статті 54¹** цього Закону, шляхом звернення стягнення на предмет забезпечення, переданий банком на виконання зобов'язань за такою угодою;

*{Пункт 3 частини другої статті 37 в редакції Законів № 361-IX від 06.12.2019, № 738-IX від 19.06.2020}*

4) повідомляти сторони за договорами, зазначеними у **частині другій** статті 38 цього Закону, про нікчемність цих договорів та вчиняти дії щодо застосування наслідків нікчемності договорів;

*{Пункт 4 частини другої статті 37 в редакції Закону № 1586-VII від 04.07.2014}*

5) заявляти від імені банку позови майнового та немайнового характеру до суду, у тому числі позови про винесення рішення, відповідно до якого боржник банку має надати інформацію про свої активи;

6) звертатися до правоохоронних органів із заявою про вчинення кримінального правопорушення в разі виявлення фактів шахрайства та інших протиправних дій працівників банку та/або будь-яких інших осіб стосовно банку та визнання банку потерпілим, а також заявляти від імені та в інтересах банку цивільні позови про відшкодування шкоди (збитків), заподіяної банку;

*{Пункт 6 частини другої статті 37 із змінами, внесеними згідно із Законом № 245-VII від 16.05.2013; в редакції Закону № 1588-IX від 30.06.2021}*

7) залучати до роботи у процесі здійснення тимчасової адміністрації за рахунок банку на підставі цивільно-правових договорів інших осіб (радників, аудиторів, юристів, оцінювачів та інших) у межах кошторису витрат, затвердженого виконавчою дирекцією Фонду. Такі договори можуть бути розірвані в односторонньому порядку у день повідомлення Фондом другої сторони про таке розірвання з наслідками, встановленими цивільним законодавством;

*{Пункт 7 частини другої статті 37 в редакції Закону № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

8) призначати проведення аудиторських перевірок та юридичних експертиз з питань діяльності банку за рахунок банку в межах кошторису витрат, затвердженого виконавчою дирекцією Фонду;

9) приймати на роботу, звільняти з роботи чи переводити на іншу посаду будь-кого з керівників чи працівників банку, переглядати їх службові обов'язки, змінювати розмір оплати їх праці з додержанням вимог законодавства України про працю;

*{Пункт 9 частини другої статті 37 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

10) зупиняти розподіл капіталу банку чи виплату дивідендів у будь-якій формі;

11) вчиняти дії, спрямовані на виконання плану врегулювання, відповідно до цього Закону та нормативно-правових актів Фонду.

3. Уповноважена особа Фонду діє від імені банку в межах повноважень Фонду.

Уповноважена особа Фонду має право:

1) призначати на посаду, звільняти з посади чи переводити на іншу посаду будь-кого з керівників чи працівників банку, переглядати їхні службові обов'язки, змінювати розмір оплати праці з додержанням вимог законодавства про працю;

2) здійснювати інші повноваження, встановлені цим Законом, та делеговані їй Фондом.

*{Статтю 37 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

4. На виконання своїх повноважень уповноважена особа Фонду:

1) діє без довіреності від імені банку, має право підпису будь-яких договорів (правочинів), інших документів від імені банку;

2) видає накази та розпорядження, дає доручення, обов'язкові до виконання працівниками банку;

3) звітує за результатами здійснення тимчасової адміністрації банку перед виконавчою дирекцією Фонду.

5. Фонд безпосередньо або уповноважена особа Фонду у разі делегування їй повноважень зобов'язаний подавати до Кредитного реєстру Національного банку України інформацію в порядку та обсягах, визначених **статтею 67¹** Закону України "Про банки і банківську діяльність", про кредитні операції банків, щодо яких Національним банком України прийнято рішення про віднесення їх до категорії неплатоспроможних або про відкликання банківської ліцензії та ліквідацію, та на постійній основі оновлювати її, а також оновлювати на постійній основі інформацію щодо погашення боргу позичальника, яка міститься у бюро кредитних історій, до якого раніше передавалася інформація банком (за наявності підтвердження такої передачі).

*{Статтю 37 доповнено новою частиною згідно із Законом № 2277-VIII від 06.02.2018}*

6. Будь-яка особа, яка навмисно перешкоджає доступу Фонду та уповноваженої особи Фонду до банку, його приміщень, засобів зв'язку, операційних систем, активів, книг, записів, документів, несе відповідальність за такі протиправні дії згідно із законодавством України. Правоохоронні органи зобов'язані надавати допомогу Фонду у процесі здійснення тимчасової адміністрації банку на підставі письмового звернення уповноваженої особи Фонду.

*{Частина статті 37 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

7. Вжиття будь-якою особою дій, що перешкоджають доступу Фонду та уповноваженої особи Фонду до банку та/або унеможливлюють здійснення тимчасової адміністрації, є підставою для звернення Фонду до Національного банку України з пропозицією про відкликання банківської ліцензії та ліквідацію банку.

*{Частина статті 37 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 38.** Заходи щодо забезпечення збереження активів банку, запобігання втрати майна та збитків банку

1. Фонд зобов'язаний забезпечити збереження активів та документації банку.

Банк протягом дії тимчасової адміністрації та/або процедури ліквідації з метою мінімізації своїх витрат зобов'язаний використовувати технічні можливості Фонду (технічні засоби, сервери, кол-центр, приміщення тощо), за умови наявності у Фонду вільних ресурсів.

*{Частину першу статті 38 доповнено абзацом другим згідно із Законом № 2180-IX від 01.04.2022}*

*{Частина перша статті 38 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Протягом дії тимчасової адміністрації та/або процедури ліквідації Фонд здійснює перевірку правочинів, вчинених (укладених) банком протягом одного року, а правочинів, вчинених (укладених) банком з пов'язаними особами та/або в інтересах пов'язаних осіб, та/або на їх користь, - протягом трьох років з дня запровадження тимчасової адміністрації неплатоспроможного банку або процедури ліквідації банку, щодо якого було прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", на предмет виявлення правочинів, що є нікчемними з підстав, визначених частиною третьою цієї статті.

*{Частина друга статті 38 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

3. Правочини банку, у тому числі укладені з пов'язаними з банком особами, в якому Фондом здійснюється тимчасова адміністрація та/або процедура ліквідації, є нікчемними з таких підстав:

1) банк безоплатно здійснив відчуження майна, узяв на себе зобов'язання без встановлення обов'язку контрагента щодо вчинення відповідних майнових дій, відмовився від власних майнових вимог;

2) банк до дня визнання банку неплатоспроможним узяв на себе зобов'язання, внаслідок чого він став неплатоспроможним або виконання його грошових зобов'язань перед іншими кредиторами повністю чи частково стало неможливим;

3) банк уклав угоди щодо відчуження чи передачі у користування або придбання чи отримання у користування майна, оплати результатів робіт та/або надання послуг на умовах, які не є поточними ринковими умовами, або зобов'язаний здійснити такі дії в майбутньому відповідно до умов угоди.

Поточними ринковими умовами не вважаються:

прийняття меншого забезпечення виконання зобов'язань, ніж вимагається від інших клієнтів;

придбання в особи майна низької якості чи за завищеною ціною;

здійснення інвестиції в цінні папери суб'єкта, яку банк не здійснив би в інше підприємство;

оплата товарів і послуг, наданих особою за цінами, вищими, або за таких обставин, коли такі самі товари і послуги іншої особи взагалі не були б придбані;

продаж особі майна за вартістю, що є нижчою, ніж та, яку банк отримав би від продажу такого майна іншій особі;

нарахування відсотків та комісійних за послугами, наданими банком особам, які є меншими, ніж звичайні;

нарахування відсотків за вкладами (депозитами), залученими банком від осіб, які є більшими, ніж звичайні;

4) банк здійснив оплату кредитору або виконав вимоги кредитора, строк яких на дату виконання правочину не настав, що спричиняє або може спричинити надання переваг одному кредитору перед іншими в частині задоволення вимог, або прийняв майно в рахунок виконання грошових вимог у день, коли сума вимог кредиторів банку перевищувала вартість майна;

5) банк узяв на себе зобов'язання (застава, порука, гарантія, притримання, факторинг тощо), умови якого передбачають платіж чи передачу майна банку як забезпечення виконання грошових вимог до банку та/або зобов'язань третіх осіб, у порядку, іншому, ніж здійснення кредитних операцій відповідно до **Закону України** "Про банки і банківську діяльність".

Положення цього пункту не застосовуються до майна, переданого:

як забезпечення виконання зобов'язань перед Національним банком України;

для забезпечення здійснення платежів та розрахунків за угодами, укладеними з платіжними системами або операторами таких систем;

6) банк уклав кредитні договори, умови яких передбачають надання клієнтам переваг (пільг), прямо не не встановлених для них законодавством чи внутрішніми документами банку;

7) банк уклав правочини, умови яких передбачають платіж чи передачу майна банку з метою надання окремим кредиторам переваг (пільг), кошти для оплати яких надійшли з рахунків, відкритих у цьому самому банку, у тому числі за правочинами про відступлення права вимоги за кредитними договорами та договорами забезпечення;

8) банк уклав правочини з пов'язаною з банком особою або в інтересах пов'язаної з банком особи, або на користь пов'язаної з банком особи з порушенням вимог законодавства, у тому числі недійсність якого встановлена **частиною шостою** статті 52 Закону України "Про банки і банківську діяльність";

9) банк уклав (переоформив) правочини, що призвели до збільшення витрат, понесених Фондом у зв'язку із здійсненням тимчасової адміністрації та/або процедури ліквідації банку, з порушенням норм законодавства, у тому числі нормативно-правових актів Національного банку України.

*{Частина третя статті 38 в редакції Закону № 1588-IX від 30.06.2021}*

4. Фонд:

*{Абзац перший частини четвертої статті 38 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

1) протягом дії тимчасової адміністрації, а також протягом ліквідації повідомляє сторони за договорами, зазначеними у **частині другій** статті 38 цього Закону, про нікчемність цих договорів та вчиняє дії щодо застосування наслідків нікчемності договорів;

2) вживає заходів до витребування (повернення) майна (коштів) банку, переданого за такими договорами;

3) має право вимагати відшкодування збитків, спричинених їх укладенням.

5. У разі отримання повідомлення Фонду про нікчемність правочину на підставах, передбачених частиною третьою цієї статті, сторона правочину зобов'язана повернути банку майно (кошти), яке (які) вона отримала від такого банку, а у разі неможливості повернути майно в натурі - відшкодувати його вартість у грошових одиницях за ринковими цінами, що існували на момент вчинення правочину. Такий нікчемний договір не може бути використаний для визначення ринкової ціни.

Майно (кошти), отримане (отримані) стороною правочину - пов'язаною з банком особою за нікчемними правочинами, є предметом обтяження. Обтяження речових прав за таким майном (коштами) підлягають державній реєстрації Фондом у встановленому законом порядку до настання обставин, зазначених в абзаці першому цієї частини, або до визнання нікчемного правочину дійсним у порядку, встановленому законом.

*{Частина п'ята статті 38 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

6. Фонд вживає передбачені законодавством заходи щодо стягнення простроченої заборгованості позичальників та інших боржників банку.

*{Частина шоста статті 38 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

7. Фонд зобов'язаний забезпечити проведення інвентаризації банківських активів і зобов'язань. Під час інвентаризації перевіряється наявність і відповідність балансової вартості фактичній вартості таких активів та зобов'язань неплатоспроможного банку:

*{Абзац перший частини сьомої статті 38 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

1) готівки у касі та матеріальних цінностей у сховищі банку;

2) заборгованості за кредитами перед банком, у тому числі наявності забезпечення виконання зобов'язань за кредитними договорами;

3) заборгованості за цінними паперами перед банком;

4) заборгованості за зобов'язаннями банку перед кредиторами;

5) вимог банку до клієнта зі списаною безнадійною заборгованістю (у тому числі наявності забезпечення виконання зобов'язань за такою заборгованістю).

8. Фонд припиняє протягом тимчасової адміністрації у банку здійснення операцій за правочином (у тому числі договором), вчиненим (укладеним) банком з окремим кредитором чи іншою особою, якщо такий правочин (у тому числі договір) спричиняє або може спричинити надання переваги одному кредитору перед іншим в частині задоволення вимог, зокрема за наявності однієї з таких умов:

1) правочин (у тому числі договір), спрямований на забезпечення виконання зобов'язань банку чи третьої особи перед окремим кредитором, вчинений (укладений) до дня запровадження тимчасової адміністрації у банку;

2) правочин (у тому числі договір) спричиняє чи може спричинити зміну черговості задоволення вимог кредиторів за зобов'язаннями, що виникли до дня запровадження тимчасової адміністрації у банку;

3) правочин (у тому числі договір) спричиняє чи може спричинити задоволення вимог, строк яких на дату виконання правочину (в тому числі договору) не настав, одних кредиторів за наявності невиконаних в установлені строки зобов'язань перед іншими кредиторами;

4) правочин (у тому числі договір) призвів до того, що окремому кредитору надано чи може бути надано перевагу в задоволенні вимог, що існували до запровадження тимчасової адміністрації, порівняно з умовами розрахунку з кредитором у черговості, визначеній цим Законом.

Припинення здійснення операцій застосовується до правочину (у тому числі договору), визначеного у цій частині, якщо він укладений протягом одного року до дня запровадження тимчасової адміністрації у банку.

Положення цієї частини не поширюються на правочини, зобов'язання за якими припиняються у процедурі ліквідаційного неттінгу, що здійснюється в порядку, встановленому **статтею 54¹** цього Закону.

*{Частину восьму статті 38 доповнено абзацом сьомим згідно із Законом № 738-IX від 19.06.2020}*

*{Статтю 38 доповнено частиною восьмою згідно із Законом № 629-VIII від 16.07.2015}*

9. З метою збереження майна (активів) банку Фонд має право здійснити продаж відокремлених підрозділів банку (у тому числі майна банку, розташованого за місцезнаходженням такого відокремленого підрозділу).

*{Статтю 38 доповнено частиною дев'ятою згідно із Законом № 629-VIII від 16.07.2015}*

10. Усі або частина повноважень Фонду, визначених цією статтею, можуть бути делеговані Фондом уповноваженій особі Фонду.

*{Статтю 38 доповнено частиною десятою згідно із Законом № 629-VIII від 16.07.2015}*

11. Фонд самостійно або шляхом залучення третіх осіб (за договором) має право проводити дослідження фінансово-господарської діяльності банку, в якому здійснюється тимчасова адміністрація або ліквідаційна процедура, з метою визначення розміру завданої банку шкоди (збитку) пов'язаними з таким банком особами та іншими особами, рішеннями, діями або бездіяльністю яких завдано шкоди (збитку) банку та/або якими прямо чи опосередковано отримано майнову вигоду.

*{Статтю 38 доповнено частиною одинадцятою згідно із Законом № 1588-IX від 30.06.2021}*

12. Правочини (у тому числі договори), укладені Фондом або уповноваженою особою Фонду (у разі делегування їй відповідних повноважень) під час тимчасової адміністрації або ліквідації, не є нікчемними з підстав, визначених **частиною третьою** цієї статті.

*{Статтю 38 доповнено частиною дванадцятою згідно із Законом № 1588-IX від 30.06.2021}*

*{Текст статті 38 в редакції Закону № 1586-VII від 04.07.2014}*

**Стаття 39.** План врегулювання

1. Протягом 30 днів з дня початку тимчасової адміністрації виконавча дирекція Фонду затверджує план врегулювання з обов'язковим дотриманням принципу найменших витрат для Фонду.

*{Частина перша статті 39 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. План врегулювання складається відповідно до вимог, встановлених актами Фонду. У плані врегулювання на підставі оцінки фінансового і майнового стану банку визначаються заходи щодо **виведення неплатоспроможного банку** з ринку в один із таких способів:

*{Абзац перший частини другої статті 39 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

1) ліквідація банку з відшкодуванням з боку Фонду коштів за вкладами фізичних осіб у порядку, встановленому цим Законом;

2) ліквідація банку з відчуженням у процесі ліквідації всіх або частини його активів і зобов'язань на користь приймаючого банку;

3) відчуження всіх або частини активів і зобов'язань неплатоспроможного банку на користь приймаючого банку з відкликанням банківської ліцензії неплатоспроможного банку та подальшою його ліквідацією;

4) створення та продаж інвестору перехідного банку з передачею йому активів і зобов'язань неплатоспроможного банку і подальшою ліквідацією неплатоспроможного банку;

5) продаж неплатоспроможного банку інвестору.

Переможцями відкритого конкурсу щодо виведення неплатоспроможного банку з ринку в один із способів, визначених пунктами 4 і 5 цієї частини, можуть бути об'єднання інвесторів.

*{Частину другу статті 39 доповнено абзацом згідно із Законом № 629-VIII від 16.07.2015}*

Виконавча дирекція Фонду зобов'язана не пізніше трьох робочих днів з дня початку процедури виведення банку з ринку прийняти рішення про відповідність/невідповідність банку, який віднесений до категорії неплатоспроможних, критеріям, встановленим нормативно-правовими актами Фонду, за результатами аналізу звітності такого банку, наданої Національним банком України.

*{Частину другу статті 39 доповнено абзацом згідно із Законом № 629-VIII від 16.07.2015}*

У разі відповідності банку таким критеріям виконавча дирекція Фонду затверджує план врегулювання, в якому зазначено, що найменш витратним способом виведення банку з ринку є спосіб, передбачений пунктом 1 цієї частини, та подає Національному банку України пропозиції щодо відкликання банківської ліцензії та ліквідації такого банку. У такому разі тимчасова адміністрація припиняється у день отримання рішення Національного банку України про відкликання банківської ліцензії та ліквідацію банку.

*{Частину другу статті 39 доповнено абзацом згідно із Законом № 629-VIII від 16.07.2015}*

Виконавча дирекція Фонду приймає рішення про ліквідацію неплатоспроможного банку в разі відповідності банку одному з критеріїв, встановлених нормативно-правовим актом Фонду.

*{Частину другу статті 39 доповнено абзацом згідно із Законом № 629-VIII від 16.07.2015}*

3. План врегулювання має, зокрема, містити:

1) порівняльний аналіз та обґрунтування витрат, пов'язаних із здійсненням заходів, передбачених частиною другою цієї статті, з точки зору обрання найменш витратного для Фонду способу виведення неплатоспроможного банку з ринку. Такий аналіз здійснюється відповідно до методики, визначеної виконавчою дирекцією Фонду;

2) спосіб, порядок та строки врегулювання відносин з учасниками, вкладниками та іншими кредиторами банку;

3) умови відкритого конкурсу щодо визначення приймаючого банку та/або інвестора;

*{Пункт 3 частини третьої статті 39 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

4) умови та строки виконання ліквідаційної процедури банку.

*{Пункт 4 частини третьої статті 39 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

4. Після затвердження плану врегулювання тимчасова адміністрація та/або ліквідація банку здійснюються на підставі і на виконання плану врегулювання.

Виконавча дирекція Фонду у будь-який час має право вносити зміни та доповнення до плану врегулювання. Виконавча дирекція Фонду зобов'язана внести зміни до плану врегулювання в частині зміни способу виведення неплатоспроможного банку з ринку, якщо реалізація обраного способу виведення банку з ринку виявилася неможливою протягом строків, визначених планом врегулювання.

Кабінет Міністрів України, Міністерство фінансів України, Міністерство юстиції України, інші міністерства, державні установи та підпорядковані їм підприємства і організації, Національна комісія з цінних паперів та фондового ринку, Центральний депозитарій цінних паперів, Національний банк України та Фонд зобов'язані координувати свою діяльність, здійснювати відповідні для забезпечення належної комунікації між собою, іншими органами державної влади та установами (у тому числі учасниками депозитарної системи України), своєчасно підготувати документи та прийняти рішення, необхідні для забезпечення виконання вимог цього Закону, в межах своїх повноважень та з метою виконання плану врегулювання, у тому числі у разі участі держави у виведенні неплатоспроможного банку з ринку, Фонд має право здійснювати всі необхідні дії для виконання плану врегулювання, незважаючи на положення інших законів та кодексів.

*{Частину четверту статті 39 доповнено абзацом третім згідно із Законом № 590-IX від 13.05.2020}*

5. Фонд зобов'язаний подати план врегулювання та зміни до нього до Національного банку України не пізніше семи днів з дати затвердження.

6. Незалежно від положень інших законів, нормативно-правових актів, статутів, договорів чи проспектів емісії акцій Фонд здійснює свої повноваження та вживає необхідних заходів для виконання плану врегулювання, у тому числі за участю держави без повідомлення та отримання згоди учасників, боржників, кредиторів, контрагентів неплатоспроможного або приймаючого/ перехідного банку за будь-якими договорами.

Учасники, кредитори банку, контрагенти банку за будь-якими договорами не мають права вимагати припинення або дострокового виконання зобов'язань банку та/або відшкодування їм збитків, понесених внаслідок виконання плану врегулювання.

*{Частина шоста статті 39 в редакції Закону № 590-IX від 13.05.2020}*

7. У разі делегування частини або всіх повноважень Фонду як тимчасового адміністратора уповноваженій особі Фонду (кільком уповноваженим особам Фонду) така особа подає виконавчій дирекції Фонду письмовий звіт про виконання делегованих їй повноважень не пізніше наступного робочого дня після закінчення строку, на який була запроваджена тимчасова адміністрація.

Виконавча дирекція Фонду затверджує письмовий звіт про виконання плану врегулювання за період тимчасової адміністрації не пізніше семи робочих днів після закінчення строку, на який була запроваджена тимчасова адміністрація.

*{Частина сьома статті 39 в редакції Закону № 629-VIII від 16.07.2015}*

8. З метою підготовки плану врегулювання неплатоспроможного банку, у тому числі для розрахунку потенційно можливих грошових коштів, що можуть бути отримані від реалізації майна неплатоспроможного банку, Фонд та/або уповноважена особа Фонду має право залучати суб'єктів оціночної діяльності, аудиторів, інших осіб за рахунок коштів банку або Фонду.

*{Статтю 39 доповнено частиною восьмою згідно із Законом № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

*{Частину дев'яту статті 39 виключено на підставі Закону № 590-IX від 13.05.2020}*

10. У разі виведення Фондом неплатоспроможного банку з ринку в один із способів, передбачених пунктами 3-5 частини другої цієї статті, приймаючий банк або інвестор (об'єднання інвесторів) вважається добросовісним набувачем, за умови виконання ним умов цього Закону.

*{Статтю 39 доповнено частиною десятою згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 39¹.** Особливості проведення Фондом відкритого конкурсу з метою виведення неплатоспроможного банку з ринку

1. Порядок проведення Фондом відкритого конкурсу з метою виведення неплатоспроможного банку з ринку в один із способів, визначених **пунктами 2-5** частини другої статті 39 цього Закону, встановлюється нормативно-правовими актами Фонду.

*{Частина перша статті 39¹ із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

2. Для участі у відкритому конкурсі учасник конкурсу вносить на рахунок Фонду гарантійний внесок у розмірі, визначеному виконавчою дирекцією Фонду умовами конкурсу для конкретного банку.

3. Фонд повертає учаснику відкритого конкурсу, якого визнано переможцем, гарантійний внесок або його залишок після виконання ним умов відповідного договору (договору переведення боргу та договору про відступлення права вимоги, договору купівлі-продажу акцій, договору купівлі-продажу акцій перехідного банку). Фонд може зараховувати гарантійний внесок переможця в рахунок виконання цих договорів.

*{Частина третя статті 39¹ в редакції Закону № 629-VIII від 16.07.2015}*

4. Фонд повертає учасникам відкритого конкурсу, не визнаним переможцям, гарантійні внески протягом трьох робочих днів з дня визначення Фондом переможця конкурсу.

5. Подання на відкритий конкурс однієї пропозиції щодо способу виведення неплатоспроможного банку з ринку не є підставою для визнання відкритого конкурсу таким, що не відбувся.

6. У разі неукладення учасником відкритого конкурсу, якого визнано переможцем, з його вини договору переведення боргу та/або договору про відступлення права вимоги, договору купівлі-продажу акцій, договору купівлі-продажу акцій перехідного банку або невиконання ним умов укладеного договору гарантійний внесок не повертається

*{Статтю 39¹ доповнено частиною шостою згідно із Законом № 629-VIII від 16.07.2015}*

7. Відкритий конкурс проводиться серед банків, а також попередньо кваліфікованих осіб, включених до переліку, який формується Національним банком України, у порядку, встановленому Національним банком України за погодженням з Фондом.

*{Статтю 39¹ доповнено частиною сьомою згідно із Законом № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

*{Закон доповнено статтею 39¹ згідно із Законом № 1586-VII від 04.07.2014}*

**Стаття 40.** Особливості передачі майна (активів) та зобов'язань неплатоспроможного банку

*{Назва статті 40 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

1. Фонд відповідно до плану врегулювання забезпечує здійснення відчуження всіх або частини активів і всіх або частини зобов'язань неплатоспроможного банку із збереженням черговості згідно із **статтею 52** цього Закону на користь приймаючого банку згідно з умовами, визначеними цією статтею та нормативно-правовими актами Фонду, за наявності позитивного висновку Національного банку України щодо фінансового стану приймаючого банку та його спроможності виконати зобов'язання перед вкладниками і кредиторами.

*{Абзац перший частини першої статті 40 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Національний банк України надає висновок, зазначений у цій частині, не пізніше ніж через

три дні з дня отримання подання Фонду, підготовленого відповідно до вимог Національного банку України.

Приймаючим банком (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону) не може бути банк, учасниками якого є особами, пов'язаними з банком, активи та зобов'язання якого передаються приймаючому банку.

*{Частину першу статті 40 доповнено абзацом третім згідно із Законом № 629-VIII від 16.07.2015}*

2. Фонд складає реєстр активів і зобов'язань, що підлягають відчуженню. Зобов'язання залишаються при їх передачі у валюті зобов'язання на дату укладення договору, визначеного цією статтею. Під час відчуження зобов'язань Фонд має забезпечити неупереджене ставлення до всіх кредиторів неплатоспроможного банку, дотримуючись черговості, передбаченої **статтею 52** цього Закону, при цьому зобов'язання банку за вкладами фізичних осіб, гарантованими Фондом, мають вищий пріоритет і не можуть бути відчужені частково.

*{Частина друга статті 40 в редакції Закону № 1586-VII від 04.07.2014}*

3. Приймаючий банк, визначений за результатами проведення відкритого конкурсу (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону) у порядку, встановленому нормативно-правовими актами Фонду, надає письмове зобов'язання щодо прийняття на його користь активів і зобов'язань.

*{Частина третя статті 40 в редакції Закону № 629-VIII від 16.07.2015}*

4. Під час виведення неплатоспроможного банку з ринку відповідно до цього Закону активи і зобов'язання неплатоспроможного банку передаються приймаючому банку за ціною, визначеною за результатами відкритого конкурсу (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону), проведеного відповідно до нормативно-правових актів Фонду, з дотриманням принципу виведення неплатоспроможного банку з ринку найменш витратним способом. Під час підготовки до проведення відкритого конкурсу Фонд може проводити оцінку активів неплатоспроможного банку за **методикою**, встановленою Фондом. Перелік активів, для яких проведення незалежної оцінки є обов'язковим, визначається нормативно-правовими актами Фонду.

У разі зміни виконавчою дирекцією Фонду способу виведення неплатоспроможного банку з ринку, передбаченого **пунктом 3** частини другої статті 39 цього Закону, на спосіб, передбачений **пунктом 2** частини другої статті 39 цього Закону, для реалізації зміненого способу відкритий конкурс не проводиться.

*{Частину четверту статті 40 доповнено абзацом другим згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

5. Зобов'язання неплатоспроможного банку передаються приймаючому банку за їхньою балансовою вартістю на підставі договору про переведення боргу за реєстром зобов'язань. Договір про переведення боргу укладається без необхідності отримання згоди кредиторів (вкладників). При цьому внесення змін до договорів з кредиторами (вкладниками) не вимагається. Приймаючий банк набуває усіх прав та обов'язків боржника перед відповідними кредиторами (вкладниками) неплатоспроможного банку.

*{Частина п'ята статті 40 в редакції Закону № 590-IX від 13.05.2020}*

6. Передача майна (активів) неплатоспроможного банку здійснюється на підставі договорів про передачу майна (активів) та/або договорів про відступлення права вимоги за реєстром майна (активів). При цьому згода відповідних боржників не вимагається. Приймаючий банк набуває усіх прав та обов'язків кредитора щодо майна (активів), яке передається відповідно до договорів про передачу майна (активів) та/або договорів про відступлення права вимоги, разом із правами за договорами забезпечення таких вимог. Внесення змін до договорів з відповідними боржниками не вимагається.

*{Частина шоста статті 40 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014, в редакції Закону № 590-IX від 13.05.2020}*

7. Договори, визначені частинами п'ятою та шостою цієї статті, можуть бути укладені у вигляді одного документа (змішаного договору) і не підлягають нотаріальному посвідченню, незалежно від того, чи укладалися договори, права і обов'язки за якими передаються в нотаріальній формі.

З моменту укладення таких договорів приймаючий банк набуває всіх прав на майно (активи) та зобов'язання неплатоспроможного банку, права і обов'язки за якими передаються відповідно до укладених договорів.

*{Частину сьому статті 40 доповнено абзацом другим згідно із Законом № 590-IX від 13.05.2020}*

Орган, що проводить державну реєстрацію прав на майно (активи), у тому числі обтяжень на таке майно (активи) та обмежень на розпорядження (у тому числі арешт), здійснює державну реєстрацію на підставі таких договорів або витягів із них, засвідчених керівником приймаючого банку. Орган, який проводить державну реєстрацію прав на майно (активи), не має права вимагати для здійснення реєстрації інші документи, що підтверджують набуття права на майно (активи), ніж ті, що визначені цим Законом.

*{Частину сьому статті 40 доповнено абзацом третім згідно із Законом № 590-IX від 13.05.2020}*

8. Приймаючий банк звільняється від сплати будь-яких платежів (податків, зборів, державного мита), пов'язаних з отриманням активів і зобов'язань, плати за внесення змін до державних реєстрів, плати за послуги, що надаються державними органами у зв'язку з таким відчуженням.

9. Фонд зобов'язаний повідомити боржників і кредиторів про передачу активів і зобов'язань приймаючому банку шляхом розміщення узагальненої інформації на офіційних сайтах Фонду та неплатоспроможного банку, а приймаючий банк - шляхом розміщення інформації на своєму офіційному веб-сайті. Кожний боржник та/або кредитор може отримати інформацію щодо себе у приміщенні неплатоспроможного та приймаючого банку.

*{Частина дев'ята статті 40 в редакції Закону № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

10. Фонд наступного дня після укладення договорів відчуження майна (активів) та зобов'язань подає Національному банку України пропозицію про відкликання банківської ліцензії та ліквідацію неплатоспроможного банку.

*{Абзац перший частини десятої статті 40 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

Після укладення договорів, визначених частинами п'ятою і шостою цієї статті:

*{Частину десяту статті 40 доповнено абзацом другим згідно із Законом № 629-VIII від 16.07.2015, в редакції Закону № 590-IX від 13.05.2020}*

1) учасники, боржники, кредитори (крім Фонду) неплатоспроможного банку або його контрагенти за будь-якими договорами, у тому числі права і обов'язки щодо яких не передані приймаючому банку, не можуть вимагати позбавлення приймаючого банку прав на передане йому майно (активи) або зменшення обсягу таких прав, та

*{Частину десяту статті 40 доповнено абзацом третім згідно із Законом № 629-VIII від 16.07.2015, в редакції Закону № 590-IX від 13.05.2020}*

2) власник акцій неплатоспроможного банку і неплатоспроможний банк не мають права вимагати від приймаючого банку відшкодування будь-яких збитків, понесених у результаті передачі на користь приймаючого банку активів та зобов'язань неплатоспроможного банку, з підстав недійсності, скасування або визнання протиправними будь-яких рішень, правочинів або інших дій, прийнятих або вчинених у процесі визнання банку неплатоспроможним та виведення його з ринку.

*{Частину десяту статті 40 доповнено абзацом четвертим згідно із Законом № 629-VIII від 16.07.2015}*

*{Абзац п'ятий частини десятої статті 40 виключено на підставі Закону № 590-IX від 13.05.2020}*

11. Фонд має право вимагати від приймаючого банку відшкодування збитків за необґрунтовану відмову зобов'язання щодо прийняття на його користь активів і зобов'язань неплатоспроможного банку.

12. Положення частин п'ятої та шостої цієї статті не застосовуються до зобов'язань та прав вимоги, що виникли внаслідок вчинення правочинів, зобов'язання за якими припиняються у процедурі ліквідаційного неттінгу, що здійснюється в порядку, встановленому статтею 54¹ цього Закону.

*{Статтю 40 доповнено частиною дванадцятою згідно із Законом № 738-IX від 19.06.2020}*

**Стаття 41.** Особливості продажу неплатоспроможного банку

1. Фонд відповідно до плану врегулювання здійснює продаж неплатоспроможного банку інвестору згідно з умовами, визначеними цією статтею та нормативно-правовими актами Фонду.

*{Частина перша статті 41 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Інвестор має відповідати вимогам, встановленим **Законом України** "Про банки і банківську діяльність" та нормативно-правовими актами Національного банку України і Фонду, а також не бути пов'язаною з банком (учасниками банку) особою.

*{Абзац перший частини другої статті 41 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Продаж неплатоспроможного банку Фондом інвестору потребує отримання інвестором погодження Національного банку України набуття істотної участі в банку, а також дозволу Антимонопольного комітету України на концентрацію.

*{Абзац другий частини другої статті 41 із змінами, внесеними згідно із Законами № 78-VIII від 28.12.2014, № 629-VIII від 16.07.2015}*

Отримання інвестором погодження Національного банку України набуття або збільшення істотної участі в банку, а також дозволу Антимонопольного комітету України на концентрацію здійснюється протягом двох робочих днів у спрощеному порядку, встановленому Національним банком України та Антимонопольним комітетом України. Такий порядок має передбачати підтвердження дотримання інвестором вимог **Закону України** "Про запобігання та протидію легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення" та вимог до ділової репутації.

*{Абзац третій частини другої статті 41 із змінами, внесеними згідно із Законами № 78-VIII від 28.12.2014, № 629-VIII від 16.07.2015}*

3. З дня затвердження плану врегулювання, яким передбачено продаж неплатоспроможного банку інвестору:

1) Фонд відповідно до закону набуває права розпорядження акціями (паями) банку від імені будь-якої особи, яка є учасником такого банку, пов'язаною з таким банком особою, без необхідності додаткового оформлення повноважень на продаж акцій (паїв);

2) учаснику банку забороняється розпоряджатися акціями (паями) банку у будь-який спосіб, у тому числі шляхом їх відчуження, передачі в забезпечення чи управління. Відомості про таке обтяження акцій на вимогу Фонду вносяться до системи обліку прав власності на акції в депозитарній системі;

3) будь-які правочини, вчинені учасниками банку всупереч вимогам цієї статті, є нікчемними;

4) Фонд зобов'язаний прийняти рішення та вжити заходів для зменшення розміру статутного капіталу, визначення нової номінальної вартості акцій банку та/або про деномінацію акцій банку, якщо розмір регулятивного капіталу банку є меншим за розмір статутного капіталу банку. У такому разі статутний капітал банку вважається таким, що дорівнює 1 гривні;

5) з метою визнання збитків Фонд має право прийняти рішення про проведення додаткової емісії акцій шляхом обміну зобов'язань (конвертації зобов'язань) банку перед власниками коштів за субординованим боргом, вимог кредиторів банку, які є пов'язаними з таким банком особами, вимог інших кредиторів у зворотному порядку черговості, встановленої **статтею 52** цього Закону, в акції банку, крім коштів, розміщених на поточних та/або депозитних рахунках у банку фізичними та юридичними особами, які не є пов'язаними з банком особами, з укладенням у подальшому з обраною ним депозитарною установою договору про обслуговування рахунків у цінних паперах для відкриття цією депозитарною установою в порядку, встановленому Національною комісією з цінних паперів та фондового ринку, рахунків у цінних паперах зазначеним особам і зарахування на них акцій додаткової емісії та вжиттям заходів, визначених пунктом 4 цієї частини;

*{Пункт 5 частини третьої статті 41 в редакції Закону № 1588-IX від 30.06.2021}*

6) Фонд має право здійснювати зменшення/збільшення статутного капіталу у випадках, визначених цим Законом, у спрощеному порядку та з урахуванням таких особливостей:

повідомлення акціонерів про скликання загальних зборів не здійснюється, проекти порядку денного не надсилаються і не розміщуються, повноваження загальних зборів виконуються Фондом одноосібно. Рішення Фонду з питань, що належать до компетенції загальних зборів, оформлюється письмово (у формі рішення). Таке рішення Фонду має статус протоколу загальних зборів акціонерного товариства;

згода акціонерів, кредиторів або контрагентів неплатоспроможного банку за будь-якими договорами на зменшення/збільшення статутного капіталу такого банку не вимагається;

положення законодавства щодо переважного права акціонерів на придбання акцій, а також про максимальну кількість акціонерів приватного акціонерного товариства не застосовуються;

аудитор (аудиторська фірма) та суб'єкт оціночної діяльності не залучаються;

положення законодавства про обов'язковість визначення ринкової вартості майна (активів) банку та акцій банку не застосовуються;

копія зареєстрованого проспекту емісії акцій (або змін до нього) акціонерам та особам, які є учасниками розміщення акцій, не надається;

банк звільняється від сплати державного мита;

Фонд здійснює конвертацію зобов'язань неплатоспроможного банку перед визначеними цим Законом кредиторами в акції без визначення їхньої ділової репутації та попереднього погодження набуття, збільшення істотної участі;

дата подання змін до статуту неплатоспроможного банку на погодження до Національного банку України та на реєстрацію до державного реєстратора вважається датою погодження змін Національним банком України та реєстрації державним реєстратором;

дата фактичного подання документів до Національної комісії з цінних паперів та фондового ринку для реєстрації випуску акцій вважається датою реєстрації випуску акцій неплатоспроможного банку. Підтвердженням фактичного подання належних документів вважається наявність відмітки Національної комісії з цінних паперів та фондового ринку про прийняття документів (реєстраційний індекс);

дата подання належних документів до Національного банку України, державного реєстратора, Національної комісії з цінних паперів та фондового ринку визначається за відміткою відповідного державного органу про прийняття документів (реєстраційний індекс);

усі реєстраційні дії здійснюються державним реєстратором за місцезнаходженням Фонду.

*{Частина третя статті 41 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 590-IX від 13.05.2020}*

4. Фонд здійснює продаж неплатоспроможного банку інвестору, визначеному за результатами проведення відкритого конкурсу в порядку, встановленому нормативно-правовими актами Фонду.

Переможцем відкритого конкурсу можуть бути кілька інвесторів (об'єднання інвесторів), які подали спільну фінансову пропозицію.

*{Частина четверта статті 41 в редакції Закону № 629-VIII від 16.07.2015}*

5. Продаж банку здійснюється на підставі договору купівлі-продажу акцій (паїв) банку.

У договорі має бути передбачено:

1) обов'язок інвестора у визначені терміни здійснити заходи з приведення діяльності неплатоспроможного банку у відповідності із вимогами законодавства України;

2) умову щодо розірвання договору у разі невиконання інвестором обов'язку здійснити капіталізацію банку та/або вжити інших заходів до відновлення платоспроможності і стабілізації діяльності банку;

3) штрафні санкції за неналежне виконання інвестором умов договору;

4) умови щодо неповернення Фондом гарантійного внеску інвестору у разі невиконання інвестором умов цього договору.

Інвестор до укладення договору купівлі-продажу акцій неплатоспроможного банку зобов'язаний подати до Фонду план заходів з приведення неплатоспроможного банку у відповідність із вимогами банківського законодавства України.

6. Ціна продажу неплатоспроможного банку визначається за результатами відкритого конкурсу, проведеного відповідно до нормативно-правових актів Фонду. Результати конкурсу мають відповідати принципу виведення неплатоспроможного банку з ринку найменш витратним способом. Кошти від продажу неплатоспроможного банку спрямовуються на поповнення коштів Фонду.

Після укладення договору купівлі-продажу акцій неплатоспроможного банку та їх передачі інвестору:

*{Частину шосту статті 41 доповнено абзацом другим згідно із Законом № 629-VIII від 16.07.2015}*

1) інвестор не може бути позбавлений права власності на придбані ним акції банку, та такі акції не можуть бути витребувані у нього на користь попереднього власника; та

*{Частину шосту статті 41 доповнено абзацом третім згідно із Законом № 629-VIII від 16.07.2015}*

2) попередній власник акцій банку не має права вимагати від інвестора відшкодування будь-яких збитків, понесених у результаті придбання інвестором акцій банку, з підстав недійсності, скасування або визнання протиправними будь-яких рішень, правочинів або інших дій, прийнятих або вчинених у процесі визнання банку неплатоспроможним та виведення його з ринку.

*{Частину шосту статті 41 доповнено абзацом четвертим згідно із Законом № 629-VIII від 16.07.2015}*

*{Абзац п'ятий частини шостої статті 41 виключено на підставі Закону № 590-IX від 13.05.2020}*

7. Договір купівлі-продажу акцій, укладений Фондом/уповноваженою особою Фонду та інвестором, є підставою для реєстрації права власності інвестора на акції в депозитарній системі. Інвестор має повідомити Фонд про реєстрацію прав власності на акції в депозитарній системі протягом одного дня з дня настання таких фактів.

*{Частина сьома статті 41 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

8. Продаж банку відповідно до цієї статті здійснюється без необхідності отримання згоди учасників чи будь-якого іншого погодження умов та порядку продажу акцій (паїв) банку інвестору. Уповноважена особа Фонду, Фонд та інвестор звільняються від вимоги щодо відшкодування збитків, пов'язаних із продажем неплатоспроможного банку.

9. Інвестор зобов'язаний привести діяльність банку у відповідність з вимогами законодавства України щодо дотримання нормативів капіталу та ліквідності протягом одного місяця з дня укладення договору купівлі-продажу.

10. Фонд наступного дня після реєстрації прав власності на акції неплатоспроможного банку в депозитарній системі припиняє тимчасову адміністрацію у такому банку.

Фонд з метою контролю за процесом виконання інвестором умов договору купівлі-продажу акцій неплатоспроможного банку призначає з числа своїх працівників куратора такого банку.

Куратор Фонду здійснює свої функції, передбачені цією частиною, у строк, що не перевищує один місяць з дня його призначення.

Куратор Фонду має право зупиняти, припиняти, обмежувати будь-які операції, що здійснюються неплатоспроможним банком, крім заборони використання в банку права голосу придбаних акцій (паїв), без згоди керівників, органів управління та контролю неплатоспроможного банку, а також контролює відповідність всіх операцій неплатоспроможного банку вимогам законодавства.

Законні вимоги куратора Фонду є обов'язковими до виконання інвестором, органами управління та контролю неплатоспроможного банку, а також працівниками такого банку.

Куратор Фонду підзвітний виконавчій дирекції Фонду.

Інвестор і органи управління та контролю неплатоспроможного банку є підзвітними куратору Фонду та надають йому будь-яку інформацію, у тому числі інформацію з обмеженим доступом.

11. Протягом строку виконання куратором Фонду передбачених цією статтею функцій:

1) такий банк діє відповідно до плану його врегулювання, а також на нього поширюються обмеження, встановлені частинами п'ятою та шостою статті 36 цього Закону;

2) запроваджується спрощена процедура щодо реєстрації випуску акцій, погодження змін до статуту Національним банком України, державної реєстрації змін до статуту.

Відповідно до спрощеної процедури:

1) дата подання рішення про капіталізацію банку та змін до статуту до Національної комісії з цінних паперів та фондового ринку вважається датою реєстрації випуску акцій;

2) дата подання змін до статуту банку відповідно на погодження Національному банку України та реєстрацію державному реєстратору вважається датою їх погодження Національним банком України та реєстрації державним реєстратором;

3) дата подання документів для реєстрації випуску акцій банку вважається датою реєстрації випуску акцій;

4) повідомлення учасників банку про скликання загальних зборів не здійснюється.

*{Частину одинадцяту статті 41 доповнено абзацом восьмим згідно із Законом № 629-VIII від 16.07.2015}*

12. Банк зобов'язаний надати доступ куратору Фонду до всієї інформації (у тому числі до баз даних) для виконання Фондом його функцій, визначених цим Законом та іншими законодавчими актами. Перешкоджання куратору Фонду в доступі до банку та/або унеможливлення здійснення куратором Фонду своїх повноважень є підставою для звернення Фонду до Національного банку України з пропозицією прийняти рішення про відкликання банківської ліцензії та ліквідацію банку.

Особи, які навмисно перешкоджають куратору Фонду в доступі до банку, його приміщень, інформації (операційних систем, активів, книг, записів, документів тощо), несуть відповідальність, визначену **частиною п'ятою** статті 37 цього Закону.

*{Статтю 41 доповнено новою частиною згідно із Законом № 629-VIII від 16.07.2015}*

13. Після здійснення інвестором відповідно до умов договору заходів з приведення неплатоспроможного банку у відповідність з вимогами законодавства України щодо дотримання нормативів капіталу та ліквідності Фонд повідомляє Національний банк України про необхідність проведення інспекційної перевірки банку. Фонд надає Національному банку України необхідну інформацію та документи для проведення інспекційної перевірки банку і підготовки обґрунтованих висновків.

Національний банк України проводить інспекційну перевірку неплатоспроможного банку та подає звіт про її результати не пізніше 15 робочих днів з дня отримання Національним банком України повідомлення Фонду про необхідність проведення інспекційної перевірки.

Фонд приймає рішення про припинення повноважень куратора Фонду у неплатоспроможному банку наступного дня після отримання результатів інспекційної перевірки Національного банку України, яка підтвердила приведення діяльності неплатоспроможного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності, та повідомляє про прийняте рішення Національний банк України.

14. Усі або частина повноважень Фонду, визначених цією статтею, можуть бути делеговані Фондом уповноваженій особі Фонду.

*{Статтю 41 доповнено частиною чотирнадцятою згідно із Законом № 590-IX від 13.05.2020}*

*{Стаття 41 із змінами, внесеними згідно із Законом № 5411-VI від 02.10.2012; в редакції Закону № 1586-VII від 04.07.2014}*

**Стаття 41[1].** Особливості виведення неплатоспроможного банку з ринку за участю держави

1. Держава в особі Міністерства фінансів України або в особі банку, в якому держава є власником частки понад 75 відсотків акцій (далі для цілей цієї статті - державний банк), має право брати участь у виведенні з ринку неплатоспроможного банку, що відповідає критеріям, визначеним Кабінетом Міністрів України за погодженням із Національним банком України у спосіб, визначений **пунктами 2-5** частини другої статті 39 цього Закону та частини дванадцятої цієї статті.

Виведення неплатоспроможного банку з ринку за участю держави здійснюється за рішенням Кабінету Міністрів України, у разі підтвердження рішенням Ради з фінансової стабільності наявності ознак нестійкого фінансового стану банківської системи та обставин, що загрожують стабільності банківської та/або фінансової системи України.

Заходи, визначені планом врегулювання, в частині передачі всього або частини майна (активів) та всіх або частини зобов'язань неплатоспроможного банку до перехідного/ приймаючого банку, та продаж акцій банку при виведенні з ринку неплатоспроможного банку за участю держави здійснюються у строк:

не більше семи календарних днів з дня початку ліквідації неплатоспроможного банку, який є днем, наступним за днем отримання Фондом рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктом 2** частини другої статті 39 цього Закону;

не більше семи календарних днів з дня, наступного за днем отримання Фондом рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктами 3** або **4** частини другої статті 39 цього Закону;

не більше двох календарних днів з дня, наступного за днем отримання Фондом рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктом 5** частини другої статті 39 цього Закону.

2. Виведення неплатоспроможного банку з ринку за участю держави здійснюється за рахунок коштів державного бюджету та/або державного банку.

3. Вимоги, встановлені Національним банком України щодо обов'язкових нормативів, лімітів валютної позиції, нормативів обов'язкового резервування на кореспондентському рахунку банку в Національному банку України до банку, акції якого продає держава відповідно до цієї статті, а також до банку, який прийняв майно (активи) та зобов'язання неплатоспроможного банку відповідно до цієї статті, застосовуються через три місяці після набуття державою права власності на акції такого банку або після прийняття майна (активів) та зобов'язань таким банком.

4. Держава набуває право власності на акції перехідного/неплатоспроможного банку після укладення договору купівлі-продажу акцій з оплатою акцій на умовах відстрочення платежу в порядку, встановленому цією статтею.

5. Кабінет Міністрів України, у разі якщо наступні дні після прийняття рішення є вихідними, забезпечує роботу протягом цих вихідних днів усіх юридичних та фізичних осіб (у тому числі працівників), необхідних для підготовки та організації передачі всього або частини майна (активів) та всіх або частини зобов'язань приймаючому/перехідному банку та продажу акцій банку державі.

6. У разі виведення неплатоспроможного банку з ринку за участю держави у спосіб, визначений **пунктами 2 і 3** частини другої статті 39 цього Закону, державний банк виступає приймаючим банком.

У разі виведення неплатоспроможного банку з ринку за участю держави у спосіб, визначений **пунктами 4 або 5** частини другої статті 39 цього Закону, держава в особі Міністерства фінансів України виступає інвестором.

7. У разі виведення неплатоспроможного банку з ринку за участю держави на зобов'язання банку не поширюються обмеження, встановлені **пунктом 1** частини п'ятої статті 36 цього Закону (крім обмежень щодо зобов'язань перед пов'язаними із неплатоспроможним банком особами), у тому числі не зупиняється виконання розрахункових та касових банківських документів банку в межах лімітів, визначених виконавчою дирекцією Фонду (крім операцій із пов'язаними з цим банком особами).

У разі виведення неплатоспроможного банку з ринку за участю держави Фонд має право на підставі окремого рішення Кабінету Міністрів України встановити за пропозицією Національного банку України обмеження, визначені **пунктом 1** частини п'ятої статті 36 цього Закону.

Не обмежуючи дії **статей 40 і 42** цього Закону, зокрема щодо набуття права власності на передані майно (активи) та зобов'язання, сторони, визначені у договорі (договорах) (зміщаному договорі)/актах, укладених відповідно до статей 40 і 42 цього Закону, забезпечують протягом двох місяців з дня відчуження/передачі внесення відповідних змін до укладених договорів (зміщаного договору)/актів, реєстрів відчужених майна (активів) та зобов'язань з урахуванням інформації про проведені операції, у тому числі отриманої від платіжних систем, та з урахуванням фактичних залишків на рахунках на дату їх відчуження. Узгодження інформації про проведені операції здійснюється з урахуванням підходів, визначених **частиною сьомою** статті 36 цього Закону.

8. Виведення з ринку неплатоспроможного банку за участю держави здійснюється з урахуванням такого:

1) активи неплатоспроможного банку передаються на користь приймаючого/перехідного банку за вартістю, визначеною з урахуванням результатів оцінки якості активів банку та прийнятності забезпечення за кредитними операціями, здійсненої відповідно до нормативно-правових актів Національного банку України;

2) зобов'язання неплатоспроможного банку передаються приймаючому/перехідному банку з урахуванням черговості, встановленої **статтею 52** цього Закону;

3) не підлягають передачі до приймаючого/перехідного банку:

зобов'язання неплатоспроможного банку перед особами, пов'язаними з цим банком, згідно з переліком, наданим Національним банком України;

фінансова допомога акціонерів, що включається до основного капіталу банку;

зобов'язання за субординованим боргом;

зобов'язання за капітальним інструментом з умовами списання/конверсії, який включається до додаткового капіталу;

зобов'язання, на передачу яких встановлена заборона у законодавстві України, та/або зобов'язання, які підпадають під регулювання законодавства інших держав;

4) додаткова потреба приймаючого/перехідного банку/неплатоспроможного банку (у разі його продажу в цілому) у капіталі визначається з урахуванням аудиторського звіту міжнародно визнаної аудиторської фірми, залученої Фондом відповідно до частини дев'ятої цієї статті;

5) для здійснення Фондом заходів щодо відчуження/передачі майна (активів) та зобов'язань неплатоспроможного банку майно (активи), у тому числі грошові кошти неплатоспроможного банку, на яке накладено обтяження (у тому числі публічні) та/або обмеження на розпорядження (у тому числі арешт) до дня віднесення банку до категорії неплатоспроможних, передається з письмовим повідомленням особи, в інтересах якої накладено обтяження та/або обмеження на розпорядження (у тому числі арешт), перехідному/приймаючому банком. При цьому передане майно (активи), у тому числі грошові кошти, залишається обтяженим.

6) відчуження майна (активів) та зобов'язань здійснюється на користь приймаючого банку відповідно до **статей 36 і 40** цього Закону, а передача майна (активів) та зобов'язань перехідному банку - відповідно до **статей 36 та 42** цього Закону, з урахуванням особливостей, визначених цією статтею;

7) висновок Національного банку України щодо фінансового стану приймаючого банку та його спроможності виконати зобов'язання перед вкладниками і кредиторами не вимагається;

8) продаж акцій неплатоспроможного/перехідного банку Міністерству фінансів України чи державному банку не потребує отримання інвестором погодження Національного банку України набуття істотної участі в банку, а також дозволу Антимонопольного комітету України на здійснення узгоджених дій та/або концентрацію;

9) фінансова підтримка приймаючому/перехідному банку у разі виведення неплатоспроможного банку з ринку за участю держави Фондом не надається;

10) приймаючий/перехідний банк, який отримав майно (активи) та зобов'язання неплатоспроможного банку, за результатами проведеної аудиторською фірмою оцінки, якщо ця оцінка (вартість) виявилася нижчою за вартість, визначену з урахуванням результатів оцінки якості активів банку та прийнятності забезпечення за кредитними операціями, здійсненої відповідно до нормативно-правових актів Національного банку України, або стан майна (активу) погіршився у період проведення аудиторської перевірки, має право звернутися до неплатоспроможного банку з пропозицією щодо повернення такого майна (активу) та отримання компенсації або заміни його на інше.

Повернення такого майна (активу) та отримання компенсації або заміна його на інше майно (активи) може бути здійснено не пізніше двомісячного строку після отримання аудиторського висновку на підставі договору, що укладається між сторонами та погоджується Фондом. Розмір компенсації визначається як різниця між вартістю, визначеною з урахуванням результатів оцінки якості активів банку та прийнятності забезпечення за кредитними операціями, здійсненої відповідно до нормативно-правових актів Національного банку України, та вартістю визначеною аудиторською фірмою. Повернення майна (активу) або його заміна на інше є підставою для внесення змін до укладених договорів, актів, ліквідаційної маси неплатоспроможного банку, при цьому обмеження, встановлені статтею 51 цього Закону, щодо майна (активів), яке передається на заміну, не застосовуються;

11) Міністерство фінансів України з моменту укладення договору купівлі-продажу акцій перехідного/неплатоспроможного банку забезпечує контроль за діяльністю такого банку, відповідне корпоративне управління, звітність та контроль, а також безперебійну операційну діяльність та виконання усіх чинних зобов'язань банку.

Фонд не призначає куратора у банк у разі виведення неплатоспроможного банку з ринку за участю держави. Після продажу перехідного/неплатоспроможного банку держави банківський нагляд за таким банком здійснюється з урахуванням особливостей, встановлених нормативно-правовими актами Національного банку України;

12) перехідний банк втрачає статус перехідного на наступний день після підтвердження результатами інспекційної перевірки Національного банку України інформації про приведення показників капіталу та ліквідності банку у відповідність із вимогами банківського законодавства, про що Національний банк України повідомляє Фонд.

9. Не пізніше наступного дня після прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного банку з ринку копії такого рішення Кабінету Міністрів України та пропозиції Національного банку України передаються до Фонду. Про прийняте рішення Кабінет Міністрів України також розміщує інформацію на своєму офіційному веб-сайті.

У день отримання такого рішення Фонд у порядку, встановленому цим Законом та нормативно-правовими актами Фонду, затверджує план врегулювання для виведення неплатоспроможного банку з ринку у спосіб, визначений рішенням Кабінету Міністрів України, без пошуку інших інвесторів та приймаючих банків.

Під час процедури виведення неплатоспроможного банку з ринку за участю держави Фонд приймає рішення про залучення міжнародно визнаної аудиторської фірми для надання у тримісячний строк аудиторського звіту, у тому числі висновків щодо фінансового стану банку, визначення розміру регулятивного капіталу банку та потреби у його додатковій капіталізації з урахуванням консервативних сценаріїв економічного розвитку, визначених Національним банком України.

Після отримання звіту міжнародно визнаної аудиторської фірми, залученої Фондом, Кабінет Міністрів України вживає заходів до приведення діяльності банку у відповідність із вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності.

10. Рішення про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений пунктами 2 або 3 частини другої статті 39 цього Закону, приймається Кабінетом Міністрів України за пропозицією Національного банку України, в якій зазначаються:

1) банк, який має прийняти все або частину майна (активів) та всі або частину зобов'язань;

2) вартість активів з урахуванням результатів оцінки якості активів банку та прийнятності забезпечення за кредитними операціями, здійсненої відповідно до нормативно-правових актів Національного банку України;

3) інформація про групи та обсяг майна (активів) та обсяг зобов'язань, які мають бути передані приймаючому банку;

4) перелік зобов'язань неплатоспроможного банку перед пов'язаними з цим банком особами;

5) розрахунок мінімальної потреби у капіталізації державою приймаючого банку (за потреби).

Банк, визначений Кабінетом Міністрів України як приймаючий, зобов'язаний забезпечити виконання такого рішення Кабінету Міністрів України.

11. Рішення про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений пунктом 4 частини другої статті 39 цього Закону, приймається Кабінетом Міністрів України за пропозицією Національного банку України, в якій зазначаються:

1) мета створення перехідного банку;

2) вартість активів з урахуванням результатів оцінки якості активів банку та прийнятності забезпечення за кредитними операціями, здійсненої відповідно до нормативно-правових актів Національного банку України;

3) інформація про групи та обсяг майна (активів) та обсяг зобов'язань, які мають бути передані перехідному банку з урахуванням черговості, встановленої статтею 52 цього Закону;

4) перелік зобов'язань неплатоспроможного банку перед пов'язаними з цим банком особами;

5) розрахунки мінімальної потреби в капіталі;

6) розрахунок додаткової потреби перехідного банку у капіталі з урахуванням консервативних сценаріїв економічного розвитку, визначених Національним банком України.

12. Кабінет Міністрів України у разі підтвердження рішенням Ради з фінансової стабільності наявності ознак нестійкого фінансового стану банківської системи, а також обставин, що загрожують стабільності банківської та/або фінансової системи України, може прийняти рішення та звернутися до Фонду з пропозицією про створення перехідного банку для можливості у подальшому застосування способу виведення неплатоспроможного банку з ринку, визначеного пунктом 4 частини другої статті 39 цього Закону.

Після отримання рішення Кабінету Міністрів України Фонд вживає заходів для утворення перехідного банку, реєстрації випуску акцій, державної реєстрації юридичної особи, видачі банківської ліцензії, відкриття рахунків, підключення до платіжних систем, у тому числі міжнародних, у строки і порядку, визначених **статтею 42** цього Закону.

Рішення, які мають бути прийняті Фондом, Національним банком України, Національною комісією з цінних паперів та фондового ринку, іншими державними органами для створення та забезпечення в подальшому діяльності такого перехідного банку, є банківською таємницею до дня визнання відповідного банку неплатоспроможним.

Фонд, створивши перехідний банк для можливості в подальшому застосування способу виведення неплатоспроможного банку з ринку, визначеного **пунктом 4** частини другої статті 39 цього Закону, в день отримання рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений пунктом 4 частини другої статті 39 цього Закону, вживає заходів для підготовки до передачі всього або частини майна (активів) та всіх або частини зобов'язань неплатоспроможного банку до створеного перехідного банку.

У такому разі держава придбаває акції перехідного банку після завершення двох календарних днів з дня, наступного за днем початку процедури виведення неплатоспроможного банку з ринку, з оплатою акцій на умовах відстрочення платежу в порядку, встановленому цією статтею.

Виконавча дирекція Фонду має право прийняти рішення про надання кредиту перехідному банку, створеному з метою, визначеною **пунктом 2** частини двадцятої статті 42 цього Закону на підставі рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктом 4** частини другої статті 39 цього Закону, у **порядку та на умовах**, визначених нормативно-правовими актами Фонду.

13. Рішення про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений пунктом 5 частини другої статті 39 цього Закону, приймається Кабінетом Міністрів України за пропозицією Національного банку України, в якій зазначаються:

1) розмір корпоративних прав (кількість акцій) або розмір частки у статутному капіталі, що не належить державі та має бути придбана державою;

2) рішення про необхідність обміну необтяжених грошових зобов'язань перед пов'язаними з банком особами згідно з переліком, наданим Національним банком України, та необтяжених грошових зобов'язань перед юридичними та фізичними особами, які не є пов'язаними з банком особами (крім коштів за поточними та депозитними рахунками таких осіб), на акції додаткової емісії;

3) розрахунки мінімальної потреби в капіталі з урахуванням можливості обміну необтяжених грошових зобов'язань банку перед пов'язаними особами, а також необтяжених грошових зобов'язань перед юридичними і фізичними особами, які не є пов'язаними з банком особами (крім коштів за поточними та депозитними рахунками таких осіб), на акції додаткової емісії;

4) розрахунок додаткової потреби банку у капіталі з урахуванням консервативних сценаріїв економічного розвитку, визначених Національним банком України.

Фонд не пізніше наступного дня після отримання рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктом 5** частини другої статті 39 цього Закону, забезпечує вжиття заходів відповідно до **статті 41** цього Закону з урахуванням особливостей, визначених цією статтею.

14. Прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного банку з ринку є підставою для зупинення внесення змін до системи депозитарного обліку цінних паперів неплатоспроможного банку та/або перехідного банку, та/або відповідного власника цінних паперів неплатоспроможного банку та/або перехідного банку на строк, встановлений частиною першою цієї статті, крім операцій, передбачених цим Законом.

15. До здійснення внеску до статутного капіталу неплатоспроможного банку Фонд:

1) зобов'язаний повністю сформувати резерви банку на покриття збитків за активними банківськими операціями та визначити величину кредитного ризику за всіма активними банківськими операціями, у тому числі з урахуванням ризиків неповернення кредитів особами, пов'язаними з цим банком, ґрунтуючись на пропозиції, поданій Національним банком України до Кабінету Міністрів України;

2) має право розпорядитися необтяженими грошовими зобов'язаннями банку перед учасниками та пов'язаними з банком особами, а також необтяженими грошовими зобов'язаннями перед юридичними і фізичними особами, які не є пов'язаними з банком

особами (крім коштів за поточними та депозитними рахунками таких осіб), а також необтяженими грошовими зобов'язаннями банку перед пов'язаними з банком особами шляхом обміну зазначених зобов'язань на акції додаткової емісії банку.

Якщо регулятивний капітал банку, розрахований з урахуванням сформованих резервів банку на покриття збитків за активними банківськими операціями та визначеної Національним банком України величини кредитного ризику за всіма активними банківськими операціями, а також обміну зобов'язань на акції додаткової емісії банку (у разі здійснення такого обміну), залишається від'ємним чи нульовим, Фонд продає акції неплатоспроможного банку Міністерству фінансів України у повному обсязі (або частку, яка не належить державі) за 1 гривню. Кошти від продажу неплатоспроможного банку спрямовуються на поповнення коштів Фонду.

Якщо регулятивний капітал банку, розрахований з урахуванням сформованих Фондом резервів на покриття збитків за активними банківськими операціями та визначеної Національним банком України величини кредитного ризику за всіма активними банківськими операціями, а також обміну зобов'язань на акції додаткової емісії банку (у разі здійснення такого обміну), є додатним, Фонд продає акції неплатоспроможного банку Міністерству фінансів України у повному обсязі (або частку, яка не належить державі) за ціною, що дорівнює розміру розрахованого регулятивного капіталу, на умовах відстрочення платежу. У такому разі ціна акцій коригується протягом трьох місяців після отримання звіту міжнародно визнаної аудиторської фірми, залученої Фондом.

16. З моменту набуття державою права власності на акції неплатоспроможного/перехідного банку Міністерство фінансів України зобов'язане надавати кошти та/або облігації внутрішньої державної позики для забезпечення своєчасного виконання банком своїх зобов'язань з їх подальшим обміном на акції банку після завершення всіх розрахунків за акції банку з попередніми власниками у разі, якщо капітал банку є позитивним.

Після набуття права власності на акції неплатоспроможного/перехідного банку державою банк протягом двох місяців проводить аналіз платоспроможності позичальників з урахуванням:

прозорості структури власності позичальників та визначення їх кінцевих бенефіціарних власників (контролерів) (за наявності);

відповідності фінансового стану юридичної особи - позичальника чи майнового стану фізичної особи - позичальника, їх надходжень та доходів обсягам отриманих кредитів, а також інших зобов'язань, у тому числі тих, що обліковуються на позабалансових рахунках;

прозорості їх фінансової та господарської діяльності;

ліквідності та вартості застави.

Критерії позичальників, щодо яких проводиться аналіз їх платоспроможності, затверджуються радою банку протягом двох днів з дня придбання державою акцій такого банку.

Якщо в результаті аналізу платоспроможності позичальників банку не вдалося встановити кінцевих бенефіціарних власників (контролерів) або джерела надходжень чи доходів для повернення кредитів є непрозорими чи недостатніми, або позичальники не надали банку достатньої інформації для проведення аналізу наведених даних, банк формує резерви під такі кредити у розмірі до 100 відсотків і має право вимагати дострокового повернення зазначених кредитів. Аудиторська фірма під час проведення остаточної оцінки вартості акцій банку зобов'язана врахувати необхідність формування резервів під зазначені кредити.

У разі виявлення зобов'язань банку перед іншими особами, що не обліковувалися за балансовими та/або позабалансовими рахунками банку на момент набуття права власності на акції банку державою, правочини, за якими виникають такі зобов'язання, вважаються нікчемними, а зобов'язання не підлягають виконанню банком.

Правочини з обтяження грошових зобов'язань банку перед пов'язаними з банком особами, вчинені протягом одного місяця до дати прийняття рішення про участь держави у виведенні неплатоспроможного банку з ринку, та в період з дати прийняття такого рішення до дати набуття державою права власності на акції неплатоспроможного або перехідного банку включно, вважаються нікчемними.

17. Держава може взяти участь у виведенні неплатоспроможного банку з ринку шляхом сплати грошових внесків до статутного капіталу банку або шляхом обміну облігацій внутрішньої державної позики, розміщених на ринкових умовах, на акції неплатоспроможного/ перехідного чи державного банку, що бере участь у виведенні з ринку неплатоспроможного банку.

Після придбання державою акцій банку банк із залученням незалежних, у тому числі міжнародних, експертів чи аудиторів розробляє план реструктуризації банку для забезпечення його подальшої прибуткової діяльності.

18. Міністерство фінансів України і державні банки вважаються належними інвесторами та інвесторами, що виконують вимоги Фонду, з дня прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного банку з ринку.

19. Ціна перехідного банку визначається у договорі про купівлю-продаж акцій перехідного банку на рівні:

внесків, здійснених Фондом для формування статутного капіталу перехідного банку, та

понесених Фондом витрат, пов'язаних з його створенням і діяльністю, та

витрат Фонду, пов'язаних із здійсненням тимчасової адміністрації та ліквідаційної процедури неплатоспроможного банку, в межах кошторису витрат банку, затвердженого Фондом (у разі, якщо вартість непереданого приймаючому/перехідному банку майна (активів) менша за розмір витрат, визначений кошторисом витрат на ліквідацію неплатоспроможного банку).

20. Фонд у процесі утворення перехідного банку за участі держави (крім перехідного банку, що створюється відповідно до частини дванадцятої цієї статті за поданням Міністерства фінансів України призначає керівників та органи управління та контролю перехідного банку.

Міністерство фінансів України у разі прийняття державою рішення про виведення неплатоспроможного банку з ринку у спосіб, визначений **пунктом 5** частини другої статті 39 цього Закону, або у разі придбання державою перехідного банку, створеного відповідно до частини дванадцятої цієї статті, самостійно призначає керівників та органи управління та контролю банку після укладення з Фондом договору купівлі-продажу акцій.

Міністерство фінансів України у разі прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного банку з ринку має право здійснити відбір кандидатів на посади керівників та до складу органів управління та контролю банку з числа керівників неплатоспроможного банку, який виводиться з ринку за участю держави.

Міністерство фінансів України пропонує Фонду/самостійно призначає таких кандидатів на посади керівників та створює органи управління та контролю банку, інвестором якого є держава, за умови:

відсутності фактів, інформації, що свідчать про недобросовісне виконання цими особами своїх посадових обов'язків та їх вплив на обставини, що призвели до віднесення банку до категорії неплатоспроможних;

якщо участь особи в управлінні банком буде сприяти ефективності його діяльності;

відсутності інформації про істотні та/або систематичні порушення особою вимог банківського, фінансового, валютного, податкового законодавства, законодавства з питань фінансового моніторингу, законодавства про цінні папери, акціонерні товариства та фондовий ринок;

виконання особою фінансових зобов'язань, відповідності діяльності особи стандартам ділової практики та/або професійної етики.

Фонд у разі наявності інформації, що свідчить про невідповідність кандидата на посаду визначеним цією частиною умовам, має право звернутися до Міністерства фінансів України з пропозицією щодо заміни запропонованої кандидатури.

Положення **статті 7** Закону України "Про банки і банківську діяльність" поширюються на банк, придбаний державою відповідно до цієї статті, і застосовуються через один рік після набуття державою права власності на акції такого банку.

21. Кабінет Міністрів України за участі Національного банку України та Фонду має право прийняти рішення про зміну способу виведення неплатоспроможного банку з ринку за участю держави.

*{Закон доповнено статтею 41¹ згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 2491-VIII від 05.07.2018, в редакції Закону № 590-IX від 13.05.2020}*

**Стаття 42.** Особливості утворення та продажу перехідного банку

1. Фонд приймає рішення про утворення перехідного банку з передачею всього або частини майна (активів) і всіх або частини зобов'язань із збереженням черговості, визначеної **статтею 52** цього Закону, одного або декількох неплатоспроможних банків на підставі:

плану врегулювання, складеного відповідно до статті 39 цього Закону;

плану врегулювання та рішення Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку у спосіб, визначений **пунктом 4** частини другої статті 39 цього Закону;

рішення Кабінету Міністрів України з пропозицією про створення Фондом перехідного банку для можливості в подальшому застосування способу виведення неплатоспроможного банку з ринку, визначеного **пунктом 4** частини другої статті 39 цього Закону.

*{Частина перша статті 42 із змінами, внесеними згідно із Законами № 78-VIII від 28.12.2014, № 629-VIII від 16.07.2015, № 2210-VIII від 16.11.2017; в редакції Закону № 590-IX від 13.05.2020}*

2. Фонд за погодженням з Національним банком України у разі виявлення у діяльності системно важливого банку фактів, які свідчать про можливість збільшення у подальшому потенційних витрат Фонду в разі виведення такого банку з ринку, у порядку, встановленому нормативно-правовими актами Фонду, має право прийняти рішення про утворення перехідного банку для передачі всього або частини майна (активів) та всіх або частини зобов'язань (із збереженням черговості, визначеної статтею 52 цього Закону), яка буде здійснена після офіційного отримання рішення Національного банку України про віднесення банку до категорії неплатоспроможних.

Рішення, прийняті Фондом, Національним банком України, Національною комісією з цінних паперів та фондового ринку, іншими державними органами для створення та забезпечення в подальшому діяльності такого перехідного банку, є банківською таємницею до часу визнання банку неплатоспроможним.

*{Статтю 42 доповнено новою частиною згідно із Законом № 590-IX від 13.05.2020}*

3. Перехідний банк утворюється у формі акціонерного товариства. Перехідний банк провадить свою діяльність з дотриманням вимог цього Закону та у порядку, встановленому нормативно-правовими актами Фонду.

*{Статтю 42 доповнено новою частиною згідно із Законом № 590-IX від 13.05.2020}*

4. Фонд у разі створення перехідного банку з метою, визначеною **пунктом 1** частини двадцятої статті 42 цього Закону (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону), призначає у такий банк керівника

(директора) та головного бухгалтера та їх заступників (у разі необхідності), які виконують функції органів управління та контролю банку.

Фонд у разі створення перехідного банку, з метою, визначеною **пунктом 2** частини двадцятої статті 42 цього Закону (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону), призначає в такий банк керівників та створює органи управління та контролю банку відповідно до вимог банківського законодавства, крім вимог щодо наявності у складі ради банку незалежних директорів та функцій, які мають належати до виключної компетенції ради та правління банку. Перелік функцій, виконання яких належить до компетенції ради та правління перехідного банку, визначається статутом перехідного банку.

Керівники перехідного банку, створеного Фондом, розпочинають виконання своїх посадових обов'язків без письмової згоди на це Національного банку України.

Погодження Національного банку України призначення та/або визначення професійної придатності та/або ділової репутації кандидата на посади керівників такого перехідного банку, керівника підрозділу внутрішнього аудиту, працівника, відповідального за проведення фінансового моніторингу, не вимагається.

*{Статтю 42 доповнено новою частиною згідно із Законом № 590-IX від 13.05.2020}*

5. Для утворення перехідного банку отримання Фондом погодження Національного банку України набуття істотної участі та дозволу Антимонопольного комітету України на концентрацію не вимагається.

*{Статтю 42 доповнено новою частиною згідно із Законом № 590-IX від 13.05.2020}*

6. Створення, реєстрація випуску акцій, видача банківської ліцензії перехідному банку здійснюються за спрощеною процедурою, яка визначається нормативно-правовим актом Фонду, погодженим з Національним банком України та Національною комісією з цінних паперів та фондового ринку.

*{Частина статті 42 із змінами, внесеними згідно із Законами № 835-VIII від 26.11.2015, № 590-IX від 13.05.2020}*

7. Національна комісія з цінних паперів та фондового ринку здійснює реєстрацію випуску акцій перехідного банку протягом одного дня, включаючи неробочі та святкові дні, з дня отримання заяви Фонду про реєстрацію випуску акцій перехідного банку разом з комплектом реєстраційних та установчих документів перехідного банку.

*{Частина сьома статті 42 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

8. Національний банк України видає перехідному банку банківську ліцензію після державної реєстрації юридичної особи протягом одного дня, включаючи неробочі та святкові дні, з дня отримання повного пакета документів, визначених законом.

9. Фонд звільняється від сплати податків, зборів, державного мита, платежів за послуги державних органів у зв'язку із утворенням перехідного банку.

10. Фонд здійснює продаж перехідного банку інвестору, визначеному за результатами проведення відкритого конкурсу в порядку, встановленому нормативно-правовими актами Фонду (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону та частиною другою цієї статті).

*{Частина статті 42 в редакції Закону № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

11. Переможцем відкритого конкурсу є інвестор, пропозиція якого відповідає найменш витратному способу виведення неплатоспроможного банку з ринку та який у разі потреби взяв на себе зобов'язання здійснити приєднання (злиття) перехідного банку до існуючого платоспроможного банку, крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону. Переможцем відкритого конкурсу можуть бути кілька інвесторів (об'єднання інвесторів), які подали спільну фінансову пропозицію, за таких умов:

всі учасники об'єднання інвесторів отримали погодження Національного банку України набуття істотної участі в банку (за потреби) та допущені Фондом до участі у відкритому конкурсі відповідно до цього Закону;

конкурсна пропозиція містить точну інформацію про частки кожного з інвесторів у статутному капіталі перехідного банку, а також відповідну суму докапіталізації перехідного банку кожним з учасників об'єднання інвесторів;

конкурсна пропозиція містить безумовне зобов'язання щодо придбання акцій перехідного банку кожним учасником об'єднання інвесторів;

конкурсна пропозиція містить безумовне зобов'язання щодо додаткового придбання акцій перехідного банку учасниками об'єднання інвесторів у відповідній пропорції, за умови неприбдання акцій одним або кількома інвесторами.

*{Частина статті 42 в редакції Закону № 629-VIII від 16.07.2015}*

12. Ціна продажу перехідного банку визначається за результатами відкритого конкурсу, проведеного відповідно до нормативно-правових актів Фонду (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону та утворення перехідного банку як приймаючого банку з метою реалізації способів виведення неплатоспроможного банку з ринку, передбаченого **пунктами 2, 3**, або 4 частини другої статті 39 цього Закону). Результати відкритого конкурсу мають відповідати принципу виведення неплатоспроможного банку з ринку найменш витратним способом. Початкова ціна продажу банку визначається Фондом за методикою, встановленою нормативно-правовими актами Фонду.

Рішенням виконавчої дирекції Фонду може бути передбачена обов'язковість проведення незалежної оцінки ціни перехідного банку суб'єктами оціночної діяльності (оцінювачами). Кошти від продажу перехідного банку спрямовуються на поповнення коштів Фонду.

*{Частина статті 42 в редакції Закону № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

13. Інвестор та/або учасники об'єднання інвесторів мають відповідати вимогам, встановленим **Законом України** "Про банки і банківську діяльність" та нормативно-правовими актами Національного банку України і Фонду, та не бути пов'язаними з банком особами, майно (активи) та зобов'язання якого передаються перехідному банку.

*{Абзац перший частини статті 42 в редакції Закону № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

Продаж перехідного банку інвестору та/або учасникам об'єднання інвесторів потребує отримання цими інвесторами погодження Національного банку України набуття істотної участі в банку, а також дозволу Антимонопольного комітету України на концентрацію..

*{Абзац другий частини статті 42 із змінами, внесеними згідно із Законом № 78-VIII від 28.12.2014; в редакції Закону № 629-VIII від 16.07.2015}*

Отримання інвестором та/або учасниками об'єднання інвесторів погодження Національного банку України набуття істотної участі в банку, а також дозволу Антимонопольного комітету України на концентрацію здійснюється протягом двох робочих днів у спрощеному порядку, встановленому відповідно Національним банком України та Антимонопольним комітетом України. Такий порядок має передбачати дотримання інвестором вимог законодавства у сфері запобігання та протидії легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення та вимог до ділової репутації.

*{Абзац третій частини статті 42 із змінами, внесеними згідно із Законом № 78-VIII від 28.12.2014; в редакції Закону № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

За порушення зобов'язань, визначених договором інвестор сплачує Фонду штраф у розмірі, визначеному умовами відкритого конкурсу.

*{Абзац четвертий частини статті 42 із змінами, внесеними згідно із Законами № 629-VIII від 16.07.2015, № 590-IX від 13.05.2020}*

14. Перехідному банку передаються всі або визначені відповідно до плану врегулювання майно (активи) та зобов'язання неплатоспроможного банку/іншого перехідного банку, передача яких не заборонена відповідно до законодавства.

*{Абзац перший частини чотирнадцятої статті 42 в редакції Закону № 590-IX від 13.05.2020}*

Під час передачі зобов'язань Фонд має забезпечити неупереджене ставлення до всіх кредиторів неплатоспроможного банку, дотримуючись черговості, передбаченої **статтею 52** цього Закону, а також особливостей, встановлених **статтею 41¹** цього Закону (у разі участі держави у виведенні неплатоспроможного банку з ринку), при цьому зобов'язання банку за вкладами фізичних осіб, гарантованими Фондом, мають найвищий пріоритет і не можуть бути передані частково.

*{Абзац другий частини чотирнадцятої статті 42 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

Передача всього або частини майна (активів) та всіх або частини зобов'язань неплатоспроможного банку до перехідного банку/від перехідного банку до перехідного банку не потребує отримання Фондом дозволу Антимонопольного комітету України на концентрацію.

*{Частину чотирнадцяту статті 42 доповнено абзацом третім згідно із Законом № 590-IX від 13.05.2020}*

15. Перехідний банк звільняється від сплати будь-яких платежів (податків, зборів, державного мита), пов'язаних з отриманням від неплатоспроможного банку/іншого перехідного банку або передачею іншому перехідному банку всього або частини майна (активів) та всіх або частини зобов'язань, плати за внесення змін до державних реєстрів, плати за послуги, що надаються державними органами у зв'язку з такою передачею.

*{Частина п'ятнадцята статті 42 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

16. Перехідний банк у порядку правонаступництва набуває всіх прав за переданим йому майном (активами) (включаючи права за договорами забезпечення, у тому числі поруки), а також набуває обов'язків боржника за вимогами кредиторів (вкладників) за переданими зобов'язаннями без необхідності внесення змін до відповідних договорів. Фонд зобов'язаний повідомити боржників і кредиторів про передачу майна (активів) та зобов'язань неплатоспроможного банку перехідному банку шляхом розміщення узагальненої інформації на офіційних веб-сайтах Фонду, неплатоспроможного та перехідного банків. Кожний боржник та/ або кредитор має право отримати інформацію про себе у приміщенні неплатоспроможного та перехідного банків або за телефоном (після ідентифікації).

Перехідний банк є правонаступником неплатоспроможного банку за переданими правочинами та договорами, які забезпечували операційну та господарську діяльність неплатоспроможного банку, зокрема договорів, укладених з працівниками банку, договорів про оренду нерухомого майна, ліцензійних договорів на нематеріальні активи, надання комунальних послуг, послуг зв'язку, охорони тощо. У разі припинення, розірвання або порушення умов таких договорів з боку контрагентів банку перехідний банк має право вимагати відшкодування збитків у порядку, встановленому законодавством України.

Передача всіх активів (активів) та частини майна (активів) банку може здійснюватися на підставі акта (актів) приймання-передачі, що не підлягають нотаріальному посвідченню, незалежно від того, чи укладалися договори, права та обов'язки за якими передаються в нотаріальній формі.

З моменту підписання акта (актів) приймання-передачі перехідний банк набуває всіх прав на майно (активи) неплатоспроможного банку, які належали йому на момент передачі.

Орган, який проводить державну реєстрацію прав на майно (активи), у тому числі обтяжень на таке майно або обмеження на розпорядження (у тому числі арешт), здійснює державну реєстрацію на підставі акта (актів) приймання-передачі майна (активів) та зобов'язань або витягу з нього, засвідченого керівником перехідного банку. Орган, який проводить державну реєстрацію прав на майно (активи), не має права вимагати для реєстрації інші документи, що підтверджують набуття прав на майно (активи), ніж ті, які визначені цим Законом.

Після укладення договору купівлі-продажу акцій перехідного банку, якому передані майно (активи) та зобов'язання неплатоспроможного банку/іншого перехідного банку, та передачі таких акцій інвестору:

1) інвестор не може бути позбавлений права власності на придбані ним акції перехідного банку;

2) учасники, боржники, кредитори (крім Фонду) неплатоспроможного банку або його контрагенти за будь-якими договорами, у тому числі праві і обов'язки щодо яких не передані перехідному банку, банку, який втратив статус перехідного, не можуть вимагати позбавлення такого банку прав на передане йому майно (активи) або зменшення обсягу таких прав;

3) власник акцій неплатоспроможного банку і неплатоспроможний банк не мають права вимагати від інвестора та/або перехідного банку або банку, який втратив статус перехідного, відшкодування будь-яких збитків, понесених у результаті передачі на користь перехідного банку майна (активів) та зобов'язань неплатоспроможного банку, з підстав недійсності, скасування, анулювання або визнання протиправними та нечинними будь-яких рішень, правочинів або інших дій, прийнятих або вчинених у процесі визнання банку неплатоспроможним та його виведення з ринку.

*{Частина статті 42 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015, в редакції Закону № 590-IX від 13.05.2020}*

17. Перехідний банк, утворений у спосіб, передбачений пунктом 4 частини другої статті 39 цього Закону, з метою, визначеною **пунктом 1** частини двадцятої статті 42 цього Закону, втрачає статус перехідного після виконання інвестором усіх умов договору купівлі-продажу акцій перехідного банку (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону), а у разі продажу перехідного банку, утвореного як приймаючий у спосіб, передбачений **пунктами 2, 3** або **4** частини другої статті 39 цього Закону, з метою, визначеною **пунктом 2** частини двадцятої статті 42 Закону, - у день повідомлення Фонду про набуття права власності на акції перехідного банку інвестором. Національний банк України протягом шести місяців з дня втрати банком статусу перехідного здійснює за ним банківський нагляд з урахуванням особливостей, встановлених нормативно-правовими актами Національного банку України. Протягом місяця банк, що втратив статус перехідного, зобов'язаний забезпечити подання до Національного банку України документів щодо погодження статуту (змін до статуту) перехідного банку, його керівників, керівника підрозділу внутрішнього аудиту, працівника, відповідального за проведення фінансового моніторингу, відповідно до вимог законодавства.

*{Частина статті 42 в редакції Закону № 629-VIII від 16.07.2015, із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

18. Фонд наступного дня після підписання акта (актів) приймання-передачі майна (активів) та зобов'язань на користь перехідного банку подає Національному банку України пропозицію про відкликання банківської ліцензії та ліквідацію неплатоспроможного банку.

*{Частина вісімнадцята статті 42 в редакції Закону № 590-IX від 13.05.2020}*

19. Вклади, передані перехідному банку, гарантуються Фондом на тих самих умовах, що існували до дня їх передачі.

20. Утворення перехідного банку здійснюється з метою:

1) реалізації способу виведення неплатоспроможного банку з ринку, передбаченого пунктом 4 частини другої статті 39 цього Закону, на строк не більше ніж на три місяці;

*{Пункт 1 частини статті 42 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2) утворення перехідного банку як приймаючого банку з метою реалізації способу виведення неплатоспроможного банку з ринку, передбаченого **пунктами 2, 3** або **4** частини другої статті 39 цього Закону, на строк не більше ніж на один рік з можливістю продовження строку до одного року.

*{Пункт 2 частини двадцятої статті 42 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

21. У разі створення перехідного банку з метою реалізації способу виведення неплатоспроможного банку з ринку, передбаченого **пунктом 4** частини другої статті 39 цього Закону, такий банк діє з такими особливостями:

1) статутний капітал перехідного банку утворюється у розмірі, що відповідає мінімальним вимогам до статутного капіталу акціонерного товариства;

2) на нього не поширюються вимоги, встановлені Національним банком України щодо обов'язкових економічних нормативів, лімітів валютної позиції, порядку формування та зберігання обов'язкових резервів, формування резервів на покриття збитків за активними

банківськими операціями та визначення величини кредитного ризику за всіма активними банківськими операціями;

3) його утворення здійснюється після отримання письмового зобов'язання інвестора щодо придбання перехідного банку та зарахування інвестором - переможцем конкурсу коштів у вигляді додаткового гарантійного внеску на рахунок Фонду, відкритий у Національному банку України, у розмірі, визначеному Фондом (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону);

Після укладення зазначеного договору Фонд повертає кошти у вигляді додаткового гарантійного внеску або його залишок. Фонд може зараховувати кошти у вигляді додаткового гарантійного внеску в рахунок виконання договору купівлі-продажу акцій перехідного банку;

4) перехідний банк звільняється від сплати початкового внеску та регулярних внесків до Фонду. Після продажу перехідного банку інвестору цей банк сплачує регулярні внески до Фонду на загальних підставах;

5) переможцем відкритого конкурсу є інвестор, конкурсна позиція якого відповідає принципу виведення неплатоспроможного банку з ринку у найменш витратний для Фонду спосіб та який взяв на себе зобов'язання здійснити заходи з приведення діяльності перехідного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності або здійснити приєднання перехідного банку до існуючого платоспроможного банку (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону);

6) після завершення процедури створення, видачі банківської ліцензії та передачі йому майна (активів) та зобов'язань Фонд укладає з інвестором договір купівлі-продажу всіх акцій перехідного банку. Цей договір є підставою для реєстрації права власності інвестора на акції перехідного банку та здійснення інших облікових операцій з акціями банку в депозитарній системі;

7) інвестор зобов'язаний виконувати план заходів з приведення діяльності перехідного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності, поданий до Фонду разом з конкурсною пропозицією, що передбачає придбання ним перехідного банку (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону);

8) умовою договору купівлі-продажу акцій перехідного банку є зобов'язання інвестора у визначені договором терміни (але у будь-якому разі не більше строку, на який його створено) здійснити заходи з приведення діяльності перехідного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону). Договір має передбачати штрафні санкції за неналежне виконання інвестором цієї умови. Її невиконання є підставою для розірвання договору купівлі-продажу акцій перехідного банку на вимогу Фонду.

Фонд зобов'язаний здійснити продаж перехідного банку, створеного відповідно до пункту 1 частини двадцятої цієї статті, протягом одного місяця після передачі майна (активів) та зобов'язань неплатоспроможного банку (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону).

Якщо протягом зазначених у цій частині строків або строків, зазначених у **статті 41¹** цього Закону (у разі виведення банку з ринку за участю держави), перехідний банк не продано інвестору, Фонд має право передати все або частину майна (активів) та всі або частину зобов'язань такого банку іншому перехідному банку або не пізніше дня, наступного за днем закінчення встановленого строку, вносить Національному банку України пропозицію про ліквідацію банку. Передача майна (активів) та зобов'язань здійснюється без необхідності отримання висновку Національного банку України щодо фінансового стану перехідного банку як приймаючого банку та без надання фінансової підтримки з боку Фонду.

Національний банк України приймає рішення про відкликання банківської ліцензії та ліквідацію банку не пізніше ніж через п'ять днів з дня отримання подання Фонду, підготовленого відповідно до вимог Національного банку України.

Фонд зобов'язаний забезпечити контроль за діяльністю перехідного банку до дня втрати ним статусу перехідного (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону). Фонд зобов'язаний забезпечити безперебійну операційну діяльність та виконання усіх чинних зобов'язань перехідного банку до дня його продажу, відповідне управління, формування та подання звітності у порядку, встановленому нормативно-правовими актами Фонду.

Після реєстрації інвестором права власності на акції такого банку в депозитарній системі Фонд припиняє керівництво в такому банку.

Фонд з метою контролю за процесом виконання інвестором договору купівлі-продажу акцій перехідного банку призначає з числа своїх працівників куратора такого банку (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону).

Куратор Фонду здійснює свої функції, передбачені цією частиною, у строк, що не перевищує один місяць з дня його призначення.

Куратор Фонду має право зупиняти, припиняти, обмежувати будь-які операції, що здійснюються перехідним банком, крім заборони використання ним права голосу придбаних акцій, без необхідності отримання на це згоди керівників, органів управління та контролю перехідного банку, проданого інвестору, а також контролює відповідність всіх операцій перехідного банку вимогам законодавства.

Вимоги куратора Фонду є обов'язковими до виконання інвестором, керівниками, органами управління та контролю такого банку, а також працівниками банку.

Куратор Фонду підзвітний виконавчій дирекції Фонду.

Інвестор, керівники, органи управління та контролю, працівники перехідного банку, проданого інвестору, є підзвітними куратору Фонду та надають йому будь-яку інформацію, у тому числі інформацію з обмеженим доступом.

Протягом строку виконання куратором Фонду передбачених цією статтею функцій такий банк діє відповідно до плану врегулювання, а також на нього поширюються обмеження, визначені **частинами п'ятою** і **шостою** статті 36 цього Закону.

Після здійснення інвестором відповідно до умов договору заходів з приведення перехідного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності Фонд повідомляє Національний банк України про необхідність проведення інспекційної перевірки банку. Банк надає Національному банку України необхідну інформацію та документи для проведення інспекційної перевірки і підготовки обґрунтованих висновків.

Національний банк України проводить інспекційну перевірку перехідного банку та подає звіт про її результати не пізніше 15 робочих днів з дня отримання Національним банком України повідомлення Фонду про необхідність її проведення.

Фонд приймає рішення про припинення повноважень куратора Фонду у перехідному банку наступного дня після отримання результатів інспекційної перевірки Національного банку України, яка підтвердила приведення діяльності перехідного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності, та повідомляє про прийняте рішення Національний банк України.

У разі якщо результати інспекційної перевірки Національного банку України не підтвердили приведення діяльності перехідного банку у відповідність з вимогами банківського законодавства України щодо дотримання нормативів капіталу та ліквідності, Фонд вносить Національному банку України пропозицію про ліквідацію такого банку. Національний банк України приймає рішення про відкликання банківської ліцензії та ліквідацію банку не пізніше ніж через п'ять днів з дня отримання подання Фонду, підготовленого відповідно до вимог Національного банку України.

Після прийняття Національним банком України такого рішення Фонд має право передати все або частину майна (активів) та всі або частину зобов'язань іншому перехідному банку. У такому випадку передача всього або частини майна (активів) та всі або частини зобов'язань здійснюється без необхідності отримання висновку Національного банку України щодо фінансового стану перехідного банку як приймаючого банку та без надання фінансової підтримки з боку Фонду.

*{Частина статті 42 із змінами, внесеними згідно із Законами № 78-VIII від 28.12.2014, № 629-VIII від 16.07.2015, в редакції Закону № 590-IX від 13.05.2020}*

22. У разі утворення перехідного банку як приймаючого з метою реалізації способу виведення неплатоспроможного банку з ринку, передбаченого **пунктами** 2, 3 або 4 частини другої статті 39 цього Закону, такий банк діє з такими особливостями:

1) статутний капітал перехідного банку утворюється у розмірі, що відповідає вимогам Національного банку України до статутного капіталу банку;

2) перехідний банк утворюється за рішенням виконавчої дирекції Фонду;

3) перехідний банк має забезпечити дотримання вимог, встановлених Національним банком України щодо нормативів капіталу та ліквідності, через три місяці після його створення;

4) банківський нагляд за таким банком здійснює Національний банк України з урахуванням особливостей та в порядку, що встановлені нормативно-правовими актами Національного банку України;

5) до перехідного банку передаються все або частина майна (активів) та всі або частина зобов'язань неплатоспроможного/іншого перехідного банку без надання фінансової підтримки з боку Фонду;

6) сума переданих перехідному банку майна (активів) та зобов'язань неплатоспроможного банку є тотожними (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону), а зобов'язання неплатоспроможного банку, що гарантуються Фондом, не можуть бути передані частково;

7) перехідному банку не передаються (крім випадків передачі майна (активів) та зобов'язань іншому перехідному банку) майно (активи) та зобов'язання пов'язаних з неплатоспроможним банком осіб за переліком, наданим Національним банком України;

8) перехідний банк звільняється від сплати початкового та регулярного зборів до Фонду. З дня втрати статусу перехідного банку такий банк сплачує збори до Фонду на загальних підставах.

До перехідного банку додатково на підставі планів їх врегулювання у порядку та за умов, визначених цією частиною, можуть передаватися все або частина майна (активів) та всі або частина зобов'язань системно важливих банків та за окремим рішенням виконавчої дирекції - інших банків, що не мають статусу системно важливих.

Фонд зобов'язаний здійснити продаж перехідного банку протягом року з дня його створення. За наявності обґрунтованих підстав цей строк може бути продовжений виконавчою дирекцією Фонду до одного року.

Якщо протягом зазначених у цій частині строків не виявлено наміру інвестора купити перехідний банк, Фонд має право передати все або частину майна (активів) та всі або частину зобов'язань такого банку іншому приймаючому банку або не пізніше дня, наступного за днем закінчення встановленого строку, вносить Національному банку України пропозицію про ліквідацію такого банку.

Національний банк України приймає рішення про відкликання банківської ліцензії та ліквідацію банку не пізніше ніж через п'ять днів з дня отримання подання Фонду, підготовленого відповідно до вимог Національного банку України.

*{Частина статті 42 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015, в редакції Закону № 590-IX від 13.05.2020}*

23. Фонд як власник перехідного банку не несе відповідальності за нанесення збитків, моральної шкоди або інших збитків кредиторам такого банку, а також за дії або бездіяльність, що були здійснені відповідно до плану врегулювання неплатоспроможного банку.

Фонд зобов'язаний забезпечити контроль за діяльністю перехідного банку до дня втрати ним статусу перехідного (крім випадків виведення неплатоспроможного банку з ринку за участю держави, передбачених **статтею 41¹** цього Закону). Фонд зобов'язаний забезпечити безперебійну операційну діяльність та виконання усіх чинних зобов'язань перехідного банку до дня його продажу, належне управління, формування та подання звітності у порядку, встановленому нормативно-правовими актами Фонду.

*{Абзац другий частини двадцять третьої статті 42 в редакції Закону № 590-IX від 13.05.2020}*

24. Банк зобов'язаний надати доступ куратору Фонду до всієї інформації (у тому числі до баз даних) для виконання Фондом його функцій, визначених законодавством. Перешкоджання доступу куратора Фонду до будь-якої інформації щодо перехідного банку, його учасників, пов'язаних з банком осіб, контрагентів тощо є підставою для звернення Фонду до Національного банку України з пропозицією прийняти рішення про відкликання банківської ліцензії та ліквідацію банку.

*{Абзац перший частини двадцять четвертої статті 42 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

Особи, які навмисно перешкоджають доступу куратора Фонду до банку, його приміщень, інформації (операційних систем, активів, книг, записів, документів тощо), несуть відповідальність, визначену **частиною четвертою** статті 37 цього Закону.

*{Статтю 42 доповнено частиною згідно із Законом № 629-VIII від 16.07.2015}*

*{Стаття 42 в редакції Закону № 1586-VII від 04.07.2014}*

*{Статтю 42¹ виключено на підставі Закону № 590-IX від 13.05.2020}*

**Стаття 43.** Фінансова підтримка з боку Фонду

1. За рішенням виконавчої дирекції Фонд може надати приймаючому або перехідному банку фінансову підтримку у формі компенсації за прийняті зобов'язання або у вигляді позики. **Спосіб, розмір та умови надання фінансової підтримки** визначаються відповідно до нормативно-правових актів Фонду.

*{Частина перша статті 43 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015, № 2180-IX від 01.04.2022}*

2. Розмір компенсації приймаючому або перехідному банку має ґрунтуватися на аналізі найменш витратного для Фонду способу виведення банку з ринку, визначеного планом врегулювання неплатоспроможного банку, і не може перевищувати суми переданих приймаючому або перехідному банку зобов'язань перед вкладниками у межах сум гарантованого відшкодування коштів за вкладами, зменшеної на вартість переданих приймаючому або перехідному банку активів.

3. У разі виведення неплатоспроможного банку з ринку шляхом передачі частини або всіх активів та зобов'язань приймаючому або перехідному банку Фонд може надати такому банку фінансову підтримку у вигляді позики на умовах строковості та із сплатою процентів у розмірі не нижче облікової ставки Національного банку України.

Розмір позики, наданої Фондом приймаючому або перехідному банку, не може перевищувати загальний розмір вкладів, що гарантуються Фондом та передані неплатоспроможним банком такому приймаючому або перехідному банку.

*{Статтю 43 доповнено новою частиною згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 2180-IX від 01.04.2022}*

4. Фінансова підтримка не може надаватися будь-якому проблемному або неплатоспроможному банку чи на користь учасників таких банків.

*{Стаття 43 в редакції Закону № 5411-VI від 02.10.2012; текст статті 43 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

## Розділ VIII
## ЛІКВІДАЦІЯ БАНКІВ

**Стаття 44.** Ліквідація банку і призначення уповноваженої особи Фонду

1. Національний банк України приймає рішення про відкликання банківської ліцензії та ліквідацію банку за пропозицією Фонду та з інших підстав, передбачених **Законом України "Про банки і банківську діяльність"**.

2. Фонд вносить Національному банку України пропозицію про відкликання банківської ліцензії та ліквідацію банку:

1) відповідно до плану врегулювання;

2) у разі закінчення строку тимчасової адміністрації банку та/або невиконання плану врегулювання;

3) в інших випадках, передбачених цим Законом.

3. Національний банк України зобов'язаний прийняти рішення про відкликання банківської ліцензії та ліквідацію банку протягом п'яти днів з дня отримання пропозиції Фонду про ліквідацію банку. Національний банк України інформує Фонд про прийняття рішення про відкликання банківської ліцензії та ліквідацію банку не пізніше дня, наступного за днем прийняття такого рішення.

4. Фонд розпочинає процедуру ліквідації банку не пізніше наступного робочого дня після офіційного отримання рішення Національного банку України про відкликання банківської ліцензії та ліквідацію банку, крім випадку, коли ліквідація здійснюється за ініціативою власників банку.

*{Частина четверта статті 44 в редакції Закону № 629-VIII від 16.07.2015}*

5. Фонд з дня початку процедури ліквідації банку протягом трьох років (у разі ліквідації системно важливого банку - протягом п'яти років) забезпечує виконання заходів щодо управління майном (активами) банку та задоволення вимог кредиторів.

Фонд має право прийняти рішення про продовження строку управління майном (активами) банку та задоволення вимог кредиторів у разі виникнення обставин, що унеможливлюють здійснення продажу майна (активів) банку та задоволення вимог кредиторів, на весь час існування таких обставин.

Підставами продовження Фондом строку є такі обставини:

неможливість доступу Фонду або уповноваженої особи Фонду до банку при здійсненні ліквідації, до його майна (активів), книг, записів, документів, баз даних;

набрання законної сили судовим рішенням про скасування або визнання нечинним рішення виконавчої дирекції Фонду про початок процедури ліквідації банку, якщо Фонд оскаржує таке судове рішення;

незадоволення вимог усіх кредиторів банку за наявності майна (активів) банку, нереалізованого з причин рішень суду або іншого компетентного органу, яке мало наслідком неможливість продажу майна (активів) в порядку, визначеному *частинами шостою - тринадцятою* статті 51 цього Закону, або з причини відмови в наданні таких, що вимагаються законом, дозволу або згоди на вчинення правочину щодо відчуження майна (активів).

*{Частина п'ята статті 44 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Законів № 629-VIII від 16.07.2015, № 590-IX від 13.05.2020}*

6. Фонд у разі відсутності майна (активів) або задоволення всіх вимог кредиторів у порядку, встановленому нормативно-правовими актами Фонду, затверджує ліквідаційний баланс і звіт про виконання ліквідаційної процедури.

*{Статтю 44 доповнено частиною шостою згідно із Законом № 590-IX від 13.05.2020}*

7. У двомісячний строк з дня затвердження ліквідаційного балансу та звіту про виконання ліквідаційної процедури Фонд подає документи для внесення запису про припинення банку до Єдиного державного реєстру юридичних осіб, фізичних осіб - підприємців та громадських формувань.

Фонд має право прийняти рішення про продовження строку подання документів для внесення запису про припинення банку до Єдиного державного реєстру юридичних осіб, фізичних осіб - підприємців та громадських формувань на час, необхідний для повного здійснення:

*{Абзац другий частини сьомої статті 44 в редакції Закону № 1588-IX від 30.06.2021}*

заходів щодо стягнення шкоди (збитків), завданої рішеннями, діями або бездіяльністю осіб, зазначених у *частині п'ятій* статті 52 цього Закону;

*{Абзац частини сьомої статті 44 в редакції Закону № 1588-IX від 30.06.2021}*

заходів щодо ініціювання процесів, позовів та проваджень та одержання відшкодування (компенсації) шкоди (збитків), що була заподіяна банку внаслідок:

*{Абзац частини сьомої статті 44 в редакції Закону № 1588-IX від 30.06.2021}*

прямої чи непрямої націоналізації або експропріації майна (інвестицій) банку, здійснення щодо таких інвестицій заходів, що за наслідками дорівнюють експропріації;

*{Абзац частини сьомої статті 44 в редакції Закону № 1588-IX від 30.06.2021}*

реквізиції, руйнування, заподіяння шкоди або знецінення майна (інвестицій) банку внаслідок воєнних дій, збройних конфліктів, громадських заворушень або інших подібних дій.

*{Абзац частини сьомої статті 44 в редакції Закону № 1588-IX від 30.06.2021}*

*{Статтю 44 доповнено частиною сьомою згідно із Законом № 590-IX від 13.05.2020}*

**Стаття 45.** Оголошення про ліквідацію банку

1. Фонд не пізніше робочого дня, наступного за днем отримання рішення Національного банку України про відкликання банківської ліцензії та ліквідацію банку, розміщує інформацію про це на своїй офіційній сторінці в мережі Інтернет.

2. Фонд здійснює опублікування відомостей про ліквідацію банку в газеті "Урядовий кур'єр" або "Голос України" не пізніше ніж через сім днів з дня початку процедури ліквідації банку.

*{Частина друга статті 45 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

3. Відомості про ліквідацію банку повинні містити:

1) найменування та інші реквізити банку, що ліквідується;

2) дату та номер рішення Національного банку України про відкликання банківської ліцензії та ліквідацію банку;

3) дату та номер рішення виконавчої дирекції Фонду про початок процедури ліквідації банку;

4) інформацію про місце та строк прийняття вимог кредиторів.

*{Частина третя статті 45 в редакції Закону № 629-VIII від 16.07.2015}*

4. Фонд у семиденний строк з дня початку процедури ліквідації банку розміщує оголошення, що містить відомості про ліквідацію банку відповідно до частини третьої цієї статті, в усіх приміщеннях банку, в яких здійснюється обслуговування клієнтів.

*{Частина четверта статті 45 в редакції Закону № 629-VIII від 16.07.2015}*

5. Протягом 30 днів з дня опублікування відомостей про відкликання банківської ліцензії, ліквідацію банку кредитори мають право заявити Фонду про свої вимоги до банку. Вимоги фізичних осіб-вкладників у межах гарантованої Фондом суми відшкодування за вкладами не заявляються.

*{Абзац перший частини п'ятої статті 45 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

У випадку ліквідації банку, який має зобов'язання за облігаціями, адміністратор за випуском облігацій, що є кредитором для цілей цього Закону, заявляє Фонду про вимогу до такого банку в інтересах всіх власників облігацій відповідного випуску. Така вимога адміністратора за випуском облігацій в інтересах всіх власників облігацій одного випуску розглядається як єдина вимога кредитора. При цьому ідентифікація кожного власника облігацій не вимагається.

*{Частину п'яту статті 45 доповнено новим абзацом згідно із Законом № 738-IX від 19.06.2020}*

У разі призначення уповноваженої особи Фонду, якій делеговано Фондом повноваження щодо складення реєстру акцептованих вимог кредиторів, кредитори заявляють про свої вимоги до банку такій уповноваженій особі Фонду.

*{Частину п'яту статті 45 доповнено абзацом згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 46.** Наслідки початку процедури ліквідації банку

*{Назва статті 46 в редакції Закону № 629-VIII від 16.07.2015}*

*{Частину першу статті 46 виключено на підставі Закону № 629-VIII від 16.07.2015}*

2. З дня початку процедури ліквідації банку:

*{Абзац перший частини другої статті 46 в редакції Закону № 629-VIII від 16.07.2015}*

1) припиняються всі повноваження органів управління банку (загальних зборів, наглядової ради і правління) та органів контролю (ревізійної комісії та внутрішнього аудиту). Якщо в банку, що ліквідується, здійснювалася тимчасова адміністрація, з дня прийняття рішення про відкликання банківської ліцензії та ліквідацію банку тимчасова адміністрація банку припиняється. Керівники банку звільняються з роботи у зв'язку з ліквідацією банку;

*{Пункт 1 частини другої статті 46 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 1587-IX від 30.06.2021}*

2) банківська діяльність банку завершується закінченням технологічного циклу конкретних операцій у разі, якщо це сприятиме збереженню або збільшенню ліквідаційної маси;

3) строк виконання всіх грошових зобов'язань банку та зобов'язання щодо сплати податків і зборів (обов'язкових платежів) вважається таким, що настав;

*{Пункт 4 частини другої статті 46 виключено на підставі Закону № 629-VIII від 16.07.2015}*

4[1]) нарахування відсотків, комісійних, штрафів, інших очікуваних доходів за активними операціями банку може припинятися у терміни, визначені договорами з клієнтами банку у разі, якщо це сприятиме збереженню або збільшенню ліквідаційної маси;

*{Частину другу статті 46 доповнено пунктом 4[1] згідно із Законом № 1586-VII від 04.07.2014}*

5) відомості про фінансовий стан банку, боржників, які прострочили виконання зобов'язань (за основною сумою та процентами) перед таким банком, а також про вимоги банку до таких боржників перестають бути конфіденційними чи становити банківську таємницю;

*{Пункт 5 частини другої статті 46 в редакції Закону № 1587-IX від 30.06.2021}*

6) Фонд здійснює заходи із виконання плану врегулювання, що передбачає виведення банку з ринку у спосіб, передбачений **пунктом 2** частини другої статті 39 цього Закону, та відчужує майно (активи) та зобов'язання відповідно до **статті 40** цього Закону на користь приймаючого банку протягом 30 днів з дня опублікування відомостей відповідно до **частини другої** статті 45 цього Закону. Вчинення правочинів, пов'язаних з відчуженням майна (активів) банку чи передачею його майна третім особам (крім приймаючого банку), допускається в порядку, передбаченому **статтею 51** цього Закону;

*{Пункт 6 частини другої статті 46 в редакції Закону № 590-IX від 13.05.2020}*

7) втрачають чинність публічні обтяження чи обмеження на розпорядження (у тому числі арешти, заборони прийняття рішень про продаж або про вчинення інших дій з продажу) будь-яким майном (активами), у тому числі коштами банку. Накладення нових обтяжень чи обмежень (у тому числі арештів, заборони прийняття рішень про продаж або про вчинення інших дій з продажу) на майно (активи), у тому числі кошти банку, не допускається;

*{Пункт 7 частини другої статті 46 в редакції Закону № 1588-IX від 30.06.2021}*

8) забороняється зарахування зустрічних вимог, у тому числі зустрічних однорідних вимог, припинення зобов'язань за домовленістю (згодою) сторін (у тому числі шляхом договірного списання), прощення боргу, поєднання боржника і кредитора в одній особі внаслідок укладення будь-яких правочинів з іншими особами, крім банку, зарахування на вимогу однієї з сторін. Обмеження, встановлені цим пунктом, не поширюються на правочини, зобов'язання за якими припиняються у процедурі ліквідаційного неттінгу, що здійснюється в порядку, встановленому **статтею 54¹** цього Закону, та припинення зобов'язань шляхом зарахування зустрічних однорідних вимог боржника, який одночасно є кредитором банку, що ліквідується.

Зарахування зустрічних однорідних вимог боржника, який одночасно є кредитором банку, що ліквідується, здійснюється під час задоволення Фондом відповідної черги акцептованих вимог кредиторів, до якої віднесені вимоги такого кредитора, за заявою кредитора банку і в сумі, що не перевищує суму акцептованих вимог за заявою банку;

*{Пункт 8 частини другої статті 46 із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

*{Абзац десятий частини другої статті 46 виключено на підставі Закону № 590-IX від 13.05.2020}*

*{Абзац одинадцятий частини другої статті 46 виключено на підставі Закону № 590-IX від 13.05.2020}*

*{Абзац дванадцятий частини другої статті 46 виключено на підставі Закону № 590-IX від 13.05.2020}*

*{Абзац тринадцятий частини другої статті 46 виключено на підставі Закону № 590-IX від 13.05.2020}*

*{Частину другу статті 46 доповнено пунктом 8 згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

9) заміна кредитора у зобов'язанні банку не змінює черговості задоволення акцептованих вимог кредиторів, визначених **статтею 52** цього Закону.

*{Частину другу статті 46 доповнено пунктом 9 згідно із Законом № 1588-IX від 30.06.2021}*

3. Під час здійснення ліквідації у банку не виникає жодних додаткових зобов'язань (у тому числі зі сплати податків і зборів (обов'язкових платежів), крім витрат, безпосередньо пов'язаних із здійсненням ліквідаційної процедури.

Вимоги за зобов'язаннями банку із сплати податків і зборів (обов'язкових платежів), що виникли під час проведення ліквідації, пред'являються тільки в межах ліквідаційної процедури та погашаються в цьому чергу відповідно до **статті 52** цього Закону.

*{Абзац другий частини третьої статті 46 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

*{Частина третя статті 46 в редакції Закону № 1586-VII від 04.07.2014}*

4. Протягом 15 днів, але не пізніше строків, установлених Фондом, керівники банку (якщо в банку не здійснювалася тимчасова адміністрація) забезпечують передачу бухгалтерської та іншої документації банку, печаток і штампів, матеріальних та інших цінностей банку Фонду/уповноваженій особі Фонду. У разі ухилення від виконання зазначених обов'язків винні особи несуть відповідальність відповідно до закону.

*{Частина четверта статті 46 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014; в редакції Закону № 629-VIII від 16.07.2015}*

5. Особа, яка навмисно перешкоджає доступу Фонду/уповноваженої особи Фонду до банку, його приміщень, засобів зв'язку, операційних систем, активів, книг, записів, документів, несе відповідальність згідно із законодавством України.

*{Частина п'ята статті 46 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

**Стаття 47.** Організація роботи уповноваженої особи Фонду

1. Уповноважена особа Фонду (кілька уповноважених осіб Фонду) визначається виконавчою дирекцією Фонду. До неї застосовуються правила та вимоги, визначені статтею 35 цього Закону.

2. Рішення уповноваженої особи Фонду є обов'язковими для виконання працівниками банку, що ліквідується.

3. Усі або частина повноважень Фонду, визначених цим Законом, можуть бути делеговані одній або кільком уповноваженим особам Фонду, крім організації реалізації майна банку, що ліквідується, та звернення з вимогами та позовами про відшкодування шкоди (збитків), зазначеними у **частинах п'ятій** та **десятій** статті 52 цього Закону. У разі делегування повноважень кільком уповноваженим особам Фонд зазначає межі повноважень кожної з них.

*{Частина третя статті 47 в редакції Законів № 629-VIII від 16.07.2015, № 1588-IX від 30.06.2021}*

*{Частину четверту статті 47 виключено на підставі Закону № 1588-IX від 30.06.2021}*

*{Стаття 47 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 48.** Повноваження Фонду під час здійснення ліквідації банку

1. Фонд безпосередньо або шляхом делегування повноважень уповноваженій особі Фонду з дня початку процедури ліквідації банку здійснює такі повноваження:

1) здійснює повноваження органів управління банку;

2) приймає в управління майно (у тому числі кошти) банку, вживає заходів щодо забезпечення його збереження, формує ліквідаційну масу, виконує функції з управління та продає майно банку;

3) складає реєстр акцептованих вимог кредиторів (вносить зміни до нього) та здійснює заходи щодо задоволення вимог кредиторів;

4) вживає у встановленому законодавством порядку заходів до повернення дебіторської заборгованості банку, заборгованості позичальників перед банком та пошуку, виявлення, повернення (витребування) майна банку, що перебуває у третіх осіб, оновлює інформацію, що міститься у Кредитному реєстрі Національного банку України;

*{Пункт 4 частини першої статті 48 зі змінами, внесеними згідно із Законом № 2277-VIII від 06.02.2018}*

5) звільняє працівників банку відповідно до законодавства України про працю;

6) заявляє відмову від виконання договорів та в установленому законодавством порядку розриває їх. Цей пункт не застосовується до правочинів, зобов'язання за якими припиняються у процедурі ліквідаційного неттінгу, що здійснюється в порядку, встановленому **статтею 54¹** цього Закону;

*{Пункт 6 частини першої статті 48 зі змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

7) передає у встановленому порядку на зберігання документи банку, що підлягають обов'язковому зберіганню;

8) здійснює повноваження, визначені **частиною другою** статті 37 та **статтею 38** цього Закону;

*{Пункт 8 частини першої статті 48 в редакції Закону № 1588-IX від 30.06.2021}*

9) здійснює відчуження активів та/або зобов'язань банку, якщо це було передбачено планом врегулювання, або в інших випадках, передбачених цим Законом;

10) повертає ініціатору переказу кошти, що надійшли на кореспондентський рахунок банку для зарахування на поточні рахунки клієнтів банку або для виплати переказів протягом процедури ліквідації до дня відкриття банком накопичувального рахунка в Національному банку України (крім коштів, призначенням платежу за якими є погашення зобов'язань перед банком).

2. Фонд може здійснювати інші повноваження, що є необхідні для завершення процедури ліквідації банку.

3. Усі або частина повноважень Фонду, визначені цим Законом, можуть бути делеговані одній або кільком уповноваженим особам Фонду. У разі делегування повноважень кільком уповноваженим особам Фонд чітко визначає межі повноважень кожної з них. Здійснення повноважень органів управління банку може бути делеговано тільки одній уповноваженій особі.

4. Фонд має право залучати до своєї роботи інших осіб, оплата праці яких здійснюється за рахунок банку, що ліквідується, у межах кошторису витрат, затвердженого виконавчою дирекцією Фонду.

5. Фонд має право здійснювати реструктуризацію заборгованості клієнта банку, що ліквідується, у порядку, встановленому нормативно-правовими актами Фонду, у тому числі шляхом:

1) зміни строку користування майном (активом) клієнтом (клієнтами) банку, у тому числі на строк, що перевищує строк ліквідації банку;

2) часткового виконання зобов'язань;

3) зміни процентної ставки за кредитом;

4) зміни виду забезпечення, що збільшить вартість майна (активу), що є забезпеченням виконання умов договору;

5) незастосування штрафних санкцій/пені, неустойки.

*{Частина п'ята статті 48 в редакції Закону № 590-IX від 13.05.2020}*

*{Стаття 48 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 49.** Заходи з підготовки задоволення вимог кредиторів

1. Фонд припиняє приймання вимог кредиторів після закінчення 30 днів з дня опублікування відомостей відповідно до **частини другої статті 45** цього Закону. Будь-які вимоги, що надійшли після закінчення цього строку, вважаються погашеними, крім вимог вкладників у межах гарантованої Фондом суми відшкодування за вкладами.

*{Частина перша статті 49 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. Протягом 90 днів з дня опублікування відомостей відповідно до частини другої статті 45 цього Закону Фонд здійснює такі заходи:

*{Абзац перший частини другої статті 49 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

1) визначає суму заборгованості кожному кредитору та відносить вимоги до певної черги погашення;

2) відхиляє вимоги в разі їх не підтвердження фактичними даними, що містяться у розпорядженні Фонду, та, у разі потреби, заявляє в установленому законодавством порядку заперечення за заявленими до банку вимогами кредиторів;

*{Пункт 2 частини другої статті 49 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

3) складає реєстр акцептованих вимог кредиторів відповідно до вимог, встановлених нормативно-правовими актами Фонду.

3. Реєстр акцептованих вимог кредиторів та зміни до нього підлягають затвердженню виконавчою дирекцією Фонду.

*{Частина третя статті 49 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

4. Будь-які спори щодо акцептування вимог кредиторів підлягають вирішенню у судовому порядку. Судове провадження щодо таких вимог не припиняє перебіг ліквідаційної процедури.

5. Протягом 20 днів з дня затвердження реєстру акцептованих вимог кредиторів Фонд сповіщає кредиторів про акцептування їх вимог шляхом розміщення повідомлення на офіційному сайті Фонду, неплатоспроможного банку, а також у приміщеннях такого банку в доступному для відвідувачів місці.

*{Частина п'ята статті 49 в редакції Закону № 1586-VII від 04.07.2014; із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

6. Фонд не має права здійснювати задоволення вимог кредиторів до затвердження реєстру акцептованих вимог кредиторів, крім задоволення вимог кредиторів за правочинами, що забезпечують проведення ліквідаційної процедури, якщо таке задоволення вимог погоджено виконавчою дирекцією Фонду.

*{Частина шоста статті 49 в редакції Закону № 629-VIII від 16.07.2015}*

7. Фонд зобов'язаний у 60-денний строк з дня початку процедури ліквідації банку надіслати повідомлення всім клієнтам, які користуються послугами відповідального зберігання, про необхідність вилучити свої цінності протягом одного місяця з дня повідомлення. Матеріальні цінності, що перебували на відповідальному зберіганні банку і не були вилучені власниками в зазначений у повідомленні строк, вважаються фондами, на які не можуть претендувати кредитори банку. Такі цінності переходять у розпорядження Фонду для повернення законним власникам.

*{Частина сьома статті 49 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

8. Вимоги, не включені до реєстру акцептованих вимог кредиторів, задоволенню в ліквідаційній процедурі не підлягають і вважаються погашеними.

**Стаття 50.** Формування ліквідаційної маси банку

1. З дня початку процедури ліквідації банку Фонд приступає до інвентаризації та оцінки майна банку з метою формування ліквідаційної маси банку.

*{Частина перша статті 50 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. До ліквідаційної маси банку включаються будь-яке нерухоме та рухоме майно, кошти, майнові права та інші активи банку. До ліквідаційної маси банку не включається майно, що є об'єктом довірчої власності, інше майно у випадках, прямо передбачених законом, а також банкноти і монети, передані Національним банком України на зберігання та для проведення операцій з ними, ліцензія, гудвіл.

*{Абзац перший частини другої статті 50 із змінами, внесеними згідно із Законами № 629-VIII від 16.07.2015, № 2491-VIII від 05.07.2018, № 132-IX від 20.09.2019}*

Кошти, що залишилися після задоволення забезпечених вимог та покриття витрат, пов'язаних з утриманням, збереженням та продажем (здійсненням правочинів за участі банку) предмета забезпечення, підлягають включенню до складу ліквідаційної маси.

За наявності у складі майна банку майна, виключеного з обороту, Фонд зобов'язаний передати його відповідним особам в установленому порядку.

*{Абзац третій частини другої статті 50 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Фонд, виявивши частку, яка належить банку в спільному майні, з метою задоволення вимог кредиторів у встановленому порядку порушує питання про виділення цієї частки.

*{Абзац четвертий частини другої статті 50 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

Майно, щодо якого банк є користувачем або зберігачем, повертається його власнику відповідно до закону або договору.

*{Частина друга статті 50 в редакції Закону № 1586-VII від 04.07.2014}*

3. Майно банку, що включається до ліквідаційної маси, підлягає оцінці Фондом у порядку, встановленому Фондом. Перелік майна банку, що підлягає оцінці суб'єктами оціночної діяльності, встановлюється Фондом. Для проведення оцінки майна Фонд має право залучати суб'єктів оціночної діяльності з оплатою їх послуг за рахунок ліквідаційної маси банку.

*{Частина третя статті 50 із змінами, внесеними згідно із Законами № 1586-VII від 04.07.2014, № 629-VIII від 16.07.2015}*

4. Інвентаризація майна банку та формування ліквідаційної маси мають бути завершені у строк до шести місяців з дня прийняття рішення про ліквідацію банку та відкликання

банківської ліцензії. Результати інвентаризації та формування ліквідаційної маси відображаються в акті, який підлягає затвердженню виконавчою дирекцією Фонду.

5. Іпотечні активи, що перебувають в управлінні банку, об'єкти довірчої власності, а також кошти на рахунку фонду фінансування будівництва або майно фонду операцій з нерухомістю, у тому числі кошти на його рахунку, що перебувають в управлінні банку, не включаються до ліквідаційної маси банку. Розпорядження такими активами здійснюється відповідно до Цивільного кодексу України, Закону України "Про фінансово-кредитні механізми і управління майном при будівництві житла та операціях з нерухомістю".

*{Абзац перший частини п'ятої статті 50 в редакції Закону № 132-IX від 20.09.2019; із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

Активи банку, включені до складу іпотечного покриття іпотечних облігацій, не включаються до ліквідаційної маси банку. Відчуження цих активів, у тому числі примусове, здійснюється в порядку, передбаченому Законом України "Про іпотечні облігації".

Активи недержавного пенсійного фонду (крім депозитів), зберігачем яких є банк, не включаються до ліквідаційної маси такого банку. Повернення цих активів здійснюється відповідно до Закону України "Про недержавне пенсійне забезпечення".

*{Частина п'ята статті 50 в редакції Закону № 1586-VII від 04.07.2014}*

**Стаття 51.** Продаж майна банку, що ліквідується

1. Виконавча дирекція Фонду затверджує заходи з передпродажної підготовки майна одного або кількох банків (майно, об'єднане у пули кількох банків, цілісні майнові комплекси, пакети акцій тощо), ремонту основних засобів, добудови об'єктів незавершеного будівництва, реалізації девелоперських проєктів (зокрема операцій з експлуатації нерухомості) на належних банку земельних ділянках із залученням інвестицій, вилучення з непридатного для експлуатації майна окремих деталей, вузлів, агрегатів тощо для подальшої реалізації.

2. З дня початку процедури ліквідації банку Фонд розпочинає передпродажну підготовку та реалізацію майна (активів) банку у порядку, визначеному цим Законом та нормативно-правовими актами Фонду, за найвищою вартістю у найкоротший строк.

*{Частина друга статті 51 в редакції Закону № 1588-IX від 30.06.2021}*

3. Фонд затверджує способи, порядок, склад та умови відчуження майна банку, включеного до ліквідаційної маси, у разі потреби організовує консолідований продаж майна кількох банків, що одночасно перебувають у процедурі ліквідації.

4. Фонду заборонено відчужувати майно банку до затвердження виконавчою дирекцією Фонду способу, порядку, складу та умов відчуження майна такого банку, крім випадків надання виконавчою дирекцією Фонду дозволу на реалізацію окремого майна з метою запобігання збиткам або ризикам його втрати чи пошкодження, а також у випадках, передбачених цим Законом.

5. З метою отримання доходу Фонд має право укладати договори про передачу окремого майна (активів) неплатоспроможного банку в оренду до реалізації цього майна в установленому порядку.

6. Майно (активи) банку або кількох банків (пули активів) може бути реалізоване у такий спосіб:

1) на відкритих торгах (аукціоні);

2) шляхом продажу безпосередньо юридичній або фізичній особі.

Продаж майна (активів) банку у спосіб, передбачений цією частиною, може проводитися в електронній формі (на електронних майданчиках).

7. Порядок реалізації майна банку під час проведення ліквідаційної процедури регламентується нормативно-правовими актами Фонду.

Виконавча дирекція Фонду приймає рішення про:

1) затвердження переліку майна банку, що не підлягає продажу;

2) об'єднання майна банку або кількох банків у пули та/або продаж окремих інвентарних об'єктів;

3) строки та заходи передпродажної підготовки майна;

4) затвердження умов відкритих торгів (у тому числі аукціонів, що проводяться за методами підвищення та/або зниження ціни і без обмеження мінімальної ціни продажу майна), зокрема розмірів гарантійного внеску, лота та кроку аукціону, порядку зниження ціни, встановлення або відмови від встановлення мінімальної ціни продажу;

5) обмеження загальної кількості відкритих торгів, на яких пропонуються до продажу одні й ті самі об'єкти або пули активів;

6) проведення відкритих торгів (аукціонів) уповноваженою особою Фонду або торговельним посередником, оператором організованого ринку капіталу тощо, у тому числі у разі продажу пулів активів, сформованих за рахунок майна кількох банків.

*{Пункт 6 частини сьомої статті 51 із змінами, внесеними згідно із Законом № 738-IX від 19.06.2020}*

Інформація про вибраний спосіб та порядок продажу (умови, строки, порядок оплати, місце, початкова ціна тощо) майна банку або кількох банків оприлюднюється на офіційному веб-сайті Фонду та веб-сайті банку, майно якого продається.

8. Для проведення відкритих торгів на підставі договору може залучатися організатор торгів - юридична особа, яка відповідно до установчих документів має право проводити торги. Організатор торгів не повинен мати конфлікт інтересів з банком, майно якого продається.

9. Майно банку, щодо обороту якого встановлено обмеження, продається на відкритих торгах. У таких торгах беруть участь особи, які відповідно до законодавства можуть мати зазначене майно у власності чи на підставі іншого речового права та мають відповідні ліцензії і дозволи.

10. Фонд організовує продаж фінансових інструментів через професійного учасника ринків капіталу в порядку, визначеному законодавством, згідно з договором, укладеним між Фондом та інвестиційною фірмою.

*{Частина десята статті 51 в редакції Закону № 738-IX від 19.06.2020}*

11. Продаж акцій приватного акціонерного товариства або часток товариства з обмеженою чи додатковою відповідальністю, що належать банку, здійснюється з урахуванням законів України "Про акціонерні товариства" та "Про господарські товариства".

12. Фонд має право продати майно (активи) банку у вигляді єдиного майнового комплексу або частинами.

*{Частина дванадцята статті 51 в редакції Закону № 1588-IX від 30.06.2021}*

13. На відкритих торгах без обмеження мінімальної ціни продажу або безпосередньо юридичній чи фізичній особі здійснюється продаж:

1) основних засобів, оціночна вартість яких не перевищує 10 мінімальних заробітних плат на день продажу;

2) малоцінних та швидкозношуваних предметів, необоротних активів банку тощо, балансова вартість яких за відповідною групою становить менше 10 мінімальних заробітних плат на день продажу, без проведення незалежної оцінки.

Таке майно може реалізовуватися безпосередньо Фондом або на комісійних умовах через організацію роздрібної торгівлі.

14. Майно (активи) банку, що залишилося на кінець процедури ліквідації банку, у разі незадоволення вимог усіх кредиторів банку реалізується шляхом проведення відкритих торгів (аукціону) без обмеження мінімальної ціни продажу.

15. У разі продажу пулів активів кількох банків доходи і витрати, пов'язані з продажем, розподіляються між банками пропорційно до вартості майна (активів) відповідних банків у пулі.

16. Безнадійна заборгованість, що залишилася на кінець процедури ліквідації банку (вимоги банку за кредитами, цінними паперами, що є у власності банку, дебіторськими зобов'язаннями), погашення якої за результатами аналізу документів Фондом становить менше 5 відсотків, списується з балансу банку.

17. Фонд зобов'язаний оприлюднювати інформацію про майно (активи), що продається, у друкованих засобах масової інформації, визначених виконавчою дирекцією Фонду, на веб-сайті банку та офіційному веб-сайті Фонду. Вимоги до змісту та строків оприлюднення інформації про продаж майна банків регламентуються нормативно-правовими актами Фонду.

18. Не допускається забезпечення позову шляхом встановлення заборони або обов'язку Фонду, банку, віднесеному до категорії неплатоспроможних, банку, що ліквідується відповідно до цього Закону, їх посадовим особам, іншим особам під час реалізації Фондом майна (активів) банку, віднесеного до категорії неплатоспроможних, вчиняти певні дії або шляхом встановлення обов'язку для таких осіб утримуватися від вчинення певних дій.

*{Статтю 51 доповнено частиною вісімнадцятою згідно із Законом № 590-IX від 13.05.2020}*

*{Стаття 51 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 52.** Черговість та порядок задоволення вимог до банку, оплата витрат та здійснення платежів

1. Кошти, одержані в результаті ліквідації та продажу майна (активів) банку, інвестування тимчасово вільних коштів банку в державні цінні папери, спрямовуються Фондом на задоволення вимог кредиторів за умови достатності коштів для забезпечення процедури ліквідації в такій черговості:

*{Абзац перший частини першої статті 52 в редакції Закону № 1588-IX від 30.06.2021}*

1) зобов'язання, що виникли внаслідок заподіяння шкоди життю та здоров'ю громадян;

2) грошові вимоги щодо заробітної плати, що виникли із зобов'язань банку перед працівниками до прийняття рішення про відкликання банківської ліцензії та ліквідацію банку;

3) вимоги Фонду, що виникли у випадках, визначених цим Законом;

*{Пункт 3 частини першої статті 52 із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015; в редакції Закону № 1588-IX від 30.06.2021}*

4) вимоги вкладників - фізичних осіб (у тому числі фізичних осіб - підприємців), які не є пов'язаними особами банку, у частині, що перевищує суму, виплачену Фондом;

5) вимоги Національного банку України, що виникли в результаті зниження вартості застави, наданої для забезпечення кредитів рефінансування, а також для забезпечення повернення банкнот і монет, переданих Національним банком України на зберігання та для проведення операцій з ними;

*{Пункт 5 частини першої статті 52 із змінами, внесеними згідно із Законом № 2491-VIII від 05.07.2018}*

6) вимоги фізичних осіб (у тому числі фізичних осіб - підприємців), які не є пов'язаними особами банку, платежі яких або платежі на ім'я яких заблоковано;

7) вимоги інших вкладників, які не є пов'язаними з банком особами, юридичних осіб - клієнтів банку, які не є пов'язаними з банком особами;

*{Пункт 7 частини першої статті 52 в редакції Закону № 1587-IX від 30.06.2021}*

8) інші вимоги, крім вимог за субординованим боргом;

9) вимоги кредиторів банку (фізичних осіб, у тому числі фізичних осіб - підприємців, а також юридичних осіб), які є пов'язаними особами банку;

10) вимоги за субординованим боргом;

11) вимоги за інструментами з умовами списання/конверсії.

*{Частину першу статті 52 доповнено новим абзацом згідно із Законом № 1587-IX від 30.06.2021}*

Вимоги до банку, не задоволені в результаті ліквідаційної процедури та продажу майна (активів) банку на дату складення ліквідаційного балансу, вважаються погашеними.

*{Абзац частини першої статті 52 в редакції Закону № 1588-IX від 30.06.2021}*

Фонд має право звертатися до осіб, які відповідно до законодавства несуть відповідальність за шкоду (збитки), завдану банку, зазначених у **частинах п'ятій** та **десятій** цієї статті, з вимогами та позовами про відшкодування шкоди (збитків), заподіяної банку, у разі наявності вимог кредиторів, зазначених у **пунктах 1-8** цієї частини, крім вимог за субординованим боргом та вимог кредиторів, які є пов'язаними з банком особами.

*{Частину першу статті 52 доповнено абзацом згідно із Законом № 1588-IX від 30.06.2021}*

Фонд має право звертатися до осіб, які відповідно до законодавства несуть відповідальність за шкоду (збитки), завдану кредиторам, вимоги яких залишилися незадоволеними після завершення процедури ліквідації, - у випадку припинення неплатоспроможного банку або банку, щодо якого було прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", як юридичної особи.

*{Частину першу статті 52 доповнено абзацом згідно із Законом № 1588-IX від 30.06.2021}*

2. Оплата витрат банку, пов'язаних із здійсненням процедури ліквідації, у тому числі витрат Фонду, пов'язаних із здійсненням ліквідаційної процедури банку (управлінням майном (активами), продажем майна (активів) та іншими витратами), проводиться позачергово протягом усієї процедури ліквідації банку в межах кошторису витрат банку, затвердженого Фондом. До таких витрат, зокрема, належать:

*{Абзац перший частини другої статті 52 в редакції Закону № 1588-IX від 30.06.2021}*

1) витрати на опублікування оголошення про ліквідацію банку, відкликання банківської ліцензії та інформації про продаж майна (активів) банку;

2) витрати, пов'язані з утриманням з збереженням майна (активів) банку;

3) витрати на проведення оцінки та продажу майна (активів) банку;

4) витрати на проведення аудиту;

5) витрати на оплату послуг осіб, залучених Фондом для забезпечення здійснення покладених на Фонд повноважень;

6) витрати на виплату вихідної допомоги звільненим працівникам банку;

7) витрати Фонду, пов'язані з здійсненням тимчасової адміністрації та/або ліквідації банку.

*{Частину другу статті 52 доповнено пунктом 7 згідно із Законом № 1588-IX від 30.06.2021}*

3. Майно банку, що є предметом застави, включається до складу ліквідаційної маси, але використовується виключно для позачергового задоволення вимог заставодержателя. Заставодержатель має право звернути стягнення на заставлене майно у порядку, встановленому законодавством або договором застави, та отримати задоволення своїх вимог за рахунок заставленого майна за ціною, визначеною суб'єктом оціночної діяльності з переліку, який визначений у порядку, передбаченому нормативно-правовими актами Фонду. Ціна майна, на яке звертається стягнення як на предмет забезпечення, переданий сторонами угоди щодо ліквідаційного неттінгу на виконання їхніх зобов'язань за таксю угодою, під час виконання нетто-зобов'язання, визначеного відповідно до **статті 54¹** цього Закону, а також порядок звернення стягнення на такий предмет забезпечення визначаються угодою щодо ліквідаційного неттінгу, відповідно до якої здійснюється такий ліквідаційний неттінг.

*{Абзац перший частини третьої статті 52 із змінами, внесеними згідно із Законами № 738-IX від 19.06.2020, № 1588-IX від 30.06.2021}*

У разі продажу Фондом заставленого майна (активів) кошти, отримані Фондом, спрямовуються на позачергове погашення вимог заставодержателя, але не більше суми акцептованих вимог, визначених відповідно до **пункту 1** частини другої статті 49 цього Закону, що забезпечені таким майном (активами). Сума до перерахування заставодержателю зменшується на суму витрат Фонду, розрахованих відповідно до нормативно-правових актів Фонду.

*{Абзац другий частини третьої статті 52 в редакції Закону № 1588-IX від 30.06.2021}*

У разі якщо обсяг коштів від продажу Фондом заставленого майна недостатній для задоволення вимог заставодержателя, незадоволені вимоги підлягають задоволенню в порядку черговості, встановленої цим Законом.

4. Вимоги кожної наступної черги задовольняються в міру надходження коштів від продажу майна (активів) банку після повного задоволення вимог попередньої черги. У разі якщо обсяг коштів, одержаних від продажу майна (активів), недостатній для повного задоволення всіх вимог однієї черги, вимоги задовольняються пропорційно до суми вимог, що належать кожному кредитору однієї черги. У разі відмови кредитора від задоволення визнаної в установленому порядку вимоги Фонд не враховує суму грошових вимог цього кредитора.

5. У разі виявлення шкоди (збитків), завданої банку, Фонд звертається з вимогою про відшкодування на користь Фонду шкоди (збитків), завданої банку, до:

пов'язаної з банком особи та/або іншої особи, рішеннями, діями (в тому числі вчиненими правочинами, операціями, укладеними договорами) та/або бездіяльністю якої завдано шкоди (збитків) банку;

та/або пов'язаної з банком особи, та/або іншої особи, яка внаслідок таких рішень, дій (в тому числі правочинів, операцій, договорів) або бездіяльності прямо чи опосередковано отримала майнову вигоду.

*{Частина п'ята статті 52 в редакції Законів № 1736-VIII від 15.11.2016, № 1588-IX від 30.06.2021}*

6. Керівники, власники істотної участі та кінцеві бенефіціарні власники неплатоспроможного банку або банку, щодо якого прийнято рішення про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", визначені відповідно до закону, під час тимчасової адміністрації або ліквідації зобов'язані надати Фонду у порядку, встановленому Фондом, інформацію про все належне їм майно (активи) та зобов'язання.

У разі ненадання інформації особами, визначеними в абзаці першому цієї частини, Фонд звертається з такими вимогами до суду. Вимоги Фонду про надання інформації про все майно (активи) та зобов'язання забезпечуються накладенням арешту на все рухоме та нерухоме майно осіб, до яких вони заявлені, та/або забороною вчиняти певні дії у порядку забезпечення позову. Заходи забезпечення позову діють до моменту добровільного виконання вимог Фонду або виконання рішення суду про надання інформації про все майно (активи) та зобов'язання у встановленому законодавством порядку.

Фонд має право звернутися до суду з вимогами зобов'язати інших осіб, визначених **частиною п'ятою** цієї статті, крім тих, що визначені **абзацом першим** цієї частини, розкрити інформацію про все майно (активи) та зобов'язання.

Особи, зазначені у **частині п'ятій** цієї статті, у разі, якщо шкоду (збитки) було завдано внаслідок спільного прийняття рішення, вчинення спільної дії чи бездіяльності, несуть солідарну відповідальність.

У разі невиконання вимог про відшкодування шкоди (збитків) особами, визначеними у **частині п'ятій** цієї статті, Фонд звертається до суду про відшкодування шкоди (збитків). Вимоги Фонду про відшкодування шкоди (збитків) можуть забезпечуватися накладенням арешту на рухоме та нерухоме майно осіб, до яких вони заявлені, та/або шляхом застосування інших заходів забезпечення у порядку забезпечення позову.

Якщо підставами для пред'явлення Фондом вимог про відшкодування шкоди (збитків), зокрема, стали дії пов'язаних з банком осіб, направлені на приховування реального фінансового стану банку, у тому числі систематичне подання та/або оприлюднення недостовірної інформації або звітності щодо операцій з пов'язаними з банком особами, які були вчинені протягом трьох місяців до віднесення банку до категорії неплатоспроможних, вчинені пов'язаними з банком особами правочини, визнані нікчемними, та/або правочини, визнані недійсними у встановленому порядку, або якщо шкода (збитки) виникла внаслідок вчинення пов'язаними з банком особами дій, передбачених **пунктами 1-10** частини восьмої цієї статті, ці підстави є достатніми для суду для прийняття рішення про накладення арешту на рухоме та нерухоме майно осіб та/або заборону вчиняти певні дії особам, до яких Фондом заявлені вимоги, у межах суми пред'явлених вимог, якщо інші обставини не встановлені у судовому порядку.

У разі подання заяви про забезпечення позову до подання позовної заяви Фонд повинен пред'явити позов протягом 30 робочих днів з дня постановлення ухвали про забезпечення позову.

*{Статтю 52 доповнено новою частиною згідно із Законом № 1588-IX від 30.06.2021}*

7. Право на звернення до судів належної юрисдикції (в тому числі іноземних судів) з позовом про відшкодування шкоди (збитків), заподіяної банку, у разі наявності умов, визначених **частиною першою** цієї статті, виникає у Фонду з моменту виявлення рішень, дій чи бездіяльності, якими завдано шкоди (збитків) банку та/або його кредиторам, виявлення осіб, які брали участь у прийнятті таких рішень, вчиненні дій чи бездіяльності та/або отримали від них майнову вигоду, а також встановлення розміру заподіяної шкоди (збитків).

Фонд має право звертатися з такими позовами до судів належної юрисдикції (в тому числі іноземних судів) протягом процедури ліквідації банку та протягом трьох років після внесення запису про припинення банку як юридичної особи (спеціальна позовна давність).

*{Статтю 52 доповнено новою частиною згідно із Законом № 1588-IX від 30.06.2021}*

8. Шкода (збитки), завдана рішеннями, діями чи бездіяльністю осіб, зазначених у **частині п'ятій** цієї статті, відшкодовується у разі, якщо такі рішення, дії (враховуючи дії, що відповідають ознакам ризикової діяльності) або бездіяльність прийняті або вчинені з порушенням законодавства, у тому числі нормативно-правових актів Національного банку України, та якщо шкода (збитки) виникла внаслідок:

1) вчинення правочинів (у тому числі договорів), які є нікчемними на підставі **частини третьої** статті 38 цього Закону;

2) недотримання особами, зазначеними у **частині п'ятій** цієї статті, обов'язку діяти в інтересах банку та його кредиторів, добросовісно і розумно та/або не перевищувати своїх повноважень;

3) порушення заборон та/або вимог, встановлених законодавством, у тому числі **Законом України** "Про банки і банківську діяльність", щодо угод із пов'язаними з банком особами або в інтересах таких пов'язаних з банком сторін, або на користь таких осіб;

4) купівлі недержавних цінних паперів та/або інших фінансових інструментів з порушенням вимог, встановлених Національним банком України;

5) надання банком власних активів (майна) в забезпечення (застава, порука, гарантія, притримання, право довірчої власності тощо) виконання зобов'язань третіх осіб перед їх кредитором у порядку, іншому, ніж здійснення операцій відповідно до **Закону України** "Про банки і банківську діяльність", крім майна (активів), переданого (переданих) як забезпечення виконання зобов'язань перед Національним банком України або для забезпечення здійснення платежів та розрахунків за угодами, укладеними з платіжними системами або операторами таких систем;

6) незабезпечення банком контролю за цільовим використанням позичальниками кредитних коштів;

7) зміни графіка погашення боргу (строків і сум погашення основного боргу, сплати процентів/комісійних винагород, черговості платежів) за кредитним договором та договором забезпечення, які були здійснені з порушенням вимог законодавства;

8) необґрунтованого зменшення та/або звільнення боржника від сплати нарахованих за активними операціями процентів та інших винагород;

9) безпідставного припинення прийнятного забезпечення перед банком за правочином або його заміни на менш ліквідне забезпечення;

10) операцій, вчинених банком всупереч обмежень, встановлених Національним банком України, в тому числі з пов'язаними з банком особами.

*{Статтю 52 доповнено новою частиною згідно із Законом № 1588-IX від 30.06.2021}*

9. Фонд набуває прав потерпілого в кримінальних провадженнях, порушених стосовно зазначених у цій статті осіб, після завершення ліквідації банку.

Кошти, стягнуті та/або одержані Фондом з осіб, зазначених у **частині п'ятій** цієї статті, спрямовуються Фондом на задоволення вимог кредиторів банку, зазначених у **пунктах 1-8** частини першої цієї статті, які виникли у зв'язку із завданням їм шкоди (збитків) внаслідок незадоволення їхніх вимог, у порядку, визначеному **частиною четвертою** цієї статті, після відшкодування витрат Фонду, понесених у зв'язку із стягненням шкоди (збитків).

Припинення банку як юридичної особи не є підставою та не призводить до закінчення чи припинення процесів, позовів чи проваджень, що були ініційовані відповідно до цієї частини Фондом, та не є підставою для звільнення від відповідальності та/або припинення відповідальності осіб, проти яких такі процеси, позови чи провадження були ініційовані. Усі вимоги Фонду у зв'язку із такими процесами, позовами або провадженнями, у тому числі всі вимоги про відшкодування шкоди (збитків), заподіяної кредиторам (колишнім кредиторам) банку, не припиняються з припиненням банку.

*{Статтю 52 доповнено новою частиною згідно із Законом № 1588-IX від 30.06.2021}*

10. Фонд або уповноважена особа Фонду, діючи від імені та в інтересах банку як інвестора, має право ініціювати процеси, позови чи провадження (цивільні, адміністративні, кримінальні чи арбітражні) у будь-яких судах та/або арбітражах належної юрисдикції (в тому числі в іноземних та міжнародних судах), у тому числі арбітражні чи інші процеси проти держав відповідно до міжнародних договорів України, у тому числі міжнародних договорів про заохочення та взаємний захист інвестицій, щодо шкоди (збитків), що була заподіяна банку фізичними чи юридичними особами (приватного чи публічного права) та державами, внаслідок:

прямої чи непрямої націоналізації майна (інвестицій) банку, здійснення щодо таких інвестицій заходів, що за наслідками дорівнюють експропріації;

реквізиції, руйнування, заподіяння шкоди або знецінення майна (інвестицій) банку внаслідок воєнних дій, збройних конфліктів, громадських заворушень або інших подібних дій.

Кошти, одержані в результаті зазначених у цій частині процесів, позовів та проваджень, включаються до ліквідаційної маси банку, а в разі надходження таких коштів після затвердження ліквідаційного балансу спрямовуються на задоволення вимог кредиторів банку, які виникли у зв'язку із завданням їм шкоди (збитків) внаслідок незадоволення їхніх вимог, у черговості та порядку, визначеному **частинами першою** та **четвертою** цієї статті, після відшкодування витрат Фонду на ведення таких процесів, позовів та проваджень, а також усіх пов'язаних з ними виконавчих процесів.

*{Статтю 52 доповнено новою частиною згідно із Законом № 1588-IX від 30.06.2021}*

11. У разі якщо за випуском облігацій призначено адміністратора, виплати, отримані у ході процедури ліквідації банку, який має зобов'язання за такими облігаціями, розподіляються між власниками цих облігацій у порядку, встановленому **Законом України** "Про ринки капіталу та організовані товарні ринки".

*{Статтю 52 доповнено частиною згідно із Законом № 738-IX від 19.06.2020}*

*{Стаття 52 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 52[1].** Збереження документів

1. Фонд забезпечує належне оформлення, упорядкування та зберігання усіх, у тому числі фінансово-господарських, документів неплатоспроможного банку протягом ліквідаційної процедури.

*{Частина перша статті 52¹ із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

2. До завершення ліквідації неплатоспроможного банку Фонд зобов'язаний забезпечити збереженість архівних документів неплатоспроможного банку і передати їх на зберігання до Національного банку України.

*{Частина друга статті 52¹ із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

3. Національний банк України зобов'язаний прийняти документи неплатоспроможного банку на зберігання по мірі їх подання Фондом.

*{Частина третя статті 52¹ із змінами, внесеними згідно із Законом № 629-VIII від 16.07.2015}*

*{Закон доповнено статтею 52¹ згідно із Законом № 1586-VII від 04.07.2014}*

*{Статтю 52² виключено на підставі Закону № 590-IX від 13.05.2020}*

**Стаття 53.** Завершення ліквідації банку

1. Для завершення ліквідаційної процедури банку Фонд має право виставити на реалізацію майно (активи) банку, що залишилися нереалізованими, шляхом проведення відкритого конкурсу (аукціону) без обмеження мінімальної ціни продажу, що передбачено цим Законом та нормативно-правовими актами Фонду.

*{Частина перша статті 53 в редакції Закону № 590-IX від 13.05.2020}*

2. За результатами проведення ліквідації банку Фонд складає ліквідаційний баланс та звіт, що затверджуються виконавчою дирекцією Фонду.

Звіт складається відповідно до нормативно-правових актів Фонду і має містити, зокрема, відомості про реалізацію майна банку та задоволення вимог кредиторів та/або вичерпання можливостей здійснення заходів, спрямованих на задоволення вимог кредиторів.

3. Ліквідаційна процедура банку вважається завершеною з моменту затвердження ліквідаційного балансу, а банк ліквідованим - з моменту внесення запису про припинення банку до Єдиного державного реєстру юридичних осіб, фізичних осіб - підприємців та громадських формувань.

*{Частина третя статті 53 в редакції Закону № 590-IX від 13.05.2020}*

4. У день внесення запису до Єдиного державного реєстру юридичних осіб, фізичних осіб - підприємців та громадських формувань Фонд надсилає Національному банку України звіт про виконання ліквідаційної процедури та ліквідаційний баланс.

*{Частина четверта статті 53 в редакції Закону № 590-IX від 13.05.2020}*

5. Не пізніше наступного робочого дня після затвердження ліквідаційного балансу банку та/ або внесення запису до Єдиного державного реєстру юридичних осіб, фізичних осіб - підприємців та громадських формувань про припинення банку Фонд оприлюднює на офіційному веб-сайті Фонду інформацію про завершення ліквідаційної процедури банку та затвердження ліквідаційного балансу банку та/або припинення банку як юридичної особи.

*{Частина п'ята статті 53 в редакції Законів № 590-IX від 13.05.2020, № 1588-IX від 30.06.2021}*

6. Повноваження Фонду, зазначені у **пункті 17** частини п'ятої статті 12, **пунктах 5 і 6** частини другої статті 37, **частині сьомій** статті 44 та **частинах п'ятій - десятій** статті 52 цього Закону, припиняються після повного завершення заходів щодо банку, передбачених **частинами п'ятою - десятою** статті 52 цього Закону.

*{Статтю 53 доповнено частиною шостою згідно із Законом № 1588-IX від 30.06.2021}*

*{Стаття 53 в редакції Закону № 629-VIII від 16.07.2015}*

**Стаття 54.** Оскарження рішень

1. Рішення, що приймаються відповідно до цього Закону Національним банком України, Кабінетом Міністрів України, Міністерством фінансів України, Національною комісією з цінних паперів та фондового ринку, Фондом, працівниками Фонду, що виконують функції, передбачені цим Законом, у тому числі у процесі здійснення тимчасової адміністрації, ліквідації банку, виконання плану врегулювання, можуть бути оскаржені до суду виключно з метою встановлення їх законності.

*{Частина перша статті 54 із змінами, внесеними згідно із Законом № 590-IX від 13.05.2020}*

2. Оскарження рішень, визначених частиною першою цієї статті, не зупиняє виконання оскаржуваного рішення або дії.

3. Особливості оскарження рішень (індивідуальних актів) Фонду про запровадження тимчасової адміністрації у банку, про початок процедури ліквідації банку, про затвердження плану врегулювання та будь-яких інших рішень (індивідуальних актів), прийнятих на його виконання, а також рішень (індивідуальних актів) щодо призначення уповноважених осіб Фонду, делегування їм повноважень, рішень (індивідуальних актів) Національного банку України про затвердження пропозиції Національного банку України про участь держави у виведенні неплатоспроможного банку з ринку, рішень Кабінету Міністрів України про участь держави у виведенні неплатоспроможного банку з ринку та рішень (індивідуальних актів) Міністерства фінансів України, прийнятих на виконання таких рішень Кабінету Міністрів України, а також рішень (індивідуальних актів) Національної комісії з цінних паперів та фондового ринку, прийнятих у процесі виведення неплатоспроможного банку з ринку, встановлюються Кодексом адміністративного судочинства України.

*{Статтю 54 доповнено частиною третьою згідно із Законом № 590-IX від 13.05.2020}*

4. Розпочата процедура виведення неплатоспроможного банку з ринку не може бути зупинена/припинена, у тому числі у разі визнання протиправними (незаконними) та скасування індивідуальних актів Національного банку України та/або Фонду, що були підставою для її початку.

*{Статтю 54 доповнено частиною четвертою згідно із Законом № 590-IX від 13.05.2020}*

5. Розпочата процедура ліквідації банку не може бути зупинена/припинена, у тому числі у разі визнання протиправними (незаконними) та скасування індивідуальних актів Національного банку України та/або Фонду, що були підставою для її початку.

*{Статтю 54 доповнено частиною п'ятою згідно із Законом № 590-IX від 13.05.2020}*

6. Визнання протиправними (незаконними) та скасування рішень (індивідуальних актів), визначених частиною третьою цієї статті, не відносячи того становища банку, яке існувало до прийняття такого акта/рішення, включаючи відновлення правового статусу цього банку та відновлення прав акціонерів на момент прийняття такого акта/рішення; не може бути підставою для визнання недійсними, нечинними, протиправними та скасування будь-яких рішень, правочинів або інших дій/визнання протиправною бездіяльності, прийнятих, вчинених або допущених у процедурі виведення банку з ринку та ліквідації; не породжує будь-яких прав у осіб, які були учасниками банку на момент прийняття такого індивідуального акта/рішення, крім права на відшкодування завданої шкоди.

*{Статтю 54 доповнено частиною шостою згідно із Законом № 590-IX від 13.05.2020}*

7. У разі визнання протиправним (незаконним) та скасування рішення (індивідуального акта), зазначеного у частині третій цієї статті, особа має право вимагати відшкодування шкоди, завданої таким рішенням (індивідуальним актом), у порядку, передбаченому законом. У разі прийняття Національним банком України рішення (індивідуального акта) про віднесення банку до категорії неплатоспроможних/відкликання банківської ліцензії та ліквідацію банку або Фондом - рішення, що розпочинає процедуру виведення банку з ринку або ліквідацію банку, а також індивідуальних актів Кабінету Міністрів України, Міністерства фінансів України, Національної комісії з цінних паперів та фондового ринку щодо виконання заходів плану врегулювання, що припинили право власності на акції, право учасників банку або осіб, які були учасниками банку на дату прийняття такого рішення (індивідуального акта) на відшкодування шкоди, завданої таким рішенням (індивідуальним актом), повинно застосовуватися з урахуванням особливостей, встановлених статтею 79¹ Закону України "Про банки і банківську діяльність".

*{Статтю 54 доповнено частиною сьомою згідно із Законом № 590-IX від 13.05.2020}*

## Розділ VIII¹
## ОСОБЛИВОСТІ ЗДІЙСНЕННЯ ТИМЧАСОВОЇ АДМІНІСТРАЦІЇ ТА ЛІКВІДАЦІЇ БАНКУ, ЯКИЙ МАЄ ЗОБОВ'ЯЗАННЯ, ЩО ВИНИКЛИ З ПОСИЛАННЯМ НА ОБОВ'ЯЗКОВІСТЬ УГОДИ ЩОДО ЛІКВІДАЦІЙНОГО НЕТТІНГУ

**Стаття 54¹.** Ліквідаційний неттінг

1. Для цілей цієї статті:

1) термін "правочин щодо фінансових інструментів" вживається у значенні, наведеному в **частині першій** статті 2 Закону України "Про ринки капіталу та організовані товарні ринки", а терміни "нетто-зобов'язання", "розрахунок вартості зобов'язань", "сторони угоди щодо ліквідаційного неттінгу", "угода щодо ліквідаційного неттінгу" - у значеннях, наведених у **частині другій** статті 40 Закону України "Про ринки капіталу та організовані товарні ринки";

2) під датою ліквідаційного неттінгу розуміється дата прийняття рішення про віднесення до категорії неплатоспроможних банку, який є стороною угоди щодо ліквідаційного неттінгу, або прийняття рішення про відкликання у такого банку банківської ліцензії та його ліквідацію, у разі якщо таке рішення має наслідком обмеження або відтермінування можливості здійснення передачі активів або переказу коштів.

2. Ліквідаційний неттінг - це здійснення усіх таких дій відповідно до угоди щодо ліквідаційного неттінгу:

1) здійснення особою, щодо якої в угоді щодо ліквідаційного неттінгу зазначено про те, що вона є відповідальною за проведення ліквідаційного неттінгу (далі - особа, зазначена в угоді щодо ліквідаційного неттінгу), розрахунку вартості зобов'язань банку, який є стороною угоди щодо ліквідаційного неттінгу та щодо якого прийнято рішення, зазначене у пункті 2 частини першої цієї статті, а також зобов'язань кожного контрагента, який є іншою стороною такої угоди щодо ліквідаційного неттінгу, за одним чи кількома деривативними контрактами, що існував (існували) станом на дату ліквідаційного неттінгу, та був укладений (були укладені) такими сторонами з посиланням на обов'язковість для них такої угоди щодо ліквідаційного неттінгу. Порядок здійснення такого розрахунку визначається угодою щодо ліквідаційного неттінгу;

2) припинення всіх існуючих станом на дату ліквідаційного неттінгу зобов'язань за одним або кількома деривативними контрактами незалежно від їх змісту та/або строку (терміну) виконання, укладеними (укладеними) такими сторонами угоди щодо ліквідаційного неттінгу з посиланням на обов'язковість угоди щодо ліквідаційного неттінгу для таких сторін, у такій послідовності:

а) заміна відповідно до **статті 604** Цивільного кодексу України, зобов'язань, які існували станом на дату ліквідаційного неттінгу, новими грошовими зобов'язаннями, сума яких дорівнює вартості зобов'язання, розрахованій відповідно до пункту 1 цієї частини. При цьому вважається, що строк виконання вимог за такими новими грошовими зобов'язаннями настав;

б) припинення нових грошових зобов'язань, передбачених підпунктом "а" цього пункту, шляхом зарахування зустрічних однорідних вимог за такими зобов'язаннями та визначення нетто-зобов'язання.

3. Угода щодо ліквідаційного неттінгу може передбачати відмінний від частини другої цієї статті спосіб припинення існуючих станом на дату ліквідаційного неттінгу зобов'язань за одним або кількома деривативними контрактами, укладеним (укладеними) сторонами угоди щодо ліквідаційного неттінгу.

4. Ліквідаційний неттінг не здійснюється у таких випадках:

1) відповідна генеральна угода не передбачає можливості проведення ліквідаційного неттінгу;

2) відповідна угода щодо ліквідаційного неттінгу укладена після дати прийняття рішення, зазначеного у пункті 2 частини першої цієї статті;

3) деривативний контракт, що містить посилання на обов'язковість відповідної угоди щодо ліквідаційного неттінгу, був укладений банком після дати прийняття рішення, зазначеного у пункті 2 частини першої цієї статті.

5. Будь-які інші положення цього Закону, крім передбачених цією статтею, не можуть бути підставою для:

1) визнання незаконними, недійсними та/або нікчемними дій, що здійснюються під час ліквідаційного неттінгу відповідно до цієї статті;

2) відмови від проведення ліквідаційного неттінгу відповідно до умов угоди щодо ліквідаційного неттінгу та/або посилань на неможливість такого проведення;

3) відмови від звернення стягнення на предмет обтяження, що забезпечує виконання зобов'язань сторін за угодою щодо ліквідаційного неттінгу, та/або посилань на неможливість такого звернення.

6. Проведення особою, зазначеною в угоді щодо ліквідаційного неттінгу, ліквідаційного неттінгу та звернення стягнення на предмет обтяження, який забезпечує виконання зобов'язань банку, який є стороною угоди щодо ліквідаційного неттінгу та щодо якого прийнято рішення, передбачене пунктом 2 частини першої цієї статті, за одним або кількома деривативними контрактами, зазначеними у пункті 1 частини другої цієї статті, здійснюються в позасудовому порядку та не потребують будь-якої згоди та/або затвердження такого банку або будь-якої іншої особи.

7. Ліквідаційний неттінг щодо банку, в якому здійснюється тимчасова адміністрація або ліквідація, проводиться протягом семи робочих днів з дати ліквідаційного неттінгу. Особа, зазначена в угоді щодо ліквідаційного неттінгу, зобов'язана протягом трьох робочих днів після дати ліквідаційного неттінгу надати у письмовій формі банку та Фонду перелік деривативних контрактів, зазначених у пункті 1 частини другої цієї статті, та орієнтовну дату завершення проведення ліквідаційного неттінгу.

8. Протягом дії тимчасової адміністрації та/або ліквідації Фонд зобов'язаний забезпечити проведення перевірки деривативних контрактів, укладених банком поза організованими ринками капіталу з пов'язаними особами протягом шести місяців до дати ліквідаційного неттінгу (з іншими особами - протягом одного місяця) з метою виявлення деривативних контрактів, що були укладені з посиланням на обов'язковість для них угоди щодо ліквідаційного неттінгу та є нікчемними з таких підстав:

1) результатом укладення деривативного контракту було недобросовісне надання банком переваги окремому кредитору (групі кредиторів) порівняно з іншими кредиторами в частині задоволення (у тому числі черговості такого задоволення) вимог кредиторів у процедурі тимчасової адміністрації та/або ліквідації банку;

2) деривативний контракт було укладено банком з метою недобросовісного виключення майна банку зі складу ліквідаційної маси;

3) результатом укладення деривативного контракту було недобросовісне збільшення розміру грошових зобов'язань банку перед окремим кредитором (групою кредиторів).

Порядок виявлення нікчемних деривативних контрактів, а також дій Фонду у разі їх виявлення визначаються нормативно-правовими актами Фонду.

9. Фонд:

1) протягом дії тимчасової адміністрації та/або ліквідації повідомляє сторони деривативних контрактів, зазначених у пунктах 1-3 частини восьмої цієї статті, та особу, зазначену в угоді щодо ліквідаційного неттінгу, про нікчемність таких деривативних контрактів, а також вчиняє дії щодо застосування наслідків нікчемності таких деривативних контрактів;

2) вживає заходів до витребування (повернення) майна (коштів) банку, переданого за такими деривативними контрактами;

3) має право вимагати відшкодування збитків, спричинених укладенням таких деривативних контрактів.

У разі отримання повідомлення Фонду про нікчемність деривативного контракту з підстав, передбачених частиною восьмою цієї статті, особа, зазначена в угоді щодо ліквідаційного неттінгу, зобов'язана повторно провести процедуру визначення нетто-зобов'язання без врахування зобов'язань за таким деривативним контрактом та повідомити сторонам такого деривативного контракту нову суму нетто-зобов'язання. Інша сторона деривативного контракту, яка отримала від банку кошти за результатами попереднього ліквідаційного неттінгу, зобов'язана повернути банку різницю між сумою попереднього та нового нетто-зобов'язання.

10. Положення цієї статті, крім частин восьмої та дев'ятої, також застосовуються до вчинених банком на організованих ринках капіталу та поза ними правочинів щодо фінансових інструментів та щодо валютних цінностей, у разі якщо такі правочини були вчинені з посиланням на обов'язковість для них угоди щодо ліквідаційного неттінгу, а також до правочинів, вчинених з метою забезпечення виконання зобов'язань за деривативними контрактами та іншими правочинами, зазначеними у цій частині. Положення частин восьмої та дев'ятої цієї статті застосовуються виключно до тих правочинів, зазначених у цій частині, що були вчинені банком поза організованими ринками капіталу.

*{Стаття 54¹ в редакції Закону № 738-IX від 19.06.2020}*

*{Закон доповнено розділом VIII¹ згідно із Законом № 738-IX від 19.06.2020}*

### Розділ IX
### КООРДИНАЦІЯ ДІЯЛЬНОСТІ ФОНДУ З НАЦІОНАЛЬНИМ БАНКОМ УКРАЇНИ

**Стаття 55.** Співпраця та координація діяльності між Фондом та Національним банком України

1. Фонд та Національний банк України співпрацюють з метою забезпечення стабільності банківської системи України і захисту інтересів вкладників та інших кредиторів банків. З цією метою Фонд і Національний банк України укладають договір про співпрацю, який передбачає засади співробітництва цих установ у процесі регулювання і нагляду за діяльністю банків, застосування до них заходів впливу, інспекційних перевірок банків, здійснення заходів з виведення неплатоспроможних банків з ринку.

2. Фонд та Національний банк України своєчасно повідомляють один одному про будь-які спостереження та висновки щодо діяльності банків, які є необхідними для виконання покладених на них обов'язків. Національний банк України має протягом 10 днів з дня отримання відповідної інформації від Фонду надати Фонду перелік заходів, які планує вжити Національний банк України до банку, щодо якого виявлені ризики за результатами його діяльності.

*{Частина друга статті 55 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

3. Фонд та Національний банк України мають право на отримання документів та інформації з питань, що належать до їх компетенції.

*{Частина третя статті 55 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

4. Директор - розпорядник Фонду або особа, яка його заміщує, має бути запрошений на засідання Правління Національного банку України, на якому обговорюються питання здійснення нагляду за діяльністю банків та/або застосування до них заходів впливу. Директор - розпорядник Фонду або особа, яка його заміщує, обов'язково запрошується на засідання Правління Національного банку України, на якому обговорюється питання щодо віднесення банку до категорії неплатоспроможних.

*{Частина четверта статті 55 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

5. Фонд та Національний банк України з метою співпраці та координації своєї діяльності проводять оперативні наради не рідше одного разу на квартал або частіше на вимогу одного з керівників цих органів.

6. Фонд та Національний банк України мають право порушувати питання про необхідність внесення змін до нормативно-правових актів один одного.

**Стаття 56.** Надання інформації для Фонду

1. Фонд має право отримувати від Національного банку України та органів виконавчої влади документи та інформацію, необхідну для виконання Фондом функцій, передбачених цим Законом.

*{Частина перша статті 56 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

2. Національний банк України наступного дня після ухвалення відповідного рішення або отримання інформації інформує Фонд про:

1) внесення відомостей до Державного реєстру банків, надання або відкликання банківської ліцензії;

*{Пункт 1 частини другої статті 56 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

2) застосування до банку заходів впливу;

3) рішення про віднесення банку до категорії проблемних або неплатоспроможних;

4) результати інспекційної перевірки проблемного банку та надає копії звітів інспекційних перевірок такого банку за останні 12 місяців;

*{Пункт 4 частини другої статті 56 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

5) результати виконання проблемним банком заходів з фінансового оздоровлення.

3. Національний банк України щомісяця надає Фонду інформацію про діяльність та фінансовий стан банків, передбачену договором про співпрацю.

4. Національний банк України на запит Фонду надає документи та інформацію, у тому числі отриману під час проведення банківського нагляду, про операції банку, стан його ліквідності, платоспроможності, прибутковості, а також інші документи та інформацію, необхідні для виконання Фондом функцій, передбачених цим Законом.

*{Частина четверта статті 56 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

**Стаття 57.** Надання інформації для Національного банку України та інших державних органів

1. Фонд надає Національному банку України у триденний строк після ухвалення відповідного рішення інформацію про:

1) порушення банком вимог, встановлених цим Законом, нормативно-правовими актами Фонду та законодавством України;

2) результати перевірки банку Фондом;

3) запровадження тимчасової адміністрації або ліквідації банку;

4) затвердження плану врегулювання;

5) виконання плану врегулювання в цілому та окремих його етапів, включаючи створення перехідного банку, продаж неплатоспроможного банку або перехідного банку інвестору, передачу активів і зобов'язань неплатоспроможного банку приймаючому банку;

6) припинення тимчасової адміністрації банку та закінчення ліквідації банку;

7) ризики, виявлені у діяльності банків.

*{Частину першу статті 57 доповнено пунктом 7 згідно із Законом № 1586-VII від 04.07.2014}*

2. Фонд зобов'язаний своєчасно надавати Національному банку України будь-які виявлені Фондом відомості та інформацію, що засвідчують порушення банками вимог законодавства України.

3. Фонд щокварталу та на першу вимогу Національного банку України надає інформацію про стан здійснення тимчасової адміністрації або ліквідації банку.

4. Фонд надає Національному банку України інформацію та інші документи у строки та порядку, передбачені цим Законом.

5. Фонд та/або уповноважена особа Фонду подає до центрального органу виконавчої влади, що реалізує державну політику у сфері запобігання та протидії легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення, інформацію у випадках, передбачених **Законом України** "Про запобігання та протидію легалізації (відмиванню) доходів, одержаних злочинним шляхом, фінансуванню тероризму та фінансуванню розповсюдження зброї масового знищення".

Фонд надає на запит (вимогу, рішення) Національного антикорупційного бюро інформацію, що містить банківську таємницю.

*{Частина п'ята статті 57 в редакції Закону № 361-IX від 06.12.2019}*

**Стаття 58.** Безспірне списання своєчасно не сплачених сум зборів до Фонду

1. У разі несплати банком сум зборів до Фонду протягом одного місяця з дня сплати, встановленого цим Законом, Фонд має право звернутися до Національного банку України з вимогою щодо безспірного списання сум зборів до Фонду та нарахованої пені з кореспондентського рахунку банку.

2. Національний банк України протягом трьох днів з дня надходження вимоги зобов'язаний виконати в повному обсязі (або частково в обсязі, наявному на рахунку такого банку) вимогу Фонду шляхом списання коштів з рахунку банку та зарахування їх на рахунок Фонду та повідомити Фонд про виконання або про відсутність можливості виконати його вимоги.

*{Частина друга статті 58 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

3. Виключною підставою для невиконання вимоги Фонду є відсутність коштів на кореспондентському рахунку банку.

*{Частина третя статті 58 із змінами, внесеними згідно із Законом № 1586-VII від 04.07.2014}*

### Розділ X
### ПРИКІНЦЕВІ ТА ПЕРЕХІДНІ ПОЛОЖЕННЯ

1. Цей Закон набирає чинності через шість місяців з дня його опублікування, крім **пункту 10 частини першої статті 12** та абзацу другого пункту 3 розділу X "Прикінцеві та перехідні положення" цього Закону, які набирають чинності з дня, наступного за днем його опублікування.

2. Визнати таким, що втратив чинність, **Закон України "Про Фонд гарантування вкладів фізичних осіб"** (Відомості Верховної Ради України, 2002 р., № 5, ст. 30; 2007 р., № 2, ст. 15; 2010 р., № 2-3, ст. 11, № 37, ст. 496) з дня набрання чинності цим Законом.

3. Ініційована до набрання чинності цим Законом процедура ліквідації банку здійснюється відповідно до законодавства, що діяло до набрання чинності цим Законом.

Рішення адміністративної ради Фонду про збільшення розміру відшкодування коштів за вкладами, прийняте відповідно до статті 3 **Закону України "Про Фонд гарантування вкладів фізичних осіб"**, поширюється на банки, що перебували в стадії ліквідації на день прийняття такого рішення.

4. Санаційний банк, утворений до набрання чинності цим Законом, продовжує провадити свою діяльність у порядку, встановленому нормативно-правовим актом Національного банку України, погодженим з Кабінетом Міністрів України та Комітетом Верховної Ради України з питань фінансів і банківської діяльності, податкової та митної політики.

*{Абзац другий пункту 4 розділу X виключено на підставі Закону № 629-VIII від 16.07.2015}*

5. Протягом трьох місяців з дня набрання чинності цим Законом Національний банк України здійснює оцінку стану банків, у яких була запроваджена тимчасова адміністрація до набрання чинності цим Законом. У разі прийняття Національним банком України за результатами такої оцінки рішення про віднесення банку до категорії неплатоспроможних у такому банку запроваджується тимчасова адміністрація відповідно до цього Закону. У разі прийняття Національним банком України за результатами такої оцінки рішення про належне виконання банком програми фінансового оздоровлення в ньому продовжує здійснюватися тимчасова адміністрація відповідно до вимог законодавства, що діяло до набрання чинності цим Законом.

*{Пункт 6 розділу X виключено на підставі Закону № 2180-IX від 01.04.2022}*

7. Кваліфікаційні вимоги до членів адміністративної ради та виконавчої дирекції Фонду, визначені цим Законом, поширюються на осіб, які призначаються на посади члена адміністративної ради та виконавчої дирекції Фонду після набрання чинності цим Законом.

Члени адміністративної ради та виконавчої дирекції Фонду, призначені на посади до набрання чинності цим Законом, продовжують здійснювати свої повноваження до закінчення строку, на який вони були призначені.

8. Законодавчі та інші нормативно-правові акти, прийняті до набрання чинності цим Законом, застосовуються у частині, що не суперечить цьому Закону.

9. Внести зміни до таких законодавчих актів України:

1) у Кодексі України про адміністративні правопорушення (Відомості Верховної Ради УРСР, 1984 р., додаток до № 51, ст. 1122):

а) статтю 166[7] викласти в такій редакції:

"**Стаття 166[7]. Протидія тимчасовій адміністрації або ліквідації банку**

Створення перешкод будь-якою особою для доступу уповноваженої особи Фонду гарантування вкладів фізичних осіб до банку при здійсненні тимчасової адміністрації або ліквідації, до його активів, книг, записів, документів, баз даних -

тягне за собою накладення штрафу від трьохсот до п'ятисот неоподатковуваних мінімумів доходів громадян";

б) доповнити статтями 166[19] і 234[4] такого змісту:

"**Стаття 166[19]. Порушення законодавства у сфері гарантування вкладів фізичних осіб**

Порушення керівником банку порядку складання або подання відомостей до Фонду гарантування вкладів фізичних осіб -

тягне за собою накладення штрафу від п'ятисот до тисячі неоподатковуваних мінімумів доходів громадян.

Невиконання або несвоєчасне виконання керівником банку законних рішень Фонду гарантування вкладів фізичних осіб -

тягнуть за собою накладення штрафу від двохсот до п'ятисот неоподатковуваних мінімумів доходів громадян.

Невнесення або несвоєчасне внесення банком збору до Фонду гарантування вкладів фізичних осіб –

тягнуть за собою накладення штрафу на керівника банку в розмірі від чотирьохсот до тисячі неоподатковуваних мінімумів доходів громадян";

"**Стаття 234[4]. Фонд гарантування вкладів фізичних осіб**

Фонд гарантування вкладів фізичних осіб розглядає справи про адміністративні правопорушення, пов'язані з порушенням законодавства у сфері гарантування вкладів фізичних осіб, нормативно-правових актів Фонду гарантування вкладів фізичних осіб (стаття 166[19]).

Від імені Фонду гарантування вкладів фізичних осіб розглядати справи про адміністративні правопорушення і накладати адміністративні стягнення мають право директор-розпорядник Фонду гарантування вкладів фізичних осіб та його заступники";

в) пункт 1 частини першої статті 255 доповнити абзацом такого змісту:

"працівники Фонду гарантування вкладів фізичних осіб (стаття 166[19])";

2) частину четверту статті 67 **Господарського процесуального кодексу України** (Відомості Верховної Ради України, 1992 р., № 6, ст. 56) доповнити абзацом п'ятим такого змісту:

"виконання рішень Фонду гарантування вкладів фізичних осіб щодо призначення уповноваженої особи Фонду гарантування вкладів фізичних осіб та здійснення тимчасової адміністрації або ліквідації банку, заборони проводити певні дії уповноваженою особою Фонду гарантування вкладів фізичних осіб на здійснення тимчасової адміністрації та/або ліквідації банку або Фонду гарантування вкладів фізичних осіб при здійсненні тимчасової адміністрації або ліквідації банку";

3) у статті 342 **Кримінального кодексу України** (Відомості Верховної Ради України, 2001 р., № 25, ст. 131):

а) назву доповнити словами "уповноваженій особі Фонду гарантування вкладів фізичних осіб";

б) абзац перший частини другої доповнити словами "або уповноваженій особі Фонду гарантування вкладів фізичних осіб";

4) частину шосту статті 152 Цивільного процесуального кодексу України (Відомості Верховної Ради України, 2004 р., №№ 40-42, ст. 492) викласти в такій редакції:

"6. Не допускається забезпечення позову шляхом зупинення тимчасової адміністрації або ліквідації банку, заборони або встановлення обов'язку вчиняти певні дії Фонду гарантування вкладів фізичних осіб при здійсненні тимчасової адміністрації чи ліквідації банку";

5) пункт 2 частини п'ятої статті 117 Кодексу адміністративного судочинства України (Відомості Верховної Ради України, 2005 р., №№ 35-37, ст. 446) викласти в такій редакції:

"2) зупинення рішень Фонду гарантування вкладів фізичних осіб щодо призначення уповноваженої особи Фонду гарантування вкладів фізичних осіб та стосовно здійснення тимчасової адміністрації або ліквідації банку, заборони проводити певні дії уповноваженій особі Фонду гарантування вкладів фізичних осіб або Фонду гарантування вкладів фізичних осіб при здійсненні тимчасової адміністрації або ліквідації банку";

6) статтю 2 Закону України "Про звернення громадян" (Відомості Верховної Ради України, 1996 р., № 47, ст. 256) доповнити частиною другою такого змісту:

"Звернення вкладників до Фонду гарантування вкладів фізичних осіб щодо виплати Фондом відшкодування в межах гарантованої суми розглядаються в порядку, встановленому законодавством про систему гарантування вкладів фізичних осіб";

7) у Законі України "Про Національний банк України" (Відомості Верховної Ради України, 1999 р., № 29, ст. 238 із наступними змінами):

а) пункт 11 статті 7 виключити;

б) пункт 1 статті 15 доповнити абзацами такого змісту:

"про віднесення банку до категорії проблемних або неплатоспроможних;

про фінансову спроможність приймаючого банку виконати зобов'язання перед вкладниками та іншими кредиторами";

в) частину першу статті 42 доповнити пунктом 16 такого змісту:

"16) веде рахунки Фонду гарантування вкладів фізичних осіб";

г) статтю 73 доповнити частиною третьою такого змісту:

"Національний банк України також застосовує право безспірного списання коштів з кореспондентського рахунку банку на користь Фонду гарантування вкладів фізичних осіб у разі звернення Фонду в порядку, встановленому Законом України "Про систему гарантування вкладів фізичних осіб";

*{Підпункт 8 пункту 9 розділу X втратив чинність на підставі Кодексу № 2597-VIII від 18.10.2018}*

9) у Законі України "Про банки і банківську діяльність" (Відомості Верховної Ради України, 2001 р., № 5-6, ст. 30 із наступними змінами):

а) у статті 2:

визначення термінів "ліквідатор", "ліквідаційна маса", "мораторій", "неплатоспроможність банку", "тимчасова адміністрація", "тимчасовий адміністратор" виключити;

визначення терміна "ліквідація банку" доповнити словами "та Закону України "Про систему гарантування вкладів фізичних осіб";

б) частину другу статті 6 доповнити словами "та Законом України "Про систему гарантування вкладів фізичних осіб";

в) друге речення частини дев'ятнадцятої статті 7 викласти у такій редакції: "З дня призначення уповноваженої особи Фонду гарантування вкладів фізичних осіб повноваження наглядової ради державного банку призупиняються";

г) статтю 20 виключити;

ґ) у частині одинадцятій статті 24 слова "вводити тимчасову адміністрацію та" виключити;

д) частину першу статті 26 викласти в такій редакції:

"Банк може бути реорганізований за рішенням власників банку";

е) частину першу статті 27 виключити;

є) у статті 44:

частину першу замінити двома частинами такого змісту:

"Банк зобов'язаний з урахуванням специфіки його роботи створити адекватну систему управління ризиками, яка має забезпечувати на постійній основі виявлення, вимірювання, контроль і моніторинг усіх видів ризиків за всіма напрямами діяльності банку на всіх організаційних рівнях та бути адекватною ризикам, що приймаються банком.

Банк зобов'язаний утворити постійно діючий підрозділ з управління ризиками, в якому зосереджені функції з управління ризиками та який відповідає за розроблення, впровадження внутрішніх положень і процедур управління ризиками, інформує керівництво про ризики, прийнятність їх рівня та надає пропозиції щодо необхідності прийняття керівництвом відповідних рішень."

У зв'язку з цим частини другу та третю вважати відповідно частинами третьою та четвертою;

частину четверту виключити;

ж) пункт 5 частини першої статті 46 викласти в такій редакції:

"5) наявність хоча б однієї з підстав для віднесення банку до категорії проблемних або неплатоспроможних або для відкликання банківської ліцензії та ліквідації банку";

з) у частині першій статті 57 слова "та філій іноземних банків" виключити;

и) у статті 58:

у частині другій слова "оголошення мораторію на задоволення вимог кредиторів" виключити;

у частині четвертій слово "(банкрутства)" виключити;

частину п'яту замінити двома частинами такого змісту:

"Власники істотної участі, керівники банку (крім керівників відокремлених підрозділів банку) за фіктивне банкрутство, доведення до банкрутства або приховування стійкої фінансової неспроможності банку несуть відповідальність.

На власників істотної участі та керівників банку за рішенням суду може бути покладена відповідальність за зобов'язаннями банку в разі віднесення банку з їх вини до категорії неплатоспроможних";

і) частину четверту статті 59 викласти у такій редакції:

"Стягнення коштів з кореспондентських рахунків банку здійснюється Національним банком України на вимогу Фонду гарантування вкладів фізичних осіб виключно у випадках, передбачених Законом України "Про систему гарантування вкладів фізичних осіб";

ї) у статті 62:

у частині шостій слова "(тимчасовий адміністратор)" виключити;

після частини сьомої доповнити трьома новими частинами такого змісту:

"Обмеження стосовно отримання інформації, що містить банківську таємницю, передбачені цією статтею, не поширюються на працівників Фонду гарантування вкладів фізичних осіб при здійсненні ними функцій і повноважень, передбачених Законом України "Про систему гарантування вкладів фізичних осіб".

Національний банк України має право надавати Фонду гарантування вкладів фізичних осіб інформацію про банки чи клієнтів банків, що збирається під час проведення банківського нагляду і становить банківську таємницю, у випадках, передбачених Законом України "Про систему гарантування вкладів фізичних осіб".

При здійсненні тимчасової адміністрації або ліквідації неплатоспроможного банку Фонд гарантування вкладів фізичних осіб має право розкривати інформацію, що містить банківську таємницю, приймаючому банку, перехідному банку, інвестору, що придбаває неплатоспроможний або перехідний банк, іншим особам, які задіяні у процесі здійснення тимчасової адміністрації і ліквідації банку. Зазначені особи зобов'язані забезпечити збереження отриманої інформації, що містить банківську таємницю".

У зв'язку з цим частини восьму - десяту вважати відповідно частинами одинадцятою - тринадцятою;

й) у статті 67:

частину п'яту доповнити реченням такого змісту: "У разі якщо Національний банк України при здійсненні банківського нагляду дійшов висновку, що система управління ризиками банку є неефективною та/або неадекватною, банк зобов'язаний на вимогу Національного банку України невідкладно розробити та подати на погодження Національному банку України відповідний план заходів, спрямованих на усунення недоліків";

у частині шостій слова "процедури тимчасової адміністрації банку або" виключити;

у частині дванадцятій слова "за винятком випадків призначення тимчасового адміністратора або відкликання у банку банківської ліцензії і призначення ліквідатора" виключити;

к) у статті 71:

частину восьму доповнити словами "крім надання матеріалів перевірки Фонду гарантування вкладів фізичних осіб";

доповнити частиною десятою такого змісту:

"Національний банк України має право залучати працівників Фонду гарантування вкладів фізичних осіб до участі в інспекційних перевірках проблемного банку";

л) у статті 73:

у частині першій:

абзац перший викласти в такій редакції:

"У разі порушення банками або іншими особами, які можуть бути об'єктом перевірки Національного банку України відповідно до цього Закону, банківського законодавства, нормативно-правових актів Національного банку України, його вимог, встановлених відповідно до статті 66 цього Закону, або здійснення ризикової діяльності, яка загрожує інтересам вкладників чи інших кредиторів банку, Національний банк України адекватно вчиненому порушенню або рівню такої загрози має право застосувати заходи впливу, до яких належать";

пункти 1, 2 і 3 викласти в такій редакції:

"1) письмове застереження;

2) скликання загальних зборів учасників, спостережної ради банку, правління (ради директорів) банку;

3) укладення письмової угоди з банком, за якою банк чи визначена угодою особа зобов'язується вжити заходів для усунення порушень, поліпшення фінансового стану банку, підвищення ефективності функціонування та/або адекватності системи управління ризиками тощо";

пункт 4 замінити пунктами 4-13 такого змісту:

"4) зупинення виплати дивідендів чи розподілу капіталу в будь-якій іншій формі;

5) встановлення для банку підвищених економічних нормативів;

6) підвищення резервів на покриття можливих збитків за кредитами та іншими активами;

7) обмеження, зупинення чи припинення здійснення окремих видів здійснюваних банком операцій;

8) заборона надавати бланкові кредити;

9) накладення штрафів на:

керівника банку у розмірі до ста неоподатковуваних мінімумів доходів громадян;

банк відповідно до положень, затверджених Правлінням Національного банку України, але у розмірі не більш як 1 відсоток суми зареєстрованого статутного капіталу;

власників істотної участі у банку в разі порушення ними вимог статті 34 цього Закону щодо порядку набуття або збільшення істотної участі в банку у розмірі до 10 відсотків придбаної (збільшеної) частки;

10) тимчасова, до усунення порушення, заборона використання власником істотної участі в банку права голосу придбаних акцій (паїв);

11) тимчасове, до усунення порушення, відсторонення посадової особи банку від посади;

12) віднесення банку до категорії проблемного або неплатоспроможного;

13) відкликання банківської ліцензії та ліквідація банку";

частини другу і сьому виключити;

у частині третій слова та цифру "у підпункті "є" пункту 4" замінити словами та цифрою "у пункті 10";

м) у частині другій статті 74 слова "впливу, передбачених цим Законом" замінити словами "впливу (санкцій), передбачених законом";

н) розділи V і VI викласти в такій редакції:

## "Розділ V
## ПРОБЛЕМНИЙ ТА НЕПЛАТОСПРОМОЖНИЙ БАНК. ЛІКВІДАЦІЯ БАНКУ

### Глава 15
### КРИТЕРІЇ ВІДНЕСЕННЯ БАНКУ ДО ПРОБЛЕМНИХ ТА НЕПЛАТОСПРОМОЖНИХ

**Стаття 75.** Віднесення банку до категорії проблемних

Національний банк України зобов'язаний прийняти рішення про віднесення банку до категорії проблемних за умови його відповідності хоча б одному з таких критеріїв:

1) банк допустив зменшення розміру регулятивного капіталу та/або нормативів капіталу банку, встановленого законом та/або нормативно-правовими актами Національного банку України, на 10 і більше відсотків протягом звітного місяця;

2) банк не виконав вимогу вкладника або іншого кредитора, строк якої настав п'ять і більше робочих днів тому;

3) системне порушення банком законодавства, що регулює питання запобігання та протидії легалізації (відмиванню) доходів, одержаних злочинним шляхом, або фінансуванню тероризму;

4) банк порушив вимоги законодавства щодо порядку подання та/або оприлюднення звітності, в тому числі подав Національному банку України та/або оприлюднив недостовірну звітність, що призвело до суттєвого викривлення показників фінансового стану банку;

5) систематична незабезпеченість ефективності функціонування та/або адекватності системи управління ризиками, що створює загрозу інтересам вкладників чи інших кредиторів банку.

Національний банк України має право віднести банк до категорії проблемних з інших підстав, визначених нормативно-правовими актами Національного банку України.

Рішення Національного банку України про віднесення банку до категорії проблемного є банківською таємницею.

Національний банк України має право заборонити проблемному банку використовувати для розрахунків прямі кореспондентські рахунки та/або вимагати від проблемного банку проведення розрахунків виключно через консолідований кореспондентський рахунок.

Проблемний банк у строк до 180 днів зобов'язаний привести свою діяльність у відповідність із вимогами законодавства, у тому числі нормативно-правових актів Національного банку України.

Проблемний банк зобов'язаний у строк до семи днів повідомити Національний банк України про заходи, які він вживатиме з метою приведення своєї діяльності у відповідність із вимогами законодавства, та на вимогу Національного банку України повідомляти його про хід виконання цих заходів.

Національний банк України протягом 180 днів з дня віднесення банку до категорії проблемних має право прийняти рішення про визнання діяльності банку такою, що відповідає законодавству, або про віднесення банку до категорії неплатоспроможних.

Національний банк України зобов'язаний не пізніше ніж через 180 днів з дня віднесення банку до категорії проблемних прийняти рішення про визнання діяльності банку такою, що відповідає законодавству, або про віднесення банку до категорії неплатоспроможних.

**Стаття 76.** Віднесення банку до категорії неплатоспроможних

Національний банк України зобов'язаний прийняти рішення про віднесення банку до категорії неплатоспроможних у разі:

1) неприведення банком своєї діяльності у відповідність із вимогами законодавства, у тому числі нормативно-правових актів Національного банку України, після віднесення його до категорії проблемних, але не пізніше ніж через 180 днів з дня визнання його проблемним;

2) зменшення розміру регулятивного капіталу або нормативів капіталу банку до однієї третини від мінімального рівня, встановленого законом та/або нормативно-правовими актами Національного банку України;

3) невиконання банком протягом 10 робочих днів поспіль 10 і більше відсотків своїх зобов'язань перед вкладниками та іншими кредиторами.

Національний банк України не пізніше дня, наступного за днем прийняття рішення про віднесення банку до категорії неплатоспроможних, повідомляє про це Фонд гарантування вкладів фізичних осіб для вжиття ним заходів, передбачених Законом України "Про систему гарантування вкладів фізичних осіб".

Національний банк України не здійснює банківський нагляд за банком, віднесеним до категорії неплатоспроможних, та перехідним банком, крім отримання звітності в установленому Національним банком України порядку.

Національний банк України поновлює банківський нагляд за банком у день отримання рішення Фонду гарантування вкладів фізичних осіб про припинення тимчасової адміністрації у зв'язку із здійсненням інвестором капіталізації банку в обсязі, що забезпечує виконання вимог нормативно-правових актів Національного банку України, у тому числі щодо економічних нормативів, та вжиття інших заходів для відновлення платоспроможності і стабільної діяльності банку.

## Глава 16
## ЛІКВІДАЦІЯ БАНКУ

**Стаття 77.** Відкликання банківської ліцензії та ліквідація банку

Банк може бути ліквідований:

1) за рішенням власників банку;

2) у разі відкликання Національним банком України банківської ліцензії з власної ініціативи або за пропозицією Фонду гарантування вкладів фізичних осіб.

Національний банк України має право відкликати банківську ліцензію з власної ініціативи у разі, якщо:

1) виявлено, що документи, надані для отримання банківської ліцензії, містять недостовірну інформацію;

2) банк не виконав жодної банківської операції протягом року з дня отримання банківської ліцензії.

Національний банк України приймає рішення про відкликання у банку банківської ліцензії та ліквідацію банку за пропозицією Фонду гарантування вкладів фізичних осіб протягом п'яти днів з дня отримання такої пропозиції Фонду.

Порядок відкликання банківської ліцензії у банку, що ліквідується за ініціативою власників, визначається нормативно-правовими актами Національного банку України.

Національний банк України не пізніше дня, наступного за днем прийняття рішення про відкликання банківської ліцензії та ліквідацію банку, повідомляє про це банк та надсилає рішення до Фонду гарантування вкладів фізичних осіб.

Фонд гарантування вкладів фізичних осіб у день отримання рішення Національного банку України про ліквідацію банку набуває прав ліквідатора банку та розпочинає процедуру його ліквідації відповідно до Закону України "Про систему гарантування вкладів фізичних осіб".

Процедура ліквідації банку вважається завершеною, а банк ліквідованим з дня внесення запису про це до Єдиного державного реєстру юридичних осіб та фізичних осіб - підприємців.

Національний банк України вносить запис до Державного реєстру банків про ліквідацію банку на підставі отриманого від Фонду гарантування вкладів фізичних осіб рішення про затвердження ліквідаційного балансу та звіту ліквідатора.

**Стаття 78.** Ліквідація банку з ініціативи власників

Ліквідація банку з ініціативи власників здійснюється в порядку, передбаченому законодавством про ліквідацію юридичних осіб, у разі якщо Національний банк України після отримання рішення власників про ліквідацію банку не виявив ознак, за якими цей банк може бути віднесено до категорії проблемного або неплатоспроможного.

Власники банку мають право розпочати процедуру ліквідації банку за рішенням загальних зборів лише після надання на це згоди Національним банком України та за умови відкликання банківської ліцензії.

Якщо банк, який ліквідується за ініціативою власників, віднесено Національним банком України до категорії проблемних або неплатоспроможних, Національний банк України та Фонд гарантування вкладів фізичних осіб вживають щодо нього заходи, передбачені цим Законом та Законом України "Про систему гарантування вкладів фізичних осіб".

**Розділ VI**
## ОСКАРЖЕННЯ РІШЕНЬ НАЦІОНАЛЬНОГО БАНКУ УКРАЇНИ

**Стаття 79.** Оскарження рішень Національного банку України

Банк або інші особи, які охоплюються наглядовою діяльністю Національного банку України, мають право оскаржити в суді в установленому законодавством порядку рішення, дії або бездіяльність Національного банку України чи його посадових осіб.

Рішення Національного банку України, його службовців можуть бути оскаржені до суду виключно з метою встановлення законності таких рішень.

Оскарження не зупиняє виконання оскаржуваного рішення або дії.

Службовці Національного банку України та залучені ним особи не несуть особистої відповідальності за будь-які дії або бездіяльність, якщо вони діяли добросовісно та на законних підставах. Позови, подані проти таких осіб, вважаються позовами, поданими проти Національного банку України.

Національний банк України забезпечує правовий захист своїх службовців та залучених ним осіб у разі подання проти них позовів, пов'язаних із забезпеченням виконання ними функцій Національного банку України.

Шкода, заподіяна внаслідок професійної помилки службовця Національного банку України та залучених ним осіб, відшкодовується згідно із законодавством України, нормативно-правовими актами Національного банку України та договорами про страхування фінансової відповідальності";

10) пункт 17 частини першої статті 7 Закону України "Про страхування" (Відомості Верховної Ради України, 2002 р., № 7, ст. 50; 2010 р., № 2-3, ст. 11) після слів "тимчасового адміністратора, ліквідатора фінансової установи" доповнити словами "(для банків - уповноваженої особи Фонду гарантування вкладів фізичних осіб), членів виконавчої дирекції та адміністративної ради Фонду гарантування вкладів фізичних осіб";

*{Підпункт 11 пункту 9 розділу X втратив чинність на підставі Закону № 1197-VII від 10.04.2014}*

12) частину десяту статті 6 Закону України "Про захист персональних даних" (Відомості Верховної Ради України, 2010 р., № 34, ст. 481) доповнити абзацом третім такого змісту:

"Порядок обробки персональних даних у сфері забезпечення функціонування системи гарантування вкладів фізичних осіб затверджується Фондом гарантування вкладів фізичних осіб";

13) частину першу статті 5 Закону України "Про судовий збір" (із змінами, внесеними законами України від 6 жовтня 2011 року № 3828-VI та від 23 грудня 2011 року № 4289-VI) доповнити пунктом 22 такого змісту:

"22) уповноважена особа Фонду гарантування вкладів фізичних осіб - у справах, пов'язаних із здійсненням тимчасової адміністрації та ліквідації банку";

14) частину першу статті 4 Декрету Кабінету Міністрів України від 21 січня 1993 року № 7-93 "Про державне мито" (Відомості Верховної Ради України, 1993 р., № 13, ст. 113 із наступними змінами) доповнити пунктом 49 такого змісту:

"49) уповноважена особа Фонду гарантування вкладів фізичних осіб - за позовами до суду та господарського суду, у тому числі про витребування (повернення) майна (коштів) банку, переданого за договорами, що є нікчемними відповідно до Закону України "Про систему гарантування вкладів фізичних осіб", а також про відшкодування збитків, спричинених їх укладенням".

10. Кабінету Міністрів України у шестимісячний строк з дня опублікування цього Закону:

привести свої нормативно-правові акти у відповідність з цим Законом;

забезпечити прийняття законодавчих актів, необхідних для реалізації цього Закону;

забезпечити приведення міністерствами, іншими центральними органами виконавчої влади їх нормативно-правових актів у відповідність із цим Законом.

*{Абзац п'ятий пункту 10 розділу X виключено на підставі Закону № 1586-VII від 04.07.2014}*

11. Національному банку України протягом шести місяців з дня опублікування цього Закону привести свої нормативно-правові акти у відповідність із цим Законом.

12. Фонду гарантування вкладів фізичних осіб разом з Національним банком України та Національною комісією з цінних паперів та фондового ринку протягом шести місяців з дня опублікування цього Закону розробити та затвердити порядок створення, реєстрації випуску акцій та видачі банківської ліцензії перехідному банку за спрощеною процедурою.

13. Фонду гарантування вкладів фізичних осіб у шестимісячний строк з дня опублікування цього Закону привести свої нормативно-правові акти у відповідність із цим Законом та забезпечити прийняття нормативно-правових актів на виконання положень цього Закону.

14. На період дії **Закону України** "Про фінансову реструктуризацію" Фонд гарантування вкладів фізичних осіб діє з урахуванням повноважень, визначених Законом України "Про фінансову реструктуризацію", та бере участь у процедурах, передбачених Законом України "Про фінансову реструктуризацію", на умовах, визначених Законом України "Про фінансову реструктуризацію".

*{Розділ X доповнено пунктом 14 згідно із Законом № 1414-VIII від 14.06.2016}*

15. До вкладу прирівнюються кошти, які залучені від фізичної особи як позика або вклад до небанківської фінансової установи через банк, що виступив повіреним за відповідним договором і на день набрання чинності **Законом України** "Про внесення змін до деяких законів України щодо відшкодування фізичним особам через систему гарантування вкладів фізичних осіб шкоди, завданої зловживаннями у сфері банківських та інших фінансових послуг" віднесений до категорії неплатоспроможних, якщо при цьому банком не було поінформовано фізичну особу під розпис про непоширення на такі кошти гарантій, передбачених цим Законом, а фізична особа, яка розмістила, надала такі кошти, прирівнюється до вкладника.

Фонду гарантування вкладів фізичних осіб ретельно вивчити документи щодо кожної фізичної особи, яку прирівняно до вкладника і кошти якої прирівняні до вкладу цим пунктом, і не пізніше 30 робочих днів з дня набрання чинності **Законом України** "Про внесення змін до деяких законів України щодо відшкодування фізичним особам через систему гарантування вкладів фізичних осіб шкоди, завданої зловживаннями у сфері банківських та інших фінансових послуг" розпочати за рахунок коштів Фонду у межах суми відшкодування, визначеної **частиною першою** статті 26 цього Закону, виплату відшкодування коштів фізичним особам, які набули право на таке відшкодування у зв'язку з їх прирівнянням до вкладників.

*{Розділ X доповнено пунктом 15 згідно із Законом № 1736-VIII від 15.11.2016}*

16. Установити, що у разі реструктуризації заборгованості фізичної особи за кредитом в іноземній валюті, який забезпечений іпотекою квартири або житлового будинку, що є єдиним місцем проживання сім'ї боржника, що здійснюється за процедурою неплатоспроможності фізичної особи згідно з планом реструктуризації або з мировою угодою з урахуванням особливостей, встановлених **пунктом 5** розділу "Прикінцеві та перехідні положення" Кодексу України з процедур банкрутства, Фонд зобов'язаний не пізніше ніж за 30 календарних днів до публікації оголошення про відкриті торги запропонувати боржнику погасити заборгованість за сумою оціночної вартості майна (активу) або шляхом направлення йому пропозиції за адресою боржника, зазначеною у кредитному договорі, та/або шляхом оприлюднення інформації про майно (активи), що продається, у друкованих засобах масової інформації, визначених виконавчою дирекцією Фонду, на веб-сайті банку та офіційному веб-сайті Фонду. Вимоги до змісту та строків оприлюднення інформації про продаж майна банків визначаються нормативно-правовими актами Фонду. Боржник може укласти попередній договір з Фондом (уповноваженою особою Фонду) про виконання зобов'язань, визначених у письмовому повідомленні Фонду, до моменту публічного оголошення про відкриті торги.

*{Розділ X доповнено пунктом 16 згідно із Законом № 1382-IX від 13.04.2021}*

17. Установити, що Фонд відшкодовує кошти за іменними ощадними (депозитними) сертифікатами банку, виданими до 30 червня 2021 року, незалежно від дати прийняття Національним банком України рішення про віднесення такого банку до категорії неплатоспроможних або про відкликання банківської ліцензії та ліквідацію банку з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність".

*{Розділ X доповнено пунктом 17 згідно із Законом № 1588-IX від 30.06.2021}*

18. Акціонерне товариство "Державний ощадний банк України" (далі - Ощадбанк) набуває статусу учасника Фонду з дня набрання чинності **Законом України** "Про внесення змін до деяких законів України щодо забезпечення стабільності системи гарантування вкладів фізичних осіб".

Фонд відшкодовує кошти за вкладами, що відповідають визначенню терміна **"вклад"**, наведеному у статті 2 цього Закону, залученими Ощадбанком від вкладників, ідентифікованих Ощадбанком відповідно до законодавства.

*{Розділ X доповнено пунктом 18 згідно із Законом № 2180-IX від 01.04.2022}*

19. З дня набуття Ощадбанком статусу учасника Фонду:

якщо вклад, залучений Ощадбанком до дня набуття ним статусу учасника Фонду, перевищує граничний розмір відшкодування коштів за вкладом, частина такого вкладу, що перевищує граничний розмір відшкодування коштів за вкладом, гарантується державою;

якщо за вкладом, залученим Ощадбанком до дня набуття ним статусу учасника Фонду, Фонд відповідно до закону не відшкодовує кошти, такий вклад гарантується державою.

Гарантії держави, зазначені у цьому пункті, діють до закінчення шестимісячного строку з дня набуття Ощадбанком статусу учасника Фонду.

*{Розділ X доповнено пунктом 19 згідно із Законом № 2180-IX від 01.04.2022}*

20. Ощадбанк протягом 90 календарних днів з дня набуття статусу учасника Фонду сплачує до Фонду початковий збір у розмірі 1 відсотка свого регулятивного капіталу, визначеного станом на дату набуття статусу учасника Фонду.

*{Розділ X доповнено пунктом 20 згідно із Законом № 2180-IX від 01.04.2022}*

21. Протягом трьох років з дня набуття Ощадбанком статусу учасника Фонду:

1) Ощадбанк сплачує регулярний збір до Фонду лише з розрахунку базової річної ставки, визначеної **статтею 22** цього Закону. Розрахунок розміру регулярних зборів до Фонду у формі диференційованих зборів до Ощадбанку не застосовується;

2) Фонд своїми нормативно-правовими актами встановлює особливості подання Ощадбанком звітності до Фонду та здійснення Фондом перевірки Ощадбанку;

3) Фонд має право застосовувати до Ощадбанку адміністративно-господарські санкції у вигляді штрафу за порушення, передбачені **частиною другою** статті 33 цього Закону, у розмірах, визначених відповідно до **статті 33** цього Закону, якщо Ощадбанк не виконав або несвоєчасно виконав розпорядження про усунення порушень законодавства про систему гарантування вкладів фізичних осіб або повторно протягом року вчинив правопорушення.

Ознаки повторності протягом року вчинення Ощадбанком правопорушення визначаються нормативно-правовими актами Фонду.

*{Розділ X доповнено пунктом 21 згідно із Законом № 2180-IX від 01.04.2022}*

22. Після припинення на підставі закону зобов'язань Фонду за векселями, які видані ним у 2015 і 2016 роках в обмін на облігації внутрішньої державної позики, держателем яких було Міністерство фінансів України (далі - відповідні векселі), виконавча дирекція Фонду приймає рішення про можливість перерахування Фондом до Державного бюджету України:

1) у межах розміру припинених зобов'язань Фонду щодо сплати відсотків, нарахованих на визначені у відповідних векселях суми:

коштів у розмірі сум, отриманих після припинення зобов'язань Фонду за відповідними векселями як задоволення вимог Фонду до банку, який протягом 2014-2017 років був визнаний неплатоспроможним або щодо якого протягом 2014-2017 років було прийнято рішення про ліквідацію з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність", у процесі ліквідації такого банку відповідно до Закону України "Про систему гарантування вкладів фізичних осіб", у тому числі за рахунок коштів, сплачених особами, визначеними **частиною п'ятою** статті 52 Закону України "Про систему гарантування вкладів фізичних осіб", або стягнутих з них, але не більше суми незадоволених вимог Фонду до такого банку;

коштів у розмірі сум, сплачених особами, визначеними **частиною п'ятою** статті 52 Закону України "Про систему гарантування вкладів фізичних осіб", або стягнутих з них як задоволення вимог Фонду, що виникли у зв'язку із заподіянням йому шкоди (збитків) внаслідок незадоволення його вимог до банку за недостатністю майна банку, який протягом 2014-2017 років був визнаний неплатоспроможним або щодо якого протягом 2014-2017 років було прийнято рішення про ліквідацію з підстав, визначених **частиною другою** статті 77 Закону України "Про банки і банківську діяльність";

2) коштів, розрахованих станом на кінець звітного року, у розмірі перевищення суми відкоригованого капіталу над розміром цільового фонду з урахуванням строку його досягнення, але не більше розміру припинених зобов'язань Фонду щодо сплати визначених у векселях сум (без урахування відсотків), за умови що таке перерахування не призведе протягом відповідного періоду до зменшення відкоригованого капіталу нижче розміру цільового фонду.

Порядок перерахування Фондом коштів до Державного бюджету України відповідно до цього пункту визначається договором між Фондом і Міністерством фінансів України.

*{Розділ X доповнено пунктом 22 згідно із Законом № 2180-IX від 01.04.2022}*

23. Протягом дії в Україні воєнного стану, введеного Указом Президента України "Про введення воєнного стану в Україні" від 24 лютого 2022 року **№ 64/2022**, затвердженим Законом України "Про затвердження Указу Президента України "Про введення воєнного стану в Україні" від 24 лютого 2022 року **№ 2102-IX**, виведення з ринку системно важливого банку за участю держави здійснюється у спосіб, визначений **пунктом 5** частини другої статті 39 цього Закону, з урахуванням особливостей, установлених цим Законом.

Держава в особі Міністерства фінансів України має право брати участь у виведенні з ринку системно важливого банку, щодо якого Національним банком України прийнято рішення про віднесення до категорії неплатоспроможних з підстав, визначених **частиною другою** статті 76 Закону України "Про банки і банківську діяльність" (далі - неплатоспроможний системно важливий банк), що настали під час здійснення Російською Федерацією збройної агресії проти України.

Національний банк України у день прийняття рішення про віднесення системно важливого банку до категорії неплатоспроможних:

повідомляє про це рішення банк, учасників банку та Фонд гарантування вкладів фізичних осіб (далі - Фонд) для вжиття ним заходів, передбачених Законом України "Про систему гарантування вкладів фізичних осіб";

надсилає Кабінету Міністрів України разом з копією рішення про віднесення системно важливого банку до категорії неплатоспроможних пропозицію про участь держави у виведенні неплатоспроможного системно важливого банку з ринку з наданням копії такої пропозиції Фонду.

Кабінет Міністрів України розглядає відповідну пропозицію Національного банку України та не пізніше наступного дня після її отримання приймає рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку або про відмову від такої участі. Кабінет Міністрів України повідомляє про прийняте рішення Національний банк України та Фонд у день його прийняття.

У разі прийняття Кабінетом Міністрів України рішення про відмову від участі держави у виведенні неплатоспроможного системно важливого банку з ринку Фонд вживає передбачені цим Законом заходи щодо виведення неплатоспроможного банку з ринку без участі держави.

Фонд у разі отримання рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку:

не здійснює зміну розміру статутного капіталу неплатоспроможного системно важливого банку, деномінацію акцій такого банку, у тому числі не проводиться обмін грошових зобов'язань банку на акції додаткової емісії;

не формує резерви банку на покриття збитків за активними банківськими операціями та не визначає кредитний ризик за всіма активними банківськими операціями;

не залучає міжнародно визнану аудиторську фірму для надання аудиторського звіту, у тому числі висновків щодо фінансового стану банку, визначення розміру регулятивного капіталу банку та потреби у його додатковій капіталізації.

Кабінет Міністрів України приймає рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку на підставі пропозиції Національного банку України, в якій, зокрема, зазначаються:

розмір корпоративних прав (кількість акцій) або розмір частки у статутному капіталі, що не належить державі, та кількість акцій, що мають бути придбані державою, з переліком акціонерів, акції яких мають бути продані державі, та із зазначенням реквізитів депозитарних установ, в яких на рахунках у цінних паперах акціонерів обліковуються ці акції;

перелік осіб, зобов'язання перед якими мають бути припинені банком відповідно до цього пункту.

Кабінет Міністрів України у день прийняття рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку:

а) надсилає копію прийнятого рішення Фонду;

б) повідомляє про це рішення Національний банк України, банк, щодо якого прийнято рішення, та його акціонерів у спосіб, передбачений підпунктом "г" цього пункту;

в) надсилає Центральному депозитарію цінних паперів засобами системи електронної взаємодії органів виконавчої влади копію прийнятого рішення та інформацію про депозитарну установу (найменування, код за ЄДРПОУ), в якій відкритий рахунок у цінних паперах держави, на який мають бути зараховані/перераховані права на акції банку;

г) оприлюднює повний текст рішення з обґрунтуванням підстав його прийняття на своєму офіційному веб-сайті з урахуванням вимог **Закону України** "Про захист персональних даних" та надає для опублікування в газеті "Урядовий кур'єр" інформацію про оприлюднення повного тексту рішення. З дня оприлюднення повного тексту рішення на офіційному веб-сайті Кабінету Міністрів України банк, щодо якого прийнято рішення, акціонери, вкладники, інші кредитори та контрагенти цього банку вважаються повідомленими про прийняття Кабінетом Міністрів України такого рішення.

Фонд протягом процедури виведення неплатоспроможного системно важливого банку з ринку за участю держави призначає, за поданням Міністерства фінансів України, погодженим з Національним банком України, керівників банку, які приступають до виконання своїх обов'язків з моменту припинення Фондом тимчасової адміністрації в банку.

Набуття державою права власності на акції неплатоспроможного системно важливого банку здійснюється на підставі укладеного відповідно до цього Закону договору купівлі-продажу акцій. Органом управління корпоративними правами за акціями такого банку, що належать державі, є Міністерство фінансів України. Фіксація переходу права власності на такі акції у депозитарній системі здійснюється у порядку, встановленому у цьому пункті.

У день укладення договору купівлі-продажу акцій неплатоспроможного системно важливого банку Міністерство фінансів України надає Центральному депозитарію цінних паперів копію такого договору, а депозитарній установі, в якій відкритий рахунок у цінних паперах держави для обліку на ньому прав на цінні папери, за якими функції з управління виконує суб'єкт управління об'єктами державної власності - Міністерство фінансів України, копію такого договору, а також розпорядження про зарахування/переказ прав на акції такого банку на рахунок у цінних паперах держави відповідно до законодавства про депозитарну систему.

Центральний депозитарій цінних паперів у день отримання розпорядження депозитарної установи, на рахунок у цінних паперах якої переказуються акції банку, забезпечує проведення необхідних депозитарних операцій з метою переказу таких акцій на рахунок у цінних паперах цієї депозитарної установи. Депозитарні установи проводять депозитарні операції у день отримання від Центрального депозитарію цінних паперів відповідного повідомлення/ розпорядження.

Копія договору купівлі-продажу акцій неплатоспроможного системно важливого банку, отримана від Міністерства фінансів України, та розпорядження депозитарної установи, в якій відкрито рахунок у цінних паперах отримувача цінних паперів, отримане засобами інформаційно-телекомунікаційної системи обробки інформації Центрального депозитарію цінних паперів, є підставою для проведення Центральним депозитарієм цінних паперів в системі депозитарного обліку безумовних депозитарних операцій, необхідних для переведення прав на акції банку з рахунків у цінних паперах їх власників на рахунок у цінних паперах держави. Відповідні депозитарні операції мають бути проведені Центральним депозитарієм цінних паперів у день отримання документів, що є підставою для їх проведення.

З дня прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку:

будь-які накладені раніше арешти, заборони, обтяження або обмеження на розпорядження на акції банку вважаються знятими, розпочаті раніше виконавчі провадження щодо акцій банку вважаються припиненими, необхідні для передачі права власності на акції державі погодження

або дозволи вважаються отриманими/наданими, перехах таких акцій на користь держави здійснюється без збереження відповідних обмежень (обтяжень);

будь-які розпочаті і не завершені операції з емісії нових акцій банку вважаються припиненими та скасованими. Порядок дій учасників ринків капіталу з метою реалізації цього підпункту визначається Національною комісією з цінних паперів та фондового ринку.

Вимоги до договору купівлі-продажу акцій, встановлені **частиною п'ятою** статті 41 цього Закону, не застосовуються. Договір купівлі-продажу акцій неплатоспроможного системно важливого банку може укладатися без участі та посередництва інвестиційної фірми. Фонд продає акції неплатоспроможного системно важливого банку у повному обсязі (частку, яка не належить державі) Міністерству фінансів України за 1 гривню. Кошти від продажу неплатоспроможного системно важливого банку спрямовуються на поповнення коштів Фонду. Оплата вартості таких акцій може бути здійснена після їх зарахування на відкритий Міністерством фінансів України рахунок у цінних паперах.

Міністерство фінансів України протягом трьох робочих днів після набуття державою права власності на акції неплатоспроможного системно важливого банку приймає рішення про залучення за рахунок коштів банку міжнародно визнаної аудиторської фірми, яка відповідає визначеним Національним банком України критеріям, з метою проведення оцінки фінансово-господарської діяльності банку, визначення вартості активів і зобов'язань та вартості акцій банку, стану кредитного портфелю та сформованих резервів, переліку осіб, зобов'язання перед якими мають бути припинені банком, та правочинів (у тому числі договорів), що мають ознаки нікчемності, визначені **частиною третьою** статті 38 цього Закону (далі - звіт). Аудиторська фірма готує та надає звіт у тримісячний строк з дня набуття державою права власності на акції неплатоспроможного системно важливого банку, якщо інше не передбачено договором.

Аудиторська фірма складає звіт з урахуванням такого:

не застосовуються положення **розділу І** Закону України "Про акціонерні товариства" щодо визначення ринкової вартості майна та **Закону України** "Про оцінку майна, майнових прав та професійну оціночну діяльність". З метою проведення аналізу фінансово-господарського стану банку аудиторська фірма застосовує міжнародні стандарти фінансової звітності у частині, яка застосовується щодо банків;

до уваги береться інформація/дані, відомі станом на день проведення такої оцінки, включаючи інформацію/дані, отримані після прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку;

вартість акцій визначається у розмірі суми, яку б покупець, який володіє усією необхідною інформацією та даними, сплатив би на дату укладення договору купівлі-продажу акцій банку з урахуванням майбутніх перспектив банку, враховуючи реальний фінансовий стан банку (у тому числі його регулятивний капітал, ліквідність та якість активів), бізнес-модель банку та його структуру, а також ринкові умови (у тому числі доступність ліквідності і вартість фінансування) та макроекономічну ситуацію;

вартість акцій визначається, ґрунтуючись на розсудливій та реалістичній оцінці відповідно до міжнародних стандартів оцінки з урахуванням особливостей функціонування банків (включаючи вимоги до регулятивного капіталу, дотримання яких необхідне для продовження діяльності банку).

Оцінка вартості акцій повинна базуватися на таких припущеннях:

на дату укладення договору купівлі-продажу акцій банк повинен негайно сплатити/повернути будь-яку фінансову підтримку, включаючи стабілізаційні кредити, рефінансування або інші кредити, надані Національним банком України як кредитором останньої інстанції, а фінансовий стан банку повинен оцінюватися з урахуванням фінансових втрат банку, які він зазнав би внаслідок здійснення таких платежів. У разі якщо для здійснення виплат банк був би вимушений продавати свої активи, а також за відсутності будь-яких інших ринкових індикаторів до вартості таких активів застосовуються коригуючі коефіцієнти для майна/гарантій, які є прийнятними для забезпечення виконання зобов'язань за кредитом для екстреної підтримки ліквідності, та порядок їх врахування, встановлений Національним банком України на день набуття державою права власності на акції неплатоспроможного системно важливого банку;

після дати укладення договору купівлі-продажу акцій жодна підтримка ліквідності (крім доступу до стандартних інструментів регулювання ліквідності Національного банку України), поповнення капіталу, гарантії, програми викупу активів чи інша форма державної підтримки не будуть надаватися державою, включаючи Національний банк України. У разі якщо така підтримка була надана, оцінка майбутніх перспектив та показників банку повинна здійснюватися, базуючись на припущенні, що така підтримка не надавалася.

З дня, наступного за днем набуття державою права власності на акції неплатоспроможного системно важливого банку:

1) припиняються зобов'язання банку перед особами, які відповідають хоча б одному з таких критеріїв:

а) юридичні або фізичні особи, які були контролерами банку на день прийняття Національним банком України рішення про віднесення банку до категорії неплатоспроможних;

б) юридичні або фізичні особи, які мали істотну участь у банку на день прийняття Національним банком України рішення про віднесення банку до категорії неплатоспроможних;

в) інші, ніж зазначені у підпунктах "а" та "б" цього підпункту, пов'язані з банком особи, стосовно яких застосовано санкції згідно із законодавством інших держав (крім держави-агресора), резолюцій Генеральної Асамблеї та Ради Безпеки Організації Об'єднаних Націй, рішень та регламентів Ради Європейського Союзу та/або санкції відповідно до **Закону України** "Про санкції" станом на день прийняття Національним банком України рішення про віднесення банку до категорії неплатоспроможних.

Інформація щодо зазначених у цьому пункті осіб, зобов'язання банку перед якими припиняються, надається Національним банком України у пропозиції про участь держави у виведенні неплатоспроможного системно важливого банку з ринку. З цією метою будь-які накладені раніше, в тому числі за рішенням суду, арешти, заборони, обтяження або обмеження на розпорядження відповідними активами, зобов'язання неплатоспроможного системно важливого банку стосовно яких припиняються, вважаються скасованими та знятими, розпочаті раніше виконавчі провадження щодо таких активів вважаються припиненими;

2) забороняється здійснення активних операцій банку з особами, які відповідають хоча б одному з критеріїв, зазначених у цьому пункті, а також з компаніями, в яких такі особи на день прийняття Кабінетом Міністрів України рішення про участь держави у виведенні неплатоспроможного системно важливого банку з ринку прямо чи опосередковано здійснювали контроль у значенні, наведеному у Законі України "Про захист економічної конкуренції".

Банк наступного робочого дня після набуття державою права власності на акції неплатоспроможного системно важливого банку припиняє зобов'язання відповідно до цього Закону та визнає у своєму обліку дохід, який виникає в нього внаслідок припинення таких зобов'язань.

Банк протягом двох місяців з дня набуття державою права власності на акції неплатоспроможного системно важливого банку проводить додатковий аналіз кредиторів банку на відповідність критеріям для припинення зобов'язань перед ними відповідно до цього Закону з урахуванням структури власності кредиторів, визначення їх кінцевих бенефіціарних власників (контролерів) та припиняє ті зобов'язання перед особами, що відповідають таким критеріям. Якщо в результаті такого аналізу кредиторів банку не вдалося встановити кінцевих бенефіціарних власників (контролерів) таких кредиторів або встановлено, що джерела розміщених у банку коштів є непрозорими чи недостатніми, або кредитори не надали банку у строк, встановлений у запиті банку, достатньої інформації для проведення аналізу наведених даних, банк зобов'язаний здійснити блокування операцій за рахунками таких кредиторів та коштів за такими рахунками для визначення відповідності кредиторів умовам для припинення зобов'язань перед ними або розблокування коштів за такими рахунками відповідно до цього Закону і повідомити таких кредиторів про прийняті рішення.

Усі реєстраційні дії, пов'язані зі зміною права власності на акції неплатоспроможного системно важливого банку, здійснюються державним реєстратором за місцезнаходженням Міністерства фінансів України.

Норми статей 36, 39, 41 та 41¹ цього Закону застосовуються Фондом під час виведення неплатоспроможного системно важливого банку з ринку у спосіб, визначений пунктом 5 частини другої статті 39 цього Закону, за участю держави під час дії в Україні воєнного стану в частині, що не суперечить нормам цього пункту.

Банк після укладення договору купівлі-продажу акцій досліджує проведені банком операції на предмет збитковості і протиправності; правочини (договори), які були вчинені (укладені) протягом одного року до дня віднесення банку до категорії неплатоспроможних, - на предмет нікчемності відповідно до підстав, встановлених частиною третьою статті 38 цього Закону; правочини (договори), вчинені (укладені) банком з пов'язаними особами та/або в інтересах пов'язаних осіб, та/або на їх користь протягом трьох років до дня віднесення банку до категорії неплатоспроможних, - на предмет нікчемності відповідно до підстав, встановлених частиною третьою статті 38 цього Закону. У разі виявлення шкоди (збитків), завданої банку, такий банк звертається з вимогою про відшкодування шкоди (збитків), завданої банку, до:

пов'язаної з банком особи та/або іншої особи, рішеннями, діями (в тому числі вчиненими правочинами, операціями, укладеними договорами) та/або бездіяльністю якої завдано шкоди (збитків) банку;

та/або пов'язаної з банком особи, та/або іншої особи, яка внаслідок таких рішень, дій (в тому числі правочинів, операцій, договорів) або бездіяльності прямо чи опосередковано отримала майнову вигоду.

Такі особи, у разі якщо шкоду (збитки) було завдано внаслідок спільного прийняття рішення, вчинення спільної дії чи бездіяльності, несуть солідарну відповідальність.

З метою вжиття банком заходів зі стягнення шкоди керівники, власники істотної участі та кінцеві бенефіціарні власники банку, визначені відповідно до закону, зобов'язані надати банку у порядку, встановленому у відповідному запиті банку, інформацію про все належне їм майно (активи) та зобов'язання. У разі ненадання інформації вказаними особами банк звертається з такими вимогами до суду. Вимоги банку про надання інформації про все майно (активи) та зобов'язання забезпечуються накладенням арешту на все рухоме та нерухоме майно осіб, до яких вони заявлені, та/або забороною вчинити певні дії у порядку забезпечення позову. Заходи забезпечення позову діють до моменту добровільного виконання вимог банку або виконання рішення суду про надання інформації про все майно (активи) та зобов'язання у встановленому законодавством порядку.

У разі невиконання вимог про відшкодування шкоди (збитків) такими особами банк звертається до суду про відшкодування шкоди (збитків). Вимоги банку про відшкодування шкоди (збитків) можуть забезпечуватися накладенням арешту на рухоме та нерухоме майно осіб, до яких вони заявлені, та/або шляхом застосування інших заходів забезпечення у порядку забезпечення позову.

Завдана шкода (збитки) відшкодовується у разі, якщо відповідні рішення, дії (враховуючи дії, що відповідають ознакам ризикової діяльності) або бездіяльність прийняті або вчинені з порушенням законодавства, в тому числі нормативно-правових актів Національного банку України, та якщо шкода (збитки) виникла внаслідок:

1) вчинення правочинів (у тому числі договорів), які мають ознаки нікчемності, визначені частиною третьою статті 38 цього Закону;

2) недотримання відповідними особами обов'язку діяти в інтересах банку та його вкладників, добросовісно і розумно та/або не перевищувати свої повноважень;

3) порушення заборон та/або вимог, встановлених законодавством, у тому числі **Законом України** "Про банки і банківську діяльність", щодо угод із пов'язаними з банком особами або в інтересах пов'язаних з банком осіб, або на користь таких осіб;

4) купівлі цінних паперів (крім державних цінних паперів) та/або інших фінансових інструментів з порушенням вимог, встановлених Національним банком України;

5) надання банком власних активів (майна) в забезпечення (застава, порука, гарантія, притримання, право довірчої власності тощо) виконання зобов'язань третіх осіб перед їх кредитором у порядку, іншому, ніж здійснення операцій відповідно до **Закону України** "Про банки і банківську діяльність", крім майна (активів), переданого (переданих) як забезпечення виконання зобов'язань перед Національним банком України або для забезпечення здійснення платежів та розрахунків за угодами, укладеними з платіжними системами або операторами таких систем;

6) незабезпечення банком контролю за цільовим використанням позичальниками кредитних коштів;

7) зміни графіка погашення боргу (строків і сум погашення основного боргу, сплати процентів/комісійних винагород, черговості платежів) за кредитним договором та договором забезпечення, які були здійснені з порушенням вимог законодавства;

8) необґрунтованого зменшення та/або звільнення боржника від сплати нарахованих за активними операціями процентів та інших винагород;

9) безпідставного припинення прийнятного забезпечення перед банком за правочином або його заміни на менш ліквідне забезпечення;

10) операцій, вчинених банком всупереч обмежень, встановлених Національним банком України, в тому числі з пов'язаними з банком особами.

Якщо підставами для пред'явлення банком вимог про відшкодування шкоди (збитків), зокрема, стали дії пов'язаних з банком осіб, направлені на приховування реального фінансового стану банку, у тому числі систематичне подання та/або оприлюднення недостовірної інформації або звітності щодо операцій, правочинів (договорів), що були вчинені (укладені) протягом одного року, а правочинів (договорів), вчинених (укладених) банком з пов'язаними особами та/або в інтересах пов'язаних осіб, та/або на їх користь, - протягом трьох років до дня віднесення банку до категорії неплатоспроможних, вчинені пов'язаними з банком особами правочини, які мають ознаки нікчемності, визначені **частиною третьою** статті 38 цього Закону, та/або правочини, визнані недійсними у встановленому порядку, або якщо шкода (збитки) виникла внаслідок вчинення пов'язаними з банком особами вказаних у цьому пункті діянь, внаслідок яких банку заподіяно шкоду (збитки), ці підстави є достатніми для суду для прийняття рішення про накладення арешту на рухоме та нерухоме майно осіб та/або заборону вчиняти певні дії особам, до яких банком заявлені вимоги, у межах суми пред'явлених вимог, якщо інші обставини не встановлені в судовому порядку.

У разі подання заяви про забезпечення позову до подання позовної заяви банк повинен пред'явити позов протягом 30 робочих днів з дня постановлення ухвали про забезпечення позову.

Право на звернення до судів належної юрисдикції (в тому числі іноземних судів) з позовом про відшкодування шкоди (збитків), заподіяної банку, виникає у банку з моменту виявлення рішень, дій чи бездіяльності, якими завдано шкоди (збитків) банку, виявлення осіб, які брали участь у прийнятті таких рішень, вчиненні дій чи бездіяльності та/або отримали від них майнову вигоду, а також встановлення розміру заподіяної шкоди (збитків).

*{Розділ X доповнено пунктом 23 згідно із Законом № 2643-IX від 06.10.2022}*

**Президент України**                                                   **В.ЯНУКОВИЧ**

м. **Київ**
**23 лютого 2012 року**
**№ 4452-VI**

## Публікації документа

- **Голос України** від 21.03.2012 — № 51
- **Офіційний вісник України** від 30.03.2012 — 2012 р., № 22, стор. 31, стаття 824, код акта 60863/2012
- **Урядовий кур'єр** від 04.04.2012 — № 61
- **Відомості Верховної Ради України** від 14.12.2012 — 2012 р., № 50, стор. 2178, стаття 564



23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 81 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)



# LAW OF UKRAINE

## On the deposit guarantee system for individuals

**(Vidomosti Verkhovnoi Rady (VVR), 2012, No. 50, art. 564)**

{As amended by Laws
No. 5411-VI dated 02/10/2012, VVR, 2013, No. 42, art. 587
No. 245-VII dated 16/05/2013, VVR, 2014, No. 12, art. 178
No. 1197-VII dated 10/04/2014, VVR, 2014, No. 24, art. 883
No. 1586-VII dated 04/07/2014, VVR, 2014, No. 33, art. 1162
No. 78-VIII dated 28/12/2014, VVR, 2015, No. 6, art. 41
No. 218-VIII dated 02/03/2015, VVR, 2015, No. 17, art. 122
No. 629-VIII dated 16/07/2015, VVR, 2015, No. 43, art. 386
No. 835-VIII dated 26/11/2015, VVR, 2016, No. 2, art. 17
No. 1414-VIII dated 14/06/2016, VVR, 2016, No. 32, art. 555
No. 1736-VIII dated 15/11/2016, VVR, 2016, No. 48, art. 816
No. 2210-VIII dated 16/11/2017, VVR, 2018, No. 6-7, art. 38
No. 2277-VIII dated 06/02/2018, VVR, 2018, No. 11, art. 58
No. 2491-VIII dated 05/07/2018, VVR, 2018, No. 46, art. 369
by the Code
No. 2597-VIII dated 18/10/2018, VVR, 2019, No. 19, art. 74
by the Laws
No. 132-IX dated 20/09/2019, VVR, 2019, No. 46, art. 299
No. 361-IX dated 06/12/2019, VVR, 2020, No. 25, art. 171
No. 590-IX dated 13/05/2020, VVR, 2020, No. 40, art. 314
No. 720-IX dated 17/06/2020, VVR, 2020, No. 47, art. 408
No. 738-IX dated 19/06/2020
No. 1382-IX dated 13/04/2021, VVR, 2021, No. 27, art. 225
No. 1587-IX dated 30/06/2021
No. 1588-IX dated 30/06/2021, VVR, 2021, No. 37, art. 316
No. 2180-IX dated 01/04/2022
No. 2463-IX dated 27/07/2022
No. 2643-IX dated 06/10/2022}

## Section I
## GENERAL PROVISIONS

**Article 1.** Subject matter and purpose of the Law

1. This Law establishes the legal, financial and organizational principles for the functioning of the Deposit Guarantee System for Individuals, the authority of the Deposit Guarantee Fund for Individuals (hereinafter referred to as the Fund), the procedure for payment by the Deposit Refund Fund, as well as the relations between the Fund, the banks, the National Bank of Ukraine, the authority and functions of the Fund to remove insolvent banks from the market and liquidate banks are determined.

2. The purpose of this Law is to protect the rights and legitimate interests of depositors of banks, to strengthen trust in the banking system of Ukraine, to stimulate attraction of funds in the banking system of Ukraine, to ensure an effective procedure of removing insolvent banks from the market and liquidating banks.

3. Relations arising in connection with the creation and operation of the system of guaranteeing deposits of individuals, the removal of insolvent banks from the market and the liquidation of banks are regulated by this Law, other laws of Ukraine, the regulations of the Fund and the National Bank of Ukraine.

4. The relations arising in connection with the removal of insolvent banks, which have obligations arising from transactions in relation to financial instruments and foreign exchange values, or which are a party to one or more disruptive contracts, from the market and liquidation of such banks, are regulated by this Law, taking into account the characteristics provided for by the legislation on capital markets and organized commodity markets.

*{Article 1 as amended by addition of a new part four under Law No. 738-IX dated 19/06/2020}*

5. In case the bank is the issuer of bonds or a person providing collateral for bonds (hereinafter referred to as the bank with bond obligations) and the bonds of the relevant issue has been assigned as an administrator, the relations with regard to liquidation of such a bank are regulated by this Law taking into account the features provided for by the Law of Ukraine "On Capital Markets and Organized Commodity Markets".

*{Article 1 as amended by addition of a new part five under Law No. 738-IX dated 19/06/2020}*

**Article 2.** Terms and Definitions

1. The terms and definitions mentioned below are used herein within the meaning as follows:

1) an agent bank - a bank through which the Fund pays a guaranteed amount of reimbursement for deposits in accordance with this Law;

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 82 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

**Article 37.** Authority of the Fund

*{Name of Article 37 as amended by Law No. 1588-IX dated 30/06/2021}*

*{Part One of Article 37 is excluded under Law No. 629-VIII dated 16/07/2015}*

2.   The Fund directly or as authorized person of the Fund in case of delegation to it of all or part of the Fund's powers of authority shall have the right to:

*{Paragraph one of Part two of Article 37 as amended by Laws No. 629-VIII dated 16/07/2015, No. 1588-IX dated 30/06/2021}*

1)   take any action and make decisions that belong to the authority of the governing bodies and the controlling bodies of the bank;

2)   to enter into, on behalf of the bank, any agreements (commit transactions) required to ensure the bank's operating activities, conduct banking and other business operations, taking into account the requirements established by this Law;

3)   continue to restrict or cease the bank's performance of any transactions. The Fund, either directly or by an authorized person of the Fund, shall not be entitled to restrict or suspend the exercise of:

a) the bank operates in the liquidation netting procedure carried out in accordance with Article 54[1] of this Law;

b) transactions aimed at fulfilling the net obligation defined in accordance with Article 54[1] of this Law by recourse to the subject matter of security transferred by the bank to perform obligations under such agreement;

*{Paragraph 3 of Part Two of Article 37 as amended by Law No. 361-IX dated 06/12/2019, No. 738-IX dated 19/06/2020}*

4)   notify the parties under the contracts specified in Part Two of Article 38 of the present Law of the worthlessness of these agreements and take actions to apply the consequences of nullity of the agreements;

*{Paragraph 4 of Part two of Article 37 as amended by Law No. 1586-VII of 04/07/2014}*

5)   to file claims of proprietary and non-property nature in court on the bank's behalf, including claims for judgments pursuant to which the bank's debtor is required to provide information about its assets;

6)   to appeal to law enforcement authorities with an application for a criminal offence in case of detection of fraud and other unlawful actions by employees of the bank and/or any other persons in relation to the bank and the recognition of the bank as victim, as well as to file civil claims for compensation of harm (losses) caused by the bank on behalf and in the interests of the bank;

*{Paragraph 6 of Part Two of Article 37, as amended by Law No. 245-VII dated 16/05/2013; as amended by Law No. 1588-IX dated 30/06/2021}*

7)   to engage in work in the process of temporary administration at the expense of the bank on the basis of civil agreements of other persons (advisors, auditors, lawyers, assessors and others) within the limits of the cost estimate approved by the Executive Directorate of the Fund. Such agreements may be terminated unilaterally on the day of notification by the Second Party Fund of such termination with consequences established by civil law;

*{Paragraph 7 of Part Two of Article 37 as amended by Law No. 1586-VII dated 04/07/2014; as amended by Law No. 629-VIII of 16/07/2015}*

8)   to assign audits and legal expertise on the bank's business at the expense of the bank within the cost estimate approved by the Executive Directorate of the Fund;

9)   hiring, terminating or transferring any of the executives or employees of the bank, reviewing their job responsibilities, and changing the amount of their compensation in compliance with the requirements of the Ukrainian labor laws;

*{Paragraph 9 of Part two of Article 37 as amended by Law No. 1586-VII dated 04/07/2014}*

10)  Stop the bank's capital distribution or dividend payment in any form;

11)  take actions aimed at implementation of the settlement plan in accordance with this Law and the Foundation's regulations.

3.   An authorized person of the Fund acts on behalf of the bank within the limits of the Fund's powers of attorney.

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 83 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

An authorized person of the Fund shall have the right to:

1)   appoint, resign or transfer any of the executives or employees of the bank, review their job responsibilities, or change compensation in compliance with employment laws;

2)   exercise other powers established by this Law and delegated to it by the Fund.
*{Article 37 is supplemented with a new part under Law No. 629-VIII* dated 16/07/2015}

4.   In fulfilment of its powers, authorized person of the Fund:

1)   is acting without a power of attorney on behalf of the bank, is authorized to sign any agreements (contracts),other documents on behalf of the bank;

2)   issues orders and orders, gives instructions binding on the Bank employees;

3)   reports on the results of implementation of the bank's temporary administration before the Executive Directorate of the Fund.

5.   The Fund directly or an authorized person of the Fund in case of delegation of powers to it is obliged to submit information to the Loan Register of the National Bank of Ukraine in the manner and scope, Article 67[1] of the Law of Ukraine On Banks and Banking, about bank credit transactions, for which the National Bank of Ukraine has decided to classify them as insolvent or to revoke banking license and liquidation, and keep it up to date, and also update on a permanent basis the information regarding repayment of the borrower's debt, which is found in the credit stories bureau, to which information was previously transferred by the bank (if there is evidence of such transfer).

*{Article 37 is supplemented with a new part under Law No. 2277-VIII* dated *06/02/2018}*

6.   Any person who deliberately impedes the Fund's and the Fund's authorized person's access to the bank, its premises, communications facilities, operating systems, assets, books, records, documents is responsible for such unlawful actions under the laws of Ukraine. Law enforcement agencies are obliged to assist the Fund in the process of temporary administration of the bank on the basis of the written request of the authorized person of the Fund.

*{Part of Article 37 as amended by Law No. 629-VIII dated 16/07/2015}*

7.   Any person taking actions that prevent the Fund and authorized person of the Fund from accessing the bank and/or making it impossible to exercise temporary administration is the basis for contacting the Fund to the National Bank of Ukraine with an offer to revoke banking license and liquidate the bank.

*{Part of Article 37 as amended by Law No. 629-VIII dated 16/07/2015}*

**Article 46.** Consequences of the start of the bank liquidation procedure

*{Heading of Article 46 as amended by Law No. 629-VIII dated 16/07/2015}*

*{Part One of Article 46 is excluded under Law No. 629-VIII dated 16/07/2015}*

2. Since the start of the bank liquidation procedure:

*{Paragraph one of Part two of Article 46 as amended by Law No. 629-VIII of 16/07/2015}*

1) all powers of the bank's management bodies (general meetings, supervisory board and board) and of the control bodies (inside audit committees) cease. If the bank being liquidated has a temporary administration, the bank's temporary administration is terminated from the day of the decision to revoke the banking license and liquidate the bank. Bank executives terminate their employment in connection with the bank's liquidation;

*{Paragraph 1 of Part Two of Article 46 as amended by Law No. 1586-VII dated 04/07/2014; as amended by Law No. 1587-IX dated 30/06/2021}*

2) the bank's banking activity ends with the end of the technological cycle of specific transactions in case it would facilitate the preservation or increase of the liquidation mass;

3) the term of fulfilment of all monetary obligations of the bank and the obligation to pay taxes and duties (mandatory payments) shall be deemed to be the moment;

*{Paragraph 4 of part two of Article 46 is excluded on the basis of Law No. 629-VIII dated 16/07/2015}*

4$^1$) accrual of interest, commissions, penalties, other expected incomes under the bank's active operations may be terminated in the timelines specified by agreements with the bank's customers in case this would facilitate the preservation or increase of the liquidation mass;

*{Part two of Article 46 is supplemented by paragraph 4$^1$ according to the Law No. 1586-VII dated 04/07/2014}*

5) information on the financial condition of the bank, debtors who have delayed the fulfilment of obligations (at the principal and interest) to such bank, as well as on the bank's claims against such debtors ceased to be confidential or be a bank secret;

*{Paragraph 5 of Part Two of Article 46 as amended by Law No. 1587-IX dated 30/06/2021}*

6) The Fund undertakes measures to implement a settlement plan, which includes removing a bank from the market in the manner provided for by paragraph 2 of Part Two of Article 39 of this Law, and aliens property (assets) and obligations under Article 40 of this Law in favor of the receiving bank within 30 days of publication of information under Part Two of Article 45 of this Law. Transactions related to alienation of the property(s) of the bank or transfer of its property to third parties (other than the receiving bank) are allowed in the manner provided for by Article 51 of this Law;

*{Paragraph 6 of Part two of Article 46 as amended by Law No. 590-IX dated 13/05/2020}*

7) the validity of public encumbrances or restrictions on the disposal (including arrests, bans against making sales decisions or taking other sales actions) of any property (assets), including the bank's funds. No new encumbrances or restrictions (including arrests, bans on making sales decisions or taking other sales actions) on property (assets), including bank funds, are allowed;

*{Paragraph 7 of Part two of Article 46 as amended by Law No. 1588-IX dated 30/06/2021}*

8) it is prohibited to set off counterclaims, including counter-uniform claims, termination of obligations under arrangement (consent) of the parties (including by contractual debiting), forgiveness of debt, combination of debtor and creditor in one person as a result of entering into any transactions with persons other than the bank, credit on demand of one of the parties. The restrictions imposed by this paragraph do not apply to transactions which terminate obligations in the liquidation netting procedure carried out in the manner prescribed by Article 54[1] of this Law and termination of obligations by crediting the debtor's counter-uniform claims, who is at the same time a creditor of the bank being liquidated.

Credit of the debtor's counter-homogeneous claims, who is simultaneously a creditor of the bank being liquidated, is made during satisfaction by the Fund of the respective queue of creditors' accepted claims to which such creditor's claims are attributed, on the application of the bank creditor and in the amount not exceeding the amount of the accepted claims on the bank's application;

*{Paragraph 8 of Part two of Article 46 as amended by Law No. 738-IX dated 19/06/2020}*

*{Paragraph ten of part two of Article 46 is excluded on the basis of Law No. 590-IX dated 13/05/2020}*

*{Paragraph eleven of part two of Article 46 is excluded on the basis of Law No. 590-IX dated 13/05/2020}*

*{Paragraph twelve of part two of Article 46 is excluded on the basis of Law No. 590-IX dated 13/05/2020}*

*{Paragraph thirteenth of part two of Article 46 is excluded by Law No. 590-IX dated 13/05/2020}*

*{Part two of Article 46 is supplemented by paragraph 8 in accordance with Law No. 629-VIII dated 16/07/2015; as amended by Law No. 1588-IX dated 30/06/2021}*

9) replacing the creditor in the bank's obligation does not change the priority of satisfying the creditors' accepted claims as defined by Article 52 of this Law.

*{Part two of Article 46 is amended by paragraph 9 pursuant to Law No. 1588-IX dated 30/06/2021}*

3. No further obligations (including taxes and fees (mandatory fees) arise during liquidation at the bank, except for costs directly related to the liquidation procedure.

The claims under the obligations of the bank for payment of taxes and duties (mandatory payments) arising during the liquidation are presented only within the framework of the liquidation procedure and are repaid in the seventh queue in accordance with Article 52 of this Law.

*{Paragraph two of part three of Article 46 as amended by Law No. 629-VIII dated 16/07/2015; as amended by Law No. 1588-IX dated 30/06/2021}*

*{Part three of Article 46 as amended by Law No. 1586-VII dated 04/07/2014}*

4. Within 15 days, but not later than the time limits set by the Fund, the Bank's executives (if no temporary administration has been performed at the bank) ensure the transfer of accounting and other documentation of the bank, seals and stamps, material and other values of the Bank of the Fund / authorized person of the Fund. In case of evasion of these obligations, the guilty persons shall be liable in accordance with the law.

*{Part four of Article 46 as amended by Law No. 1586-VII dated 04/07/2014; as amended by Law No. 629-VIII dated 16/07/2015}*

5. A person who deliberately impedes the Fund/Funds authorized person's access to the bank, its premises, communications facilities, operating systems, assets, books, records, documents shall be liable according to the legislation of Ukraine.

*{Part five of Article 46 as amended by Law No. 629-VIII dated 16/07/2015}*

**Article 48.** Authority of the Fund in the liquidation of a bank

1. The Fund, either directly or by delegating the powers and authority to the authorized person of the Fund from the day of commencement of the bank liquidation procedure, exercises the following powers:

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 86 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

1) exercises powers of the bank's governing bodies;

2) takes possession of the bank's property (including funds), takes measures to ensure its preservation, forms a liquidation mass, performs management functions and sells the bank's property;

3) makes a register of accepted creditor claims (amends it) and takes measures to satisfy creditors' claims;

4) takes steps in accordance with the procedure established by law to recover the bank's receivables, debt of borrowers to the bank and search, detect, return (requirement) of the bank's property held by third parties, updates the information contained in the Loan Register of the National Bank of Ukraine;

*{Paragraph 4 of Part One of Article 48 as amended by Law No. 2277-VIII dated 06/02/2018}*

5) dismisses the bank's employees in accordance with Ukrainian labor laws;

6) declares refusal to perform contracts and, in accordance with the procedure prescribed by law, terminates them. This clause does not apply to transactions under which obligations are terminated in the liquidation netting procedure, carried out in accordance with the procedure prescribed by Article 541 of this Law;

*{Paragraph 6 of part one of Article 48 as amended by Law No. 738-IX dated 19/06/2020}*

7) transmits the bank's documents required to be stored in the prescribed manner;

8) exercises the powers defined in Part Two of Article 37 and Article 38 of this Law;

*{Paragraph 8 of Part One of Article 48 as amended by Law No. 1588-IX dated 30/06/2021}*

9) performs alienation of assets and/or liabilities of the bank if it was provided for by the settlement plan, or in other cases provided for by this Law;

10) returns to the transfer initiator the funds received in the bank's correspondent account for crediting the bank's clients' current accounts or for paying out the transfers during liquidation procedure until the day the bank opens a cumulative account with the National Bank of Ukraine (except for funds for which the purpose of payment is to repay obligations to the bank).

2. The Fund may exercise other powers which are necessary to complete the bank liquidation procedure.

3. All or part of the Fund's powers defined by this Law may be delegated to one or more authorized individuals of the Fund. In case of delegation of powers to several authorized persons, the Fund clearly defines the limits of powers of each of them. Exercising the powers of the bank's management bodies can be delegated to only one authorized person.

4. The Fund has the right to engage other persons whose remuneration is paid at the expense of the bank being liquidated within the cost estimate approved by the Executive Directorate of the Fund.

5. The Fund has the right to restructuring the debts of the bank customer, which is liquidated, in the manner prescribed by the regulatory acts of the Fund, including by:

1)  changes in the term of use of the bank's property (asset) by the client(s), including for a term exceeding the period of liquidation of the bank;

2)  partial discharge of obligations;

3)  changes in the interest rate under the loan;

4)  changes to the type of collateral that will increase the value of the property (the asset), which is a guarantee for the fulfilment of the terms of the contract;

5)  No penalty/punitive damages.

*{Part five of Article 48 as amended by Law No. 590-IX of 13/05/2020}*

*{Article 48 as amended by Law No. 629-VIII dated 16/07/2015}*

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 87 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

**Article 52.** The urgency and procedure for satisfying bank requirements, payment of expenses and payment

1. Funds obtained as a result of liquidation and sale of the bank's property(s), investment of the bank's temporarily free funds in state securities shall be directed by the Fund to satisfy the creditors' requirements provided that the funds are sufficient to ensure the liquidation procedure in the following priority:

*{Paragraph One of Article 52 as amended by Law No. 1588-IX dated 30/06/2021}*

1) obligations resulting from damage to the life and health of citizens;

2) monetary claims for wages arising from the bank's obligations to employees before the decision to revoke banking license and liquidate the bank;

3) the requirements of the Fund that have arisen in the cases specified by this Law;

*{Paragraph 3 of Part One of Article 52 as amended by Law No. 629-VIII dated 16/07/2015; as amended by Law No. 1588-IX dated 30/06/2021}*

4) requirements of depositors - individuals (including individuals - entrepreneurs) who are not related parties of the bank, insofar as they exceed the amount paid by the Fund;

5) National Bank of Ukraine claims arising out of the decrease in the value of collateral provided for the provision of refinancing loans, as well as to ensure the return of bank notes and coins transferred by the National Bank of Ukraine for storage and to conduct transactions with them;

*{Paragraph 5 of Part One of Article 52 as amended by Law No. 2491-VIII dated 05/07/2018}*

6) requirements of natural persons (including natural persons – entrepreneurs) who are not related parties of the bank, whose payments or payments in the name of which are blocked;

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 88 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

7) requirements of other depositors who are not related parties of the bank, legal entities - clients of the bank that are not related parties of the bank;

*{Paragraph 7 of Part one of Article 52 as amended by Law No. 1587-IX dated 30/06/2021}*

8) Other requirements other than subordinated debt requirements;

9) claims of bank creditors (individuals, including individual entrepreneurs, as well as legal entities) who are related parties of the bank;

10) subordinated debt requirements;

11) Debit/Conversion Requirements by Tools.

*{Part one of Article 52 is supplemented with a new paragraph in accordance with Law No. 1587-IX dated 30/06/2021}*

The bank's claims, unsatisfied as a result of the liquidation procedure and the sale of the bank's property(s) as at the date of the liquidation balance sheet, are deemed to have been repaid.

*{Paragraph of part one of Article 52 as amended by Law No. 1588-IX dated 30/06/2021}*

The Fund has the right to apply to persons who are liable under the law for damage (loss) caused to a bank specified in parts five and ten of this article, with claims for compensation for damage (loss) caused to a bank, in case if there are claims of creditors specified in paragraphs 1 to 8 of this part, except for claims under subordinated debt and claims of creditors who are related parties of the bank.

*{Part one of Article 52 is amended with a paragraph pursuant to Law No. 1588-IX dated 30/06/2021}*

The Fund has the right to contact persons who are liable under the law for damage (loss) caused to creditors whose claims have remained unsatisfied after the liquidation procedure has been completed - in case of the termination of an insolvent bank or bank in respect of which a decision has been taken to revoke a banking license and liquidate a bank on the grounds specified in Part Two of Article 77 of the Law of Ukraine "On Banks and Banking" as a legal entity.

*{Part one of Article 52 is amended with a paragraph pursuant to Law No. 1588-IX dated 30/06/2021}*

2. Payment of bank costs related to liquidation procedure, including the Fund's costs related to the bank's liquidation procedure (management of property(s), sale of property(s) and other costs) shall be made extraordinarily during the entire bank liquidation procedure within the bank's expense estimate approved by the Fund. These costs include, but are not limited to:

*{Paragraph one of Part two, Article 52 as amended by Law No. 1588-IX dated 30/06/2021}*

1) Expenses for publication of the bank's liquidation announcement, withdrawal of the bank license and information on sale of the bank's property(s);

2) Expenses related to the retention and preservation of the bank's property(s);

3) Expenses for carrying out assessment and sale of the bank's property(s);

4) Audit costs;

5) Expenses for payment of services of persons engaged by the Fund to ensure the exercise of the powers assigned to the Fund;

6) Expenses for disbursement of outgoing assistance to dismissed bank employees;

7) The Fund's expenses related to the implementation of temporary administration and/or bank liquidation.

*{Part two of Article 52 is amended by paragraph 7 pursuant to Law No. 1588-IX dated 30/06/2021}*

3. Bank property that is the subject of collateral is included in the liquidation mass, but is used exclusively for the extraordinary satisfaction of the mortgagee's claims. The Mortgagee has the right to enforce the pledged property in the manner prescribed by law or a pledge agreement and to obtain satisfaction of its claims at the expense of the pledged property at the price determined by the value-added entity from the list specified by the Fund in the manner provided for by the regulatory legal acts of the Fund. The price of the property to which the recovery is made for the subject matter of security transferred by the parties to the liquidation netting agreement to perform their obligations under such agreement, during the performance of the net obligations specified in accordance with Article 541 of this Law, as well as the procedure for enforcement of such collateral are determined by the liquidation netting agreement pursuant to which such liquidation netting is performed.

*{Paragraph one of Part three of Article 52, as amended by Laws No. 738-IX dated 19/06/2020, No. 1588-IX dated 30/06/2021}*

In case of sale by the Fund of the pledged property(s), the funds received by the Fund shall be directed to the extraordinary repayment of claims by the pledgee, but no more than the amount of the accepted claims specified in accordance with paragraph 1 of part two of Article 49 of this Law, which are secured by such property(s). The amount before the transfer of the pledgee shall be reduced by the amount of the Fund's expenses calculated according to the regulations of the Fund.

*{Paragraph two of Part three of Article 52 as amended by Law No. 1588-IX dated 30/06/2021}*

If the volume of funds from sale by the Fund of the pledged property is insufficient to satisfy the requirements of the pledgee, unmet claims shall be granted in the order of priority provided for by this Law.

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD   Document 35-8   Filed 12/30/22   Page 89 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

4.  The requirements of each subsequent queue are satisfied as the funds are received from the sale of the bank's property(s) after complete satisfaction of the requirements of the previous queue. If the amount of funds obtained from sale of property (Assets) is insufficient to fully satisfy all requirements of one queue, the claims shall be satisfied proportionally to the amount of claims belonging to each creditor of one queue. In case of a refusal of the lender to satisfy a claim recognized in the prescribed order, the Fund does not take into account the amount of monetary claims of this lender.

5.  In case of damage (losses) caused to a bank, the Fund applies with a claim for compensation in favor of the Foundation for damage (losses) caused to the bank, to:

a person and/or other person related to the bank, decisions, actions (including transactions made, transactions concluded by contracts) and/or inaction of which damage (loss) to the bank has been caused;

and/or a bank-related person and/or other person who, as a result of such decisions, actions (including transactions, transactions, contracts) or omissions, directly or indirectly, received a property benefit.

*{Part five of Article 52 as amended by Laws No. 1736-VIII dated 15/11/2016, No. 1588-IX dated 30/06/2021}*

6.  Managers, owners of substantial participation and ultimate beneficial owners of an insolvent bank or a bank in respect of which a decision has been made to revoke banking license and liquidate the bank on the grounds defined by Part Two of Article 77 of the Law of Ukraine On Banks and Banking Operations, defined in accordance with the law, during temporary administration or liquidation shall provide the Fund with information on all property (assets) and obligations due to them.

In case of failure to provide information by the persons specified in paragraph one of this part, the Fund applies with such requirements to the court. The Fund's claims for providing information on all property(s) and obligations are secured by attachment of all movable and immovable property of the persons to whom they are alleged and/or by prohibiting certain actions from being taken in the order of injunction. The measures of the injunction are in effect until the voluntary implementation of the Fund's claims or the court's decision to provide information on all property (assets) and obligations in accordance with the procedure prescribed by law.

The Fund has the right to apply to the court to obligate other persons, defined in part five of this article, in addition to those specified in paragraph one of this part, to disclose all property (assets) and obligations.

The persons referred to in part five of this article, if the damage (losses) has been caused as a result of a joint decision, joint action or omission, shall be jointly and severally liable.

In case of failure to comply with the claims for compensation for damage (losses) by the persons specified in part five of this article, the Fund applies to the court for compensation for damage (loss). The Fund's claims for damages (losses) may be enforced against the movable and immovable property of the persons to whom they are claimed, and/or by applying other security measures in the order of injunction.

If the grounds for filing claims for compensation for harm (losses) by the Fund, in particular, the bank's related parties, aimed at concealing the real financial condition of the bank, including systematic submission and/or disclosure of false information or reporting of transactions with related parties of the bank, which were committed within three months before the bank was classified as insolvent, transactions entered into by related parties of the bank, deemed worthless, and/or transactions, are invalidated in the prescribed manner, or if the damage (loss) occurred as a result of the actions by the related parties, provided for in paragraphs 1-10 of part eight of this article, these grounds are sufficient for the court to make a freezing order against movable and immovable property of individuals and/or prohibitions against taking certain actions by persons, to which the Fund has declared claims, within the amount of the claim, unless other circumstances are established in court.

If an application for injunction is filed prior to filing a claim, the Fund must bring the claim within 30 working days of the issue of the injunction.

*{Article 52 is supplemented with a new part under Law No. 1588-IX dated 30/06/2021}*

7.  Right to apply to courts of competent jurisdiction (including foreign courts) with a claim for damages (losses), the bank caused, if there are conditions, as defined by part one of this article, arises at the Fund from the moment of detection of decisions, actions or inactions, which caused damage (loss) to the bank and/or its creditors, identifying individuals, who were involved in making such decisions, acting or omitting to do and/or benefiting from the property, as well as the size of the damage (loss).

The Fund has the right to bring such claims before the courts of competent jurisdiction (including foreign courts) during the procedure of liquidation of the bank and for three years after the entry to terminate the bank as a legal entity (special limitation period).

*{Article 52 is supplemented with a new part under Law No. 1588-IX dated 30/06/2021}*

8.  Damage (losses) caused by the decisions, actions or omissions of the persons mentioned in part five of this article shall be compensated in the event that such decisions, actions (taking into account actions that correspond to the signs of risky activity) or inaction are taken or committed in violation of the legislation, including the regulatory acts of the National Bank of Ukraine, and if the damage (losses) occurred as a result of:

1)  Performing transactions (including contracts) that are deemed null and void on the basis of Part Three of Article 38 of this Law;

23/12/2022, 9:30 a.m.

Case 6:22-cv-00990-DNH-TWD    Document 35-8    Filed 12/30/22    Page 90 of 92
On the deposit guarantee system... | dated 23/02/2012 No. 4452-VI (Printing Text)

2)   Failure by the persons named in part five of this article to act in the interests of the bank and its creditors, in good faith and reasonably and/or not to exceed its powers and authority;

3)   Violation of the prohibitions and/or requirements established by law, including the Law of Ukraine "On Banks and Banking Activities", regarding agreements with related parties of the bank or for the benefit of related parties of the bank;

4)   Purchase of non-public securities and/or other financial instruments in violation of the requirements established by the National Bank of Ukraine;

5)   Providing the bank with its own assets (property) in security (pledge, surety, warranty, hold, the right of trust, etc.) the fulfilment of obligations of third parties to their creditor in the order, the other, than performing operations in accordance with the Law of Ukraine "On Banks and Banking Operations", other than property(s), transferred (transferred) as security for the performance of obligations to the National Bank of Ukraine or for the purposes of ensuring payments and settlements under the agreements, concluded with payment systems or operators of such systems;

6)   Failure by the bank to control the intended use by borrowers of the loan funds;

7)   Changes in the debt repayment schedule (terms and amounts of repayment of the principal debt, payment of interest/commission fees, the priority of payments) under the loan agreement and collateral agreement, which were made in violation of the legal requirements;

8)   An unreasonable reduction and/or exemption of the debtor from paying interest and other considerations accrued on active transactions;

9)   Unjustified termination of acceptable collateral to the bank under the transaction or its replacement with less liquid collateral;

10) Transactions committed by the bank in violation of the restrictions set by the National Bank of Ukraine, including persons related to the bank.

*{Article 52 is supplemented with a new part under Law No. 1588-IX dated 30/06/2021}*

9. The Fund acquires the rights of the affected party in criminal proceedings brought in relation to the persons specified in this article, after the termination of the bank.

Funds recovered and/or received by the Fund from the persons specified in part five of this Article shall be directed by the Fund to satisfy the requirements of the bank creditors specified in paragraphs 1 to 8 of part one of this Article, which arose in connection with the damage (loss) to them as a result of dissatisfaction of their claims, in the manner prescribed by part four of this Article, after reimbursement of the Fund's expenses incurred in connection with the recovery of damage (losses).

Termination of a bank as a legal entity shall not constitute or result in the conclusion or termination of any processes, actions or proceedings that have been brought pursuant to this part of the Fund, nor shall it be a basis for the release and/or termination of liability of any persons against whom such processes, actions or proceedings have been brought. All claims of the Fund in connection with such processes, claims or proceedings, including all claims for compensation for harm (loss) caused to creditors (former creditors) of the bank, shall not terminate with the bank being terminated.

*{Article 52 is supplemented with a new part under Law No. 1588-IX dated 30/06/2021}*

10. The Fund or the Fund's authorized person, acting on behalf of and in the interests of the bank as an investor, has the right to initiate processes, claims or proceedings (civil, administrative, criminal or arbitration) in any court and/or tribunal of competent jurisdiction (including in foreign and international courts), including arbitration or other proceedings against states under international treaties of Ukraine, including international incentive agreements and mutual investment protection, damage (losses), that was caused to the bank by individuals or legal entities (private or public law) and states, as a result of:

direct or indirect nationalization or expropriation of the bank's property(s) with respect to such investments, measures which by consequence equal the expropriation;

revisions, destruction, damage or impairment of the bank's property(s) due to military actions, armed conflicts, public unrest or other such actions.

Funds, resulting from the processes described in this part, claims and proceedings, are included in the bank's liquidation mass, and in case such funds are received after approval of the liquidation balance sheet, they are directed to satisfy the requirements of the bank's creditors, that arose from damage (losses) to them as a result of dissatisfaction of their requirements, in order and priority, as defined by parts one and fourth of this article, after reimbursement of the Fund's expenses for such processes, claims and proceedings, and all related enforcement processes.

*{Article 52 is supplemented with a new part under Law No. 1588-IX dated 30/06/2021}*

11. If the bonds are issued by an administrator, the payments received during the liquidation procedure of a bank that has obligations under such bonds are distributed between the owners of these bonds in the manner prescribed by the Law of Ukraine "On Capital Markets and Organized Commodity Markets".

*{Article 52 is supplemented by a part under Law No. 738-IX dated 19/06/2020}*

*{Article 52 as amended by Law No. 629-VIII dated 16/07/2015}*

Article **52¹.** Saving documents

1. The Fund ensures that all, including financial and business documents of the insolvent bank are properly processed, arranged and stored during the liquidation procedure.

*{Part one of Article 52¹ as amended by Law No. 629-VIII dated 16/07/2015}*

2. Until the end of the liquidation of an insolvent bank, the Fund is obliged to ensure the preservation of archived documents of an insolvent bank and to transfer them for storage to the National Bank of Ukraine.

*{Part two of Article 52¹ as amended by Law No. 629-VIII dated 16/07/2015}*

3. The National Bank of Ukraine is obliged to accept the documents of the insolvent bank for storage as they are submitted by the Fund.

*{Part three of Article 52¹ as amended by Law No. 629-VIII dated 16/07/2015}*

*{The Law is amended by Article 52¹ pursuant to Law No. 1586-VII dated 04/07/2014}*

*{Article 52² is excluded based on Law No. 590-IX dated 13/05/2020}*



STATE OF NEW YORK
CITY OF NEW YORK
COUNTY OF NEW YORK

CERTIFICATION

I, Jacqueline Yorke, as an employee of TransPerfect Translations, Inc., do hereby certify, to the best of my knowledge and belief, that the provided Ukrainian into English translation(s) of the source document(s) listed below are true and accurate:

- 04_2022.04.01 Law of Ukraine On the Household Deposit Guarantee Scheme (...

TransPerfect Translations, Inc., a translation organization with over 90 offices on six continents, is a leader in professional translations. TransPerfect Translations, Inc. has over twenty years experience translating into the above language pair, its work being accepted by business organizations, governmental authorities and courts throughout the United States and internationally.

TransPerfect Translations, Inc. affirms that the provided translation was produced in according to our ISO 9001:2015 and ISO 17100:2015 certified quality management system, and also that the agents responsible for said translation(s) are qualified to translate and review documents for the above language pair, and are not a relation to any of the parties named in the source document(s).

_____
Jacqueline Yorke, Project Manager

Sworn to before me this
Thursday, December 29, 2022

_____
Signature, Notary Public

WENDY POON
STATE
OF NEW YORK
NOTARY PUBLIC
Qualified in
Queens County
01PO6356754
MY COMMISSION EXPIRES 04-03-2025

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE