IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOES 1 THROUGH 7,<br><br>*Judgment Creditors,*<br><br>v.<br><br>THE TALIBAN, AL-QAEDA,<br> and THE HAQQANI NETWORK,<br><br>*Judgment Debtors,*<br><br>v.<br><br>THE BANK OF NEW YORK<br>MELLON,<br><br>*Garnishee.* | Case Action No. 6:22-cv-00990-DNH-TWD |

**DOE CREDITORS' RESPONSE TO THE DEPOSIT GUARANTEE FUND'S ORDER TO
SHOW CAUSE REGARDING THE DEPOSIT GUARANTEE FUND'S MOTION TO
<u>INTERVENE AND VACATE THE WRIT OF EXECUTION</u>**

# TABLE OF CONTENTS

Table of Authorities..................................................................................................................iii

Preliminary Statement ...............................................................................................................1

Procedural and Factual Background...........................................................................................2

Argument ...................................................................................................................................5

    I.     Intervention is Not Available Because This Court Cannot Recognize Proposed
         Intervenor's Interest That Arises from a Nationalization; Because Liquidators Lack
         Standing as to Assets Frozen in Other Countries; Because the Assets Are Blocked and
         So to Recognize a New Entity's Interest Would Violate IEEPA; And Because
         Proposed Intervenor's Interest Is at Best Remote and Contingent..............................5

         A.    Legal Standard...............................................................................................5

               1.   Satisfaction of Rule 24 and Article III Standing Are Both Required...............5

               2.   Proposed Intervenor Omitted Both the Requirements of a Pleading And
                   Standing From Its Analysis. It Meets Neither ....................................6

          B.    This Court Cannot Recognize Ukraine's Nationalization of Russian Assets; Thus
             It Cannot Recognize Proposed Intervenor's Interest Based on That
             Nationalization ..............................................................................................7

          C.    Liquidators Do Not Have Standing as Concerns Blocked Assets in Other
             Countries......................................................................................................10

          D.    The Purported Transfer of the Blocked Assets to Proposed Intervenor Would
             Violate IEEPA, and the Writ Preempts Any Future License. Thus, Proposed
             Intervenor Lacks Interest in the Blocked Assets .................................................12

          E.    Proposed Intervenor's Interest Is Too Remote and Contingent to Support
             Intervention under Rule 24 ...........................................................................15

    II.    This Court Should Dismiss Proposed Intervenor's "Claims" ...................................18

    III.   Proposed Intervenor's Attacks Fail .....................................................................18

         A.    The Court Clearly Has Subject Matter Jurisdiction  ...........................................18

         B.    The Court Cannot Find That the Uncompleted, Contested Nationalization Process
             Defeats the Collection of the Blocked Assets .....................................................22

Conclusion...............................................................................................................................25

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, No. 20-cv-3611, 2022 US Dist. LEXIS 112233 (S.D.N.Y. June 24, 2022) ..............................................................................6

*Banco Nacional de Cuba v. Chem. Bank N.Y. Tr. Co.*, 658 F.2d 903 (2d Cir. 1981) ......................7, 9

*Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661 (2d Cir. 1988) ................................................1, 8, 23

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-MC-00040, (W.D.N.Y.)..........21

*Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, No. 21-cv-2771, 2022 U.S. Dist. LEXIS 15084 (E.D.N.Y. Jan. 27, 2022) .........................................................................................6

*Doe v. ELN, et al.*, Case No. 10-cv-21517 (S.D.F.L) .......................................................................20

*Doe v. ELN*, No. 15-cv-8652, 2017 WL 591193, (S.D.N.Y. Feb. 14, 2017) ......................................21

*Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018) ...................................................21

*F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281 (7th Cir. 1989) .........................................................................................................................................8

*Green Haven Prison Preparative Meeting of the Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67 (2d Cir. 2021) ........................................................................18

*Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46 (S.D.N.Y. 2018). .............................................21

*Harrison v. Republic of Sudan*, No. 13-cv-3127, 2017 U.S. Dist. LEXIS 25675 (S.D.N.Y. Feb. 10, 2017) ......................................................................................................................................23

*Hausler v. JP Morgan Chase Bank, N.A.,* 740 F. Supp. 2d 525 (S.D.N.Y. 2010) ..............................22

*Hausler v. JP Morgan Chase Bank, N.A.,* 127 F. Supp. 3d 17 (S.D.N.Y. 2015) ...........................9, 12

*Hausler v. JP Morgan Chase Bank, N.A.,* 770 F.3d 207 (2d Cir. 2014)............................................21

*In re Islamic Republic of Iran Terrorism Litig.,* 659 F. Supp. 2d 31(D.D.C. 2009) ...........................20

*In re Terrorist Attacks on Sept. 11, 2001*, No. 1:03-md-1570 (S.D.N.Y.) ..........................................21

*Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015) ...........................................................18

*Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825 (N.Y. 2009) ........................................................21

*Levin v. Bank of N.Y. Mellon*, No. 09-CV-5900, 2013 U.S. Dist. LEXIS 137399 (S.D.N.Y. Sept. 23, 2013) ...............................................................................................................................................20

*Levin v. Bank of N.Y.* Mellon, No. 13-4711, 2015 U.S. App. LEXIS 7881 (2d Cir. May 11, 2015) .....20

*Nation v. Tanner*, 108 F. Supp. 3d 29 (N.D.N.Y. 2015) ....................................................................18

*Republic of Altmann v. Austria*, 541 U.S. 677 (2004) .......................................................................22

*Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014) ...................................................20, 22

*Republic of Iraq v. First Nat'l City* Bank, 353 F.2d 47 (2d Cir. 1965)...................................................7

*Stansell v. FARC*, No. 16-MC-405, 2022 WL 2530359, (S.D.N.Y. Mar. 29, 2022) ...........................21

*Stansell v. Revolutionary Armed Forces of Colom.*, No. 10-471, 2020 U.S. Dist. LEXIS 121498, (D.D.C. July 10, 2020)...................................................................................................................15

*Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x 812 (11th Cir. 2019) ............................................15

*Town of Chester v. Laroe Estates, Inc.,* 137 S. Ct. 1645 (2017). ..........................................................6

*United Bank, Ltd. v. Cosmic Int'l, Inc.*, 542 F.2d 868 (2d Cir. 1976)................................................1, 8

*United States v. $ 79,000 in Account No. 2168050/6749900 at the Bank of N.Y.*, 96 Civ. 3493, 1996 U.S. Dist. LEXIS 16536, (S.D.N.Y. Nov. 6, 1996) .......................................................................12

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81 (D.D.C. 2013) ....................................................................................................................................*passim*

*United States v. Assa Co.*, 934 F.3d 185 (2d Cir. 2019). ...................................................................21

*United States v. Pink*, 315 U.S. 203 (1942) ......................................................................................17

*Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir. 2017) ....................................................................21

*Villoldo v. Castro Ruz*, 113 F. Supp. 3d 435 (D. Mass. 2015). ..........................................................21

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92 (2d Cir. 1990)...................16

*Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y 2006) ..........................................................19, 21

*Weinstein v. Islamic Republic of Iran,* 609 F.3d 43 (2d Cir. 2010) ....................................................21

## Statutes

18 U.S.C. § 2333 ...................................................................................................................... 2

28 U.S.C. § 1331 .................................................................................................................... 19

28 U.S.C. § 1601 .................................................................................................................... 19

28 U.S.C. § 1603 .............................................................................................................. 19, 22

28 U.S.C. § 1604 .............................................................................................................. 19, 21

28 U.S.C. § 1605 .................................................................................................................... 15

28 U.S.C. § 1610 note ..................................................................................................... *passim*

50 U.S.C. § 1701 ............................................................................................................ *passim*

50 U.S.C. § 1702 .................................................................................................................... 13

50 U.S.C. § 1705 .................................................................................................................... 14

## Other Authorities

148 Cong. Rec. S11524 (Nov. 19, 2002) ............................................................................. 15

Executive Order ("EO") 14024 ..................................................................................... *passim*

## Rules

Fed. R. Civ. P. 24. ............................................................................................................... 5,6

NY CPLR 5202 ...................................................................................................................... 15

## Regulations

31 C.F.R. § 587.312 ............................................................................................................... 14

86 Fed. Reg. 20249 ............................................................................................................... 13

87 Fed. Reg. 39 .................................................................................................................. 3, 13

## PRELIMINARY STATEMENT

The Deposit Guarantee Fund (Proposed Intervenor) puts forth that it is an entity authorized by the laws of Ukraine to liquidate Prominvestbank's assets pursuant to a nationalization, without compensation, to Prominvestbank or its Russian parent company. It hopes to intervene in this matter, and to vacate the writ of execution against Prominvestbank's assets blocked and held at the Bank of New York Mellon. Before this Court can entertain Proposed Intervenor's motion to vacate the writ, Proposed Intervenor must first show that it is qualified to intervene. It is not.

First, this Court is not empowered to recognize Ukraine's nationalization of Russian assets; thus it cannot recognize Proposed Intervenor's purported interest in this litigation. The United States holds a firm policy against nationalization without compensation, and that policy precludes courts from recognizing foreign nationalizations of assets on U.S. soil. According to the Second Circuit, it is true that

> confiscation of enemy properties is not in conflict with any constitutional prohibition. … But in those few instances throughout our history when Congress has granted to the Executive the power to seize, it has been for a circumscribed period of time and for a restricted rationale. … Nothing in this limited power even remotely suggests that a foreign sovereign's seizures of property located here will be recognized by our courts. … [S]uch war time appropriations are tolerable only in the most extreme of circumstances where there is express Congressional authority given to the Executive. We decline to extend that principle to apply to another nation's extraterritorial seizures.

*Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 670 (2d Cir. 1988) (citations omitted) (citing *United Bank, Ltd. v. Cosmic Int'l, Inc.*, 542 F.2d 868, 877 (2d Cir. 1976) (denying recognition of a nationalization because nothing in law or cases "suggest even remotely that confiscatory seizures of an extraterritorial nature can ever be *consistent* with American public policy.") (emphasis in original). Because the purported interest in this litigation is the product of a nationalization that this Court is not empowered to be the first to recognize, this Court must deny the motion to intervene.

1

Second, even if Proposed Intervenor's status as a liquidator had not been the product of a nationalization that this Court is not authorized to recognize, a liquidator does not have standing to claim blocked assets in this circumstance. In *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81 (D.D.C. 2013) ("*All Assets*"), the very case Proposed Intervenor cites to this Court for the proposition that a liquidator has standing to intervene, the court in fact came to the opposite conclusion concerning blocked assets in another country. It held that a liquidator seeking to prevent execution against assets on deposit in another country *after* those assets have been blocked by that country does not have sufficient interest in the blocked assets to have standing.

Further, to recognize Proposed Intervenor's interest in the blocked assets, which interest would only arise by a forbidden transfer after the block, would violate OFAC sanctions regulations.

Finally, even if there were not such clear precedent and prohibition on bestowing ownership status of the blocked assets on Proposed Intervenor, an application of Rule 24, as well as the Constitutional standing requirements, to the facts of this case, precludes intervention because Proposed Intervenor's interest is far too remote and contingent to support intervention. This court is not choosing between the Judgment Creditors or Proposed Intervenor. It is choosing between giving effect to TRIA by compensating terror victims or consigning the assets to remain blocked indefinitely.

For these reasons, the motion to intervene should be denied. Once the Court has determined that Proposed Intervenor lacks standing, it should dismiss them.

## PROCEDURAL AND FACTUAL BACKGROUND

On January 4, 2016, Doe Creditors were injured by a terrorist attack perpetrated by the Taliban in Afghanistan. On November 5, 2020, Doe Creditors obtained a judgment for their injuries pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333(a), in the Northern District of Texas. A copy of this judgment can be found at DE 1.

On April 15, 2021, President Joseph R. Biden, Jr., acting pursuant to the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. 1701, *et seq*.), promulgated Executive Order ("EO") 14024, which blocked the property and interest in property of individuals and entities "responsible for or complicit in, or [who] directly or indirectly engaged or attempted to engage in," *inter alia*, the "undermin[ing] [of] security in countries and regions important to United States national security" on behalf of the Russian Federation.

On February 22, 2022, the United States specifically blocked assets of Prominvestbank in the United States due to its ownership by Vnesheconombank ("VEB") and collaboration with Russia in destabilizing acts around the world. *See* Press Releases, U.S. DEP'T OF THE TREASURY, U.S. Treasury Imposes Immediate Economic Costs in Response to Actions in the Donetsk and Luhansk Regions (Feb. 22, 2022), https://home.treasury.gov/news/press-releases/jy0602; *see also* 87 Fed. Reg. 39 (announcing the designation of Prominvestbank pursuant to EO 14024).

On September 20, 2022, Doe Creditors filed this action seeking to enforce their judgment against the blocked assets of Prominvestbank pursuant to the Terrorism Risk Insurance Act of 2002 ("TRIA"), § 201, Pub. L. No. 107-297, 116 Stat. 2322, 2337-2340 (codified at 28 U.S.C. § 1610 note). In support, they provided expert testimony establishing that Russia actively supported, and supports, the Taliban, including "financial support" to Taliban operations, and that Prominvestbank plays a key role in that collaboration, providing material support to the Taliban. DE 4-9, FONSECA at pars. 26-44.

On November 22, 2022, this court found that Prominvestbank is an agency or instrumentality of the Taliban. DE 16.

Subsequently, Doe Creditors have endeavored to serve notice of these proceedings on Prominvestbank and the Taliban so that they have opportunity to challenge that finding prior to turnover. On December 1, 2002, the Taliban was served notice of these proceedings. DE 33. As of

today, Prominvestbank has not yet been served, due to the lengthy time required for Hague Convention service.

On December 30, 2022, Proposed Intervenors, who claim to be a liquidator of Prominvestbank pursuant to a nationalization of Prominvestbank's assets, filed a motion to intervene in this matter, claiming that

> Judgment Creditors seek to satisfy their judgment through execution upon assets owned and controlled by Ukraine, which were seized by Ukraine to support its ongoing campaign of resistance to Russian aggression.

DE 35 at 3.

Russia has already indicated that it intends to challenge the nationalization of banks owned by its state banks in international tribunals, as is its right. *See* FONSECA SUPPLEMENTAL DECLARATION ("FONSECA SUPP.") at par. 22. The two countries have to wait six months from the first attempt to resolve the dispute by negotiation before it can be submitted to arbitration, pushing the eventual resolution even further into the future. *Id.* And, the last time Prominvestbank was subject to a seizure of its assets in Ukraine – in response to Russia's annexation of Crimea – the seizure failed.[1] *Id.* at pars. 6-21. Russia fought back, and an international tribunal overruled the seizure, *Id.* at par. 9 (citing to *Stockholm Court Bans Ukraine from Selling Prominvestbank Shares*, REUTERS, https://www.reuters.com/article/us-russia-ukraine-bank/stockholm-court-bans-ukraine-from-selling-prominvestbank-shares-idUSKCN1VI1OL), which is why Prominvestbank was still a Russian-owned bank as of February 22, 2022, when the United States blocked it. *Id.* at 21.

---

[1] The history between Russia and Ukraine regarding Prominvestbank is tumultuous. It involves private suits for compensation against Russia for the annexation of Crimea; Prominvestbank's recognition of passports from pseudo-authorities in Donetsk and Luhansk as validation for opening accounts; sanctions and ultimately seizure of Prominvestbank assets in Ukraine; international arbitrations; illegal sales of Prominvestbank shares in favor of Ukraine; successful Russian objections thereto; and enforcement actions by Russia as far as the British Virgin Islands. *See* FONSECA SUPP.

<u>ARGUMENT</u>

I.    **Intervention Is Not Available Because This Court Cannot Recognize Proposed Intervenor's Interest That Arises from a Nationalization; Because Liquidators Lack Standing as to Assets Frozen in Other Countries; Because the Assets Are Blocked and So to Recognize a New Entity's Interest Would Violate IEEPA; And Because Proposed Intervenor's Interest Is at Best Remote and Contingent.**

   A.    **Legal Standard.**

          1.    **Satisfaction of Rule 24 and Article III Standing Are Both Required.**

Proposed Intervenors move pursuant to Rule 24, which provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
(1) is given an unconditional right to intervene by a federal statute; or
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
(b) Permissive Intervention.
(1) *In General.* On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.
(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
(A) a statute or executive order administered by the officer or agency; or
(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.
(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.
(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fᴇᴅ. R. Cɪᴠ. P. 24.

Satisfying Rule 24, however, does not automatically qualify a party for intervention. Where a party seeks relief different than that sought by the plaintiff, it must show that it also would have Article III standing to initiate the action (a second requirement that Proposed Intervenor failed to mention). As the Supreme Court stated:

For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an

intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).

Further,

[a]lthough the Supreme Court in *Chester* determined only that a proposed intervenor as of right must demonstrate Article III standing in this context, lower courts analyzing *Chester* have explained persuasively that the reasoning employed by the Supreme Court applies equally in the context of permissive intervention. *See, e.g., Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, No. 21-cv-2771, 2022 U.S. Dist. LEXIS 15084, 2022 WL 247996, at *9-10 (E.D.N.Y. Jan. 27, 2022) (collecting cases).

*1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, No. 20-cv-3611 (JGK),

2022 U.S. Dist. LEXIS 112233, at *14-15 (S.D.N.Y. June 24, 2022). Thus, Proposed Intervenor must

show that it satisfies Rule 24, as well as Article III standing requirements.

**2.     Proposed Intervenor Omitted Both the Requirements of a Pleading And Standing From Its Analysis. It Meets Neither.**

Proposed Intervenor correctly cites to Rule 24 as the procedural rule governing intervention.

However, missing from Proposed Intervenor's motion to intervene is any mention of the requirement,

contained in Rule 24(c), of accompanying its motion with "a pleading that sets out the claim or defense

on which intervention is sought." Likewise missing is any argument that Proposed Intervenor has

Article III standing to intervene in this action.

While the failure to attach a pleading is occasionally overlooked by district courts where its

legal claims are clear,[2] the reason Proposed Intervenor failed to attach a pleading seeking relief or make

any argument that it has Article III standing is revelatory and disqualifying to its claim of intervention:

it lacks standing to make a claim to the blocked assets. U.S. courts are not authorized to recognize

foreign nationalizations; even if they were (or even if this liquidator did not become a liquidator due to

---

[2] *See, e.g., Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, No. 21-CV-2771 (KAM) (ARL), 2022 U.S. Dist. LEXIS 15084, at *15 (E.D.N.Y. Jan. 27, 2022).

a nationalization), U.S. courts do not recognize the standing of foreign liquidators to pursue frozen

assets in other countries; the transfer that this Court would have to recognize would violate IEEPA, and

even if all the above were overcome, Proposed Intervenor's interests in this litigation is too remote and

contingent to support intervention.

      **B.**     **This Court Cannot Recognize Ukraine's Nationalization of Russian Assets;**
                 **Thus It Cannot Recognize Proposed Intervenor's Interest Based on That**
                 **Nationalization.**

In multiple cases over the decades, the Second Circuit has applied the rule that courts

are not empowered to recognize or give effect to foreign nationalizations, except in extreme

circumstances, and only after Congress has given authority to the Executive, and the Executive

has done so.

For example, in *Republic of Iraq v. First Nat'l City Bank*, the Second Circuit stated:

> …when property confiscated is within the United States at the time of the attempted
> confiscation, our courts will give effect to acts of state *only if they are consistent with*
> *the policy and law of the United States.*

353 F.2d 47, 51 (2d Cir. 1965) (emphasis added) (internal citations omitted). Further,

> [t]he effect of a foreign state's attempt to expropriate property located in the United
> States has been found to violate United States law or policy when the prior owner of
> the property has not been compensated and he or his successor protests the taking or
> resists its judicial enforcement.

*Banco Nacional de Cuba v. Chem. Bank N.Y. Tr. Co*., 658 F.2d 903, 908 (2d Cir. 1981) ("*Chemical*

*Bank*"). Here, of course, Russia has not been compensated and has already indicated it will fight

Ukraine's expropriation of its banks in international tribunals. *See* FONSECA SUPP. at 22.

Indeed the prohibition against government taking property without due process and just

compensation is one of the bedrock ideals of the Republic. The Second Circuit has noted:

> Of course, this ideal, embodied in the fifth and fourteenth amendments to the
> Constitution, constrains our federal and state governments, not those of other countries.
> However, when a foreign sovereign, following hostilities, confiscates … property and

attempts to extend that taking to interests held here, a United States court will effectuate the seizure for only the weightiest reasons.

*Bandes*, 852 F.2d at 663. Further, the Court added, that

> in those few instances throughout our history when Congress has granted to the Executive the power to seize, it has been for a circumscribed period of time and for a restricted rationale. … Nothing in this limited power even remotely suggests that a foreign sovereign's seizures of property located here will be recognized by our courts. … [S]uch war time appropriations are tolerable only in the most extreme of circumstances where there is express Congressional authority given to the Executive. *We decline to extend that principle to apply to another nation's extraterritorial seizures.*

*Id.* at 670. (emphasis added) (citations omitted). *See also United Bank, Ltd. supra* p. 1. Here, Congress has not authorized, and the Executive Branch has not issued an executive order or entered any international agreement recognizing the Ukrainian nationalization of Russian assets.

The Seventh Circuit cited Second Circuit precedent in denying standing to a liquidator that claimed rights to assets purportedly seized through a nationalization. It stated:

> [I]f a foreign state has made a confiscatory 'taking,' an act offensive to American proprieties, American courts will not lend their assistance to making the confiscation effective. So if the Consulting Firm had assets in Chicago, and the Iranian board of liquidators brought suit here to obtain control of those assets in conformity with the Iranian decree seizing the firm, the suit would fail. *See, e.g.*, *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 666-67 (2d Cir. 1988); *United Bank Ltd. v. Cosmic International, Inc.*, 542 F.2d 868 (2d Cir. 1976).

*F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 286 (7th Cir. 1989). Thus, the general rule is that a liquidator of a nationalization has no interest in the blocked assets that a U.S. court can recognize, and so it lacks standing to intervene.

The only times that courts in this district have found the extreme circumstances sufficient to recognize the interests of beneficiaries of foreign nationalizations have been in cases where no one had challenged the expropriation for decades (thereby blunting the negative impact of recognizing the expropriation), and where doing so furthered the policy and law of the United States by compensating

Americans. After noting that "[i]n the twenty years during which these suits have been pending" there had been no objection to the nationalization, the Second Circuit in *Chemical Bank* found that recognizing the nationalization in that instance "will further the goals of the United States, because it will assist in providing funds in the United States from which American nationals" could be compensated for their claims. *Chemical Bank*, 658 F.2d at 909. Following *Chemical Bank*, the district Court in *Hausler III* came to a similar conclusion concerning an expropriation that had gone unchallenged for 40 years. The Court was

> persuaded that in the instant case 'United States policy will be furthered rather than violated' by recognizing Cuba's extraterritorial confiscatory taking of the Blocked Assets … . Recognition of the expropriation of the Blocked Assets will allow Hausler, the aggrieved family member of a victim of extrajudicial torture and killing by Cuban armed forces, to recover some amount of the compensatory damages she was awarded in the Florida Judgment. On the other hand, if the Court declined to recognize the expropriation of the Blocked Assets, the Blocked Assets will simply sit in the Blocked Accounts indefinitely … .

> United States policy would also be furthered by allowing Hausler to use TRIA in the way Congress intended: as a tool to access compensation for wrongs suffered by American citizens at the hands of a terrorist [party].

*Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 57 (S.D.N.Y. 2015) ("*Hausler III*").

Thus, a review of the case law demonstrates that courts have *only* given effect to foreign expropriations, which generally are abhorrent to U.S. ideals, when they have long gone uncontested, when to do so would further U.S. policy by compensating Americans, and especially when it would further U.S. policy by allowing TRIA to be used as intended. The instant case presents none of the factors that might override the U.S. policy against nationalizations. In addition to being an appropriation, recognition of the nationalization here would in fact run counter to the U.S. law and policy enshrined in TRIA – that blocked assets in the U.S. should be used to compensate terror victims. This Court should not recognize the nationalization, and so Proposed Intervenor lacks standing.

Proposed Intervenor is asking the court not just to overlook a technical standing requirement, but take an action with grave implications. While the United States supports Ukraine's sovereignty and territorial integrity, and while the Doe Creditors support Ukraine's struggle and wish them well,[3] the United States is not at war with the Russian Federation, and has been very careful in the steps that it has taken to make sure that the Russian Federation cannot interpret its actions as tantamount to open warfare. While the United States blocked the assets at issue, thereby knowingly putting them in TRIA's ambit, it still treats Russia as the sovereign nation it is; hopes to maintain the international legal order that governs relations between sovereigns; has an ongoing general interest in maintaining its principled stance against nationalizations and likely a specific interest in denouncing Russia's counter-nationalization of U.S. assets in Russia; and, as a practical matter, surely prefers to maintain Executive Branch control over whether and when to recognize the Ukrainian nationalization of Russian assets in the future. What Proposed Intervenor is asking this Court to do, in the context of a highly fraught foreign policy environment, is to ignore standing requirements and inject a district court into foreign relations, potentially escalating the conflict between the United States and the Russian Federation by taking a position on nationalization consistent with open warfare between these two world powers. This Court is not authorized to, and should not act so recklessly. To be clear, it is the mere recognition of standing of a Ukrainian liquidator to speak for a bank formerly owned by Russian interests that carries such risk.

**C.**     **Liquidators Do Not Have Standing as Concerns Blocked Assets in Other Countries.**

---

[3] Doe Creditors fully support Ukraine taking and using every hryvnya, ruble, dollar or euro that Russia and its co-conspirators have in Ukraine, but the fact of the matter is that if the Doe Creditors, also victims of Russian aggression, do not execute against these particular blocked assets in the United States, they will sit, blocked, indefinitely, which helps no one and was exactly the fate that TRIA was intended to avoid.

In addition to the fact that this Court is not authorized to recognize (and that it would be reckless to recognize) the nationalization that serves as the basis for Proposed Intervenor's position as liquidator, this liquidator also lacks standing for the independent reason that the assets at issue are blocked in a country outside of the liquidator's country. Proposed Intervenor cites *All Assets* as authority for the proposition that it has standing. That case is particularly instructive because it concerned the exact situation at bar – a liquidator in a foreign nation claiming standing to enter litigation and assert rights to assets that the entity it was liquidating had placed on deposit at other banks. The court in *All Assets* indeed found that the Antiguan liquidators before it had standing, as liquidators, to enter litigation over assets located in Antigua that they could exercise control over. Proposed Intervenor related that holding to this Court. However, concerning assets that the financial institution being liquidated had deposited in banks overseas *but that had been frozen by the host nation* – the very situation this court faces with the blocked assets here – the court concluded that the liquidators *lacked* standing. The court noted:

> As a result of freeze orders issued in Lithuania and Switzerland, the Liquidators have never been able to transfer these funds out of the countries and financial institutions where they are located back to Antigua and into their own control.

959 F. Supp. 2d at 114. The fact that the bank and its liquidator had lost control of the assets prior to the liquidation, the court reasoned,

> puts these defendant assets in a fundamentally different position from those located in Antigua: the Liquidators secured the return of those assets from the United States and held them for months in their own trust account before turning them over to the Registrar of the High Court of Justice. Not so for the assets in Lithuania and Switzerland. …
>
> Thus, Eurofed … has not carried its burden of demonstrating its standing to contest their forfeiture.

*Id.* at 115.

Thus, the fact that on February 22, 2022, the United States blocked Prominvestbank's assets is itself determinative of standing. Proposed Intervenor was never the account holder and never exercised any dominion or control over the blocked assets.[4] According to Proposed Intervenor, the Ukrainian liquidation process did not even begin until, at the earliest, February 25, 2022. By then, the assets could not be transferred, and no one could exercise control over them without OFAC authorization. *See* Section I.D., *infra*. Proposed Intervenor has thus failed to demonstrate it has standing, and in fact has demonstrated that it lacks standing, according to the very evidence it submits, and the very case it cites to this Court.

In sum, although in most cases a liquidator "has standing to intervene in cases affecting assets subject to litigation" (DE 35-3 at 12) this rule is not applicable here for the simple reason that the assets here were blocked in another country prior to the commencement of the liquidation. (And to remind, while this case shares every factor that led to the finding against standing in *All Assets*, this is in addition to the fact that Proposed Intervenor's status as liquidator stems from a nationalization process that this Court cannot recognize.)

> **D.     The Purported Transfer of the Blocked Assets to Proposed Intervenor Would Violate IEEPA, and the Writ Preempts Any Future License. Thus, Proposed Intervenor Lacks Interest in the Blocked Assets.**

In this case, the assets were not only blocked outside of Ukraine, as in *All Assets*, but they were blocked in the United States, adding yet another barrier to the Proposed Intervenor claiming any

---

[4] By contrast, up until the moment of blocking, Prominvestbank did exercise dominion and control over the assets and thus the assets are "of" Prominvestbank for purposes of TRIA execution. *See United States v. $ 79,000 in Account No. 2168050/6749900 at the Bank of N.Y.*, 96 Civ. 3493 (MBM), 1996 U.S. Dist. LEXIS 16536, at *13 (S.D.N.Y. Nov. 6, 1996) (noting the distinction between a named account holder and others who have never exercised dominion over the account, stating "It should be noted that while an individual who deposits money in his own account might have standing  by virtue of his de facto dominion or control over the funds, claimants, as noted above, have not alleged facts sufficient to demonstrate such dominion or control."); *see also Hausler III*, 127 F. Supp. 3d at 49 (recognizing account holder's property interest for purposes of TRIA.).

interest in them in a U.S. court. These assets are subject to U.S. law, and U.S. law, specifically IEEPA, forbids the transfer that Proposed Intervenor hopes to travel under.

IEEPA authorizes the President of the United States to declare the existence of an "unusual and extraordinary threat … to the national security, foreign policy, or economy of the United States" that originates "in whole or substantial part outside the United States." 50 U.S.C. § 1701. It further empowers the President to block transactions and freeze assets of designated foreign nationals in order to combat the threat. *See generally* 50 U.S.C. § 1702. EO 14024, which was passed pursuant to IEEPA to combat the threat of Russia and its co-conspirators, provides that as per designated persons and entities: "[a]ll property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person (including any foreign branch) of any United States person are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in…". 86 Fed. Reg. 20249. As noted, on February 22, 2022, acting pursuant to EO 14024, the United States specifically designated Prominvestbank. *See* 87 Fed. Reg. 39.

According to OFAC, blocking an asset is a "way of controlling targeted property. Title to the blocked property remains with the target, but the exercise of powers and privileges normally associated with ownership is prohibited without authorization from OFAC. Blocking immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to the property." Frequently Asked Questions, U.S. DEP'T OF THE TREASURY, Basic Information on OFAC and Sanctions, https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1501. Furthermore,

> Property remains blocked even if the blocked person's ownership of the entity subsequently falls below 50 percent. This is so because the blocked person is considered to have an interest in the blocked property, and OFAC does not recognize the unlicensed transfer of the blocked person's interest after the property becomes blocked in the United States or in the possession or control of a U.S. person.

Frequently Asked Questions, U.S. DEP'T. OF THE TREASURY, Entities Owned by Blocked Persons (50%

Rule), https://home.treasury.gov/policy-issues/financial-sanctions/faqs/402.

> The term transfer is broad, and means:
>
> any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property. Without limitation on the foregoing, it shall include the making, execution, or delivery of any assignment, power, conveyance, check, declaration, deed, deed of trust, power of attorney, power of appointment, bill of sale, mortgage, receipt, agreement, contract, certificate, gift, sale, affidavit, or statement; the making of any payment; the setting off of any obligation or credit; the appointment of any agent, trustee, or fiduciary; the creation or transfer of any lien; the issuance, docketing, filing, or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment; the acquisition of any interest of any nature whatsoever by reason of a judgment or decree of any foreign country; the fulfillment of any condition; the exercise of any power of appointment, power of attorney, or other power; or the acquisition, disposition, transportation, importation, exportation, or withdrawal of any security.

31 C.F.R. § 587.312.

Section 206 of the IEEPA, codified at 50 U.S.C. § 1705, provides that "[i]t shall be unlawful

for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order,

regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a).

Here, any purported transfer of Prominvestbank's interest in the blocked assets to Proposed

Intervenor after February 22, 2022, was, and is, strictly prohibited, and thus a nullity.

The only three ways to legally reach blocked assets are by: 1) a delisting of the entity that was

blocked; 2) obtaining a license from OFAC; or 3) obtaining a qualifying terrorism judgment against a

terrorist party and invoking TRIA, which allows for execution against blocked assets notwithstanding

any other provision of law.[5] TRIA is not available to Proposed Intervenor. Even if Proposed Intervenor

---

[5] TRIA provides: Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon

hoped to obtain a license or delisting and effectuate a transfer at that point, it would be of no effect, as

the TRIA writ has already attached, prior to the delisting or issuance of the license.[6]

Because the blocked assets were not transferred prior to the block, and cannot be transferred

without violating IEEPA, Proposed Liquidator's purported interest is prohibited by law, and thus

Proposed Intervenor lacks standing to intervene in this matter.

### E.   Proposed Intervenor's Interest Is Too Remote and Contingent to Support Intervention under Rule 24.

Finally, even if none of the above were absolute bars, Proposed Intervenor's interest is at best

remote and contingent. And, according to the Second Circuit, a remote, contingent interest doesn't

satisfy Rule 24:

> An interest that is remote from the subject matter of the proceeding, or that is
> contingent upon the occurrence of a sequence of events before it becomes colorable,
> will not satisfy the rule.

---

an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28,
United States Code, the blocked assets of that terrorist party (including the blocked assets of any
agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of
execution in order to satisfy such judgment to the extent of any compensatory damages for which such
terrorist party has been adjudged liable.

[6] The service of a writ of execution acts as a lien, placing the judgment creditor's interest above all
subsequent transferees. *See* NY CPLR 5202. Once it has attached, the judgment creditor has a valid
lien on the debtor's property held by a garnishee. *See All Assets*, 772 F. Supp. 2d at 203 ("Once the
third-party holding the targeted property  the garnishee –  is served with the writ, the judgment creditor
has "a valid lien…on the debtor's property held by the garnishee."). This non-controversial proposition
applies in TRIA executions. *See Stansell v. Revolutionary Armed Forces of Colom.* ("*FARC*")*, No. 10-
471 (TJK), 2020 U.S. Dist. LEXIS 121498, at *5 (D.D.C. July 10, 2020). The relevant time for
evaluating whether an asset is a "blocked asset" for TRIA purposes is when the writ is served, despite
any subsequent Executive action. *See Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x 812, 821 (11th
Cir. 2019) (writ effective despite subsequent delisting). Indeed, "TRIA establishes once and for all, that
such [terrorism] judgments are to be enforced against any assets available in the U.S., and that the
executive branch has no statutory authority to defeat such enforcement under standard judicial
processes, except as expressly provided in this act. 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002)
(statement of Sen. Harkin). Plaintiffs' TRIA writ cannot be defeated. Thus, Proposed Intervenor has no
interest that would merit intervention.

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (denying intervention where the interest was dependent upon a "double contingency"). Proposed Intervenor's interest, if it has one, is remote, and dependent upon four contingencies.

First, it is contingent on a finding that the alleged transfer pursuant to a nationalization was completed prior to the institution of these proceedings, but, as is more fully discussed below, Proposed Intervenor's supporting declaration and materials attached fail to establish that the actual transfer of the majority of shares of Prominvestbank had been effectuated by September 20, 2022, the date that Doe Creditors filed the instant action. *See* Section III.B. *infra.* Proposed Intervenor describes an ongoing process that was suffering hiccups and incomplete steps. The last step it describes was an order dated September 13, 2022, *directing* the seizure, implying that there would be some action such as an actual seizure or execution of documents transferring ownership. The declaration then jumps forward to December 15, 2022, when a state ownership registry shows that the transfer was complete. Thus, this record cannot support a finding that Prominvestbank was nationalized, even within Ukraine, prior to the institution of these proceedings. Thus, Prominvestbank fails to show that it even has a realizable contingent interest.

Second, the legality of Proposed Intervenor's hoped for nationalization will not be resolved anytime soon. Russia has already indicated that it intends to challenge the nationalization of banks owned by its state agencies in international tribunals, as is its right. *See* FONSECA SUPP. at par. 22. The two countries have to wait six months from the first attempt to resolve the dispute by negotiation before it can be submitted to arbitration. *Id.* And to remind, the last attempt to seize Prominvestbank's assets in Ukraine failed. *See* FONSECA SUPP. at pars. 6-21.

Third, even if an international tribunal resolved the question of nationalization in Proposed Intervenor's favor, Proposed Intervenor would then have to establish that the United States recognizes

the nationalization. As shown, it has not, and there is no indication that that is imminent. Nationalizations are fraught with legal pitfalls, run counter to U.S. policy, are not recognized by U.S. courts until the Executive has done so through an executive order or international agreement, and this can take decades and involve extensive negotiation. *See United States v. Pink*, 315 U.S. 203, 234 (1942) (1917 nationalization of Russian assets recognized in 1933 by Litvinov Agreement, but issues remained until 1942).

Fourth, before Proposed Intervenor could possibly gain an interest in the assets at issue sufficient to support intervention, the regulatory process for unblocking the assets or for issuing it a license – typically long and painstaking processes – would have to be successfully completed. There is no evidence these processes have even started.

Proposed Intervenor simply has no current interest in the blocked assets, and certainly no priority interest that could possibly defeat the Doe Creditors right to execute against them. Its interest is remote and contingent, if it exists at all.

The very first sentence in Proposed Intervenor's Preliminary Statement in its motion to intervene, that "[t]his proceeding involves disposition of Prominvestbank assets … which were seized earlier this year by Ukraine" (DE 35-3 at 3.) is demonstrably false. The blocked assets were not seized. Likewise, its statement that

> Judgment Creditors seek to satisfy their judgment through execution upon assets owned and controlled by Ukraine, which were seized by Ukraine to support its ongoing campaign of resistance to Russian aggression …

is demonstrably false. The assets at issue were blocked *prior* to any effort at nationalization by Ukraine, and definitely prior to any seizure. These blocked assets in fact have never been seized or owned and controlled by Ukraine. They were blocked in New York, out of reach of Proposed Intervenor, who can claim no current interest in them.

17

For all these reasons, Proposed Intervenor's motion to intervene should be denied.

**II.     This Court Should Dismiss Proposed Intervenor's "Claims".**

Despite having no standing to intervene, and making no real claims, Proposed Intervenor makes unauthorized broadside attacks on these execution proceedings by filing a motion to vacate along with its motion to intervene. However, "Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' or 'Controversies'. One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 38 (2d Cir. 2015). Further, "[b]ecause the question of standing goes to the constitutional limitations on the 'judicial Power of the United States,' … [courts] 'are entitled at any time *sua sponte* to delve into the issue'" *Green Haven Prison Preparative Meeting of the Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (citations omitted). This Court knows what it must do once it has determined that a litigant lacks standing: *sua sponte* dismiss. *See Nation v. Tanner*, 108 F. Supp. 3d 29 (N.D.N.Y. 2015) (Hurd, J.). Here, prompt dismissal is especially warranted due to the fact that the mere fact of granting Proposed Intervenor ongoing status as a litigant is not just unauthorized, but has serious negative ramifications.

Nonetheless, should the Court consider these Proposed Intervenor's attacks, Doe Creditors show that each attack fails.

**III.    Proposed Intervenor's Attacks Fail.**

   **A.     The Court Clearly Has Subject Matter Jurisdiction.**

Proposed Intervenor's first argue that "THE COURT LACKED SUBJECT MATTER JURISDICTION" to issue the writ of execution. DE 35-3 at 14. Doe Creditors clearly laid out the grounds for this court's subject matter jurisdiction over these TRIA execution proceedings (pursuant to

28 U.S.C. § 1331 and TRIA); its *in rem jurisdiction* over the blocked assets; and its personal

jurisdiction over the Garnishee. DE 4-2 at 4-6.

      Proposed Intervenor argues that Doe Creditors would have to hold a judgment against a

sovereign before there could be subject matter jurisdiction over TRIA execution against the blocked

assets of Prominvestbank. DE 35-3 at 15-20, 22-23. It cites to government Statements of Interest in two

cases and one *unadopted* Report and Recommendation from one of the same two cases, neither of

which concerned the situation in the case at bar in which the owner of the blocked assets at issue is not

an agency of a state, but rather a second-tier company that is owned by a state-owned company. As we

pointed out in our motion, (DE 4-2 at 16), subsidiaries of state instrumentalities simply do not enjoy the

protections that a state instrumentality enjoys. It is useful to remind of the workings of sovereign

immunity, which are governed by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1601, *et seq*.

Section 1604 provides that a "foreign state" is immune from jurisdiction. Section 1603(b)(2) defines

"foreign state" to include an "agency or instrumentality" of the state, and defines "agency or

instrumentality" as "an organ of a foreign state or political subdivision thereof, or a majority of whose

shares or other ownership interest is owned by a foreign state or political subdivision thereof". In

*Weininger v. Castro*, 462 F. Supp. 2d 457, 496 (S.D.N.Y 2006), the court cited Section 1603(b)(2) in

holding that "only direct ownership of a majority of shares by the foreign state satisfies the FSIA's

definition of instrumentality"). Thus, Prominvestbank enjoys no sovereign immunities.

      In fact, the fact scenario before this Court is not novel, and the government's position

concerning it is known. In a case in which a non-designated sovereign, Venezuela, was conspiring with

its subsidiaries, and theirs, to funnel money to the Colombian terrorist group the FARC – just as Russia

conspired with its subsidiaries, and theirs, including Prominvestbank, to fund the Taliban – the court

approved the use of TRIA to satisfy a judgment against the FARC from blocked assets of a company in

the second tier of ownership, despite the fact that there was no judgment against Venezuela. The Government (which is recognized as generally hostile to attempts to execute against blocked assets)[7] filed a Statement of Interest in the matter. Despite its general opposition, the Government did not raise any objection to the fact that there was no underlying judgment against the sovereign in that case, Venezuela. *See* Dkt. 272, Sealed Statement of Interest of the United States (now unsealed), dated Nov. 25, 2019, in *Doe v. ELN*, *et al*., Case No. 10-cv-21517 in the United States District Court for the Southern District of Florida, attached hereto as Exhibit A. Proposed Intervenor's argument, in note 4, that Russia's involvement in the conspiracy should change the law on whether a second tier company enjoys sovereign immunity is wrong. Sovereign immunities are based solely on the FSIA's text, and so do not arise by association. *See Republic of Argentina v. NML Cap., Ltd*., 573 U.S. 134, 141-42 (2014) ("any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall.") Prominvestbank does not meet the FSIA definition of a foreign state, and so enjoys no sovereign immunity despite Prominvestbank's association with Russsia.

The more novel question of whether assets *of a foreign state* could be used to satisfy a judgment in the absence of a judgment against the state is not before this Court. Doe Creditors are confident that the answer to this question is yes. Doe Creditors have briefed the question fully, however, as they are parties to the execution proceedings pending in the Southern District of New York and referred to by Proposed Intervenor. These briefs address both the Report and Recommendation in

---

[7] As one court put it: "[a]ny statement from the Executive Branch submitted with respect to the TRIA should be considered suspect, given that Congress' passage of TRIA was over the objection of the Executive Branch and for the purpose of rendering blocked assets attachable." *Levin v. Bank of N.Y. Mellon*, No. 09 CV 5900 (RPP) 2013 U.S. Dist. LEXIS 137399 at *95 n. 9 (S.D.N.Y. Sept. 23, 2013), *rev'd on other grounds by* No. 13-4711, 2015 U.S. App. LEXIS 7881 (2d Cir. May 11, 2015) (emphasis added). *See also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31,58 (D.D.C. 2009) ("[T]he TRIA appears to represent something of a victory for these terrorism victims – whose interests have been most vigorously advanced by members of Congress – over the longstanding objections of the Executive Branch.").

*In re Terrorist Attacks on Sept. 11, 2001*, No. 1:03-md-1570 (S.D.N.Y.) ("MDL"), and the Statement

of Interests in the MDL and *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-MC-

00040-LJV, (W.D.N.Y.). The relevant briefs are attached hereto as Exhibits B and C.

     The analysis can be summed up pretty simply thus: federal courts have jurisdiction over TRIA

executions pursuant to TRIA and federal question jurisdiction;[8] TRIA enforcements are not actions

against a state (they are *in rem* against the blocked assets,[9] and *in personam* against the garnishee only

(seeking to compel turnover of assets of another it holds));[10] actions against a state's assets are not

actions against the state;[11] as TRIA actions are not *in personam* actions against a state, jurisdiction over

the state is not withdrawn by 28 U.S.C. § 1604;[12] but if there were any immunities, TRIA, which was

passed after all the FSIA immunity provisions and mandates that execution shall be had in every case

of a terrorist judgment and "notwithstanding" any provision of law, overrides any immunity

provisions.[13] The application of the statutes involved is straightforward and undeniable.

     As Proposed Intervenor pointed out, the Report and Recommendation cited *Vera v. Republic of

Cuba*, 867 F.3d 310 (2d Cir. 2017) as authority for the necessity of a "valid judgment" against the

---

[8] *See Doe v. ELN*, No. 15-cv-8652, 2017 WL 591193, at *1 (S.D.N.Y. Feb. 14, 2017) (Section 1331 provides jurisdiction over turnover proceedings brought under TRIA), *aff'd sub nom. Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018); *see also Stansell v. FARC*, No. 16-MC-405, 2022 WL 2530359, at *4 (S.D.N.Y. Mar. 29, 2022) (same); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43,50 (2d Cir. 2010) (It is "clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.")
[9] *See Weininger*, 462 F. Supp. 2d at 492.
[10] *See Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 831 (N.Y. 2009); *see also Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46 (S.D.N.Y. 2018).
[11] *See United States v. Assa Co.*, 934 F.3d 185, 189 (2d Cir. 2019).
[12] *Id.*
[13] *See Weininger*, 462 F. Supp. 2d at 498-99; *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) ("*Hausler II*") (*per curiam*); *see also Harrison*, 309 F. Supp. 3d at 49; *Villoldo v. Castro Ruz*, 113 F. Supp. 3d 435, 437 (D. Mass. 2015).

sovereign. In that case, the underlying action was in fact against a sovereign, but the judgment was not valid. All the Court was saying was that before one can execute against assets, one has to hold a *valid* judgment. It was not saying that the defendant has to be a sovereign in every case. TRIA certainly does not say *that*. A misinterpretation of a case does not override TRIA's clear statutory language.

In fact, Proposed Intervenor cannot cite to a case or statute that establishes that an underlying judgment must be against a sovereign to implicate sovereign assets, because no court has ever held as much. The relevant statutes, TRIA and FSIA, clearly do not provide for it. As far as the government statements of interest on the question of immunities, they clearly are not statements of the law, and in fact (unlike in the situation of whether to recognize a nationalization – which is a political question) should not be considered on this interpretation of the law. The law says what it says.[14]

Of course, again, these questions do not present themselves in this matter, because Prominvestbank is only a second tier entity, and thus is not itself considered a foreign state for purposes of sovereign immunity. *See* 28 U.S.C. 1603(b)(2).

**B.    The Court Cannot Find That the Uncompleted, Contested Nationalization Process Defeats the Collection of the Blocked Assets.**

Proposed Intervenor next argues that "PROMINVESTBANK WAS NATIONALIZED BY UKRAINE BEFORE DOE CREDITORS APPLIED FOR A WRIT OF EXECUTION" and that therefore TRIA does not apply. DE 35-3 at 20-22.

---

[14] *See Republic of Altmann v. Austria*, 541 U.S. 677, 701-2 (2004) (rejecting the United States government's interpretation of FSIA when it is a matter of "pure question of statutory construction...well within the province of the Judiciary" and finding that the United States's views "merit no special deference"); *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525,537 (S.D.N.Y. 2010) ("*Hausler I*") (noting that "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there, notwithstanding any contrary interpretation by the Executive Branch"). *See also Republic of Argentina*, 573 U.S. at 134 (sovereign immunity determination is purely a question of statutory application, and courts cannot consider political implications).

But as has been shown, this court simply is not empowered to recognize Ukraine's nationalization of Russian assets. *See supra* Section I.B.

The case relied on by Proposed Intervenor, *Harrison v. Republic of Sudan*, No. 13-cv-3127 (PKC), 2017 U.S. Dist. LEXIS 25675 (S.D.N.Y. Feb. 10, 2017) is very distinct. In that case, Sudan had voluntarily sold the majority of its interests in the blocked entity in 2006. There was no nationalization of assets, just a simple sale. Between 2006 and 2013, the run-of-the mill transfer was not contested.[15] In 2013, terrorism judgment creditors initiated a TRIA execution. *Id.* at *6. In those circumstances, there was no reason for the district court not to recognize the transfer. But the fact that Proposed Intervenor is asking this Court to recognize the nationalization process in Ukraine, which this Court is not authorized to do, compels a different result here. (It also precludes the Court from conferring a sovereign immunity status on Prominvestbank, the Proposed Intervenor's final argument. DE 35-3 at 22.)

No, the case law concerning nationalizations is clear and unequivocal. A district court simply cannot get out in front of the Executive Branch on a nationalization determination. And, workarounds such as the one proposed by Proposed Intervenor are not allowed. An entity cannot "obtain the same result through the back door – by confiscating [Prominvestbank] and then collecting its extraterritorial debts. United States policy demands our Court refuse that convolution." *Bandes*, 852 F.2d at. 670. The same is true for the claim that the liquidation began on February 25, 2022. Aside from the fact that there is no record evidence that control actually changed hands that day, the liquidation *is* the nationalization, and this Court is not empowered to recognize it to work around the ban on recognizing the nationalization.

---

[15] Here, the parent corporation VEB, not only does not recognize the claimed transfer of ownership, there is every indication that it opposes it, and good indication that it will prevail. *See* FONSECA SUPP.

Finally, even if this Court were empowered to recognize a nationalization, the supporting

declaration and materials attached fail to establish that the actual transfer of the majority of shares of

Prominvestbank had been effectuated by September 20, 2022, the date that Doe Creditors filed the

instant action. It describes that there was a decision on May 11, 2022 "compelling the seizure of …

VEB's 99.77% ownership interest in Prominvestbank". DE 35-4 at 5, par. 10. It goes on to say that the

May 11 decision tasked "the Deposit Guarantee Fund for Individuals … to ensure the enforcement of

seizure … within ten days of the date of publication …" of the president's decree. It attests that the

deadline was not met. Rather, "[a]lthough the seizure of assets was supposed to be effectuated within

10 days of the May 11 decision … due to administrative and/or logistical issues … the seizure of assets

did not take place at that time." *Id.* at par. 11. It goes on that "Instead, on September 13, 2022, the

Cabinet of Ministers of Ukraine issued Order 815-r directing the seizure of the stock of

Prominvestbank by means of transferring VEB's 99.77% ownership interest to the National Investment

Fund of Ukraine, a Ukrainian state enterprise (the 'September 13 Order')." *Id.* at 5-6.[16] While the

September 13 order *directed* the seizure of stock by means of transferring VEB's ownership interest,

there is no evidence that share ownership was actually transferred in the four business days prior to the

initiation of this action. Rather, the Proposed Intervenor's only evidence of actual transfer is a

December 15, 2022, Statement of the Securities Account Status put forth as evidence that as of that

date, "the National Investment Fund of Ukraine owns 99.77% of the ownership interests of

Prominvestbank." *Id.* at 56, par 13.[17] And, of course, the international legal system has not yet weighed

---

[16] As shown, Proposed Intervenor is even one more step removed – it is not the successor in interest to
Prominvestbank or Prominvestbank's owner, but a mere creditor of the National Investment Fund.
[17] This passage sheds light on Proposed Intervenor's charge that Doe Creditors' supporting declaration
"omits critical facts …" and that "[c]hief among those facts is that in May 2022, it was publicly
reported that Prominvestbank *had been* nationalized." DE 35-3 at 2 (emphasis added). In fact, the
article it points to merely stated the government "has *decided to* nationalize the corporate rights of the
Ukrainian "daughters" of the Russian Sberbank and Prominvestbank" and that it would do so within 10

in, and may undo the nationalization when it does. While Russia will hopefully be made to pay reparations to Ukraine, it will likely not be through recognizing nationalizations. This record simply is not sufficient for this Court to make the finding that Prominvestbank was nationalized by Ukraine before Doe Creditors filed their action, if, in fact, the Court were empowered to effectuate a nationalization.

## CONCLUSION

The legal consequence of: 1) Proposed Intervenor's failure to have Article III standing and the extremely remote and contingent nature of Proposed Intervenor's rights; 2) the fact that these assets were blocked outside of Ukraine precluding Proposed Intervenor from obtaining an interest that would give it standing; 3) the fact that the transfer necessary to give it any interest is forbidden by U.S. law; and, perhaps most significantly; 4) the fact that this court cannot recognize a nationalization, is that Proposed Intervenor cannot intervene in this matter. The practical consequence is that this court is not choosing between the Judgment Creditors or Proposed Intervenor. It is choosing between giving effect to TRIA by compensating terror victims or consigning the assets to remain blocked indefinitely. Between those two outcomes, the choice is clear and is controlled by TRIA's mandate and purpose – blocked assets must and should be used to compensate terror victims, not kept on hand indefinitely for some other, hoped-for disposition.

Dated: January 27, 2023

Respectfully submitted,

s/*Orlando do Campo*
Orlando do Campo
do Campo & Thornton, P.A.

---

days. DE 35-11 (emphasis added). It did not say that it had done so. The declaration shows it still had not done so by September 13, 2022. The May 2022 article was irrelevant because in fact nothing was transferred in May 2022.

150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
od@dandtlaw.com
Bar Roll #703891

John Thornton
(Admitted *pro hac vice*)
do Campo & Thornton, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
jt@dandtlaw.com

Daniela Jaramillo
(Admitted *pro hac vice*)
do Campo & Thornton, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
dj@dandtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 27, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ *Orlando do Campo*
Orlando do Campo

26