# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | Case No. 03-md-1570 (GBD)(SN) |
| FIONA HAVLISH, individually and on behalf of the ESTATE OF DONALD G. HAVLISH, JR., Deceased, *et al.*, <br><br> Creditors, <br><br> v. <br><br> THE TALIBAN, *et al.*, <br><br> Debtors, <br><br> FEDERAL RESERVE BANK OF NEW YORK, <br><br> Garnishee. | Case No. 03-cv-9848 (GBD)(SN) |
| JOHN DOES 1 THROUGH 7, <br><br> Creditors, <br><br> v. <br><br> THE TALIBAN, *et al.*, <br><br> Debtors, <br><br> FEDERAL RESERVE BANK OF NEW YORK, <br><br> Garnishee. | Case No. 20-mc-0740 (GBD)(SN) |

|  |  |
|---|---|
| FEDERAL INSURANCE CO., *et al.*, | Case No. 03-cv-6978 (GBD)(SN) |
|     Creditors, | |
| v. | |
| THE TALIBAN, *et al.*, | |
|     Debtors, | |
| FEDERAL RESERVE BANK OF NEW YORK, | |
|     Garnishee. | |
| ESTATE OF GEORGE E. SMITH, *et al.*, | Case No. 01-cv-10132 (GBD)(SN) |
|     Creditors, | |
| v. | |
| THE TALIBAN, *et al.*, | |
|     Debtors, | |
| FEDERAL RESERVE BANK OF NEW YORK, | |
|     Garnishee. | |

**JOINT CREDITORS' MEMORANDUM OF LAW IN RESPONSE TO THE NOTICE OF SUPPLEMENTAL AUTHORITY SUBMITTED BY *AMICUS CURIAE* NASEER FAIQ AND IN FURTHER SUPPORT OF THEIR OBJECTIONS TO MAGISTRATE JUDGE NETBURN'S AUGUST 26, 2022 REPORT & RECOMMENDATION**

NOVEMBER 10, 2022

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 3

I.   This Court Possesses Subject Matter Jurisdiction ................................................. 3

II.   The FSIA Does Not Limit This Court's Subject Matter Jurisdiction Over The Turnover Proceedings .............................................................................................................. 5

    A.  FSIA Section 1604 Does Not Apply to These Proceedings ............................................. 6

    B.  The *Caballero* Statement of Interest and the Report Provide No Valid Reason to Conclude That Section 1604 Applies .............................................. 10

    C.  Even If Section 1604 Did Apply to the Turnover Proceedings, TRIA Still Provides Subject Matter Jurisdiction .................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ...................................................................................7, 8, 11

*Byrd v. Corporacion Forestal Y Indust. de Olancho, S.A.*,
    974 F. Supp. 2d 264 (S.D.N.Y. 2013), *aff'd sub nom. Byrd v. Republic of
    Hond.*, 613 Fed. App'x 31 (2d Cir. 2015) ...........................................................9, 11

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    No. 1:20-mc-00040 (W.D.N.Y Sept. 20, 2022) ............................................ *passim*

*Cortes v. Juquila Mexican Cuisine Corp.*,
    2022 WL 970726 (E.D.N.Y. Mar. 31, 2022) ...............................................................4

*Doe v. Ejercito De Liberacion Nacional*,
    No. 15-cv-8652-LTS, 2017 WL 591193 (S.D.N.Y. Feb. 14, 2017), *aff'd sub
    nom. Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018)...................4

*Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*,
    20 F.2d 295 (2d Cir. 1927) .......................................................................................17

*Epperson v. Ent. Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001) .................................................................4, 5, 16, 17, 18

*FG Hemisphere Assocs. v. Republique du Congo*,
    455 F.3d 575 (5th Cir. 2006) ...........................................................................3, 9, 11

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ....................................................................................................8

*Harrison v. Republic of Sudan*,
    309 F. Supp. 3d 46 (S.D.N.Y. 2018) ..................................................................9, 11

*Havlish v. 650 Fifth Ave. Co.*,
    934 F.3d 174 (2d Cir. 2019) ....................................................................................18

*In re B-727 Aircraft Serial No. 21010*,
    272 F.3d 264 (5th Cir. 2001) .....................................................................................8

*Kim v. Ji Sung Yoo*,
    776 F. App'x 16 (2d Cir. 2019) ..........................................................................4, 17

*Kirschenbaum v. 650 Fifth Ave. and Related Props.*,
  830 F.3d 107 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018)...........................................................*passim*

*Koehler v. Bank of Berm., Ltd.*,
  911 N.E.2d 825 (N.Y. 2009)........................................................................7

*Levinson v. Kuwait Finance House (Malaysia) Berhad*,
  44 F.4th 91 (2d Cir. 2022) ........................................................................16

*Peacock v. Thomas*,
  516 U.S. 349 (1996)........................................................................5, 16, 17

*Peterson v. Islamic Republic of Iran*,
  876 F.3d 63 (2d Cir. 2017), *vacated sub nom. Bank Markazi v. Peterson*, 140 S. Ct. 813 (2020), *reinstated in relevant part*, 963 F.3d 192 (2d Cir. 2020).................8, 9, 11

*Republic of Arg. v. NML Capital, Ltd.*,
  573 U.S. 134 (2014)........................................................................19

*Rubin v. Islamic Republic of Iran*,
  138 S. Ct. 816 (2018)........................................................................3, 6

*Samantar v. Yousuf*,
  560 U.S. 305 (2010)........................................................................11, 12

*Shaffer v. Heitner*,
  433 U.S. 186 (1977)........................................................................8

*Stansell v. FARC*,
  2022 WL 2530359 (S.D.N.Y. Mar. 29, 2022) ........................................4

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,
  783 F.3d 607 (7th Cir. 2015) ........................................................................20

*United States v. Assa Co.*,
  934 F.3d 185 (2d Cir. 2019)........................................................................*passim*

*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*,
  946 F. 3d 120 (2d Cir. 2019)........................................................................16

*Vera v. Republic of Cuba*,
  867 F.3d 310 (2d Cir. 2017)........................................................................3, 16

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983)........................................................................11, 12

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ............................................................ 3, 5

*Weinstein v. Islamic Republic of Iran*,
    609 F.3d 43 (2d Cir. 2010) .................................................................. *passim*

## Statutes and Rules

Fed. R. Civ. P. Rule 69 ........................................................................................ 4

18 U.S.C. § 2333 ................................................................................................. 4

28 U.S.C. § 1330 ............................................................................... 7, 8, 12, 13

28 U.S.C. § 1331 ................................................................................................. 3

28 U.S.C. § 1603 ................................................................................................. 7

28 U.S.C. § 1604 ...................................................................................... *passim*

28 U.S.C. § 1605 ........................................................................................ 1, 2, 6

28 U.S.C. § 1606 ............................................................................................... 19

Terrorism Risk Insurance Act of 2002 § 201,
    Pub. L. No. 107–297, 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610
    note) ........................................................................................................ *passim*

## Other Authorities

*Restatement (Fourth) of Foreign Relations Law of the United States* (2018) ................................ 6

*Restatement (Second) of Judgments* (2022) .............................................................. 4

Judgment Creditors Federal Insurance Company *et al.* (the "Federal Insurance Creditors"),

Fiona Havlish *et al.* (the "Havlish Creditors"), John Doe *et al.* (the "Doe Creditors"), and Estate

of Smith *et al.* (the "Smith Creditors") (collectively, the "Joint Creditors"), by and through their

undersigned counsel, respectfully submit this memorandum of law in response to the Notice of

Supplemental Authority submitted by *amicus curiae* Nasser A. Faiq[1] (Dkt. 8645), and in further

support of their objections to Magistrate Judge Sarah Netburn's August 26, 2022 Report &

Recommendation (the "Report," Dkt. 8463) concerning their Motion for Turnover of Assets from

Garnishee the Federal Reserve Bank of New York ("FRBNY"). The Joint Creditors' objections

are incorporated herein by reference.

The Joint Creditors file this brief principally to address arguments related to the Foreign

Sovereign Immunities Act ("FSIA") and the Terrorism Risk Insurance Act ("TRIA")[2] that concern

subject matter jurisdiction and are contained in the Statement of Interest recently filed by the

Executive Branch in *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 1:20-mc-

00040 (W.D.N.Y Sept. 20, 2022) ("*Caballero* Statement"), and that are also reflected in the

Report. The *Caballero* Statement was submitted to this docket via *amicus curiae* Faiq's October

17, 2022 Notice of Supplemental Authority Regarding Report & Recommendation (Dkt. 8645).

The Notice of Supplemental Authority argues that the *Caballero* Statement's view "that TRIA

does not provide an independent basis for subject-matter jurisdiction in a claim against a foreign

---

[1] Mr. Faiq, who filed a brief on his own behalf, described himself as the Chargé d'Affaires of the Islamic Republic of Afghanistan. Dkt. 7932-1 at 1. The Havlish Creditors previously raised concerns about his participation as *amicus curiae* in part due to conflicting official pronouncements concerning the legitimacy of Mr. Faiq's service in that role. Dkt. 7939.

[2] Section 201 of TRIA, Pub. L. No. 107–297, 116 Stat. 2322, 2337, provides: "Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable."

1

state, or its agencies and instrumentalities, that is not designated as a state sponsor of terrorism," *see Caballero* Statement at 9, provides support for the Report's conclusion at pages 11–27 that the Court lacks subject matter jurisdiction over the turnover motions that seek property of Da Afghanistan Bank ("DAB") at the FRBNY. This assertion is incorrect because the *Caballero* Statement's analysis is unsound, as are the aspects of the Report that mirror that analysis.

The Joint Creditors are responding to the arguments in the *Caballero* Statement because the Statement of Interest the Executive Branch filed in *this* case months earlier, Dkt. 7661 ("*DAB Statement*"), did *not* take the position that an independent basis for subject matter jurisdiction is required for this turnover action. Nor did the Executive Branch argue that the sections of the FSIA that address immunity for *claims* against foreign states, 28 U.S.C. §§ 1604 and 1605, are relevant to this turnover proceeding. As a result of the Executive's silence on those issues and the lack of full adversarial briefing in this case, the Report's conclusion that subject matter jurisdiction is lacking was not informed by thorough analysis or complete treatment of the relevant authorities.

The *Caballero* Statement takes a U-turn, arguing for the first time that 28 U.S.C. § 1604 applies and thus that an exception to jurisdictional immunity must be shown in a turnover action such as this one, that is not against a foreign state. As demonstrated below, the *Caballero* Statement's analysis is fundamentally flawed. Section 1604 simply does not apply in this case, and imposes no limits on the Court's subject matter jurisdiction here. And even if this case fell within Section 1604's ambit, TRIA would nonetheless overcome that immunity and provide an independent basis for subject matter jurisdiction. *See infra* pp. 13-20.

2

**ARGUMENT**

## I.    This Court Possesses Subject Matter Jurisdiction.

This Court clearly possesses subject matter jurisdiction over these proceedings seeking turnover of the DAB assets held by the FRBNY.  Federal courts "may not adjudicate a case or controversy unless authorized by both Article III of the United States Constitution and a federal jurisdictional statute."  *United States v. Assa Co.*, 934 F.3d 185, 188 (2d Cir. 2019).  Here, the Court is adjudicating claims against garnishee the FRBNY that seek to compel its officials to release the DAB assets in their custody.  Federal question jurisdiction and this Court's inherent Article III powers support these claims in two respects.  *See* 28 U.S.C. § 1331.

*First*, "[s]ection 201(a) of the TRIA confers an independent basis for subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an agency or instrumentality of the terrorist party, even if the agency or instrumentality is not itself named in the judgment."  *Kirschenbaum v. 650 Fifth Ave. and Related Props.*, 830 F.3d 107, 132 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018); *see Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) (same, focusing on terrorist party as judgment debtor); *Vera v. Republic of Cuba*, 867 F.3d 310, 321 (2d Cir. 2017) ("The TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property of a foreign state" where TRIA's requirements are satisfied); *see also FG Hemisphere Assocs. v. Republique du Congo*, 455 F.3d 575, 595 (5th Cir. 2006) ("A finding that an exception to executional immunity applies is a finding that the court has jurisdiction over the garnishment action."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 478, 489 (S.D.N.Y. 2006).  The turnover proceedings are, of course, just such a "post-judgment execution and attachment proceeding[]."  *Kirschenbaum*, 830 F.3d at 132.  As other courts have elaborated, the existence of subject matter jurisdiction reflects the simple operation of

the federal question jurisdictional statute when TRIA, a federal statute, is applied.  *See Doe v. Ejercito De Liberacion Nacional*, No. 15-cv-8652-LTS, 2017 WL 591193, at *1 (S.D.N.Y. Feb. 14, 2017), *aff'd sub nom. Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152 (2d Cir. 2018); *Stansell v. FARC*, No. 16-MC-405-LGS-SN, 2022 WL 2530359, at *4 (S.D.N.Y. Mar. 29, 2022) (Netburn, M.J.).

*Second*, this Court has ancillary jurisdiction to enforce its own judgments entered against the Taliban and provide relief under the Anti-Terrorism Act, 18 U.S.C. § 2333(a), and other authorities. This Court undisputedly possessed federal question jurisdiction to issue those judgments.  As recognized by the *Restatement (Second) of Judgments*, courts have ancillary or "Attachment Jurisdiction" to enforce their judgments by attaching or executing on assets, including assets held by third parties.  *Id.* § 8.  This "Attachment Jurisdiction" is "based on the theory that a state has comprehensive authority over all property within its territorial limits and may seize such property for payment of claims asserted in actions in its courts."  *Id.* § 8, cmt. a.

Because ancillary jurisdiction is an inherent aspect of federal courts' authority to issue and enforce judgments, a further, independent basis for subject matter jurisdiction is not required. *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 104 (2d Cir. 2001) ("an action to collect a judgment . . . does not require an independent jurisdictional basis"); *Kim v. Ji Sung Yoo*, 776 F. App'x 16, 20 (2d Cir. 2019) ("[a]n ancillary action to collect a judgment does not require an independent basis for jurisdiction"); *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-cv-3942, 2022 WL 970726 at *8 (E.D.N.Y. Mar. 31, 2022) ("[T]he authorities are unanimous that a federal court maintains ancillary jurisdiction to enforce its own judgments, and that, under Rule 69, Fed. R. Civ. P., no independent jurisdictional basis is necessary to commence an enforcement proceeding against a garnishee not a party to the original suit."). This principle has been applied in actions to

4

recover the assets of terrorist parties under TRIA. *See Weininger*, 462 F. Supp. 2d at 489–90. As discussed below, the limits on ancillary jurisdiction that the Executive Branch claims to find in *Peacock v. Thomas*, 516 U.S. 349 (1996), and *Epperson v. Ent. Express, Inc.* are inapplicable to these proceedings that involve the enforcement of a judgment, and those cases indeed confirm both that ancillary jurisdiction exists here and that FSIA section 1604 provides no limit on this Court's jurisdiction. *See infra* pp. 16-17.

## II.    The FSIA Does Not Limit This Court's Subject Matter Jurisdiction Over The Turnover Proceedings.

The *Caballero* Statement and Report claim that the FSIA limits this Court's subject matter jurisdiction over these proceedings. No basis exists for this argument, which runs against the holdings of a long series of Second Circuit decisions. The immunity argument set out in the *Caballero* Statement and Report rests exclusively on the applicability of FSIA Section 1604 to these proceedings. However, Section 1604, which provides immunity only against *in personam* claims against foreign state defendants, does not apply here—where the claims are against the garnishee, the FRBNY, and not DAB, are directed to the *property* held in the name of DAB (which property cannot be part of the "foreign state" for purposes of Section 1604), are not *in personam* claims against DAB or any foreign state, and require no assertion of jurisdiction over DAB or any foreign state. *See infra* pp. 7-9. And while FSIA Section 1609 would otherwise apply because the turnover proceedings arguably seek to enforce a judgment to secure property of an agency of a foreign state, the *Caballero* Statement and Report concede that TRIA overcomes that immunity from execution. *See infra* p. 13. FSIA immunity thus does not limit this Court's otherwise existing subject matter jurisdiction over these proceedings.

## A.     FSIA Section 1604 Does Not Apply to These Proceedings.

FSIA Section 1604 provides foreign states and their agencies and instrumentalities with immunity from "the jurisdiction of the courts of the United States and of the States," unless an exception in 28 U.S.C. § 1605 applies.  28 U.S.C. § 1604.  This "jurisdictional immunity" grants foreign states "immunity from suit in the United States," *i.e.*, immunity from being subject to "a claim" in a United States court.  *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 820, 822 (2018); *see also Restatement (Fourth) of Foreign Relations Law of the United States* § 464, cmt. a (2018) (describing foreign states' "jurisdictional immunity" as "immunity from adjudicative jurisdiction").  The turnover proceedings at issue here present no "claim" against a "foreign state" as those terms are defined by the FSIA and the Second Circuit.  Indeed, this Court need not assert "adjudicative jurisdiction" over DAB at all to enter judgment against the FRBNY as the party holding DAB's property.  As a result, FSIA Section 1604 simply is not implicated in this case and thus, in determining whether subject matter jurisdiction exists, there is no need to address whether TRIA displaces some otherwise applicable immunity arising from Section 1604 or to find an exception to immunity under FSIA Section 1605.

There is no "claim" against any foreign state that triggers Section 1604's protections, nor any need for this Court to establish jurisdiction over such a claim or over DAB.  Even though DAB is arguably an agency of a foreign state, its property is not part of any foreign state.  *See supra* p. 5.  The turnover proceedings are not directed against DAB and present no *in personam* or other claim against it.  DAB is not a defendant in the proceedings, and the proceedings do not seek to establish any general liability on its part or even secure the entry of any judgment against DAB.  Instead, the turnover proceedings are actions against the FRBNY as garnishee, seeking disposition of assets the FRBNY holds in this District. *See* Joint Creditors' Objections to the Report. In such proceedings, New York law confirms that the Court does not need to exercise jurisdiction over

any entity other than the FRBNY. *See Koehler v. Bank of Berm., Ltd*., 911 N.E.2d 825, 830 (N.Y. 2009).

In two independent and dispositive respects, *United States v. Assa* and related Second Circuit cases establish why the turnover proceedings are not claims against "a foreign state" that fall within FSIA Section 1604's scope. *First*, the proceedings do not constitute the requisite "suit against a foreign state." *Assa*, 934 F.3d at 189. They are instead proceedings against the FRBNY as garnishee to secure DAB's property. The court in *Assa* directly considered and expressly rejected the argument that underpins the *Caballero* Statement and Report's position: that "a suit against a foreign state's property is a suit against a foreign state." *Id.* Instead, the Second Circuit held, 28 U.S.C. § 1603(a)'s "definition of foreign state" is limited to "actual foreign states, their 'political subdivision[s],' and their 'agenc[ies] or instrumentalit[ies].'" *Id.* (quoting statute). "Property belonging to a foreign state does not fit any of these categories," and a suit directed against such property, as here, "is therefore not a suit against a foreign state" that triggers Section 1604's immunity provision. *Id.* This result, the Court confirmed, is consistent with the Supreme Court's statement, in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989), that "the FSIA [is] the sole basis for obtaining jurisdiction over a foreign state in our courts," because "foreign state" for that purpose does not include the state's property, and the Supreme Court "was not asked to decide, and did not decide, whether the FSIA is the sole basis— or any basis at all—for obtaining jurisdiction over a foreign state's *property*." *Assa,* 934 F.3d at 189 (emphasis in original).

*Second*, Section 1604's immunity presumptively applies only when jurisdiction can be conferred by 28 U.S.C. § 1330(a), which provides district courts with jurisdiction over any civil action against "a foreign state" as to "any claim for relief in personam." The turnover proceedings

are not such claims. *Assa*, 934 F.3d at 188, establishes that Section 1330 is the "gateway into the FSIA's immunity regime" and determines the applicability of Section 1604 and thus the need for any exceptions to it. Likewise, as the Supreme Court has held, Section 1330's jurisdictional provision "work[s] in tandem" with § 1604 and its exceptions. *Amerada Hess*, 488 U.S. at 434 ("§ 1604 bars federal and state courts from exercising jurisdiction when a foreign state *is* entitled to immunity, and § 1330(a) confers jurisdiction on district courts to hear suits brought by United States citizens and by aliens when a foreign state is *not* entitled to immunity.") (emphasis in original). But Section 1330 is limited to suits against "foreign state[s]," and operates solely to "claim[s] for relief in personam." 28 U.S.C. § 1330(a). For these reasons and relying on the language of § 1330(a), the Second Circuit describes Section 1604 as imposing a "limit on *in personam* jurisdiction." *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 88 (2d Cir. 2017), *vacated sub nom. Bank Markazi v. Peterson*, 140 S. Ct. 813 (2020), *reinstated in relevant part*, 963 F.3d 192, 196 (2d Cir. 2020); *see Assa*, 934 F.3d at 190 & n.5 (endorsing Fifth Circuit conclusion that the "grant of jurisdiction found in 28 U.S.C. § 1330 … confers jurisdiction only over 'any claim for relief *in personam*' that is against a foreign state") (quoting *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001)).

The turnover proceedings are clearly not *in personam* claims against DAB and thus not within the scope of either 28 U.S.C. §§ 1330(a) or 1604. An "*in personam*" claim is one that seeks to "impose a personal obligation on the defendant in favor of the plaintiff" and is based on the court's "authority over the defendant's person." *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977); *see Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) ("A judgment *in personam* imposes a personal liability or obligation on one person in favor of another."). The turnover proceedings will not result in any judgment against DAB, much less one that could be used in execution proceedings

generally to satisfy an obligation DAB owes to plaintiffs, and indeed DAB would not assume any personal obligation as a result of the proceedings. Instead, as in any garnishment proceeding, the Court would impose an obligation on a third party (here, the FRBNY) to turn over funds to plaintiffs, and no jurisdiction need be assumed over DAB to impose or carry out that obligation. *See supra* p. 6.

For these and related reasons, additional decisions of the Second Circuit and its district courts conclude that FSIA Section 1604 simply does not apply to limit proceedings that seek to execute a judgment to secure foreign state property, as through garnishment or equivalent actions to secure turnover of funds. *See, e.g., Assa,* 934 F.3d at 188–90; *Peterson*, 876 F.3d at 91 (§ 1604 is "no impediment to an order" directing a garnishee to turn over state assets to a judgment creditor); *Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46, 50 (S.D.N.Y. 2018) (holding in a proceeding to enforce a terrorism judgment against Sudan that "the Court did not need jurisdiction over [Sudan's] Central Bank to order [the New York bank holding assets on behalf of the Central Bank] to turnover the [assets]" because "[u]nder New York law, jurisdiction over the judgment debtor is not necessary to order the turnover of assets held by a third party"); *Byrd v. Corporacion Forestal Y Indust. de Olancho, S.A.*, 974 F. Supp. 2d 264, 268 (S.D.N.Y. 2013), *aff'd sub nom. Byrd v. Republic of Hond.*, 613 Fed. App'x 31 (2d Cir. 2015) (rejecting argument that an exception to FSIA jurisdiction immunity is required in a turnover action because the plaintiffs were not seeking to join the foreign state as a party; noting that the argument "mistakenly conflates jurisdiction and execution immunity"); *see also FG Hemisphere*, 455 F.3d at 595 ("A finding that an exception to executional immunity applies is a finding that the court has jurisdiction over the garnishment action."); *cf. Caballero* Statement at 23 (analogizing turnover action to garnishment proceeding).

9

## B.    The *Caballero* Statement of Interest and the Report Provide No Valid Reason to Conclude That Section 1604 Applies.

The *Caballero* Statement and Report fail to address or grapple with nearly all of the arguments and cases set out above establishing that FSIA Section 1604 does not apply in this case. Neither cites a single case that reaches the result they suggest.  Both provide almost no rationale for their crucial assumption that Section 1604 applies here, a point that underpins nearly all of their arguments.  Indeed, the United States in its *Statement of Interest* before this Court did not even raise the possibility that the turnover proceedings have to fit within an exception to the claims immunity of Section 1604 (in addition to the execution immunity of Section 1609).  And the Report was issued without full briefing on this crucial issue.

The *Caballero* Statement and the Report do invoke the Second Circuit's statement that FSIA claim immunity (Section 1604) and FSIA execution immunity (Section 1609) "operate independently."  Report at 15 (quoting *Walters*, 651 F.3d at 286); *Caballero* Statement at 10 (same).  This statement is true, but does not lead to the conclusion the *Caballero* Statement urges and the Report reaches.  The Report asserts, and the *Caballero* Statement assumes, that the dual nature of the FSIA immunities means that the turnover plaintiffs "must overcome both immunities."  Report at 15.  But, because the two immunities "operate independently," the conclusion that both immunities must be "overcome" follows only in situations where both, "independent" types of immunity are triggered in the first place.  For example, a party pursuing an *in personam* claim against a foreign state defendant, who also then seeks to enforce the resulting judgment against the property of the foreign state, must satisfy exceptions to both types of immunities.  Conversely, a party seeking an *in personam* judgment against a foreign state defendant, but who is not seeking to execute a judgment against the foreign state's property, need only satisfy an exception to Section 1604.  By the same token, a party that already has secured a

10

valid judgment, and especially a judgment against a party other than a foreign state (as here), need only satisfy an exception to Section 1609.  *See Peterson,* 876 F.3d at 91 (§ 1604 is "no impediment to an order" directing a garnishee to turn over foreign state assets to a judgment creditor); *Harrison*, 309 F. Supp. 3d at 50; *Byrd*, 974 F. Supp. 2d at 268; *see also FG Hemisphere*, 455 F.3d at 595 ("A finding that an exception to executional immunity applies is a finding that the court has jurisdiction over the garnishment action."); *supra* p. 9.  That is, the provisions "operate independently."  Here, that means that Section 1604 need not be satisfied and does not apply, even if Section 1609 may be relevant, because each provision "operates independently."

Both the *Caballero* Statement and the Report also invoke the language in *Amerada Hess* that "the FSIA [is] the sole basis for obtaining jurisdiction over a foreign state in [United States] courts."  *Amerada Hess*, 488 U.S. at 434; *see* Report at 13; *Caballero* Statement at 10.  Likewise, the Report quotes the Supreme Court's statement that the FSIA "must be applied by the District Courts in every action against a foreign sovereign," Report at 13 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983)), and the *Caballero* Statement quotes the Supreme Court's statement that "if a defendant is a 'foreign state' within the meaning [of] the Act, then the defendant is immune from jurisdiction."  *Caballero* Statement at 10 (quoting *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010)).

But the instant action is not an "action against a foreign sovereign," and none of these established FSIA principles supports applying Section 1604 in this case or more broadly in cases involving foreign state assets.  Indeed, as shown above, *Assa* directly addressed the *Amerada Hess* language and explained that it applies only to *in personam* suits against foreign state defendants. *Assa*, 934 F.3d at 188–89; *supra* pp. 7-8.  Further, the *Amerada Hess* statement does not apply in *Assa* because it was a case concerning a foreign state's property, which does not fall within the

11

FSIA's definition of a "foreign state." *Assa*, 934 F.3d at 188–89. That is, *Assa* and the reasoning reflected in it and other Second Circuit decisions is flatly inconsistent with the Report's approach. Indeed, *Samantar* itself provides a useful illustration of Section 1604's limited applicability, because state officials were likewise not part of the "foreign state" definition that triggers the section's applicability. *See Samantar*, 560 U.S. at 313-319.

By their terms, these general statements invoked by the *Caballero* Statement and the Report are limited to "action[s] against a foreign sovereign," Report at 13 (quoting *Verlinden*, 461 U.S. at 493), and limited to circumstances where "a defendant is a 'foreign state' within the meaning [of] the Act." *Caballero* Statement at 10 (quoting *Samantar*, 560 U.S. at 313). The *Caballero* Statement even invokes the relevance (and limitations) imposed by 28 U.S.C. § 1330(a). *Id.* All these limitations buttress plaintiffs' argument, and are fatal to the reasoning of the *Caballero* Statement and the Report. These turnover proceedings do not name DAB as a defendant, are directed against property rather than seeking a judgment against DAB, and are not *in personam* claims against a foreign state defendant. *See supra* pp. 5-6.

The *Caballero* Statement and the Report briefly address *Assa* but do so in a manner that confirms that Section 1604 is no bar to suit here. The *Caballero* Statement asserts that *Assa* "distinguished civil forfeiture *in rem* actions brought by the United States from '*quasi in rem* suits meant to enforce *in personam* judgments against a foreign state.'" *Caballero* Statement at 24 (quoting *Assa*, 934 F.3d at 189). Even if applicable here, that distinction would be helpful to the Joint Creditors because this TRIA action *is* an *in rem* proceeding and is not a quasi *in rem* action meant to enforce an *in personam* judgment against a foreign state. Even more importantly, the referenced discussion in *Assa* addressed and concerned only FSIA Section 1609 and "immunity in actions involving a foreign state's property." *Assa*, 934 F.3d at 190. That discussion had nothing

12

to do with Section 1604.  The court had already addressed Section 1604's immunity and found it inapplicable (confirming that both types of immunity need not be satisfied).   In the quoted statement, the court addressed only whether the proceeding before it "involve[d] the 'attachment arrest and execution' forbidden by § 1609" in the absence of an exception.  *Id.*  Here, the turnover proceedings are a type of execution effort directed against property that Section 1609 normally would govern, but for the operation of TRIA (which clearly overcomes Section 1609 immunity).  Likewise, the Report offers no response to *Assa*'s reasoning regarding the limited scope of Section 1604 and 28 U.S.C. § 1330(a), and merely asserts that it should be confined to its facts.  The Report claims that *Assa* created "[a] narrow exception … for *in rem* actions" and even quotes the portion of the *Assa* decision that shows that the Second Circuit was in that respect addressing only immunity associated with "'a foreign state's property.'"  Report at 13 n.7 (quoting *Assa*, 934 F.3d at 190).  The Report offers no reason why *Assa*'s reasoning regarding the limits on Section 1604's immunity, recounted above, does not apply directly to this case.

C.   **Even If Section 1604 Did Apply to the Turnover Proceedings, TRIA Still Provides Subject Matter Jurisdiction.**

The United States (in its Statement of Interest in this case) and the Report concede that TRIA provides an exception to the FSIA Section 1609 immunity that presumptively applies to proceedings against a foreign state's property.  Report at 12–13 (TRIA "defeats the immunity from execution that the property of sovereign states and their instrumentalities normally enjoy"); *DAB* Statement at 10 ("When its conditions are satisfied, TRIA section 201(a) permits attachment of property even if attachment might otherwise be precluded by the FSIA.").  Based on their mistaken assumption that the turnover proceedings must also fall within an exception to Section 1604's presumptive immunity with respect to *in personam* claims directed against a foreign state defendant, both focus principally on establishing that TRIA does not provide an exception to that

13

Section 1604 immunity.  Report at 12–27; *Caballero* Statement at 9–23; *id.* at 11 (the "dispositive question" is whether TRIA "waives *jurisdictional immunity* for foreign states") (emphasis in original).  But because Section 1604 does not apply to these proceedings at all, for the reasons set out above, these arguments are beside the point and do not establish any lack of jurisdiction because there is no need, based on TRIA or otherwise, for the Court to find any exception to Section 1604's claim immunity.

However, even if Section 1604 immunity somehow did apply to a proceeding that involves no foreign state defendant, addresses property that is not itself a "foreign state," is not an *in personam* action against a foreign state, and does not involve any need to secure jurisdiction over a foreign state, TRIA would still provide subject matter jurisdiction and would not have the limited effect that the *Caballero* Statement and the Report claim.  That is so because "Section 201(a) of the TRIA confers an independent basis for subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an agency or instrumentality of the terrorist party, even if the agency or instrumentality is not itself named in the judgment."  *Kirschenbaum,* 830 F.3d at 132; *see Weinstein*, 609 F.3d at 50 (same).  On this point, Joint Creditors respectfully refer the court to their objections and briefly address certain flaws in the *Caballero* Statement and reasoning of the Report that reflect errors in the treatment of the FSIA's immunities similar to those noted above.

1. For example, the *Caballero* Statement provides no sound basis to limit *Weinstein*'s (and *Kirschenbaum*'s) holding that it is "clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment." *Weinstein*, 609 F.3d at 50.  The *Caballero*

Statement contends that *Weinstein* "need not and should not be read to address attachment proceedings against a foreign state (or agency or instrumentality) *absent* a predicate FSIA judgment against the foreign state in question." *Caballero* Statement at 15 (emphasis in original). It reasons that in such proceedings for the enforcement of judgments against foreign states—unlike in cases of the enforcement of a judgment in favor of a non-state party—the judgment reflects a finding that Section 1604 immunity has been overcome. *Id.*; *see also* Report at 16–17.

But this is no reason at all to adopt a limit that the *Weinstein* court had no occasion to address. First, Section 1604 clearly does not apply to the proceedings that yielded the judgment against the Taliban because, as all agree, the Taliban was not then and is not now a foreign state. So it is a mystery why Section 1604 or the satisfaction of exceptions to Section 1604 favors the *Caballero* Statement's proposed limit on *Weinstein*. Second, and as importantly, TRIA language emphasized in *Weinstein* as the basis of its holding applies equally to terrorism judgments against non-state actors (such as the Taliban) as to judgments against terrorist foreign states. *See* TRIA § 201, 116 Stat. at 2337 (TRIA applies "in every case in which a person has obtained a judgment against a *terrorist party* on a claim based upon an act of terrorism") (emphasis added)). Indeed, the Second Circuit expressly recognized that "the party that is the subject of the underlying judgment" under TRIA can be "*any terrorist party*," and that "parties whose blocked assets are subject to execution or attachment" include "any agency or instrumentality *of that terrorist party.*" *Weinstein*, 609 F.3d at 49 (emphasis added) (quoting TRIA § 201, 116 Stat. at 2337). Likewise, *Kirschenbaum* reaffirmed and extended *Weinstein*'s holding regarding the subject matter jurisdiction created by TRIA, and it, too, focused on Congress's intent to ensure full enforcement of judgments held by terrorist victims who claimed against non-state terrorists. *See Kirschenbaum*, 830 F.3d at 133 (recognizing that "the text of the TRIA unambiguously reaches more broadly to

permit the attachment of property in circumstances not covered by the FSIA or FSIA immunity," such as cases involving liability judgments against "*non-state actors*," including "terrorist organizations," and attachment of property held by "*their* agencies and instrumentalities") (emphasis in original).

2. The *Caballero* Statement also implies that these holdings in *Weinstein* and *Kirschenbaum* were somehow undone by statements in *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F. 3d 120, 133 (2d Cir. 2019), that TRIA requires a valid judgment "entered against the sovereign" and establishes subject matter jurisdiction "only where a *valid* judgment has been entered against the sovereign." *Caballero* Statement at 12–13, 15 (quoting *Vera*, 946 F.3d at 133); *see also* Report at 17–18. But *Vera* involved a sovereign defendant, and so the Second Circuit naturally referred to a sovereign defendant in its discussion. *Vera* did not address, and hence does not support, the *Caballero* Statement's view that TRIA provides for execution of assets held by foreign instrumentalities *only* where the underlying liability judgment is against a foreign state. Instead, the Second Circuit was emphasizing the need to enforce only "valid" judgments—it voided a turnover order because the district court's underlying liability judgment against Cuba was entered without valid subject matter jurisdiction. The judgments here against the Taliban are unquestionably valid.[3]

3. The *Caballero* Statement also relies upon cases outside of the FSIA and TRIA context that address the limits on federal courts' ancillary jurisdiction. *Caballero* Statement at 15–18 (discussing *Peacock v. Thomas*, 516 U.S. 349 (1996) and *Epperson v. Ent. Express, Inc.*, 242 F.3d

---

[3] So, too, with the *Caballero* Statement's reliance on a reference to "FSIA judgment holders" in *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91, 96 (2d Cir. 2022). *See Caballero* Statement at 13, 15. *Levinson* involved an attachment action by a party holding a terrorism judgment against Iran, and the Second Circuit therefore naturally referred to "FSIA judgment holders" in its discussion. *Levinson* did not present, and the Second Circuit had no occasion to address, any issue bearing on the *Caballero* Statement's limited reading of TRIA.

100 (2d Cir. 2001)).  There is no merit to the *Caballero* Statement's claim that these cases somehow support its proposed limit on TRIA's jurisdictional scope.  First, these cases involve ancillary jurisdiction, which is at most an additional basis for jurisdiction here.  Nothing in those cases suggests that Congress intended to limit TRIA's scope or demote the interests of holders of judgments against non-state entities, and the *Caballero* Statement does not assert that they played any role in TRIA's enactment.

Second, these cases in fact undermine the *Caballero* Statement's position because they show that even outside of the FSIA/TRIA context, an independent basis for subject matter jurisdiction is not required when courts undertake proceedings to enforce their judgments by attaching or executing on assets held by third parties.  *See Epperson*, 242 F.3d at 104 ("an action to collect a judgment . . . does not require an independent jurisdictional basis"); *Kim*, 776 F. App'x at 20 ("[a]n ancillary action to collect a judgment does not require an independent basis for jurisdiction").  In particular, *Epperson* analyzed and applied *Peacock* to conclude that Second Circuit cases dating back to 1927 remained good law.  *Epperson* and those earlier cases distinguished between proceedings that are designed to enforce a judgment, which do not require an independent basis for jurisdiction, and proceedings that seek to "raise an independent controversy with a new party in an effort to shift liability" or that seek to "establish liability on the part of a third party." *Epperson*, 242 F.3d at 104, 106; *see Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*, 20 F.2d 295. 297 (2d Cir. 1927) (ancillary jurisdiction sufficient as long as proceeding is "incident to the collection of the judgment itself").  The distinction is much like that between enforcement of judgments and *in personam* claims. *See supra* pp. 7-8. Turnover proceedings fall squarely in the category of proceedings that do not require an independent basis for jurisdiction because they are simply measures to collect on or enforce existing judgments.  "A

17

TRIA § 201 claim is not a suit for a judgment, but rather one to enforce a judgment already obtained." *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 184 (2d Cir. 2019).

In addition, to the extent the *Caballero* Statement is arguing that this Court should limit TRIA's scope based on these ancillary jurisdiction cases simply because TRIA subjects the assets of an "agency or instrumentality" to enforcement proceedings based on a judgment against the terrorists controlling the agency or instrumentality, Congress has foreclosed that argument. Contrary to the *Caballero* Statement's suggestion, *Caballero* Statement at 17–18, there is no need to "harmonize" *Weinstein*, *Epperson*, and other cases in any manner in order to limit what TRIA's plain language establishes. That language shows that Congress intended to grant jurisdiction sufficient to enable judgment holders to enforce judgments against the assets of "agencies and instrumentalities" of the terrorist judgment debtors, and that it "shall" apply "in every case" "[n]otwithstanding any other provision of law …" All that is needed is for this Court to "harmonize" its rulings with TRIA's plain language, giving effect to the turnover proceedings that would enforce the judgments against the Taliban. *Weinstein* and the other cases supposedly requiring "harmonization" provide no basis to limit TRIA's terms and present no tension or lack of harmony with them.

4. Finally, the *Caballero* Statement seeks to have this Court limit TRIA so that it applies to foreign state assets only when the Executive Branch has deemed the judgment debtor a state sponsor of terrorism. *Caballero* Statement at 9. That approach would effectively grant additional immunity, not set out in the FSIA, to agencies and instrumentalities of foreign states that are not deemed state sponsors of terrorism. The *Caballero* Statement's self-serving effort to narrow the TRIA judgment enforcement process and create an additional immunity from execution is plainly contrary to both the FSIA and to TRIA.

18

"[A] principal purpose of the FSIA [is] 'to transfer the determination of sovereign immunity from the executive branch to the judicial branch.'" *Kirschenbaum*, 830 F.3d at 125 (quoting legislative history); *Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 141 (2014) (the FSIA is designed to "abate[] the bedlam" caused by the "old executive-driven, factor-intensive, loosely common-law-based immunity regime" by replacing it with "the [FSIA's] comprehensive set of legal standards.") (internal quotation omitted).  Contrary to this purpose, the *Caballero* Statement now seeks a rule that would have this Court limit the lawful execution and attachment of an instrumentality's assets if, as a matter of policy, the Executive Branch has not deemed the foreign state itself to be a sponsor of terrorism.  *See Caballero* Statement at 9.  This, too, is contrary to the FSIA's operation, where any immunity protections for a "foreign sovereign in an American court must stand on the Act's text.  Or it must fall." *NML Capital*, 573 U.S. at 141–42.  Likewise, the FSIA is based on treating, for litigation purposes, foreign sovereigns the same as private parties absent a specific, express statutory provision favoring foreign sovereigns, *see* 28 U.S.C. § 1606; *NML Capital*, 573 U.S. at 142, and no provision of law favors foreign sovereigns or their instrumentalities in the way the *Caballero* Statement proposes.

The *Caballero* Statement's position is also at odds with TRIA's language.  Its position would require that only judgments secured against state sponsors of terrorism could be used to secure assets associated with agencies and instrumentalities of foreign states.  *See Caballero* Statement at 9.  But the Second Circuit has rejected limiting TRIA in a manner that would, contrary to the statute's text, reduce the recovery available under a judgment secured against "nonstate terrorist entities," and has specifically rejected an approach that would "leave only terrorist states as potential sponsors of agencies or instrumentalities under TRIA § 201." *Kirschenbaum*, 830 F.3d at 133-34 (internal quotation omitted).  Here, the *Caballero* Statement proposes both to

19

relegate judgments against non-state terrorist entities to second class status and to exclude from

TRIA's scope the assets of state instrumentalities and agencies unless the instrumentalities are

associated with terrorist states as determined by the Executive Branch. Neither of these limitations

can be found in TRIA's text. And, more broadly, the *Caballero* Statement is seeking, improperly,

to interpose its policy preferences to limit the plain terms of TRIA. *See, e.g., id.*; *United States v.*

*All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 626–27 (7th Cir. 2015) (rejecting

the government's efforts to give TRIA's terms less than full effect). Indeed, the *Caballero*

Statement is seeking to do so even *after* it has exercised its policy prerogatives: TRIA is available

to permit judgment holders to secure only those assets that the Administration has chosen to block

as a matter of policy, which here the Administration did to ensure that the assets remain unavailable

to the Taliban (while making them subject to TRIA enforcement actions). Ordering turnover to

implement TRIA would thus further the objectives and policy choices of both Congress and the

Executive Branch.

Dated: November 10, 2022   Respectfully submitted,

      /s/  Sean P. Carter
      Sean P. Carter
      COZEN O'CONNOR
      One Liberty Place
      1650 Market Street Suite 2800
      Philadelphia, Pennsylvania 19103
      Tel: (215) 665-2105
      scarter1@cozen.com

      *Counsel for Federal Insurance Creditors*

      Lee S. Wolosky
      JENNER & BLOCK LLP
      1155 Avenue of the Americas
      New York, NY 10036
      Tel: (212) 891-1628
      lwolosky@jenner.com

Douglass A. Mitchell (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6090
dmitchell@jenner.com

Timothy B. Fleming (DC Bar No 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB PLLC
2202 18th Street, NW, #110
Washington, DC 20009-1813
Tel: (202) 467-4489
tfleming@wigginschilds.com

Dennis G. Pantazis
(AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC (Lead Counsel)
301 19th Street
North Birmingham, AL 35203
Tel: (205) 314-0500
dgp@wigginschilds.com

Richard D. Hailey (IN Bar No. 7375-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN 46260
Tel: (317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
FOOTE, MIELKE,
CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 232-7450

Stuart H. Singer (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011

David A. Barrett
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300

*Counsel for the Havlish Creditors*

Orlando do Campo
John Thornton (*pro hac vice*)
Daniela Jaramillo (*pro hac vice*)
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
Tel: (305) 358-6600
od@dandtlaw.com

*Counsel for Judgment Creditors John Does 1-7*

James Edwin Beasley
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
Tel: (215) 592-1000
jbj@beasleyfirm.com

*Counsel for Judgment Creditors Estate of Smith, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Joint Creditors' Memorandum of Law in Response to the Notice of Supplemental Authority Submitted by *Amicus Curiae* Naseer Faiq and in Further Support of Their Objections to Magistrate Judge Netburn's August 26, 2022 Report & Recommendation, was electronically filed this 10th day of November 2022.  Notice of this filing will be served upon all parties in 03 MDL 1570 by operation of the Southern District of New York's Electronic Case Filing ("ECF") system.

_____
J. Scott Tarbutton, Esq.

LEGAL\60319243\1