## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOHN DOES 1 THROUGH 7,

     *Judgment Creditors*,

v.

THE TALIBAN, AL-QAEDA, and THE HAQQANI NETWORK,

     *Judgment Debtors,*

v.

THE BANK OF NEW YORK MELLON,

     *Garnishee*

Case Action No. 6:22-cv-00990-DNH-TWD

## THE DEPOSIT GUARANTEE FUND'S REPLY
## IN SUPPORT OF ITS ORDER TO SHOW CAUSE
## <u>TO INTERVENE AND VACATE THE WRIT OF EXECUTION</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.............................................................................................................................2

    I.      DGF Has Article III Standing to Oppose the Writ of Execution. ...........................2

    II.     DGF Satisfied the Requirements of Rule 24.........................................................5

    III.    The Court Lacks Subject Matter Jurisdiction. ......................................................7

    IV.   The Record Evidence Supports Vacating the Writ..................................................8

CONCLUSION.......................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re $6,871,042.36, & Accrued Interest*,
  217 F. Supp. 3d 84 (D.D.C. 2016) ......................................................................3, 7

*Belgian Am. Mercantile Corp. v. De Groeve-Marcotte & Fils*,
  433 F. Supp. 1098 (S.D.N.Y. 1977) ........................................................................7

*Brennan v. N.Y.C. Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001) .....................................................................................6

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
  No. 20-MC-40-LJV, 2022 WL 633572 (W.D.N.Y. Mar. 4, 2022)...........................9

*Celestin v. Caribbean Air Mail, Inc.*,
  30 F.4th 133 (2d Cir. 2022) ......................................................................................4

*Charter Communs., Inc. v. Derfert*,
  510 F. Supp. 3d 8 (W.D.N.Y. 2021) ........................................................................3

*Cross Sound Cable Co., LLC v. Long Island Lighting Co.*,
  No. 21-CV-2771 (KAM) (ARL), 2022 U.S. Dist. LEXIS 15084 (E.D.N.Y.
  Jan. 27, 2022) ............................................................................................................7

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).....................................................................................4

*Doe v. ELN*,
  No. 15-cv-8652, 2017 WL 591193 (S.D.N.Y. Feb. 14, 2017) ............................7, 8

*F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*,
  882 F.2d 281 (7th Cir. 1989) ....................................................................................3

*Gerschel v. Bank of Am., N.A.*,
  No. 20 CIV. 5217 (NRB), 2021 WL 1614344 (S.D.N.Y. Apr. 26, 2021)............2, 3

*Lin v. Canada Goose US, Inc.*,
  No. 21 CIV. 7614 (LGS), 2022 WL 16926312 (S.D.N.Y. Nov. 14, 2022)...............3

*Nelson v. Greenspoon*,
  103 F.R.D. 118 (S.D.N.Y. 1984) ..............................................................................7

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    No. MC 19-290-LPS, 2022 WL 611563 (D. Del. Mar. 2, 2022), *cert. granted,
    J. modified*, No. MC 19-290-LPS, 2022 WL 1404719 (D. Del. May 4, 2022) ........................5

*Republic of Iraq v. First Nat. City Bank*,
    353 F.2d 47 (2d Cir. 1965) ..................................................................................................8

*Stansell v. FARC*,
    No. 16-MC-405, 2022 WL 2530359 (S.D.N.Y. Mar. 29, 2022) ................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03MD01570GBDSN, 2022 WL 4643442 (S.D.N.Y. Aug. 26, 2022) ................................7

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    137 S. Ct. 1645 (2017) ..........................................................................................................2

*In re TransCare Corp.*,
    592 B.R. 272 (Bankr. S.D.N.Y. 2018) ..................................................................................3

*United States v. All Assets Held at Bank Julius Baer & Co.*,
    959 F. Supp. 2d 81 (D.D.C. 2013) ...................................................................................4, 5

*Vera v. Republic of Cuba*,
    867 F.3d 310 (2d Cir. 2017) ..................................................................................................7

*Weinstein v. Islamic Republic of Iran*,
    609 F.3d 43 (2d Cir. 2010) ..................................................................................................7

**Rules & Regulations**

L. R. 7.1(e) ................................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 24 ........................................................................................................... *passim*

Fed. R. Civ. P. 60(b) ................................................................................................................1

Readout of Secretary Raimondo's Meeting with Ukrainian First Deputy Prime
    Minister and Minister of Economy Yuliia Svyrydenko (Nov. 8, 2022)
    (available at https://www.commerce.gov/news/press-
    releases/2022/11/readout-secretary-raimondos-meeting-ukrainian-first-deputy-
    prime) ....................................................................................................................................2

Remarks by President Biden on Continued Support for Ukraine (Jan. 25, 2023)
    (available at https://ua.usembassy.gov/remarks-by-president-biden-on-
    continued-support-for-ukraine/); ..........................................................................................9

Statement by Secretary of the Treasury Janet L. Yellen on the Disbursement of
    $4.5 Billion in Direct Budget Support for Ukraine (Nov. 22, 2022) (available
    at https://home.treasury.gov/news/press-releases/jy1123)........................................................9

U.S. Security Cooperation with Ukraine Fact Sheet (Jan. 25, 2023) (available at
    https://www.state.gov/u-s-security-cooperation-with-ukraine/)...............................................2

Pursuant to Fed. R. Civ. P. 24 and 60(b) and Local Rule 7.1, DGF files this reply in further support of its order to show cause (the "OSC," ECF No. 35).[1]

### PRELIMINARY STATEMENT

In its moving papers, DGF submitted uncontroverted evidence that it is authorized by the Ukrainian government to liquidate the nationalized assets of Prominvestbank ("PIB").   In response,  Judgment Creditors remarkably urge the Court to find that DGF has no right to be heard to oppose Judgment Creditors' execution against PIB's assets.  Lacking compelling arguments on the merits, they attempt to manufacture defects with DGF's standing and right to intervene.

First, they contend that DGF was required to establish that it satisfies the Article III standing requirements, which is wrong as a matter of law because DGF is merely opposing the relief Judgment Creditors seek.  But even if Article III standing were required, DGF easily meets the test.  It is authorized under Ukrainian law to liquidate PIB's assets, a law that this Court must recognize as valid under the act of state doctrine, giving DGF clear Article III standing.

Second, Judgment Creditors assert that DGF should not be permitted to intervene in this case to present its arguments because its interests are too remote.  But there is nothing remote about the interest of a liquidator in the assets of the liquidating entity.  Judgment Creditors correctly point out that PIB's assets are frozen by OFAC, and DGF cannot transfer the funds without a license, but such regulatory restraints do not change the fact that DGF is a party directly in interest, whose interest would be impacted by the Judgment Creditors' proposed execution.

Judgment Creditors' arguments on the merits fare no better.  DGF demonstrated in its moving papers that the Court lacks subject matter jurisdiction over an action to execute upon assets allegedly under the control of a foreign sovereign (Russia) in the absence of a judgment against

---

[1] Capitalized terms shall have the meanings provided in the Memorandum of Law In Support of the OSC ("Mem. ISO OSC," ECF No. 35-3) unless otherwise defined herein.

the sovereign.  Judgment creditors do not cite a single case that contradicts DGF's position or supports disregarding the valid laws adopted by Ukraine to effectuate the nationalization of PIB prior to Judgment Creditors' application for a writ of execution.

Finally, Judgment Creditors assert that recognition of Ukraine's nationalization of PIB would be inconsistent with U.S. public policy.  Nothing could be further from the truth.  In response to Russia's conduct, the United States has repeatedly confirmed "its unwavering support for Ukraine's sovereignty and territorial integrity"[2] as well as its commitment to support Ukraine in rebuilding its infrastructure.[3]  Allowing Judgment Creditors to satisfy their judgment from PIB's assets would unfairly penalize Ukraine for Russia's support of terrorism, contrary to both U.S. public policy and the purpose of TRIA.  For these reasons, and those set forth in the Mem. ISO OSC, the Writ of Execution must be vacated.

## ARGUMENT

## I.    DGF HAS ARTICLE III STANDING TO OPPOSE THE WRIT OF EXECUTION.

Judgment Creditors' assertion that DGF must show that it satisfies Article III standing requirements is wrong as a matter of law.  "[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that requested by the plaintiff." *Gerschel v. Bank of Am., N.A.*, No. 20 CIV. 5217 (NRB), 2021 WL 1614344, at *3 n. 8 (S.D.N.Y. Apr. 26, 2021) (emphasis in original) (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1647 (2017)) (internal quotations omitted).  Where "Proposed Intervenors merely intend to oppose the relief that [plaintiff] requests," "[t]here is no additional relief for the Court to consider" and thus

---

[2]  U.S. Security Cooperation with Ukraine Fact Sheet (Jan. 25, 2023) (available at https://www.state.gov/u-s-security-cooperation-with-ukraine/).
[3]  Readout of Secretary Raimondo's Meeting with Ukrainian First Deputy Prime Minister and Minister of Economy Yuliia Svyrydenko (Nov. 8, 2022) (available at https://www.commerce.gov/news/press-releases/2022/11/readout-secretary-raimondos-meeting-ukrainian-first-deputy-prime).

2

the proposed intervenor need not independently establish Article III standing. *Id.* (finding plaintiff's "discussion of Article III standing" to be "inapt"). *See also Charter Communs., Inc. v. Derfert*, 510 F. Supp. 3d 8, 13 (W.D.N.Y. 2021) (questioning whether opposition to injunctive relief even qualifies as seeking "relief" so as to require standing). Like the proposed intervenors in *Gerschel*, DGF merely opposes the relief Judgment Creditors seek – execution on PIB's assets – and thus does not need to independently satisfy Article III.

But assuming *arguendo* that DGF is required to establish that it satisfies Article III standing requirements, it has done so. "The Second Circuit has described the burden of pleading an injury-in-fact as a 'low threshold.'" *In re TransCare Corp.*, 592 B.R. 272, 284 (Bankr. S.D.N.Y. 2018) (citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest." *Lin v. Canada Goose US, Inc.*, No. 21 CIV. 7614 (LGS), 2022 WL 16926312, at *3 (S.D.N.Y. Nov. 14, 2022) (quotations omitted). DGF more than meets this standard because this enforcement proceeding against PIB's assets will directly impair DGF's ability to carry out its obligations as PIB's designated liquidator in accordance with Ukraine law. *See* Mem. ISO OSC at 12. *See In re $6,871,042.36, & Accrued Interest*, 217 F. Supp. 3d 84, 92 (D.D.C. 2016) (finding liquidators had Article III standing to seek dissolution of protective order even if they had not yet established their legal right to those funds).[4]

Judgment Creditors make two main arguments concerning standing. Neither have merit.

1. *The Court Does Not Need to Recognize the Nationalization of PIB to Find That DGF Satisfied Article III Standing Requirements, But Has Discretion to Do So.*

---

[4] Judgment Creditors mischaracterize *F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.,* 882 F.2d 281 (7th Cir. 1989) as holding that a liquidator claiming rights to assets seized through a nationalization lacks standing. Resp. at 8. That decision does not discuss standing whatsoever, and thus establishes no such rule.

First, Judgment Creditors assert that the Court cannot recognize Ukraine's nationalization of Russian assets and thus cannot recognize any injury that satisfies Article III.  *See* Resp. (ECF No. 48) at 7-10.  As set forth in Section IV below, Ukraine's nationalization is entirely consistent with U.S. public policy and should be recognized by this Court.  However, for purposes of the standing analysis, the Court does not need to reach that issue.  DGF presented unrefuted evidence that it is tasked under Ukrainain law with liquidating PIB.  The act of state doctrine "bars federal and state courts from declar[ing] invalid, and thus ineffective as a rule of decision for the courts of this country, the official act of a foreign sovereign."  *Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 137 (2d Cir. 2022) (internal quotations omitted).  Thus, the Court must recognize DGF's appointment as liquidator of PIB as valid.[5]  DGF's interest in vacating the Writ of Execution, which would otherwise result in the diversion of assets for which DGF has responsibility, is sufficient to establish a "fear . . . of future harm" or an invasion of a legally protected interest for purposes of Article III.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).

      2.  *The Fact That the Assets Are Blocked Has No Bearing on Standing.*

Judgment Creditors recognize that "in most cases a liquidator has standing to intervene in cases affecting assets subject to litigation," but assert that is not true here because "the assets here were blocked in another country prior to the commencement of the liquidation."  Resp. at 12.  This argument rests on the false premise that *All Assets* – the sole authority Judgment Creditors cite – stands for the proposition that a liquidator lacks Article III standing in connection with an enforcement action involving blocked assets located outside the liquidator's country.  However, that decision involved the *statutory* standing requirements in civil forfeiture actions which require

---

[5] Judgment Creditors assert that any actions taken by Ukraine to nationalize Prominvestbank after its assets were blocked by the U.S. are a "nullity" (Resp. at 14), but they provide no support for the notion that U.S. regulations could render acts of a foreign sovereign invalid.

a claimant "[to] assert[ ] an interest in specific property that is named as a defendant." *United States v. All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d 81, 95 (D.D.C. 2013) ("extent of the interest in the defendant property sufficient to meet this standing requirement is left to case law") (internal quotations omitted). The court emphasized that "to demonstrate a colorable ownership interest, courts generally look to indicia of dominion and control such as possession, title, and financial stake." *Id.* at 100 (internal quotations omitted). However, this is not a civil forfeiture action, and DGF is under no obligation to provide evidence of a "colorable ownership interest" or "indicia of dominion and control" over the assets at issue.

Similarly, Judgment Creditors argue that because the IEEPA forbids the transfer of the assets, the Article III standing requirements are not satisfied. Once again, they cite no authority supporting the position that an entity tasked with liquidating assets lacks standing to move to vacate a writ of execution against those assets if there are obstacles to immediate possession.

Indeed, DGF is not asking the Court to release or transfer funds from BNYM—it is simply opposing execution against those assets. It is well established that parties may assert claims over property even if the property is subject to OFAC blocking sanctions. *See, e.g.*, *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. MC 19-290-LPS, 2022 WL 611563, *8 (D. Del. Mar. 2, 2022), *cert. granted, J. modified*, No. MC 19-290-LPS, 2022 WL 1404719 (D. Del. May 4, 2022) (holding judgment creditors can attach assets despite needing a license to access them). Even if blocked indefinitely, DGF has standing as the liquidator to oppose execution upon those assets.

## II.      DGF SATISFIED THE REQUIREMENTS OF RULE 24.

Judgment Creditors claim that DGF's interest in the proceeding is "remote, and dependent upon four contingencies." Resp. at 15-18. This argument is based upon the same flawed premise—that DGF is required to establish an ownership or possessory right to the assets in order for the Court to reach the merits. However, Rule 24(a)(2) only requires an "interest *relating to* the

5

property or transaction which is the subject of the action"; it "does not require that the intervenor prove a property right." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) (emphasis added). Thus, the four contingencies which purportedly must occur before DGF obtains an ownership or possessory right to the assets are irrelevant under Rule 24. If the OSC is denied, assets that DGF is required to liquidate on behalf of Ukraine will instead be directed to the Judgment Creditors. That interest in the disposition of the assets is neither remote nor contingent.

DGF has an interest in the disposition of the assets whether or not the nationalization was completed prior to the commencement of these proceedings. The nationalization occurred before a writ was sought, giving DGF an interest in the protection of the assets at that time. Judgment Creditors' mere speculation that "the legality of Proposed Intervenor's hoped for nationalization will not be resolved anytime soon," may be subject to legal challenges by Russia, or may not be recognized by the U.S. government, does not negate DGF's interest in this proceeding. DGF demonstrated that as a result of laws adopted by Ukraine, which this Court must recognize as valid, DGF has an interest in the disposition of the PIB assets, and thus an interest in this proceeding that satisfies Rule 24. [6]

Nor is DGF's interest in this proceeding contingent on the assets being unblocked or released.[7] DGF's interest is in opposing Judgment Creditors' execution against the assets,

---

[6] Judgment Creditors filed a Supplemental Declaration of Brian Fonseca ("Supp. Decl."), which addresses certain legal proceedings brought by private parties seeking to execute against the shares of Prominvestbank during the period 2018 – 2020, as well as efforts by VEB to sell its interest in Prominvestbank. The facts set forth in the Supp. Decl. are irrelevant to the issues before the Court. The past efforts of private parties to execute upon or sell shares of Prominvestbank have nothing to do with the recognition by this Court of DGF's rights as statutory liquidator of Prominvestbank.
[7] Judgment Creditors' argument that DGF lacks an interest in the blocked assets because, now that the TRIA writ attached, even if DGF receives an OFAC license, it "would be of no effect" (Resp. at 15), only bolsters DGF's standing. Their acknowledgement that the writ interferes with DGF's ability to pursue its rights through the typical OFAC process further demonstrates that it has

regardless of how long those assets remain blocked.  The fact that the assets are not "reachable" by DGF at this moment does not mean DGF has no interest in this proceeding.[8]

## III.   THE COURT LACKS SUBJECT MATTER JURISDICTION.

Judgment Creditors cannot overcome the clear authority stating that TRIA "'provides for federal court jurisdiction over execution and attachment proceedings involving the assets of a foreign sovereign . . . *only* where a valid judgment has been entered against the sovereign.'" *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MD01570GBDSN, 2022 WL 4643442, at *13 (S.D.N.Y. Aug. 26, 2022) (quoting *Vera v. Republic of Cuba*, 867 F.3d 310, 321 (2d Cir. 2017)) (quotations omitted).  They assert without any basis that TRIA broadly confers subject matter jurisdiction with respect to any TRIA execution.  *See* Resp. at 21.  In support, they cite two cases that did not involve assets owned or controlled by a foreign sovereign or allegations that the foreign sovereign aided and abetted terrorism.  *See Doe v. ELN,* No. 15-cv-8652, 2017 WL 591193 (S.D.N.Y. Feb. 14, 2017); *Stansell v. FARC,* No. 16-MC-405, 2022 WL 2530359 (S.D.N.Y. Mar. 29, 2022).  The third case they cite involved a valid judgment against a sovereign.  *See Weinstein*

---

standing.  *See In re $6,871,042.36*, 217 F. Supp. 3d at 93-94 (intervenor had standing because the freeze prevented intervenor from resolving ownership of accounts through interpleader action).

[8] Judgment Creditors also assert that DGF failed to comply with Rule 24 because it did not accompany the OSC with a pleading.  Resp. at 6.  In this case, there was no complaint filed to commence the action, and thus DGF – which intervened as a defendant – did not file an answer with its order to show cause but DGF clearly set forth the relief it sought and the grounds justifying that relief.  The Judgment Creditors do not contend the OSC should be denied for that reason, and acknowledge that courts have not rigidly enforced the requirement that a motion to intervene be accompanied by a pleading.  Resp. at 6 (citing *Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, No. 21-CV-2771 (KAM) (ARL), 2022 U.S. Dist. LEXIS 15084, at *15 (E.D.N.Y. Jan. 27, 2022).  *See also Belgian Am. Mercantile Corp. v. De Groeve-Marcotte & Fils*, 433 F. Supp. 1098, 1101 (S.D.N.Y. 1977) ("to require formal adherence to Rule 24 . . . would be to elevate form over substance and possibly to work an injustice" because "the papers filed by FNB fulfill the substance of Rule 24's requirements" by providing "adequate notice to the plaintiff that it wished to assert opposition to the attachment, and clearly stat[ing]  the ground on which that opposition was based"); *Nelson v. Greenspoon*, 103 F.R.D. 118, 121 (S.D.N.Y. 1984) ("the relief sought was clearly spelled out in the Order to Show Cause, albeit not in the form of a pleading").

*v. Islamic Republic of Iran,* 609 F.3d 43, 48 (2d Cir. 2010).  In contrast, Judgment Creditors here assert that Russia used VEB and PIB as conduits to provide financial support to terrorists (ECF No. 4-2 at 15), and that this proceeding – according to Judgment Creditors' allegations – involves assets controlled by a foreign sovereign.[9] The Court therefore lacks subject matter jurisdiction.

The only other "authority" Judgment Creditors cite is the government's statement of interest in *Doe v. ELN* (*see* Resp. Exhibit A),[10] which involved an attempt to satisfy a judgment against non-state terrorist actors, ELN and FARC, from the assets of Petcoke, an entity that purportedly held assets belonging to Petrocedeño, which was a subsidiary of the Venezuelan state-owned PDVSA.  Judgment Creditors emphasize that the government's objections did not rely on the lack of an underlying judgment against the sovereign (Venezuela).  As a preliminary matter, the fact that the government did not address jurisdiction does not mean there is subject matter jurisdiction here.  Moreover, the government's statement of interest did not indicate that the Venezuelan government was alleged to have caused Petcoke to support terrorism, in contrast to Judgment Creditors' allegations concerning the Russian government's control over PIB's assets.

## IV.    THE RECORD EVIDENCE SUPPORTS VACATING THE WRIT.

As set forth above, Judgment Creditors' assertion that "this court simply is not empowered to recognize Ukraine's nationalization of Russian assets" is wrong.  Indeed, it is contrary to the very cases Judgment Creditors cite, which clearly state that U.S. courts have discretion to recognize foreign nationalizations if consistent with U.S. policy.  *See* Resp. at 7 (discussing *Republic of Iraq v. First Nat. City Bank*, 353 F.2d 47, 49-51 (2d Cir. 1965), recognizing courts

---

[9] Judgment Creditors' statement that Russia has indicated it intends to challenge the nationalization of Prominvestbank (Resp. at 4) suggests that Russia views the nationalization of Prominvestbank as a nationalization of Russian assets.

[10] Judgment Creditors assert they "are confident" that a foreign state's assets can be used to satisfy a judgment in the absence of a judgment against the state but cite no precedent for that assertion—only two briefs their counsel filed in other proceedings (Resp. Exs. B and C).  *See* Resp. at 20-21.

have "discretion whether or not to respect a foreign act of state affecting property in the United States," and that such discretion "is closely tied to our foreign affairs").[11]

Here, the Court has compelling reasons to exercise its discretion to recognize the Ukrainian law nationalizing PIB's assets as it would serve the clearly articulated U.S. public policy to support the sovereignty and rebuilding of Ukraine following the devastating Russian attack.  The United States, through the U.S. State Department has repeatedly confirmed "its unwavering support for Ukraine's sovereignty and territorial integrity" and strongly denounced "Russia's premeditated, unprovoked, and unjustified war against Ukraine."[12]  Similarly, the U.S. Department of Commerce has expressed its commitment to support Ukraine in rebuilding its infrastructure (including financially),[13] and the President, the Treasury Department and others have all strongly indicated the United States' complete support for Ukraine.[14]  It is beyond dispute that U.S. interests strongly favor support of the Ukrainian people to rebuild their country, which is precisely the purpose of the nationalization of PIB and the mission of the DGF.

The notion of a U.S. policy interest in using Russian assets blocked due to the Ukraine war to compensate victims of terrorism in an entirely different geopolitical sphere is unsupportable.  Punishing innocents for the acts of supporters of terrorism is contrary to the purpose of TRIA.  *See* Resp. Ex. A at 7.  This court should not countenance punishing Ukraine for Russia's misconduct.

---

[11] The Court has discretion to invite the U.S. government to submit an amicus curiae brief.  *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-MC-40-LJV, 2022 WL 633572, *2 (W.D.N.Y. Mar. 4, 2022).

[12] *See* Security Cooperation, *supra*, note 2.

[13] *See* Readout of Secretary Raimondo, *supra*, note 3.

[14] *See* Remarks by President Biden on Continued Support for Ukraine (Jan. 25, 2023) ("going to continue to do all we can to support Ukraine.") (available at https://ua.usembassy.gov/remarks-by-president-biden-on-continued-support-for-ukraine/); Statement by Secretary of the Treasury Janet L. Yellen on the Disbursement of $4.5 Billion in Direct Budget Support for Ukraine (Nov. 22, 2022) ("these funds are a critical tool in Ukraine's resistance to Putin's unprovoked invasion.") (available at https://home.treasury.gov/news/press-releases/jy1123).

Furthermore, Judgment Creditors mischaracterize the record in asserting that "there is no record evidence that control [of PIB] actually changed hands" and that the nationalization of PIB was not implemented prior to Judgment Creditors' application for a writ of execution on September 20, 2022.  DGF submitted evidence demonstrating that Ukraine passed laws prior to September 20 in order to effectuate the nationalization of PIB – laws which this Court must accept as valid pursuant to the act of state doctrine – and that as a result, PIB and its assets were not owned or controlled by Russia, and thus PIB was not an agency or instrumentality of Russia as of September 20.  *See* OSC at 8-9.  Ukraine also adopted laws restricting Russian creditors from executing against the assets of PIB.  All of these laws were adopted between February and May of 2022, and the three-month period for challenging these laws expired without any challenge by Russia.  *See* Supp. Decl. of D. Kostiukov ¶¶ 3-4.  Judgment Creditors' only argument is that the final step of effectuating the transfer of VEB shares to the National Investment Fund of Ukraine was not effectuated until December 15, but they do not cite a single case to support their contention that the Court should effectively disregard the laws passed by Ukraine to nationalize PIB prior to September 20.  The mere fact that the final administrative step of transferring shares took place after September 20 is not sufficient to support the Court's finding that PIB was an agency or instrumentality of Russia as of September 20.  To conclude otherwise would perversely result in forcing Ukraine to subsidize Russia's support of terrorism.

## CONCLUSION

For the foregoing reasons, DGF requests that the Court grant its motion to intervene and vacate the Writ of Execution.

Dated: February 6, 2023                           Respectfully submitted,

                                                  HOGAN LOVELLS US LLP

                                                  By: */s/ Dennis H. Tracey, III*

Dennis H. Tracey, III
Ryan M. Philp (Bar Roll No.: 516442)
Alan M. Mendelsohn
Jonathan P. Wieder
390 Madison Avenue
New York, NY 10017
T: 212-918-3000
F: 212-918-3100
dennis.tracey@hoganlovells.com
ryan.philp@hoganlovells.com
alan.mendelsohn@hoganlovells.com
jonathan.wieder@hoganlovells.com

11