UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JOHN DOES 1 THROUGH 7,

    *Judgment Creditors,*

v.

THE TALIBAN, AL-QAEDA, and THE       No. 6:22-cv-990
HAQQANI NETWORK,

    *Judgment Debtors,*

v.

THE BANK OF NEW YORK MELLON,

    *Garnishee,*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

HOGAN LOVELLS US LLP        RYAN M. PHILP, ESQ.
*Attorneys for Proposed Intervenor*   DENNIS H. TRACEY III, ESQ.
390 Madison Avenue           ALAN M. MENDELSOHN, ESQ.
New York, NY 10017           JONATHAN P. WIEDER, ESQ.

DO CAMPO & THORNTON, P.A.    ORLANDO DO CAMPO, ESQ.
*Attorneys for Judgment Creditors*   JOHN THORNTON, ESQ.
150 S.E. 2nd Avenue, Ste. 602     DANIELA JARAMILLO, ESQ.
Miami, Florida 33131

KATSKY KORINS LLP           STEVEN B. FEIGENBAUM, ESQ.
*Attorneys for Garnishee*
605 Third Avenue
New York, New York 10158

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

### I.  INTRODUCTION

Proposed intervenor Deposit Guarantee Fund ("DGF" or "Proposed Intervenor"), as Liquidator of PJSC Joint Stock Commercial Industrial and Investment Bank ("Prominvestbank"), moves by order to show cause to intervene as a defendant in this action under Federal Rule of Civil Procedure ("Rule") 24 and to vacate the writ of execution this Court issued on November 2, 2022 (the "Writ of Execution").  The Writ of Execution concerns blocked assets of Prominvestbank (the "Blocked Assets") held by the Bank of New York Mellon ("BNY Mellon") in Oriskany, New York.

John Does 1–7 (the "Judgment Creditors"), who were injured in a 2016 Taliban terrorist attack, received a judgment for their injuries in the Northern District of Texas, and obtained the Writ of Execution in this Court, oppose DGF's motions.  The motions have been fully briefed and the Court will now consider them on the basis of the parties' submissions without oral argument.

### II. BACKGROUND

#### 1.  Ukraine's Nationalization of Prominvestbank

Prominvestbank is a bank based in Ukraine.  Dkt. No. 49-1 ("Fonseca Decl.") at ¶ 32.  In May 2022, Ukraine Business News reported that Ukraine had nationalized Prominvestbank.  Dkt. No. 35-4 ("Kostiukov Decl.") at ¶ 12.

Several months prior to the nationalization, on February 25, 2022, the Board of the National Bank of Ukraine issued a decision revoking Prominvestbank's banking license and directing its liquidation (the "February 25 Decision").  *Id.* ¶ 4.  The February 25 Decision also states that, as of January 1, 2022, the owner of 99.772644% of the shares of Prominvestbank is the State Development Corporation in VEB.RF ("VEB").  *Id.*  It further states that the shareholder and owner of 100% of the authorized capital of VEB is the Russian Federation ("Russia"), and that VEB was created by Russia.  *Id.* Thus, as of January 1, 2022, Prominvestbank was indirectly owned and controlled through VEB by Russia.  *Id.*

The same day as the February 25 Decision, and pursuant to it, DGF issued a decision commencing Prominvestbank's liquidation.  Kostiukov Decl. at ¶ 5.  Once DGF began the liquidation process, the DGF Law[1] operated to strip VEB and/or Russia of any authority or control they might have had over Prominvestbank, including by: (1) terminating all powers previously belonging to Prominvestbank's management and control bodies; and (2) giving DGF authority to act on behalf of Prominvestbank, including by

---

[1] As outlined in the Kostiukov Declaration and in a copy of the law attached to it (Dkt. No. 35-8), as of April 1, 2022, the DGF Law "establishes the legal, financial, and organizational principles for the functioning of the Deposit Guarantee System for Individuals, the authority of the Deposit Guarantee Fund for Individuals, the procedure for payment by the Deposit Refund Fund, as well as the relations between the DGF, the banks, the National Bank of Ukraine, the authority and functions of the DGF to remove insolvent banks from the market and liquidate banks."  Kostiukov Decl. at ¶ 7.

exercising the powers of the bank governing bodies, taking possession of the

bank's property (including funds), controlling the disposition of the bank's

assets and liabilities, and exercising all other powers necessary to effectuate

the liquidation. *Id.* ¶ 8. As a result, since the beginning of the liquidation

procedure on February 25, 2022, DGF has exercised the management and

control of Prominvestbank, and VEB has had no control over

Prominvestbank. *Id.*

The DGF Law also establishes DGF's interest in the assets of

Prominvestbank. Specifically, Article 52 of the DGF Law states that "[f]unds

obtained as a result of the liquidation and sale of the bank's property(s),

investment of the bank's temporarily free funds in state securities shall be

directed by the DGF to satisfy the creditors' requirements" in the priority set

forth in Article 52. Kostiukov Decl. at ¶ 9.

On March 3, 2022, Ukrainian President Zelensky signed a law requiring

that any Russian assets seized in connection with Ukraine's nationalization

effort be "transferred to the State Budget of Ukraine and directed to the fund

for the elimination of the consequences of armed aggression" by Russia

against Ukraine. Kostiukov Decl. at ¶ 6.

On May 11, 2022, the National Security and Defense Council of Ukraine

issued a decision (the "May 11 Decision") compelling the seizure of certain

"objects of property of the Russian Federation and its residents," including

VEB's 99.77% ownership interest in Prominvestbank.  Kostiukov Decl.
at ¶ 10.  The May 11 Decision was enacted by President Zelensky the same
day.  *Id.*  It tasked "[t]he Cabinet of Ministers of Ukraine, the [DGF] with the
participation of the National Bank of Ukraine to ensure the enforcement
seizure of the property rights specified in this decision of the Russian
Federation and its residents within ten days from the date of publication of
the Decree of the President of Ukraine on the implementation of this
decision." *Id.*

Although the asset seizure was supposed to be effectuated within ten days
of the May 11 Decision, the actual transfer of assets did not occur until
several months later due to administrative and logistical issues.  Kostiukov
Decl. at ¶ 11.  Instead, on September 13, 2022, the Cabinet of Ministers of
Ukraine directed the seizure of Prominvestbank stock by means of
transferring VEB's 99.77% ownership interest to the National Investment
Fund of Ukraine, a Ukrainian state enterprise (the "September 13 Order").
*Id.*  The September 13 Order provided, *inter alia*, that the Ukrainian
National Bank take all necessary actions to credit securities and domestic
government bonds forcibly seized and withdrawn pursuant to the May 11
Decision to the relevant accounts of Ukraine's Ministry of Finance.  *Id.*

A Statement of the Securities Account Status as of December 15, 2022
provides official confirmation from the Head of the Depository Department of

the Treasury and Investment Services Department of Ukraine that the

National Investment Fund of Ukraine owns 99.77% of the ownership

interests of Prominvestbank.  Kostiukov Decl. at ¶ 13.  Similarly, an extract

from the Unified State Register of Legal Entities, Individual Entrepreneurs,

and Public Organizations regarding Prominvestbank as of December 20, 2022

provides official confirmation from a Ukrainian government-operated registry

of the ownership of Prominvestbank.  *Id*. ¶ 14.  The extract states, in relevant

part, that there is no ultimate beneficial owner of Prominvestbank, and that:

> [t]he reason for the absence is that 99.7726 percent of the shares of
> [Prominvestbank] belong to the State of Ukraine in the form of the State
> Enterprise "National Investment Fund of Ukraine" and there are no other
> natural persons who meet the status of the Ultimate Beneficial Owner.

*Id*. ¶ 14.

## 2.  Procedural History

Judgment Creditors filed this action on September 20, 2022 by registering

with this Court a November 5, 2020 default judgment entered in Judgment

Creditors' favor in the United States District Court for the Northern District

of Texas in the amount of $138,418,741.00 (the "Default Judgment").

Dkt. No. 1.  The Default Judgment was issued against the three defendants

in the underlying proceeding: the Taliban, Al-Qaeda, and the Haqqani

Network.  *Id*.

Also on September 20, 2022, Judgment Creditors filed an *ex parte*
emergency motion for writ of execution or in the alternative for writ of
attachment.  *See* Dkt. No. 4.  In the motion, Judgment Creditors sought to
execute the Default Judgment against Prominvestbank's Blocked Assets
under the Terrorism Risk Insurance Act ("TRIA").  *Id.*  The Blocked Assets,
which exceed $40 million, are held at a BNY Mellon location in Oriskany,
New York and have been blocked since March 22, 2022 in accordance with
certain sanctions regulations administered by the United States Treasury
Department's Office of Foreign Assets Control.  Dkt. No. 26 at ¶¶ 2-3.  In
support of its motion, Judgment Creditors provided expert testimony stating
that Russia actively supports the Taliban and that Prominvestbank is a
subsidiary of the Russian government.  *See generally* Dkt. No. 4-2 at 10–15.

On November 2, 2022, this Court issued an order (the "November 2
Order") granting the Writ of Execution.  *See* Dkt. No. 16.  Based on Judgment
Creditors' *ex parte* submissions, the Court found that it had subject matter
jurisdiction to conduct post-judgment execution proceedings, granted
Judgment Creditors' motion, and found:

> [T]hat Prominvestbank is an agency or instrumentality of the Taliban;
> that blocked assets of Prominvestbank are held at the Bank of New York
> Mellon in Oriskany, New York; and that those blocked assets are subject
> to attachment and execution to satisfy the judgment in this matter
> pursuant to TRIA and 18 U.S.C. § 2333(e).

> *Id.* ¶¶ 1–3.

Accordingly, the Court directed the Clerk of Court to issue the Writ of Execution. *See id.* ¶ 4; Dkt. No. 17.

## III. DISCUSSION

DGF moves to intervene in this action and to vacate the Writ of Execution. The Judgment Creditors oppose both motions. The Court addresses each in turn.

### A. Motion to Intervene

1. Legal Standard

Intervention of right under Rule 24(a) requires that the proposed intervenor: (i) file a timely motion; (ii) show an interest in the litigation; (iii) show that its interest may be impaired by the disposition of the action; and (iv) show that its interest is not adequately protected by the parties to the action. *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 97 (N.D.N.Y. 2005) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (cleaned up). Denial of a motion to intervene is proper if the putative intervenor fails to meet any of these requirements. *Id.* (citing *D'Amato*, 236 F.3d at 84).

For permissive intervention under Rule 24(b), the standard is somewhat different. When considering a motion for permissive intervention under Rule 24(b), "a court must examine whether intervention will prejudice the parties

to the action or cause [undue] delay." *Hoblock*, 233 F.R.D. at 98 (citations omitted). "Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (citations omitted).

In considering a motion to intervene, the Court must accept as true non-conclusory allegations of the motion. *Berroyer v. United States*, 282 F.R.D. 299, 303 (E.D.N.Y. 2012) (citing *Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984)). The putative intervenor has the burden of showing a right to intervene. *Id.* (citations omitted).

A district court possesses broad discretion in deciding both the timeliness and overall merits of a motion to intervene, whether it be a motion for intervention of right, or a motion for permissive intervention. *Hoblock*, 233 F.R.D. at 98 (citing *United States v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999)).

2. <u>Analysis</u>

Upon review, DGF has satisfied the requirements for intervention under either Rule 24(a) or Rule 24(b).

First, as for intervention of right under Rule 24(a), DGF has established that its motion is timely.  In determining timeliness, a court must consider the totality of the circumstances, including: (i) how long the applicant had notice of the interest before he made the motion to intervene; (ii) prejudice to existing parties resulting from any delay; (iii) prejudice to the applicant if the motion is denied; and (iv) any unusual circumstances militating for or against a finding of timeliness.  *Hoblock*, 233 F.R.D. at 98.

Each of the above applicable factors support the timeliness of DGF's motion.  DGF was not a defendant in the Northern District of Texas proceeding or in the instant proceeding, and the Judgment Creditors do not allege it has any connection to the underlying acts giving rise to the Default Judgment.  To execute against Prominvestbank's assets, the Judgment Creditors filed an emergency *ex parte* motion with filings under seal.  DGF first received notice on November 15, 2022—which was eight weeks after Judgment Creditors filed the application for writ of execution and almost two weeks after the writ was issued—when BNY Mellon emailed the Writ of Execution and the associated pleadings to Proposed Intervenor.  DGF retained the undersigned counsel on December 21, 2022, and the next day provided notice to all counsel of record that Proposed Intervenor intended to move by order to show cause to intervene and vacate the Writ of Execution.

Further, Judgment Creditors will not be prejudiced by the grant of DGF's motion to intervene.  The assets Judgment Creditors seek are currently blocked, so there is no risk that these assets will be dissipated while DGF intervenes.  On the other hand, Proposed Intervenor and Prominvestbank would likely be prejudiced if DGF was not permitted to intervene.  The Court entered an *ex parte* order that Prominvestbank is an agency or instrumentality of the Taliban; intervention will provide DGF an opportunity to object to this order and the Writ of Execution.

Second, DGF has established that it has an interest in this litigation and that such interest may be impaired by the disposition of the action. Intervention requires a "direct, substantial, and legally protectable" interest in the litigation.  *See Medequa LLC v. O'Neill & Partners LLC*, 2022 WL 3364294, at *3 (S.D.N.Y. July 26, 2022).  As noted, DGF is the designated liquidator of Prominvestbank in accordance with Ukrainian law.  *See* Kostiukov Decl. at ¶ 7.  Prominvestbank's assets are currently subject to liquidation, and this enforcement proceeding against its assets will impact DGF's ability to carry out its obligations.  And, as DGF notes, courts have routinely allowed liquidators to intervene in cases involving assets subject to liquidation.  *See In re Reliance Grp. Holdings, Inc. Sec. Litig.*, 2004 WL 601973, at *1 (S.D.N.Y. Feb. 24, 2004) (permitting intervention by liquidator of insurance company to challenge the ownership of certain insurance policies

11

and proceeds at issue); *Zurich Capital Mkts., Inc. v. Coglianese*, 236 F.R.D. 379, 385–86 (N.D. Ill. 2006) (holding that liquidator of a Bahamian company could intervene as of right in action that threatened assets of the company it was liquidating); *United States v. All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d 81, 112–13 (D.D.C. 2013) (finding that liquidator of Antiguan bank had standing to oppose forfeiture proceedings against assets held by the bank prior to the liquidation because a bank liquidator "stands in the shoes of the bank it represents and enjoys precisely the same rights and interests").[2]

Finally, DGF has established that its interest is not adequately protected by the parties. The burden to demonstrate inadequacy of representation is "minimal." *Hoblock*, 233 F.R.D. at 99. A proposed intervenor may rebut the presumption of adequate representation by demonstrating that it has a legal argument that "could not be equally asserted" by the existing parties. *Schwartz v. Town of Huntington Zoning Bd of Appeals*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000).

DGF serves as liquidator of Prominvestbank. Thus, it is well-situated to object to the Writ of Execution. No existing party has the same interest in

---

[2] Judgment Creditors' argument that DGF's interest in the proceeding is "remote, and dependent upon four contingencies," is unpersuasive. Judgment Creditors' argument assumes that DGF needs to establish an ownership right to the assets at issue. But Rule 24(a)(2) only requires an "interest *relating to* the property or transaction which is the subject of the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) (emphasis added). DGF has demonstrated that under Ukrainian law, it has an interest in the disposition of the Prominvestbank assets; this interest is neither remote nor contingent.

Prominvestbank's assets, nor could any existing party equally assert DGF's legal arguments on its behalf.  To this end, BNY Mellon, a party to this action, acknowledged that Prominvestbank is entitled to present its arguments in its November 14, 2022 response to the Writ of Execution.  *See* Dkt. 26 at ¶ 5.

In any event, even if DGF had not satisfied the requirements for intervention of right under Rule 24(a), it may permissibly intervene under Rule 24(b).  First, as for delay, Judgment Creditors do not appear to be in a hurry themselves; after receiving the Default Judgment, they waited nearly two years to commence this action, and have now sought an extension of the Writ of Execution.  Thus, granting the motion to intervene will not cause any undue delay.  Second, as noted *supra*, Judgment Creditors will not be prejudiced by DGF's intervention because the assets at issue are currently blocked.  Third, allowing DGF to intervene and introduce factual and legal arguments in favor of vacating the Writ of Execution that no existing party would raise permits a more robust and properly developed presentation of the issues at stake.

Accordingly, as with intervention of right under Rule 24(a), DGF has satisfied the requirements for permissive intervention under Rule 24(b).

In addition to arguing that DGF's interest is too remote and contingent to support intervention, Judgment Creditors challenge Proposed Intervenors' motion on various other grounds.  None of which are persuasive.

First, Judgment Creditors assert that DGF failed to comply with Rule 24 because it did not accompany its order to show cause with a pleading.  But, in this case, Judgment Creditors did not file a complaint to commence the action, and so it is reasonable that DGF—which intervened as a defendant— did not file an answer with its order to show cause.  And even though DGF did not attach a pleading, it clearly stated the relief it seeks and the grounds justifying that relief in its memorandum of law in support of its order to show cause.  *See* Dkt. 35-3.  Moreover, even Judgment Creditors appear to acknowledge that courts have not strictly enforced the requirement that a motion to intervene be accompanied by a pleading.  *See* Dkt. 48 at 11 (citing *Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, 2022 U.S. Dist. LEXIS 15084, at *15 (E.D.N.Y. Jan. 27, 2022)).

Next, Judgment Creditors mount several attacks on DGF's standing in this action.  The Court only need address the first—that DGF needed to demonstrate standing in the first place.  To be sure, "an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that requested by the plaintiff."  *Gerschel v. Bank of Am., N.A.*, 2021 WL 1614344, at *3 n.8 (S.D.N.Y. Apr. 26, 2021) (emphasis in original) (quoting

*Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1647 (2017)) (internal quotations omitted).  But where a proposed intervenor "merely intend[s] to oppose the relief that [plaintiff] requests … [t]here is no additional relief for the Court to consider" and so the proposed intervenor need not independently establish Article III standing.  *Id.*

In this action, DGF does not seek relief beyond that requested by the Judgment Creditors.  Indeed, like the proposed intervenors in *Gerschel*, DGF merely opposes the relief sought by Judgment Creditors (*i.e.,* execution on Prominvestbank's assets).  Accordingly, DGF does not need to independently satisfy Article III, and Judgment Creditors' remaining arguments concerning standing must fail.

In sum, DGF has satisfied the requirements of both Rule 24(a) and Rule 24(b) and its motion to intervene in this action will be granted.

**B. Motion to Vacate**

DGF next moves to vacate the Writ of Execution on several grounds.[3] Most notably, and dispositive here, DGF argues that TRIA does not apply

---

[3] In addition to the grounds discussed *infra*, DGF argues that the Magistrate Judge erred in determining that there was subject matter jurisdiction in this case.  While these arguments may have some force, it appears well-settled that federal courts have subject matter jurisdiction over post-judgment execution and attachment proceedings.  *See, e.g.*, *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43,50 (2d Cir. 2010) ((It is "clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment").

because Ukraine nationalized Prominvestbank before Judgment Creditors

applied for the Writ of Execution.

Section 201(a) of TRIA provides:

> Notwithstanding any other provision of law, ... in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) … **the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution** in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), Pub. L. No. 107–297, § 201(a), 116 Stat. 2322, 2337–40 (2012)

(codified at 28 U.S.C. § 1610 note) (emphasis added).

Thus, to attach property pursuant to TRIA, a party must show: (i) that the

property at issue constitutes "blocked assets;" and (ii) that the property

belongs to a "terrorist party" or an "agency or instrumentality of that

terrorist party." *See Kirschenbaum v. 650 Fifth Ave.*, 257 F. Supp. 3d 463,

515 (S.D.N.Y. 2017), *vacated and remanded sub nom on unrelated grounds*,

*In re 650 Fifth Ave & Related Properties*, 934 F.3d 147 (2d Cir. 2019), *and*

*rev'd and remanded sub nom*, *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174 (2d.

Cir. 2019).  DGB challenges only the latter factor.

Courts assess whether an entity is an agency or instrumentality of a

terrorist party at the time that a party commences an enforcement

proceeding against the entity.  *See Kirschenbaum*, 257 F. Supp. 3d at 518

16

n.60; *Harrison v. Republic of Sudan*, 2017 WL 946422, at *5– 6 (S.D.N.Y. Feb. 10, 2017).  "The question of whether the property is an instrumentality … at that time is the relevant issue." *Kirschenbaum*, 257 F. Supp. 3d at 518 n.60.

In its November 2 Order, the Court found that "Prominvestbank is an agency or instrumentality of the Taliban" based on Judgment Creditors' *ex parte* submission asserting that Prominvestbank is a subsidiary of Russian-owned VEB, and that Russia "uses VEB and its subsidiaries, including Prominvestbank" to provide "material support to the Taliban in Afghanistan."  Dkt. No. 16 ¶ 3.  Accordingly, the question is whether VEB (and, thus, indirectly Russia) owned Prominvestbank as of September 20, 2022—the date Judgment Creditors commenced this action and applied for the Writ of Execution.

With the benefit of a more complete record, this question must now be answered in the negative.  As DGF highlights, in spring 2022 following the Russian invasion, the Ukrainian government revoked Prominvestbank's banking license, directed its liquidation, and ultimately nationalized the bank.  *See generally* Kostiukov Decl. at ¶¶ 4–8.  Moreover, around the same time, Ukraine adopted laws restricting Russian creditors from executing against Prominvestbank's assets.  *Id*. ¶ 6.  As a result, by the time Judgment Creditors applied for the Writ of Execution on September 20, 2022, VEB had

17

no control over or access to Prominvestbank's assets, and Ukrainian law no longer recognized VEB as having any ownership interests in Prominvestbank. *Id.* ¶ 12. Instead, Ukraine recognized Prominvestbank as owned by the National Investment Fund of Ukraine due to Ukraine's seizure of Russian assets, which was part of its broader campaign of resistance to Russia following its invasion. *Id.* Indeed, Ukraine's official government records reflect that VEB's 99.77% ownership interest in Prominvestbank now belongs to the National Investment Fund of Ukraine. *Id.* ¶ 13.

Judgment Creditors respond that this Court is not empowered to recognize Ukraine's nationalization of Russian assets. This argument is unavailing. As the Second Circuit long ago observed, courts have "discretion whether or not to respect a foreign act of state affecting property in the United States," but will give effect to acts of state "only if they are consistent with the policy and law of the United States." *Republic of Iraq v. First Nat. City Bank*, 353 F.2d 47, 50–51 (2d Cir. 1965).

Given the United States' clearly articulated and broad support for Ukraine's sovereignty in the face of Russia's invasion, and given that recognizing Ukraine's nationalization of Prominvestbank aligns with the United States' interests in supporting Ukrainian war efforts, Ukraine's nationalization of Prominvestbank is certainly consistent with this country's policy goals. Accordingly, the Court may properly exercise—and does

exercise—its discretion to recognize the Ukrainian law nationalizing Prominvestbank's assets.

Judgment Creditors' attack of the record evidence is similarly unpersuasive. Judgment Creditors assert that there is no proof that control of Prominvestbank actually changed hands. But, as noted, DGF submitted evidence that Ukraine passed laws prior to September 20, 2022 in order to nationalize Prominvestbank. *See generally* Kostiukov Decl. at ¶¶ 4–8. Thus, by the time Judgment Creditors sought the Writ of Execution, Russia no longer owned or controlled Prominvestbank or its assets, *id.* ¶ 8, and Prominvestbank was not an agency or instrumentality of Russia. And while it is true that the final administrative step of transferring VEB's shares to the National Investment Fund of Ukraine did not occur until December 15, 2022, Judgment Creditors do not explain why this would compel the Court to disregard Ukrainian-passed laws nationalizing Prominvestbank prior to September 20, 2022.

The November 2, 2022 Writ of Execution concluded that Prominvestbank is an "agency or instrumentality" of the Taliban and that its Blocked Assets were subject to attachment and execution under TRIA. This was based solely upon Judgment Creditors' *ex parte* submissions. In view of the newly-developed record, that conclusion can no longer stand. The Writ of Execution must be vacated.

**IV. <u>CONCLUSION</u>**

Therefore, it is

ORDERED that

1.  Deposit Guarantee Fund's motion to intervene as a defendant in this action is GRANTED;

2.  Deposit Guarantee Fund's motion to vacate the Writ of Execution issued on November 2, 2022 is GRANTED;

3.  The Writ of Execution issued on November 2, 2022 is VACATED;

4.  The assets in Prominvestbank's Oriskany, New York BNY Mellon account remain blocked.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  July 12, 2023
Utica, New York.